1   William N. Lobel, SBN 93202
    PACHULSKI STANG ZIEHL & JONES LLP
2   650 Town Center Drive, Suite 1500
    Costa Mesa, CA 92626
3   Tel: 714 384-4740
    Fax: 714 384-4741
4   E-mail: wlobel@pszjlaw.com

5   [Proposed] Attorneys for Ruby's Diner, Inc., a California
    corporation, *et al.,* Debtors and Debtors-in-Possession
6

7            **UNITED STATES BANKRUPTCY COURT**
         **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA**
8
    In re:                                    | Case No. 8:18-bk-13311-CB
9
    RUBY'S DINERS, INC., a California          | Chapter 11
10  corporation, *et al.,*[1]
                                               | (Jointly Administered With Case Nos.
11          Debtors and Debtors-in-Possession, | 8:18-bk-13197-CB; 8:18-bk-13198-CB;
                                               | 8:18-bk-13199-CB; 8:18-bk-13200-CB; 8:18-bk-13201-CB;
12  Affects:                                   | 8:18-bk-13202-CB)

13  ☒ All Debtors                             | **NOTICE OF EMERGENCY MOTION AND
                                               | EMERGENCY MOTION FOR AN ORDER
14  ☐ RUBY'S DINERS, INC., ONLY               | AUTHORIZING THE DEBTOR TO (I) PAY
                                               | AND/OR HONOR PREPETITION WAGES,
15  ☐ RUBY'S SOCAL DINERS, LLC, ONLY          | SALARIES, EMPLOYEE BENEFITS, AND
                                               | OTHER COMPENSATION; (II) REMIT
16  ☐ RUBY'S QUALITY DINERS, LLC,             | WITHHOLDING OBLIGATIONS;
    ONLY                                       | (III) MAINTAIN EMPLOYEE
17                                             | COMPENSATION AND BENEFITS
                                               | PROGRAMS AND PAY RELATED
18  ☐ RUBY'S HUNTINGTON BEACH, LTD.,          | ADMINISTRATIVE OBLIGATIONS; AND
    ONLY                                       | (IV) HAVE APPLICABLE BANKS AND
19                                             | OTHER FINANCIAL INSTITUTIONS
                                               | RECEIVE, PROCESS, HONOR, AND PAY
20  ☐ RUBY'S LAGUNA HILLS, LTD. ONLY          | CERTAIN CHECKS PRESENTED FOR
                                               | PAYMENT AND HONOR CERTAIN FUND
21                                             | TRANSFER REQUESTS; MEMORANDUM OF
22  ☐ RUBY'S OCEANSIDE, LTD., ONLY            | POINTS AND AUTHORITIES IN SUPPORT**
23  ☐ RUBY'S PALM SPRINGS, LTD., ONLY         | [Declaration of Douglas S. Cavanaugh in Support of
                                               | First Day Motions filed concurrently herewith]
24
                                               | Date:       September 6, 2018
25                                             | Time:       2:00 p.m.
                                               | Courtroom:  5A
26                                             | Address:    411 West Fourth Street
                                               |             Santa Ana, CA 92701
27
28  [1] The last four digits of the Debtors' federal tax identification numbers are as follows: Ruby's Diners, Inc. (8143);
    Ruby's SoCal Diners, LLC (9782); Ruby's Quality Diners, LLC 1539); Ruby's Huntington Beach, Ltd. (1331); Ruby's
    Laguna Hills, Ltd. (6603); Ruby's Oceanside, Ltd. (9104); and Ruby Palm Springs, Ltd. (9627).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1

# **TABLE OF CONTENTS**

**Page**

I.  STATEMENT OF FACTS ............................................................................... 6

   A.  Jurisdiction and Venue ........................................................................ 6

   B.  Background ......................................................................................... 6

   C.  General Description of the Debtor ...................................................... 6

   D.  Overview of the Debtor and Its Affiliates' Business Operations ......... 6

   E.  The Debtor and Its Affiliates' Corporate Structure ........................... 7

   F.  The Employees .................................................................................... 8

   G.  The Wages and Benefits Programs ..................................................... 8

       1.  Wages, Salaries and Associated Withholdings ............................ 9

       2.  Withholding Obligations ............................................................. 11

       3.  Temporary Employee ................................................................... 11

       5.  Health Benefits ............................................................................ 12

       6.  Medical Plans .............................................................................. 13

       7.  Other Health Benefits ................................................................. 13

           (i)  Dental Plan ......................................................................... 14

           (ii)  Life Insurance & Accidental Death and Dismemberment ...... 14

       8.  Holidays, Vacation, and Leave ................................................... 14

       9.  Workers' Compensation Insurance ............................................. 15

II.  ARGUMENT ............................................................................................ 16

   A.  The Court Has Authority Pursuant to Sections 105(a), 363(b), and 507(a)(4) & (a)(5) of the Bankruptcy Code to Grant the Requested Relief .................................................. 16

   B.  Bankruptcy Rules 6003 and 6004 Should Be Waived ...................... 20

   C.  No Assumption or Assignment of Employee Benefits ....................... 20

   D.  Banks and Other Financial Institutions Should Be Authorized and Directed to Honor Checks Issued to Pay Wages and Benefits, to Honor All Fund Transfer Requests Relating to the Foregoing, and to Pay All Processing Fees Associated with Payment of Employee Wages and Benefits ....................................................................................................... 20

III.  CONCLUSION ........................................................................................ 21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

i

# TABLE OF AUTHORITIES

**Cases**

Begier v. IRS,
    496 U.S. 53 (1990).................................................................................................. 14

In re American Suzuki Motor Corp.,
    8:12-22808-SC (Bankr. C.D. Cal. Nov. 7, 2012) ........................................... 11

In re B&W Enterprises,
    713 F.2d 534 (9th Cir. 1983), ........................................................................ 13

In re CEI Roofing, Inc.,
    315 B.R. 50, 60 (Bankr. N.D. Tex. 2004)...................................................... 10

In re Equalnet Communications Corp.,
    258 B.R. 368 (Bankr. S.D. Tex. 2000) ......................................................... 12

In re Freedom Communications, Inc.,
    8:15-bk-15311-MW (Bankr. C.D. Cal. Nov. 5, 2015)................................. 11

In re Gordian Medical, Inc.,
    8:12-12399-MW (Bankr. C.D. Cal. Mar. 5, 2012) ...................................... 11

In re Gulf Air, Inc.,
    112 B.R. 152, 153 (Bankr. W.D. La. 1989)................................................. 11

In re Ocean Park Hotels – Toy, LLC,
    1:10-bk-15358-GM (Bankr. C.D. Cal. May 11, 2010)................................ 11

In re Victor Valley Community Hospital,
    6:10-39537-CB (Bankr. C.D. Cal. Sept. 17, 2010)...................................... 11

Norwest Bank Worthington v. Ahlers,
    485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed. 2d 169 (1988).................. 10

**Statutes**

11 U.S.C § 105(a) ..................................................................................................... 9

11 U.S.C § 363(c) ..................................................................................................... 9

11 U.S.C.§ 1107(a) ................................................................................................... 1

11 U.S.C.§ 1108 ....................................................................................................... 1

11 U.S.C.§ 362(d) ..................................................................................................... 9

11 U.S.C.§ 363(b) ............................................................................................... 9, 10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

i

11 U.S.C.§ 363(c)(1)............................................................................................................9

11 U.S.C.§ 365............................................................................................................13

11 U.S.C.§ 507(a)(4)............................................................................................4, 5, 9, 10

11 U.S.C.§ 507(a)(5)............................................................................................9, 10

11 U.S.C.§ 507(a)(8)............................................................................................12

28 U.S.C.§ 1409............................................................................................................1

28 U.S.C.§§ 1334............................................................................................................1

28 U.S.C.§§ 1408............................................................................................................1

28 U.S.C.§§ 157............................................................................................................1

**Rules**

Fed. R. Bankr. P. 6003............................................................................................13

Fed. R. Bankr. P. 6004............................................................................................13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE 20 LARGEST UNSECURED CREDITORS, SECURED CREDITORS AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Ruby's Diner, Inc., a California corporation ("RDI" or the "Debtor") hereby moves (the "Motion") the Court for entry of an order pursuant to sections 105(a), 362, 363, and 507(a), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtor, in the ordinary course of business and in accordance with pre-petition practices and the Debtor's cash collateral and debtor in possession financing budget attached hereto as **Exhibit "A"** (the "Budget") to (i) pay and/or honor prepetition wages, salaries, employee benefits, and other employee compensation or reimbursements; (ii) remit withholding obligations; (iii) maintain employee compensation and benefits programs and pay related administrative obligations; and (iv) have applicable banks and other financial institutions receive, process, honor, and pay certain checks presented for payment and honor certain fund transfer requests.

In connection with the normal operation of its business, the Debtor incurs obligations for (a) employee wages and salaries (the "Wages"), (b) employee benefits and other compensation or reimbursements (the "Benefits" and, collectively, with the Wages, the "Wages and Benefits"), (c) withholding obligations ("Withholding Obligations"), (d) vacation and sick leave, and (e) other obligations related to the preservation of the Debtor's work force (collectively, the "Employee Obligations"). The Debtor's employees, which include all of the employees of the Debtor's corporate office and the Restaurants (as such term is defined herein) (the "Employees") are vital to the orderly administration of the Debtor's estate and those of its affiliates.[2] Payment of, and otherwise honoring, the Employee Obligations is necessary to maintain the Employees' morale

---

[2] On August 28, 2018, the Debtor's affiliates, SoCal Diners, Ruby's Quality Diners, LLC, Ruby's Huntington Beach, Ltd., Ruby's Laguna Hills, Ltd., Ruby's Oceanside, Ltd. and Ruby Palm Springs, Ltd., filed chapter 11 cases, which are pending in this Court (the "SoCal Debtors"). In connection with the filing of the SoCal Debtors, the debtors therein requested authority to continue to reimburse the Debtor herein, RDI, for their respective Employee Obligations, which request was approved by the Court. By this Motion, the Debtor requests corresponding authority to use such reimbursements and otherwise meet the Employee Obligations, as set forth herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

through the administration of the Debtor's case and to prevent many of the Employees from suffering extreme personal hardship or from leaving the Debtor during the pendency of its case. Moreover, the payment of, and otherwise honoring, the prepetition Wages and other Employee Obligations in the ordinary course of business will not prejudice general unsecured creditors or materially affect the Debtor's estate because these claims would otherwise be entitled to priority under sections 507(a)(4) and (a)(8)(D) of the Bankruptcy Code and would be entitled to be paid ahead of general unsecured claims.  The payment of such amounts by the Debtor in accordance with the Budget is critical to the Debtor's ability to operate. Should the Employee Obligations not be met, there is a significant risk that the Employees would cease working with the Debtor, and the Debtor's restaurant operations would be irreparably damaged, to the detriment of all parties.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests that the relief sought herein be granted on an emergency basis because the uninterrupted payment and honoring of the Employee Obligations, in the ordinary course of business, is essential to the Debtor's survival in that failure to pay and honor such obligations would damage Employee morale and risk disruption in the operation of the Debtor's restaurant business.  Among other things, the Debtor's management would be distracted from the reorganization process in an attempt to deal with the issues resulting from non-payment of Employee Obligations, such as Employee attrition or assessments of unpaid obligations directly against insiders.  The Debtor, therefore, pursuant to Rule 2081-1(a)(6) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, effective December 1, 2017 (the "<u>Local Bankruptcy Rules</u>"),[3] requests that this Motion be heard on an emergency basis.  Granting the relief requested in this Motion on an emergency basis will benefit the estate immediately as set forth above.

---

[3] Pursuant to Local Bankruptcy Rule 9075-1(a)(3), no separate motion for an expedited hearing is required.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached Memorandum of Points and Authorities, the *Declaration of Douglas S. Cavanaugh in Support of First Day Motions* (the "Cavanaugh Declaration"), the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion.  In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in this case and the cases of its affiliates, the SoCal Debtors.

**PLEASE TAKE FURTHER NOTICE** that any opposition or objection to the Motion must be filed with the Court and served on proposed counsel for the Debtor at the above address any time before the hearing or may be presented at the hearing on the Motion.  Failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and Motion and the attached Memorandum of Points and Authorities, and the Cavanaugh Declaration, on: (1) the Office of the United States Trustee; (2) the creditors appearing on the list filed in accordance with Fed. R. Bankr. P. 1007(d) by the Debtor unless and until an official committee of unsecured creditors (the "Committee") is appointed, then in that event, to counsel to the Committee; (3) parties that file with the Court and serve upon the Debtor request for notice of all matters in accordance with Bankruptcy Rule 2002(i); (4) the United States of America; (5) the State of California, (6) the Steering Committee on behalf of the Debtor's unsecured noteholders, (7) Credit Managers Association on behalf of the Debtor's secured noteholders; (8) any other known secured creditors, (9) counsel to the Debtor's postpetition lender; (10) Paycom, the Debtor's payroll processing company, and (11) the Debtor's banks and financial institutions as of the Petition Date.

**PLEASE TAKE FURTHER NOTICE** that, to the extent necessary, the Debtor requests that the Court waive compliance with Local Bankruptcy Rule 9075-1(a)(1) and approve service (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight delivery or email.  In the event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs.  The Debtor submits that such notice is sufficient and that no other or further notice be given.

4

**WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that the Court enter an order (i) authorizing, but not directing, the Debtor to honor or pay Employee Obligations in the ordinary course of business that come due postpetition; (ii) directing banks and financial institutions to honor and process checks and transfers related thereto; and (iii) granting such other and further relief as is just and proper.

Dated:      September 5, 2018                    PACHULSKI STANG ZIEHL & JONES LLP

By      */s/ William N. Lobel*

William N. Lobel
[Proposed] Attorneys for Ruby's Diner, Inc., *et al.,*  Debtors and Debtors-in-Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     STATEMENT OF FACTS

### A.     Jurisdiction and Venue

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.     Background

On September 5, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to operate its business and manage its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this chapter 11 case (the "Case").

On August 29, 2018, the Debtor's affiliates, SoCal Diners, LLC ("SoCal Diners"), Ruby's Quality Diners, LLC ("Quality"), Ruby's Huntington Beach, Ltd. ("Ruby's Huntington Beach"), Ruby's Laguna Hills, Ltd. ("Ruby's Laguna Hills"), Ruby's Oceanside, Ltd. ("Ruby's Oceanside"), and Ruby Palm Springs, Ltd. ("Ruby's Palm Springs"), filed chapter 11 cases, which are pending in this Court (the "SoCal Debtors").  Concurrently with the filing of the Debtor's chapter 11 Case, another affiliate of the Debtor, Ruby's Franchise Systems, Inc., a California corporation ("RFS"), intends to file for relief under chapter 11.

### C.     General Description of the Debtor

A detailed description of the Debtor's background, structure, operations and recent financial history is detailed in the concurrently filed Declaration of Douglas S. Cavanaugh in Support of First Day Motions (the "Cavanaugh Declaration").

### D.     Overview of the Debtor and Its Affiliates' Business Operations

The Debtor and its affiliates (referred to from time to time herein as the "Company") own, operate and manage restaurants under the trade names "Ruby's®," "Ruby's® Diner," "The Ruby Restaurant Group," "Ruby's® Dinette" and "Ruby's® Shake Shop."  The Company has operated

6

Ruby's® Diner restaurants since 1985 and is known as a purveyor of very popular burgers, fries and shakes.

**E.**    **The Debtor and Its Affiliates' Corporate Structure**

As set forth in the corporate chart (attached as **Exhibit "1"** to the Cavanaugh Declaration), the Debtor is the 100% owner of SoCal Diners.  SoCal Diners is the 100% owner and sole and managing member of Quality.  SoCal Diners is the general partner and 50% owner, and Quality is the limited partner and 50% owner, of the following California limited partnerships: (1) Ruby's Huntington Beach, which owns and operates a Ruby's® restaurant on the pier in Huntington Beach, California and is a SoCal Debtor; (2) Ruby's Oceanside, which owns and operates a Ruby's® restaurant in Oceanside, California and is a SoCal Debtor; (3) Ruby's Palm Springs, which owns and operates a Ruby's® restaurant in Palm Springs, California and is a SoCal Debtor; and (4) Ruby's Laguna Hills, which owns and operates a Ruby's® restaurant in the Laguna Hill Mall in Laguna Hills, California[1] and is a SoCal Debtor[2] (the restaurants owned by the SoCal Debtors are referred to as the "SoCal Restaurants").

In addition, the Debtor holds ownership interests in, and management roles in connection with, the following non-debtor joint venture entities:  (1) the Debtor is the managing member and 70% owner of Ruby's Beach Ventures LLC, which owns and operates a Ruby's® restaurant in Long Beach, California; (2) the Debtor is the general partner and 50% owner of Ruby's Diner South Coast Plaza LP, which owns and operates a Ruby's® restaurant at South Coast Plaza Mall in Costa Mesa, California; (3) the Debtor is the managing member and sole owner of Ruby's Woodbridge LLC, which owns and operates a Ruby's® restaurant in Woodbridge in Irvine, California; and (4) the Debtor is the managing member and 50% owner of Ruby's Spectrum LLC, which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant at the Irvine Spectrum in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

---

[1] The Debtor anticipates that, due to significant, continuing construction projects underway at the Laguna Hills Mall, the Laguna Hills restaurant will close following the Petition Date.

[2] SoCal and Quality also own Ruby's Mission Valley, Ltd., which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant in the Westfield Mission Valley Mall in San Diego, California.  The Mission Valley restaurant was closed prior to the Petition Date, in April 2018.  Ruby's Mission Valley, Ltd. is not a debtor entity.

Irvine, California (collectively, the "RDI Entities" and the restaurants owned by the RDI Entities, the "RDI Restaurants" and, together with the SoCal Restaurants, the "Company Restaurants").

**F.      The Employees**

The Debtor employs, at the corporate office and the Company Restaurants, approximately 800 employees, including 200 active full-time employees,[3] 600 active part-time employees and one (1) active temporary employee (collectively, the "Employees").  Of these, approximately 275 are employed at the SoCal Restaurants or are otherwise the responsibility of the SoCal Debtors.  The Employee Obligations for the Employees that are the responsibility of the SoCal Debtors are, in the ordinary course, paid for by RDI with funds from the SoCal Debtors.  The SoCal Debtors have sought and obtained court authorization to continue to reimburse the Debtor for their respective Employee Obligations in the ordinary course, and in connection with the cash collateral budget approved on an interim basis in the SoCal Debtors' chapter 11 cases.

As set forth in the Cavanaugh Declaration, it is absolutely critical that the Debtor be able to assure their Employees that their Wages and Benefits will continue unaffected by its chapter 11 filing in order to effectuate a successful outcome to the Cass.  In order to do so, the Debtor must be allowed to pay the Employee Obligations in accordance with the terms of the Budget attached hereto as **Exhibit "A."**

**G.      The Wages and Benefits Programs**

The Debtor (with funds from the SoCal Debtors in the case of the SoCal Restaurants and from the RDI Entities in the case of the RDI Restaurants) has been paying and/or honoring the Wages and Benefits in the ordinary course of business up to the Petition Date.  The Debtor represents that it will have sufficient funds available postpetition, pursuant to the proposed use of cash collateral and/or debtor in possession financing and the Budget to be approved in connection therewith (**Exhibit "A"** hereto) in this case (and the use of cash collateral and budget approved in the SoCal Debtors' cases), to pay or honor promptly all amounts related to the Wages and Benefits, to the extent described herein, on an ongoing basis and in the ordinary course of business.

---

[3] Full-time employees are the Company's management and those employees that work at least 29 hours a week.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

Consequently, there is no reason for the regular payment of Wages and Benefits to be disrupted, which disruption would directly harm the Debtor's Employees and its reorganization prospects, to the detriment of all parties.

The Debtors' aggregate bi-weekly gross payroll is approximately $395,000, which figure includes wages and taxes paid by the Debtor on behalf of the Employees (including withholding taxes), and withholdings for various Employee benefits, which are described more fully below.

A description of the business of the Debtor is set forth in the Cavanaugh Declaration.  None of the Debtor's Employees are associated with a union.

### 1.    Wages, Salaries and Associated Withholdings

As of the Petition Date, the Debtor's aggregate net bi-weekly payroll was approximately $350,000 (gross payroll of approximately $395,000, less Withholding Obligations, including payroll taxes of approximately $42,056, payroll fees of approximately $2,000 and employee garnishments of approximately $1,300).  The Employees are paid bi-weekly, five (5) days in arrears through direct deposit or checks issued after the close of the applicable pay period.

The last date on which the Employees were paid prior to the Petition Date and the next pay date after the Petition Date (the "Employee Pay Date") are summarized below:

| Employee Pay Date | Associated Pay Period |
|---|---|
| 8/31/2018 | 8/13/2018 to 08/26/2018 |
| 9/14/2018 | 08/27/2018 to 9/9/2018 |

The Debtor utilizes Paycom, a payroll processing provider, to process its payroll.  The Debtor sends to Paycom the amounts to be paid to Employees via direct deposit and for taxes one (1) business day before the Employee Pay Date.  For amounts to be paid via check, Paycom generates a check on the Debtor's check stock (but does not transfer any funds on the Debtor's behalf).  As part of the relief requested hereunder, the Debtor seeks authority to permit Paycom to continue to process the payroll of the Debtor's Employees in the ordinary course of business.  On a monthly basis, the Debtor pays Paycom approximately $3,800 in fees to process payroll.  To the extent that any fees are

outstanding to Paycom as of the Petition Date, the Debtor requests authority to pay any amounts owing to Paycom in the ordinary course.

On the Employee Pay Date following the Petition Date (September 14, 2018), approximately $395,000 in Wages (including direct deposits and wages paid by check, and accounting for Withholding Obligations), will be due on account of prepetition Wages as of the Petition Date, as will a small portion of the following pay period. By this Motion, the Debtors seek authority to pay Employees these Wages for the prepetition period. The Debtor will also continue to make such payments on account of Employee Wages for the postpetition period in the ordinary course of business following the Petition Date as set forth in the Budget attached hereto as **Exhibit "A."**

As of the Petition Date, the Debtor maintained three (3) bank accounts at Chase Bank – a clearing account (the "Clearing Account"), a master account (the "Master Account") and payroll account (the "Payroll Account" and, collectively, the "Chase Accounts"). In the ordinary course, revenue from the operations of the Debtor's business are deposited into the Clearing Account. From the Clearing Account, funds to cover outstanding payables, including payroll, are deposited into the Master Account. From the Master Account, deposits are made into the Payroll Account to cover payroll obligations. By way of this Motion, by virtue of the timing constraints (payroll will be issued within days of the Petition Date), the Debtor seeks authority to use the Chase check stock and keep the Chase Accounts open until such time as the Debtor's payroll due to be issued on September 14, 2018 has cleared the Payroll Account. Following this, the Debtor intends to close the Chase Accounts. Thereafter, the Debtor will utilize a debtor-in-possession master account (the "DIP Master Account") and a debtor-in-possession payroll account (the "DIP Payroll Account" and, together with the DIP Master Account and any other accounts opened by the Debtor as debtor-in-possession accounts, the "DIP Accounts") which the Debtor anticipates opening at East West Bank, a bank listed on the U.S. Trustee's list of approved depositories. Thus, the Debtor anticipates that the Employee payroll scheduled to be paid in the ordinary course on September 14, 2018 will be paid from the DIP Accounts.

No payments to any single Employee on account of prepetition Wages will exceed the $12,850 priority cap of section 507(a)(4) of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

### 2.    Withholding Obligations

In the ordinary course of its business, the Debtor (and Paycom on behalf of the Debtor) routinely withhold from Wages certain amounts that the Debtor is required to transmit to third parties for purposes such as social security and Medicare, federal and state or local income taxes, garnishment, child support or similar obligations pursuant to court order or law (collectively, the "Withholding Obligations"). Prior to the Petition Date, the Debtor's bi-weekly Withholding Obligations were approximately $45,000, including payroll tax obligations, payroll fees and garnishments. In connection with the relief requested herein, the Debtor requests authority for itself and its agents, on behalf of the Debtor, to remit tax withholdings to the appropriate taxing agencies on account of any current Withholding Obligations that come due during the Case and to satisfy the other Withholding Obligations in connection with the payment of the Wages and Benefits.

The Debtor maintains that its Withholding Obligations do not constitute property of the estate because such amounts are held by the Debtor on behalf of the Employees for remittance to the Debtor's insurers for Employee benefits, and also to the applicable taxing authorities on behalf of the Debtor's portion of employment-related taxes. In an abundance of caution, however, the Debtor seeks authority to remit Withholding Obligations of up to $45,000 on account of the prepetition period that are currently due. Such amounts are included in the Budget.

### 3.    Temporary Employee

One (1) of the Debtor's full-time Employees is employed through a temporary agency. This Employee provides critical financial and bookkeeping services to the Debtor. The Debtor remits approximately $3,000 to the temporary agency every other week for payment for this Employee's services. As of the Petition Date, the Debtor is current on payment of invoices to the temporary agency, but estimates that it has approximately $3,000 of obligations to the temporary staffing agency relating to prepetition services performed by this Employee. By this Motion, the Debtor seeks authority to pay to the temporary staffing agency the prepetition balance described above and to continue to pay all amounts that are due after the Petition Date in the ordinary course of business. Such amounts are included in the Budget. No payments on account of this Employee exceed the $12,850 cap of section 507(a)(4) of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**4.     Business Expense Reimbursements**

Certain of the Debtor's Employees incur business expenses in the ordinary course of performing their duties on behalf of the Debtor.  Such expenses typically include, but are not limited to, business travel, cell phone reimbursement and mileage, vendor payments, product testing and research (the "Reimbursement Obligations").

Historically, the Reimbursement Obligations are either incurred directly by the Employee and submitted for reimbursement or charged to corporate credit cards issued in the name of certain Employees.  On an average monthly basis, the Debtor has paid approximately $5,000 on account of the corporate credit cards and an additional $1,000 for Reimbursement Obligations not incurred through the corporate credit cards.

Prior to the Petition Date, the Debtor has paid all amounts owing on account of the corporate credit cards and has discontinued the use of such cards by all except for five (5) of its Employees.  As of the Petition Date, the Debtor believes it owes approximately $1,000 on account of Reimbursement Obligations not incurred through corporate credit cards, which the Debtor seeks authority to pay through this Motion.  The Debtor also requests authority to continue to honor Reimbursement Obligations incurred postpetition in the ordinary course of the Debtor's business.  Such amounts are included in the Budget.

**5.     Health Benefits**

The Debtor provides health insurance to certain Employees, including medical and dental, insurance and health care reimbursement accounts (collectively, the "Health Plans"), as described in more detail below.  The administrators of the Health Plans invoice the Debtor in advance for the full amount of fixed premiums owing as of the first of each month for that month's coverage period.  The Debtor requests authority to remit any amounts owing on account of its portion of the Health Plans for the prepetition period.

As described in greater detail below, for the Health Plans, Employees make contributions towards the Health Plan premiums and the Debtor deducts the Employees' portion of the premiums owing under the Health Plans from their Wages every pay period.  The Debtor then provides the administrator of the Health Plan with the full payment of premiums, the cost of which is shared by

the Debtor and the Employees.

### 6.   Medical Plans

The Debtor provides eligible Employees with HMO/PPO medical insurance plans offered by Health Net4 and/or Aetna5 (the "Medical Plans").  Of the Employees' fixed premiums under the Health Net plan, the Debtor pays 60% for a single Employee; 25% for an Employee plus one dependent; or 19% for an Employee plus family.  The Debtor pays 100% of the premiums under the Aetna plan.  On an average monthly basis, the Debtor remits approximately $14,000 to Heath Net on account of the Health Net Medical Plan, approximately $8,000 of which is the Employees' share.  On an average monthly basis, the Debtor remits approximately $7,000 to RFS on account of the Aetna Medical Plan.

As of the Petition Date, the Debtor is current on the payment of invoiced premiums and claims due and owing to Health Net and Aetna.  The Debtor seeks authority to pay premiums and claims as they come due under the Medical Plans and to continue to offer the Medical Plans postpetition in the ordinary course of business and in its discretion.  While the Debtor is current on obligations owing, in the abundance of caution, the Debtor seeks herein authorization to pay up to $21,000 (which figure includes approximately $7,000 of the Employees' share) of prepetition claims on account of the Medical Plans, as reflected in the Budget.

### 7.   Other Health Benefits

The Debtor offers dental, disability insurance and life insurance to certain of its Employees.

---

[4] The Debtor's Employees are eligible for coverage if they are management or work 29 or more hours per week (the "Eligible Employees").  Eligible Employees are eligible for coverage under the Health Net plan.  In addition, certain employees of a non-debtor entity affiliated with the Debtor through common control, The Beachcomber Cafe ("Beachcomber"), are also covered under the Health Net plan.  Historically, the Debtor has paid the Beachcomber employee premiums, and is reimbursed in full for such payments by Beachcomber.  The Debtor pays approximately $21,000 to $22,000 per month for the total Health Net premium.  Beachcomber reimburses the Debtor approximately $9,000 per month for coverage for their employees on the policy (this reimbursement is 100% of their employee cost, thus the Debtor is not paying any portion of these individuals' premiums).  The Debtor requests authority to continue to make such payments on behalf of the Beachcomber employees, and receive reimbursement therefore, in the ordinary course, as reflected in the Budget.

[5] Douglas S. Cavanaugh and Ralph Kosmides, directors and shareholders of the Debtor, are the only individuals covered under the Aetna plan.  The Aetna plan is held in the name of the Debtor's affiliate, RFS.  However, the Debtor pays the premiums with respect to the Aetna plan.  The Debtor pays RFS approximately $7,000 each month for the Aetna premium.  The Debtor requests authority to continue to make this payment to RFS in the ordinary course, as reflected in the Budget.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

The Debtor pays the plan administrators of these programs approximately $5,000 per month in the aggregate. Of this amount, the Employee share is approximately $1,500. By this Motion, the Debtor seeks authority to continue to offer its Dental Plan, Disability, Life Insurance & AD&D and Supplemental Life Insurance as further discussed below in the ordinary course of business in its discretion and to remit any prepetition amounts owing to the plan administrators thereof in an amount not to exceed $5,000. Such amounts are included in the Budget.

### (i)    Dental Plan

The Debtor provides Eligible Employees the opportunity to participate in dental insurance through Premier Access Dental (the "Dental Plan"). Approximately 40 Employees have coverage under the policy.6 The Debtor pays 100% of the costs of the Dental Plan for 3 corporate Employees in the amount of approximately $435 per month. The remaining 37 Employees pay 100% of the cost of their portion of the policy in the amount of approximately $945.

### (ii)    Life Insurance & Accidental Death and Dismemberment

The Debtor provides management level Employees with life insurance ("Life Insurance") and accidental death and dismemberment ("AD&D") coverage through Met Life ("Life Insurance & AD&D"). The Debtor provides coverage of $25,000 of basic Life Insurance & AD&D for management level Employees. Additional Life Insurance & AD&D can be purchased by the Employees at their cost. Approximately 26 managers have enrolled in this program. The Debtor pays approximately $2,000 in monthly premiums for Life Insurance & AD&D.7

### 8.    Holidays, Vacation, and Leave

The Debtor pays for two (2) paid holidays for Restaurant managers, and nine (9) paid holidays for its corporate office staff. The Debtor also provides its Eligible Employees with regular paid time off ("PTO") to cover sick leave and vacation time.

---

6 In addition, the Beachcomber has 17 of its employees on the Dental Plan and reimburses the Debtor for the full expense of its employees, in the amount of approximately $1,620 each month. The Debtor requests authority to continue to make such payments on behalf of the Beachcomber employees, and receive reimbursement therefore, in the ordinary course.

7 In addition, the Beachcomber has 6 employees on this plan. The Beachcomber reimburses the Debtor approximately $351 for their employees on a monthly basis. The Debtor requests authority to continue to make such payments on behalf of the Beachcomber employees, and receive reimbursement therefore, in the ordinary course.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PTO is determined in large part by the length of employment of the Eligible Employee. Full-time Employees are entitled to accrue vacation at a rate per year that is based upon the number of years that such Employee has been employed by the Debtor, up to maximum aggregate limits. All Employees are also entitled to 24 hours per year of paid sick leave.

The Debtor requests authority in its discretion to honor, but not to pay, existing PTO earned by its Employees and continue to honor similar PTO policies regarding vacation time, sick time, and holidays on a postpetition basis and in the ordinary course of the Debtor's business. In the event that an Employee is terminated, then the Debtor requests authority in its sole discretion, to pay such Employee any earned but unused vacation to the extent that such payments do not exceed the limits under section 507(a)(4) of the Bankruptcy Code when combined with any outstanding prepetition Wages paid.

## 9.    Workers' Compensation Insurance

Under the laws of various states, the Debtor is required to maintain workers' compensation insurance to provide its Employees with coverage for injury claims arising from or related to their employment with the Debtor. The Debtor obtains workers' compensation insurance through California Restaurant Mutual Benefit Corporation (the "WC Insurer").

The Debtor is required to pay premiums to the WC Insurer (the "Workers' Compensation Obligations"). The Debtor pays premiums to its WC Insurer based on self-reported payroll. The estimated aggregate annual premium for the 2017/2018 coverage year is $569,000. At the end of each coverage year, amounts owing by the WC Insurer to the Debtor or vice versa are trued up and come due. As of the Petition Date, the Debtor is current on monthly premiums.

The Debtor submits that the continuance of its Workers' Compensation Policy is appropriate in the ordinary course of business, but out of an abundance of caution, seeks authority to maintain its workers' compensation and other liability insurance in accordance with applicable law postpetition and to pay all deductibles and premium installments as they come due in the ordinary course of business. By this Motion, the Debtor also requests authority to pay any amounts due and owing to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

the WC Insurer for potential audit premiums and other amounts arising through the Petition Date in an amount not to exceed $47,500.8  Such amounts are included in the Budget.

## II.  ARGUMENT

### A.    The Court Has Authority Pursuant to Sections 105(a), 363(b), and 507(a)(4) & (a)(5) of the Bankruptcy Code to Grant the Requested Relief

Statutory support for the requested relief exists pursuant to sections 105(a), 362(d), 363(b)(1) and (c)(1), and 507(a) of the Bankruptcy Code and the "necessity of payment" doctrine (discussed infra).  Bankruptcy Code section 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing.  Bankruptcy Code section 363(c) authorizes a debtor in possession to enter into transactions in the ordinary course of business without notice and a hearing.  Bankruptcy Code section 105(a) further provides, in pertinent part, that this Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

Section 105(a) of the Bankruptcy Code empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  As a general rule, however, the bankruptcy court may not use its section 105(a) powers to authorize an action that would be inconsistent with or prohibited by another provision of the Bankruptcy Code.  See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed. 2d 169 (1988).  In other words, section 105(a) must be used in combination with another provision of the Bankruptcy Code.  In this case, the coupling provisions are Bankruptcy Code section 507(a)(4)(A) and 507(a)(5) which grant priority status to employee claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay, and contributions to certain employee benefit plans earned within 180 days before the Petition Date to the extent of $12,850 per Employee.9

---

[8] In 2017, the WC Insurer imposed a special assessment for the years 2008-2015 in the amount of $752,000.  The Debtor is current under the payment plan entered into with the WC Insurer.

[9] Bankruptcy Code section 507(a)(4)(A) provides, "The following expenses and claims have priority in the following order . . . Fourth, allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for— (A) wages, salaries, or commissions, including vacation, severance, and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1    Where business exigencies require, courts have exercised their equitable powers under

2    Bankruptcy Code section 105(a) to authorize a debtor to pay prepetition employee wage and benefit

3    claims that would be entitled to priority pursuant to Bankruptcy Code sections 507(a)(4) and (5).

4    See e.g., In re CEI Roofing, Inc., 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004) ("Thus, there has evolved

5    a rule for the payment of prepetition wages and benefits which is based on both common sense and

6    the express provisions of the Bankruptcy Code.  If employees are not paid, they will leave.  If they

7    leave the Debtor's business, the bankruptcy case fails shortly after the filing.  No one will benefit

8    from the process."); In re Gulf Air, Inc., 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (endorsing the

9    debtor's payment of prepetition employee wage claims because "retention of skills, organization and

10    reputation for performance must be considered valuable assets contributing to going concern value

11    and aiding rehabilitation where that is possible.").  In this district, courts have routinely granted such

12    relief.  See e.g., In re Freedom Communications, Inc., 8:15-bk-15311-MW (Bankr. C.D. Cal. Nov. 5,

13    2015) [Dkt. No. 43]; In re American Suzuki Motor Corp., 8:12-22808-SC (Bankr. C.D. Cal. Nov. 7,

14    2012) [Dkt. No. 67]; In re Gordian Medical, Inc., 8:12-12399-MW (Bankr. C.D. Cal. Mar. 5, 2012)

15    [Dkt. No. 57]; In re Ocean Park Hotels – Toy, LLC, 1:10-bk-15358-GM (Bankr. C.D. Cal. May 11,

16    2010) [Dkt. No. 25]; In re Victor Valley Community Hospital, 6:10-39537-CB (Bankr. C.D. Cal.

17    Sept. 17, 2010) [Dkt. No. 30].  Because Bankruptcy Code section 507(a) grants priority payment to

18    certain employee wage and benefit claims, the payment of those claims prior to confirmation of a

19    plan of reorganization merely represents an acceleration of the payment of those claims, which does

20    not offend the distribution scheme of the Bankruptcy Code.

21    This is sometimes called the "Necessity of Payment" doctrine.  As the court explained in In

22    re Equalnet Communications Corp., 258 B.R. 368 (Bankr. S.D. Tex. 2000):

23    [C]ertain types of claim enjoy a priority status in addition to sometimes being critical to the

24    ongoing nature of the business.  For example, employee wage claims and certain tax claims are both

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

---

26    sick leave pay earned by an individual . . . . " Bankruptcy Code section 507(a)(5) provides, "The following expenses and
claims have priority in the following order . . . Fifth, allowed unsecured claims for contributions to an employee benefit

27    plan— (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the
cessation of the debtor's business, whichever occurs first . . . ." Bankruptcy Code section 363(b)(1), which authorizes a

28    debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing,
may also be another appropriate coupling provision.

priority claims in whole or in part.  The need to pay those claims in the ordinary course of business time frame is simple common sense.  Employees are more likely to stay in place and refrain from actions that are detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted.  Id. at 370.

As discussed above, the Wages and PTO owing to Employees relate to the 180-day period prior to the Petition Date and do not exceed $12,850 per Employee.  In addition, as noted above, the Debtor is current on all premiums and other amounts owing to third parties for Benefits.  The Debtor believes, therefore, that the Wages and PTO must be paid in full before any general unsecured obligations of the Debtor  may be satisfied.  Accordingly, payment of such obligations will not prejudice the rights of general unsecured creditors or other parties in interest.

Furthermore, payment of wages and benefits is critically necessary.  Due to the timing of the commencement of the Case (and the SoCal Debtors' cases), the Employees are owed accrued Wages and may also have incurred expenses that are covered under the Health Plans or Dental Plan for which payment is due postpetition.  These obligations cannot be paid without the approval of this Court.  The failure of the Debtor to pay the Employee Obligations timely in the ordinary course of business would result in a blow to Employee morale that in all likelihood would lead to turnover and other serious and irreparable disruptions of the Debtor's operations.

The Debtor submits that the amounts to be paid pursuant to this Motion are comparatively small in comparison to the importance and necessity of preserving the Employees' services and morale and the difficulties and losses the Debtor will suffer if Employees' morale is low or if they leave in significant numbers.  The Debtor further submits that there is ample justification for its belief that even the slightest delay in providing this relief to its Employees will hamper operations and damage the Debtor's estate.  Moreover, the Debtor's Budget specifically contemplates that the Employees will continue to be paid in the ordinary course following the Petition Date.  Under these circumstances, the "necessity of payment" doctrine authorizes the requested relief.10

---

[10] The Debtor is mindful that outside of the context of employee priority wage and benefit claims, there is a debate as to the proper application of the Necessity of Payment or so-called "Critical Vendor" doctrine.  *See e.g.,* In re Kmart Corp., 359 F.3d 866 (7th Cir. 2004).  As those cases do not involve priority employee wage claims, however, they are not applicable here.  In addition, the Debtor is aware that in In re B&W Enterprises, 713 F.2d 534 (9th Cir. 1983), the Ninth Circuit refused to extend the Necessity of Payment doctrine beyond the railroad reorganization case where the debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1    Additionally, the Debtor submits that the Withholding Obligations do not constitute property

2  of the Debtor's estate and principally represent employee earnings that governments (in the case of

3  taxes), Employees (in the case of voluntary Withholding Obligations), and judicial authorities (in the

4  case of involuntary Withholding Obligations), have designated for deduction from Employee

5  paychecks.  The failure to transfer these withheld funds could result in hardship to certain

6  Employees.  The Debtor expects inquiries from garnishers regarding the Debtor's failure to submit,

7  among other things, child support and alimony payments, which are not the Debtor's property but,

8  rather, have been withheld from Employee paychecks.  Moreover, if the Debtor cannot remit these

9  amounts, the Debtor's Employees may face legal action due to the Debtor's failure to submit these

10  payments.

11    The Debtor submits that, with respect to the wage-related taxes that constitute "trust fund"

12  taxes, the payment of such taxes will not prejudice other creditors of the Debtor's estate given that

13  the relevant taxing authorities would have a priority claim under section 507(a)(8) of the Bankruptcy

14  Code with respect to such obligations.  Moreover, the monies payable for trust fund taxes, as well as

15  any other funds that are held in trust for the benefit of third parties are not property of the Debtor's

16  estate.  See e.g., Begier v. IRS, 496 U.S. 53 (1990) (withholding taxes are property held by a debtor

17  in trust for another and, as such, are not property of the debtor's estate).

18    Finally, the Employees have an intimate knowledge of the operation of the Debtor's business

19  and are critical components to the success of the Case.  Deterioration in the morale and welfare of

20  the Employees at this critical time undoubtedly would adversely impact the Debtor and its ability to

21  maximize the value of its assets.  Satisfaction of the Wages and Benefits, as described herein, is

22  necessary to maintain the Employees' morale during the Case and to ensure continued, efficient

23  operation in order to maximize value for all creditors.

24

25

26

27  made unauthorized postpetition payments to trade suppliers on prepetition debts.  That case is factually distinguishable
from the instant one in that B&W (a) involved ordinary trade suppliers for which the claims were not entitled to priority,

28  (b) did not seek prior court approval for the payments, and (c) was in liquidation, thereby rendering the "necessity" of
such payments moot.

**B.      Bankruptcy Rules 6003 and 6004 Should Be Waived**

Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described herein and as supported by the Cavanaugh Declaration, the Debtor submits that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate. To implement the foregoing successfully, the Debtor seeks a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable

**C.      No Assumption or Assignment of Employee Benefits**

To the extent any Employee Benefit or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtor does not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. Moreover, authorization to pay all amounts on account of Employee Wages and Benefits shall not affect the Debtor's right to contest the amount or validity of these obligations.

**D.      Banks and Other Financial Institutions Should Be Authorized and Directed to Honor Checks Issued to Pay Wages and Benefits, to Honor All Fund Transfer Requests Relating to the Foregoing, and to Pay All Processing Fees Associated with Payment of Employee Wages and Benefits**

The Debtor requests that all applicable banks and other financial institutions (including, without limitation, Chase Bank and East West Bank or any other prepetition or postpetition bank or financial institution utilized by the Debtor) be authorized to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtor to Employees, whether such checks were presented or fund transfer requests were submitted prior to,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

Case 8:18-bk-13311-CB   Doc 8   Filed 09/05/18   Entered 09/05/18 13:40:41   Desc
Main Document    Page 24 of 26

1 on, or after the Petition Date.  The Debtor represents that it has or will have sufficient postpetition

2 funding to pay promptly all Employee Wages and Benefits, to the extent described herein, on an

3 ongoing basis and in the ordinary course of business.  Nothing contained in this Motion, however,

4 shall constitute a request for authority to assume any agreements, policies, or procedures relating to

5 Employee Wages and Benefits.  Further, the Debtor seeks to retain the discretion to decide which

6 Employee Wages and Benefits it will pay and honor, and nothing in this Motion shall be deemed an

7 admission by the Debtor that any Employee Wages and Benefits will in fact be paid or honored.

8     Finally, the Debtor requests authority to pay all of the processing fees associated with

9 payment of the Employee Wages and Benefits including, but not limited to, any fees owed to any

10 third party administrators (including, without limitation, Paycom), as described in the Motion.

### III.   CONCLUSION

**WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be

advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that the Court

enter an order (i) authorizing, but not directing, the Debtor to honor or pay prepetition and

postpetition Employee Obligations in the ordinary course of business that come due postpetition in

accordance with the Budget; (ii) directing banks and financial institutions to honor and process

checks and transfers related thereto; and (iii) granting such other and further relief as is just and

proper.

Dated:   September 5, 2018         PACHULSKI STANG ZIEHL & JONES LLP

By   */s/ William N. Lobel*
    William N. Lobel
    [Proposed] Attorneys for Ruby's Diner,
    Inc., a California corporation, *et al.,*
    Debtors and Debtors-in-Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

21

EXHIBIT "A"

Ruby's Diner Inc.
Weekly Cash Flow Budget

| | RK Total | RDI | RFS | 7/22/18 | 7/29/18 | 8/5/18 | 8/12/18 | 8/19/18 | 8/26/18 | 9/2/18 | 9/9/18 | 9/16/18 | 9/23/18 | 9/30/18 | 10/7/18 | 10/14/18 | 10/21/18 | 10/28/18 | 11/4/18 | 11/11/18 | 11/18/18 | 11/25/18 | 12/2/18 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Fiscal Period** | | | | Period 8 | | Period 9 | | | | | Period 10 | | | | | Period 11 | | | | Period 12 | | | | | |
| Post-Petition Accounting Week | | | | | | | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| **RECEIPTS** | | | | | | | | | | | | | | | | | | | | | | | | | |
| G&A Fees [1,2] | 554,051 | 554,051 | | 32,552 | 33,050 | 32,036 | 30,876 | 27,898 | 24,484 | 24,504 | 22,958 | 20,736 | 20,902 | 18,082 | 21,918 | 24,184 | 23,059 | 21,132 | 18,560 | 21,038 | 18,560 | 23,150 | 16,777 | 271,058 |
| HOP Distribution to RDI | 125,226 | 125,226 | | 11,256 | 10,026 | 9,729 | 9,446 | 7,619 | 5,976 | 6,147 | 5,712 | 4,688 | 4,747 | 3,662 | 4,938 | 5,898 | 4,654 | 3,674 | 3,218 | 3,799 | 2,985 | 5,654 | 2,083 | 55,713 |
| License Fee from RFS | | | 537,623 | | | | | 45,776 | | | | 44,043 | 388,610 | | | 33,596 | | | | 36,571 | | | | 502,820 |
| Workers Comp 2017 Audit Reimbursement | | | | | | | | | | | | | 59,000 | | | | | | | | | | | 59,000 |
| LP/LLC Distributions to RDI | 200,672 | 200,672 | | | | | | | | | | | | | | | | | | | | | | | |
| **Total Receipts** | 200,672 | 200,672 | | 43,808 | 43,077 | 41,765 | 40,322 | 81,292 | 30,460 | 30,652 | 28,670 | 69,466 | 473,259 | 21,744 | 26,856 | 63,678 | 27,713 | 24,806 | 21,782 | 61,408 | 21,545 | 28,804 | 18,861 | 888,591 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Operating Expenses* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Salaries & Employee Related [3,4] | 473,288 | 202,238 | | 39,441 | | 39,441 | | 39,441 | | 39,441 | | 39,441 | | 39,441 | 5,385 | 39,441 | | 39,441 | | 39,441 | | 39,441 | | 5,385 | 236,644 |
| Facility 1 rent | 38,769 | 32,308 | 6,461 | | | 5,385 | | | | 5,385 | | | | | 5,385 | | | | 5,385 | | | | | | 16,154 |
| Other Operating Expenses [4] | 226,375 | 90,359 | 195,918 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 63,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 3,765 | 108,944 |
| Founders Medical | 60,000 | 60,000 | | | | 10,000 | | | | 10,000 | | | | | 10,000 | | | | 10,000 | | | | | | 30,000 |
| **Total Operating Expenses** | 325,144 | 655,955 | | 43,206 | 3,765 | 58,590 | 3,765 | 43,206 | 3,765 | 58,590 | 3,765 | 43,206 | 3,765 | 103,206 | 19,150 | 43,206 | 3,765 | 43,206 | 19,150 | 43,206 | 3,765 | 43,206 | 19,150 | 391,743 |
| *Non-Operating Expenses* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Interest and Debt Service | 136,593 | 42,909 | | | | | | | | | | | | 34,148 | | | | 34,148 | | | | | 34,148 | 102,445 |
| Facility 2 rent (HB 2018 % Rent) | 435,000 | | | | | | | | | | | | | | 170,000 | | | | | | | | | 170,000 |
| Capital Improvements | 170,000 | | | | | | | | | | | | | | | | | | | | | | | |
| FUTA Tax [5] | 43,641 | | | | | | | | | 6,651 | | | | 6,651 | | | | 6,651 | | | | | | 19,953 |
| Costco Redemption Payments | 600,000 | | | | | | | | | | | | 150,000 | | | 120,000 | | | | 120,000 | | | | 390,000 |
| Contingency | 100,000 | | | | | | | | | | | | | | | | | | | | | | | |
| Unsecured Noteholder Payment | 1,385,337 | | | | | | | | | | | | | | | | | | | | | | | |
| **Total Non-Operating Expenses** | 2,435,571 | | | | | | | | | 6,651 | | | 320,000 | 34,148 | | 6,651 | 120,000 | 34,148 | | 6,651 | 120,000 | 34,148 | | 682,398 |
| **Total Disbursements** | | | | 43,206 | 3,765 | 58,590 | 3,765 | 43,206 | 3,765 | 58,590 | 10,416 | 43,206 | 323,765 | 137,354 | 19,150 | 49,857 | 123,765 | 77,354 | 19,150 | 49,857 | 3,765 | 163,206 | 53,298 | 1,074,140 |
| **CASH FLOW FROM OPERATIONS** | | | | 602 | 39,312 | (16,825) | 36,557 | 38,087 | 26,695 | (27,939) | 18,254 | 26,261 | 149,494 | (115,610) | 7,706 | 13,821 | (96,052) | (52,548) | 2,632 | 11,551 | 17,780 | (134,402) | (34,437) | (185,549) |
| *Restructuring Expenses [7]* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Financial Advisor | 100,000 | | | | | | | | | | | | | 25,000 | | | 25,000 | | | | 25,000 | | | 75,000 |
| Committee Professionals | 100,000 | | | | | | | | | | | | | 25,000 | | | 25,000 | | | | 25,000 | | | 75,000 |
| DIP Lender Legal | 100,000 | | | | | | | | | | | | | 25,000 | | | 25,000 | | | | 25,000 | | | 75,000 |
| Completion Incentive | 80,000 | | | | | | | | | | | | | 80,000 | | | | | | | | | | 80,000 |
| PSZJ | 450,000 | | | | | | | | | | | | | 112,500 | | | 112,500 | | | | 112,500 | | | 112,500 |
| US Trustee | 16,250 | | | | | | | | | | | | | | | | 6,500 | | | | | | | 6,500 |
| **Total Restructuring Expenses** | 846,250 | | | | | | | | | | | | | 267,500 | | | 194,000 | | | | 187,500 | | | 649,000 |
| **NET CASH FLOW AFTER RESTRUCTURING EXPENSES** | (846,250) | | | 602 | 39,312 | (16,825) | 36,557 | 38,087 | 26,695 | (27,939) | 18,254 | 26,261 | 149,494 | (383,110) | 7,706 | 13,821 | (96,052) | (246,548) | 2,632 | 11,551 | 17,780 | (321,902) | (34,437) | (834,549) |
| Beginning Cash | | | | | 602 | 39,914 | 23,089 | 59,645 | 97,732 | 124,427 | 118,254 | 144,515 | 294,009 | 500,899 | 508,605 | 502,426 | 496,375 | 499,827 | 504,010 | 501,790 | 499,888 | | | 100,000 |
| Plus / Less: Net Cash Flow | | | | 602 | 39,312 | (16,825) | 36,557 | 38,087 | 26,695 | (27,939) | 18,254 | 26,261 | 149,494 | (383,110) | 7,706 | 13,821 | (96,052) | (246,548) | 2,632 | 11,551 | 17,780 | (321,902) | (34,437) | (834,549) |
| Plus / Less: SLC Capital Contribution | | | | | | | | | | | | | | 590,000 | | | | | | | | 320,000 | 40,000 | 1,240,000 |
| Plus / Less: DIP Loan Facility Borrowing / (Paydown) | | | | | | | | | | | | | | | | | (20,000) | 90,000 | 250,000 | | (10,000) | (20,000) | 320,000 | 40,000 | 1,240,000 |
| **ENDING CASH** | | | | 602 | 39,914 | 23,089 | 59,645 | 97,732 | 124,427 | 96,489 | 118,254 | 144,515 | 294,009 | 500,899 | 508,605 | 502,426 | 496,375 | 499,827 | 502,459 | 504,010 | 501,790 | 499,888 | 505,451 | 505,451 |
| DIP Loan Facility Availability | | | | | | | | | | | | | | 1,600,000 | 1,010,000 | 1,010,000 | 1,030,000 | 940,000 | 690,000 | 690,000 | 700,000 | 720,000 | 400,000 | 1,600,000 |
| DIP (Draw) / Paydown | | | | | | | | | | | | | | (590,000) | | 20,000 | (90,000) | (250,000) | | 10,000 | 20,000 | (320,000) | (40,000) | (1,240,000) |
| **ENDING LIQUIDITY** | | | | | | | | 97,732 | 124,427 | 96,489 | 118,254 | 144,515 | 294,009 | 1,510,899 | 1,518,605 | 1,532,426 | 1,436,375 | 1,189,827 | 1,192,459 | 1,204,010 | 1,221,790 | 899,888 | 865,451 | 865,451 |
| **ENDING DIP LOAN BALANCE** | | | | | | | | | | | | | | 590,000 | 590,000 | 570,000 | 660,000 | 910,000 | 910,000 | 900,000 | 880,000 | 1,200,000 | 1,240,000 | 1,240,000 |

Footnotes

[1] Restaurant revenues and, therefore, related expenses are impacted by seasonality and weather.

[2] RDI corporate office and Ruby's Irvine Woodbridge restaurant share bank accounts. The cash inflows and outflows from the Woodbridge restaurant operation are excluded from this projection.

[3] RDI advances payroll funds to a Payroll Processor for all managed restaurant locations, and is fully reimbursed. See Exhibit A.

[4] RDI advances funds for various insurance costs, including Group Health, General Liability, and Workers' Compensation, and is reimbursed by affiliates and employees for the non-covered portion. See Exhibit B.