1   William N. Lobel (CA Bar No. 93202)
    PACHULSKI STANG ZIEHL & JONES LLP
2   650 Town Center Drive, Suite 1500
    Costa Mesa, CA  92626
3   Telephone:  (714) 384-4740
    Facsimile:  (714) 384-4741
4   E-mail:    wlobel@pszjlaw.com

5   [Proposed] Attorneys for Ruby's Diner, Inc., *et al.*,
    Debtors and Debtors-in-Possession
6

7

8                **UNITED STATES BANKRUPTCY COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

10  In re:                              | Case Nos.: 8:18-bk-13311-CB

11  RUBY'S DINER, INC., a California corporation, *et al.*,[1]   | Chapter 11

12           Debtors and Debtors-in-Possession.   | **NOTICE OF MOTION AND MOTION OF DEBTORS FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT AND TO PROVIDE ADEQUATE PROTECTION; DECLARATION OF DOUGLAS S. CAVANAUGH IN SUPPORT THEREOF**

13  Affects:

14  ☒  All Debtors

15  ☐  RUBY'S DINER, INC., ONLY

16  ☐  RUBY'S SOCAL DINERS, LLC, ONLY

17  ☐  RUBY'S QUALITY DINERS, LLC, ONLY

18  ☐  RUBY'S HUNTINGTON BEACH, LTD., ONLY

19  ☐  RUBY'S LAGUNA HILLS, LTD. ONLY

20  ☐  RUBY'S OCEANSIDE, LTD., ONLY

21  ☐  RUBY'S PALM SPRINGS, LTD., ONLY

22

23

**[Application for Order Shortening Time Filed Concurrently Herewith]**

DATE:         [TBD]
TIME:         [TBD]
CTRM:         5A
Address:     411 West Fourth Street
             Santa Ana, CA 92701

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Ruby's Diner, Inc. (8143); Ruby's SoCal Diners, LLC (9782); Ruby's Quality Diners, LLC (1539); Ruby's Huntington Beach, Ltd. (1331); Ruby's Laguna Hills, Ltd. (6603); Ruby's Oceanside, Ltd. (9104); and Ruby Palm Springs, Ltd. (9627).

*Left margin:* PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / COSTA MESA, CALIFORNIA

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE CASE OF RUBY'S DINER, INC., THE 20 LARGEST UNSECURED CREDITORS IN THE SOCAL DEBTORS' CASES, SECURED CREDITORS, AND OTHER PARTIES IN INTEREST:**

By this Motion, Ruby's Diner, Inc., a California corporation ("RDI" ); Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside, Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a California limited partnership ("Ruby's Palm Springs") (collectively, SoCal Diners, Quality, Ruby's Huntington Beach, Ruby's Laguna Hills, Ruby's Oceanside and Ruby's Palm Springs are referred to herein as the "SoCal Debtors" and, together with RDI, the "Debtors"), move the Court for an order approving this *Motion for Authority to Enter into Insurance Premium Finance Agreement and to Provide Adequate Protection* (the "Motion") to provide the relief set forth below.

**A.  Overview of the Relief Requested**

The Debtors move this Court for an Order (in the form attached hereto as Exhibit "C") approving the Motion to allow RDI, on behalf of the Debtors and non-debtor affiliates of the Company covered by the insurance policies (defined herein, collectively, as the "Covered Entities") to enter into an insurance premium financing agreement with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A ("FIRST"), as described herein, to provide necessary insurance coverage for the Company (as defined herein), with the costs thereof to be allocated in accordance with pre-petition practices among the Covered Entities.  As of the Petition Date, RDI had obtained and was in the process of finalizing insurance coverage necessary for the Company's operations.  Such coverage is currently bound.  A down-payment has been made by the Covered Entities, however, the additional amounts to put the policies in place still need to be paid to finalize the placement.  The Debtors seek authority to allow RDI to enter into the financing agreement to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1  allow the premiums to be paid as it is the only available option to pay for the necessary insurance

2  and keep the policies in place.  The Debtors can only operate and continue their necessary operations

3  if the insurance remains in place and paid for.

4      **B.**    <u>**The Need for Expedited Relief**</u>

5         The Debtors have been advised that all of the insurance bound will be cancelled for non-

6  payment of premiums if the premiums are not paid in full by <u>***September 24, 2018***</u>.  The Debtors will

7  only have the ability to pay the premiums if this Motion is granted and the agreement with FIRST to

8  fund the insurance premium is approved.  As the process following approval will take a period of

9  time, in order to meet the September 24th deadline, the Debtors seek the relief requested herein on an

10  expedited basis.  An Application for an Order Shortening Time has been filed concurrently herewith.

11  <u>**FACTUAL BACKGROUND**</u>

12         The Debtors hereby bring this *Motion for Authority to Enter into Insurance Premium*

13  *Finance Agreement and to Provide Adequate Protection* (the "<u>Motion</u>").  In support of the Motion,

14  the Debtors respectfully represent as follows:

15         1.     On August 29, 2018, the SoCal Debtors filed voluntary petitions for relief under

16  chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

17         2.     On September 5, 2018, RDI filed its voluntary petition for relief under chapter 11 of

18  the Bankruptcy Code.

19         3.     On September 5, 2018, the Court entered an order jointly administering the Debtors'

20  cases (the "<u>Cases</u>"), with RDI designated as the "Lead Case." [Docket No. 6].

21         4.     The Debtors continue to operate their businesses and manage their affairs as debtors-

22  in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 19,

23  2018, the Office of the United States Trustee appointed the Committee of Creditors Holding

24  Unsecured Claims in case of Ruby's Diner, Inc., only (the "<u>Committee</u>").  No party has requested

25  the appointment of a trustee or examiner.

26         5.     The Debtors and their affiliates (the "<u>Company</u>") owns, operates and manages

27  restaurants under the trade names "Ruby's®," "Ruby's® Diner," "The Ruby Restaurant Group,"

28  "Ruby's® Dinette" and "Ruby's® Shake Shop."  The Company has operated Ruby's® Diner

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

restaurants since its incorporation in 1985 and is known as a purveyor of very popular burgers, fries and shakes.

6. RDI is the 100% owner and sole and managing member of SoCal Diners. SoCal Diners is the 100% owner and sole and managing member of Quality. SoCal Diners is the general partner and 50% owner, and Quality is the limited partner and 50% owner, of the following California limited partnerships: (1) Ruby's Huntington Beach, Ltd., which owns and operates a Ruby's® restaurant on the pier in Huntington Beach, California; (2) Ruby's Oceanside, Ltd., which owns and operates a Ruby's® restaurant in Oceanside, California; (3) Ruby's Palm Springs, Ltd., which owns and operates a Ruby's® restaurant in Palm Springs, California; (4) Ruby's Mission Valley, Ltd., which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant in the Westfield Mission Valley Mall in San Diego, California;[2] and (5) Ruby's Laguna Hills, Ltd., which owns and operates a Ruby's® restaurant in the Laguna Hill Mall in Laguna Hills, California[3] (collectively, the "SoCal Entities" and the restaurants owned by the SoCal Entities, the "SoCal Restaurants").

7. In addition, RDI holds ownership interests in, and management roles in connection with, the following joint venture entities: (1) RDI is the managing member and 70% owner of Ruby's Beach Ventures LLC, which owns and operates a Ruby's® restaurant in Long Beach, California; (2) RDI is the general partner and 50% owner of Ruby's Diner South Coast Plaza LP, which owns and operates a Ruby's® restaurant at South Coast Plaza Mall in Costa Mesa, California; (3) RDI is the managing member and sole owner of Ruby's Woodbridge LLC, which owns and operates a Ruby's® restaurant in Woodbridge in Irvine, California; and (4) RDI is the managing member and 50% owner of Ruby's Spectrum LLC, which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant at the Irvine Spectrum in Irvine, California (collectively, the "RDI Entities" and the restaurants owned by the RDI Entities, the "RDI

---

[2] The Mission Valley restaurant was closed prior to the Petition Date, in April 2018.

[3] The Debtors anticipate that, due to significant, continuing construction projects underway at the Laguna Hills Mall, the Laguna Hills restaurant will close following the Petition Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

Restaurants"). The RDI Restaurants, together with the SoCal Restaurants, are referred to as the "Company Restaurants").

8.      RDI is the employer of the Company's approximately 800 employees who work at the corporate office and the Company Restaurants.

9.      A detailed description of the Debtors' background, structure, operations and recent financial history is detailed in the Declaration of Douglas S. Cavanaugh in Support of First Day Motions [Docket No. 12].

10.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final order or judgments consistent with Article III of the United States Constitution. Venue of these Cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     The Debtors are required to and do maintain various kinds of insurance coverage in the normal course of the Company's business (collectively, the "Insurance"). The Insurance covers the Debtors, the RDI Entities, the Company Restaurants, the directors and officers of the Company and certain non-debtor entities under common ownership, Beachcomber Management Crystal Cove LLC and Crystal Cove Transportation, Inc. (collectively, the "Covered Entities").[4]

12.     RDI, on behalf of the Covered Entities, is prepared to execute three Commercial Premium Finance Agreements (the "Premium Finance Agreements") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A ("FIRST") for the financing of the Company's Commercial General Liability, Liquor Liability, Commercial Automobile (Non-Owned & Hired Auto Liability), Commercial Property, Employment Practices Liability, Directors & Officers Liability, Crime, Kidnap & Ransom and Excess Liability insurance policies (collectively, the "Policies") upon approval by the Court.  True and correct copies of the Premium Finance Agreements are attached as Exhibit "A" to the accompanying Declaration of Douglas Cavanaugh

---

[4] These entities reimburse RDI for their share of the premiums due in connection with these policies. The Debtors seek approval herein to continue such practice in the ordinary course.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

(the "Cavanaugh Declaration").

13.     Pursuant to the Premium Finance Agreements, FIRST will provide financing to the Covered Entities for the purchase of the Policies which are essential for the operation of the Company's business.  True and correct copies of the Certificates of Insurance for the Policies (for the period September 1, 2018 through September 1, 2019) are attached as Exhibit "B" to the Cavanaugh Declaration.  Under the combined Premium Finance Agreements, the total premium amount is $519,767.22 and the total amount to be financed is $378,817.68.  Such amounts are allocated and paid by the Covered Entities on the basis of their respective coverage.  Under the Premium Finance Agreements, the Covered Entities will become obligated to pay FIRST the sum of $389,841.90 in addition to a down payment that has already been paid by the Covered Entities in the amount of $140,949.54 and the balance in ten (10) monthly installments of $38,984.19 each, which amounts will be paid by the Covered Entities in the ordinary course in accordance with their respective coverage amounts.  The installment payments are due on the 1st day of each month commencing on October 1, 2018.  As collateral to secure the repayment of the total of payments, any late charges, attorney's fees and costs (Indebtedness) under the Premium Finance Agreements, the Covered Entities are granting FIRST a security interest in, among other things, the unearned premiums of the Policies.  The Premium Finance Agreement provides that the law of California governs the transaction.

14.     To the extent that the beneficiaries of the Policies are entities other than RDI, those entities pay RDI their allocable share of the insurance premiums on a monthly basis.

15.     Pursuant to the terms of the Premium Finance Agreements, the Covered Entities are appointing FIRST as their attorney-in-fact with the irrevocable power to cancel the Policies and collect the unearned premium in the event of default by any of the Covered Entities under any of the Premium Finance Agreements.  A default under one Premium Finance Agreement will constitute a default under all Premium Finance Agreements.

16.     RDI and FIRST have reached an agreement that the adequate protection appropriate for this situation would be as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

a) RDI be authorized and directed to timely make all payments due under the Premium Finance Agreements and FIRST be authorized to receive and apply such payments to Indebtedness owed by the Covered Entities to FIRST as provided in the Premium Finance Agreements.

b) If any of the Covered Entities does not make any of the payments due under the Premium Finance Agreements as they become due, the automatic stay shall automatically lift to enable FIRST and/or third parties, including insurance companies providing the coverage under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the collateral and apply such collateral to Indebtedness owed to FIRST under the Premium Finance Agreements.  In exercising such rights, FIRST and/or third parties shall comply with the notice and other relevant provisions of the Premium Finance Agreements.

17.    The Covered Entities will continue to provide the funding of their respective premium amounts so that RDI can make the requisite payments to FIRST called for under the Premium Finance Agreement.

18.    The Debtors believe that the terms of the Premium Finance Agreements are commercially fair and reasonable including the granting of a lien on the Policies to FIRST.  The Debtors are required to maintain adequate insurance coverage and, without it, the Company would be forced to cease operations.  The insurance policies being renewed are substantially similar in their terms and scope as the policies issued in prior years.  As set forth in the Cavanaugh Declaration attached hereto, the Debtors have been unable to obtain unsecured credit to fund the Policies.

19.    The relief requested by this Motion is warranted and appropriate under the circumstances.  The Debtors submit that authorization of the Premium Finance Agreements will ensure that the Company can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest, including the Debtor's secured creditors.

/ /

/ /

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

INSURANCE PREMIUM FINANCING MOTION

1

2

3     **WHEREFORE**, the Debtors respectfully request that this Court enter an Order in the form

4 attached hereto as Exhibit "C," authorizing RDI to enter into the Premium Finance Agreement with

5 FIRST, that the Debtors and FIRST be authorized to take all actions necessary or appropriate to

6 affect said agreement and for such other further relief as is just and proper.

7

8     Dated:     September 19, 2018            PACHULSKI STANG ZIEHL & JONES LLP

9

10                                            By:     /s/ William N. Lobel

11                                                    ───────────────────────────
                                                      William N. Lobel
                                                      [Proposed] Attorneys for Ruby's Diner,
12                                                    Inc., *et al.,* Debtors and Debtors-in-
                                                      Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1

## DECLARATION OF DOUGLAS S. CAVANAUGH

2    I, Douglas S. Cavanaugh, hereby declare that the following is true and correct to the best of

3    my knowledge, information and belief:

4    1.    I am a founder and the Chief Executive Officer of Ruby's Diner, Inc., a California

5    corporation, the above-captioned (lead) debtor and debtor-in possession ("RDI").  I am also the

6    authorized signatory for Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal

7    Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's

8    Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's

9    Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside,

10    Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a

11    California limited partnership ("Ruby's Palm Springs") (collectively, SoCal Diners, Quality, Ruby's

12    Huntington Beach, Ruby's Laguna Hills, Ruby's Oceanside and Ruby's Palm Springs are referred to

13    herein as the  "SoCal Debtors" and, together with RDI, the "Debtors").

14    2.    I submit this declaration in support of the Debtors' *Notice of Motion and Motion for*

15    *Order Authority to Enter Into Insurance Premium Finance Agreement and to Provide Adequate*

16    *Protection* (the "Motion").[5]

17    3.    On August 29, 2018, the SoCal Debtors filed voluntary petitions for relief under

18    chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

19    4.    On September 5, 2018, RDI filed its voluntary petition for relief under chapter 11 of

20    the Bankruptcy Code.

21    5.    On September 5, 2018, the Court entered an order jointly administering the Debtors'

22    cases (the "Cases"), with RDI designated as the "Lead Case."  [Docket No. 6].

23    6.    The Debtors continue to operate their businesses and manage their affairs as debtors-

24    in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has

25    requested the appointment of a trustee or examiner.  On September 19, 2018, the Office of the

26    United States Trustee appointed the Committee of Creditors Holding Unsecured Claims in case of

27    Ruby's Diner, Inc., only (the "Committee").

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

---

[5] Capitalized terms not otherwise defined have the same meaning ascribed to such terms in the Motion.

7.    The Debtors and their affiliates (the "Company") owns, operates and manages restaurants under the trade names "Ruby's®," "Ruby's® Diner," "The Ruby Restaurant Group," "Ruby's® Dinette" and "Ruby's® Shake Shop."  The Company has operated Ruby's® Diner restaurants since its incorporation in 1985 and is known as a purveyor of very popular burgers, fries and shakes.

8.    RDI is the 100% owner and sole and managing member of SoCal Diners.  SoCal Diners is the 100% owner and sole and managing member of Quality.  SoCal Diners is the general partner and 50% owner, and Quality is the limited partner and 50% owner, of the following California limited partnerships: (1) Ruby's Huntington Beach, Ltd., which owns and operates a Ruby's® restaurant on the pier in Huntington Beach, California; (2) Ruby's Oceanside, Ltd., which owns and operates a Ruby's® restaurant in Oceanside, California; (3) Ruby's Palm Springs, Ltd., which owns and operates a Ruby's® restaurant in Palm Springs, California; (4) Ruby's Mission Valley, Ltd., which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant in the Westfield Mission Valley Mall in San Diego, California;[6] and (5) Ruby's Laguna Hills, Ltd., which owns and operates a Ruby's® restaurant in the Laguna Hill Mall in Laguna Hills, California[7] (collectively, the "SoCal Entities" and the restaurants owned by the SoCal Entities, the "SoCal Restaurants").

9.    In addition, RDI holds ownership interests in, and management roles in connection with, the following joint venture entities:  (1) RDI is the managing member and 70% owner of Ruby's Beach Ventures LLC, which owns and operates a Ruby's® restaurant in Long Beach, California; (2) RDI is the general partner and 50% owner of Ruby's Diner South Coast Plaza LP, which owns and operates a Ruby's® restaurant at South Coast Plaza Mall in Costa Mesa, California; (3) RDI is the managing member and sole owner of Ruby's Woodbridge LLC, which owns and operates a Ruby's® restaurant in Woodbridge in Irvine, California; and (4) RDI is the managing member and 50% owner of Ruby's Spectrum LLC, which until a few months prior to the Petition

---

[6] The Mission Valley restaurant was closed prior to the Petition Date, in April 2018.

[7] The Debtors anticipate that, due to significant, continuing construction projects underway at the Laguna Hills Mall, the Laguna Hills restaurant will close following the Petition Date.

INSURANCE PREMIUM FINANCING MOTION

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

Date, owned and operated a Ruby's® restaurant at the Irvine Spectrum in Irvine, California (collectively, the "RDI Entities" and the restaurants owned by the RDI Entities, the "RDI Restaurants").  The RDI Restaurants, together with the SoCal Restaurants, are referred to as the "Company Restaurants").

10.    RDI is the employer of the Company's approximately 800 employees who work at the corporate office and the Company Restaurants.

11.    The Debtors are required to and do maintain various kinds of insurance coverage in the normal course of the Company's business (collectively, the "Insurance").  The Insurance covers the Debtors, the RDI Entities, the Company Restaurants, the directors and officers of the Company and certain non-debtor entities under common ownership, Beachcomber Management Crystal Cove LLC and Crystal Cove Transportation, Inc. (the "Covered Entities").[8]

12.    RDI, on behalf of the Covered Entities, is prepared to execute Commercial Premium Finance Agreements (the "Premium Finance Agreement") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A ("FIRST") for the financing of the Company's Commercial General Liability, Liquor Liability, Commercial Automobile (Non-Owned & Hired Auto Liability), Commercial Property, Employment Practices Liability, Directors & Officers Liability, Crime, Kidnap & Ransom and Excess Liability insurance policies (collectively, the "Policies") upon approval by the Court.    True and correct copies of the Premium Finance Agreements are attached hereto as Exhibit "A."

13.    Pursuant to the Premium Finance Agreements, FIRST will provide financing to RDI for the purchase of the Policies which are essential for the operation of the Company's business. True and correct copies of the Certificates of Insurance for the Policies (for the period September 1, 2018 through September 1, 2019) are attached hereto as Exhibit "B."

14.    I believe that the terms of the Premium Finance Agreements are commercially fair and reasonable including the granting of a lien on the Policies to FIRST.  The Debtors are required to maintain adequate insurance coverage and, without it, the Company would be forced to cease

---

[8] These entities reimburse RDI for their share of the premiums due in connection with these policies.  The Debtors seek approval herein to continue such practice in the ordinary course.

1   operations.  The insurance policies being renewed are substantially similar in their terms and scope

2   as the policies issued in prior years.  The Debtors have been unable to obtain unsecured credit to

3   fund the Policies.

4         15.    To the extent that the beneficiaries of the Policies are entities other than RDI, those

5   entities pay RDI their allocable share of the insurance premiums on a monthly basis.

6         I declare under penalty of perjury that the foregoing is true and correct.

7         Executed on this 19th day of September 2018, at Newport Beach, California.

Douglas S. Cavanaugh

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

EXHIBIT "A"

LENDER:

450 Skokie Blvd, Ste 1000

# FIRST INSURANCE® FUNDING
A WINTRUST COMPANY

## COMMERCIAL
## PREMIUM FINANCE AGREEMENT

Northbrook, IL 60062-7917
P:(800) 837-2511 F:(800) 837-3709

www.firstinsurancefunding.com

Quote #: 15103641

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy) | | (Name and Business Address) |
| Beachcomber Management Crystal | | Robert E. Harris Insurance Agency, Inc. |
| Cove LLC c/o Ruby's Diner | | 3150 Bristol Street |
| 4100 MacArthur Blvd Ste 310 | | Suite 200 |
| Newport Beach, CA 92660 | | Costa Mesa, CA 92626 |

### LOAN DISCLOSURE

| Total Premiums, Taxes and Fees | Cash Down Payment | Unpaid Premium Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 102,517.67 | 23,503.23 | 79,014.44 | 0.00 | 79,014.44 | 2,299.46 | 81,313.90 | 6.300 % |

**YOUR PAYMENT SCHEDULE WILL BE:**   *Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000*

| Number of Payments | Amount of Each Payment | First Installment Due | 10/01/2018 |
|---|---|---|---|
| 10 | 8,131.39 | Installment Due Dates | 1st (Monthly) |

SECURITY INTEREST. INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a security interest in the financed policies and any additional premiums required under the financed policies, including (but only to the extent permitted by applicable law) all return premiums, dividend payments, and loss payments which reduce unearned premium, subject to any mortgagee or loss payee interest. If any circumstances exist in which premiums related to any financed policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

FINANCE CHARGE. The finance charge begins accruing on the earliest effective date of the policies listed in the Schedule of Policies. The finance charge may include a nonrefundable service charge equal to the maximum amount permitted by law. The finance charge is computed using a 365-day calendar year.

LATE PAYMENT. A late charge will be assessed on any installment at least 5 days in default (7 days in VA; 10 days in MA & TX; or later date as required by law.). This late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less (greater of $10 or 5% in FL; greater of $25 or 1.5% in NJ; $5 maximum in DE, MT and ND; $100 maximum in MD; 5% in VA).

PREPAYMENT. Insured is entitled to a refund of the unearned finance charge if the loan is prepaid in full. The refund shall be computed according to applicable law.

### SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TB2Z91467841028 | C00317-LIBERTY MUTUAL FIRE INS CO | GL | 12 | 09/01/2018 | 33,042.00 |
| | [ME:25.000 %, CX:0]    [PR] A/F [26,433.70] | | | ERN TXS/FEES | 0.00 |
| | | | | FIN TXS/FEES | 0.00 |
| TOCZ91467841038 | C00321-EMPLOYERS INS CO OF WAUSAU | CGLIQ | 12 | 09/01/2018 | 3,717.00 |
| | G00552-LIBERTY MUTUAL UNDERWRITERS | | | ERN TXS/FEES | 0.00 |
| | [ME:25.000 %, CX:0]    [PR] A/F [2,973.61] | | | FIN TXS/FEES | 0.00 |
| (Policies continued on next page.) | | | | TOTAL | 102,517.67 |

Q# 15103641, PRN: 091918, CFG: 25/9-15/10-10-15D, RT: 0Internal - Base, DD: 15, BM: Invoice, Qtd For: A05731 Original, Memo 2

INSURED'S AGREEMENT:

1. In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies, their representative or the Agent or Broker listed above, Insured promises to pay, to the order of LENDER, the Total of Payments subject to all of the provisions of this Agreement.

2. POWER OF ATTORNEY. INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (i) cancel the financed policies in accordance with the provisions contained herein, (ii) receive all sums assigned to LENDER, and (iii) execute and deliver on behalf of Insured all documents relating to the insurance policies listed on the Schedule of Policies ("Financed Policies") in furtherance of this Agreement (clauses (ii) and (iii) are not applicable in Florida). This right to cancel will terminate only after Insured's indebtedness under this Agreement is paid in full.

3. SIGNATURE & ACKNOWLEDGEMENT. Insured has signed and received a copy of this Agreement. If Insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of Insured. All named Insured(s), jointly and severally if more than one, agree to all provisions set forth in this Agreement. Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.

NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to receive a partial refund of the finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.

4. EFFECTIVE DATE. This Agreement will not become effective until it is accepted in writing by LENDER.

_____   _____   _____   _____
Signature of Insured or Authorized Agent          Date          Signature of Agent          Date

FEIN or SSN   XX-XXX6273 _____

The undersigned hereby warrants and agrees to the Agent or Broker Representations and Warranties set forth herein.

FIF0617P
EXHIBIT "A"
Page 13

Insured: Beachcomber Management (
Quote #: 15103641

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

5. DEFAULT/CANCELLATION. Insured is in default under this Agreement if (a) a payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement; provided, however, when required by law, Insured may be deemed in default only under clause (a) above. Clauses (b) and (c) are not applicable in FL, MD, NV, NC or VA. At any time after default, LENDER can demand and has the right to receive immediate payment of the total unpaid amount due under this Agreement even if LENDER has not received any refund of unearned premium. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in cancellation of the Financed Policies, Insured agrees to pay a cancellation charge where allowed by law (not permitted in AK, FL, KS, KY, NV, NY, NC, PA, SC, TX or VA). If cancellation or default occurs, Insured agrees to pay LENDER interest on the balance due at the contract rate or at the maximum lawful rate, whichever is less, until the balance is paid in full or until such other date as provided by law.

6. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER, except in KY.

7. RETURNED CHECK CHARGE. If Insured's check is dishonored for any reason and if permitted by law, Insured will pay LENDER a returned check charge equal to the maximum fee permitted by law ($0 in KY; $15 in FL & NV; $20 in VA; maximum of $25 in MD).

8. REINSTATEMENT. Once a Notice of Cancellation has been sent to any insurance company, LENDER has no duty to ask that the Financed Policy be reinstated, even if LENDER later receives a payment from Insured. If LENDER requests reinstatement, such request does not guarantee coverage will be reinstated by the insurance company. Payments that LENDER receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of LENDER's rights under this Agreement.

9. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED. After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER (in VA, only to this Agreement). Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation will be credited to the balance due with any excess paid to Insured; the minimum refund is the greater of $1.00 or the minimum amount allowed by law (no minimum in VA). Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the financed policies.

10. ASSIGNMENT. Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

11. AGENT OR BROKER. Insured agrees that the Agent or Broker issuing the policies or through whom the policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. The Agent or Broker may receive from LENDER $880.20 for aiding in the administration of this Agreement relating to the Financed Policies , and in NY the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

12. COLLECTION COSTS. Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

13. GOVERNING LAW. This Agreement is governed by and interpreted under the laws of the state where Insured resides, except for conflict of laws principles thereof. If any court finds any part of this Agreement to be invalid, such finding shall not affect the remaining provisions of this Agreement.

14. WARRANTY OF ACCURACY. Insured represents and warrants that to the best of its knowledge (i) the Financed Policies are in full force and effect and that Insured has not and will not assign any interest in the policies except for the interest of mortgagees and loss payees, (ii) that none of the Financed Policies are for personal, family or household purposes, (iii) the Cash Down Payment and any past due payments have been paid in full to the Agent or Broker in cash or other immediately available funds, (iv) all information provided herein or in connection with this Agreement is true, correct, complete and not misleading, (v) Insured is not insolvent nor presently involved in any insolvency proceeding, (vi) Insured has no indebtedness to the insurers issuing the Financed Policies, and (vii) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of such policies.

15. ADDITIONAL PREMIUMS. Insured agrees to fully and timely comply with all audits and pay to the insurance company any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. Insured, or Agent/Broker, may request that LENDER finance additional policies and/or additional premium during the term of this Agreement, and if LENDER agrees, this Agreement shall be deemed amended accordingly. Should LENDER assign an account number to further extensions of credit, then a) this Agreement and loan documents identified by the assigned account number(s) shall be deemed to comprise a single and indivisible loan transaction, b) Insured shall irrevocably appoint LENDER as its attorney in fact in connection with additional amount financed, c) default under any component of the transaction shall constitute a default under the entire transaction, and d) unearned premium relating to any component of the transaction may be collected and applied to the entire loan transaction balance.

16. CORRECTIONS. LENDER may insert the names of the insurance companies and policy numbers, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement (not applicable in KY or VA).

17. NON-WAIVER. Not Applicable.

18. THIRD PARTY FEE. Not Applicable.

Federal law requires all financial institutions to obtain, verify and record information that identifies each person or entity that is granted a loan. LENDER will require such information as LENDER deems reasonably necessary for proper identification, such as your name, street address, FEIN, SSN or date of birth. LENDER will use this information only to process this Agreement and will not share this information with outside parties except to the extent necessary to complete this transaction.

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, Insured's signature is genuine, and the cash down payment has been received from Insured, (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the policies listed in the Schedule of Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

California Borrowers: FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA

SCHEDULE OF POLICIES

Insured:  Beachcomber Management (
Quote #: 15103641

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| AS6Z91467841018 | C00325-FIRST LIBERTY INS CORP | AUTO BCAU | 12 | 09/01/2018 | 1,486.00 |
| | G00552-LIBERTY MUTUAL UNDERWRITERS | | | ERN TXS/FEES | 0.00 |
| | [ME:25.000 %, CX:0]          [PR] A/F [1,188.80] | | | FIN TXS/FEES | 0.00 |
| ESP730403301 | C00169-ARCH SPECIALTY INSURANCE CO | PROP | 12 | 09/01/2018 | 32,896.00 |
| | G00214-SWETT & CRAWFORD | | | ERN TXS/FEES | 2,500.00 |
| | [ME:25.000 %, CX:0]          [PR] A/F [27,159.04] | | | FIN TXS/FEES | 1,052.67 |
| AUGA00834A | C00005-LLOYDS OF LONDON | EPLI | 12 | 09/01/2018 | 25,750.00 |
| | G00214-SWETT & CRAWFORD | | | ERN TXS/FEES | 1,250.00 |
| | [ME:25.000 %, CX:0]          [PR] A/F [21,259.29] | | | FIN TXS/FEES | 824.00 |

LENDER:

450 Skokie Blvd, Ste 1000

## COMMERCIAL
## PREMIUM FINANCE AGREEMENT

Northbrook, IL 60062-7917
P:(800) 837-2511 F:(800) 837-3709

**FIRST INSURANCE** FUNDING
A WINTRUST COMPANY

www.firstinsurancefunding.com

Quote #: 15193139

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy) | | (Name and Business Address) |
| Crystal Cove Transportation, Inc. | | Robert E. Harris Insurance Agency, Inc. |
| c/o Ruby's Diner Inc. | | 3150 Bristol Street |
| 4100 MacArthur Blvd Ste 310 | | Suite 200 |
| Newport Beach, CA 92660 | | Costa Mesa, CA 92626 |

### LOAN DISCLOSURE

| Total Premiums, Taxes and Fees | Cash Down Payment | Unpaid Premium Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 27,490.39 | 5,675.02 | 21,815.37 | 0.00 | 21,815.37 | 634.83 | 22,450.20 | 6.300 % |

YOUR PAYMENT SCHEDULE WILL BE:      Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000

| Number of Payments | Amount of Each Payment | First Installment Due | 10/01/2018 |
|---|---|---|---|
| 10 | 2,245.02 | Installment Due Dates | 1st (Monthly) |

SECURITY INTEREST. INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a security interest in the financed policies and any additional premiums required under the financed policies, including (but only to the extent permitted by applicable law) all return premiums, dividend payments, and loss payments which reduce unearned premium, subject to any mortgagee or loss payee interest. If any circumstances exist in which premiums related to any financed policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.
FINANCE CHARGE. The finance charge begins accruing on the earliest effective date of the policies listed in the Schedule of Policies. The finance charge may include a nonrefundable service charge equal to the maximum amount permitted by law. The finance charge is computed using a 365-day calendar year.
LATE PAYMENT. A late charge will be assessed on any installment at least 5 days in default (7 days in VA; 10 days in MA & TX; or later date as required by law.). This late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less (greater of $10 or 5% in FL; greater of $25 or 1.5% in NJ; $5 maximum in DE, MT and ND; $100 maximum in MD; 5% in VA).
PREPAYMENT. Insured is entitled to a refund of the unearned finance charge if the loan is prepaid in full. The refund shall be computed according to applicable law.

### SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| 73APS082158 | C00146-NATIONAL LIAB & FIRE INS CO | AUTO | 12 | 09/01/2018 | 19,899.00 |
| | G00911-PACIFIC GATEWAY INSURANCE AGENCY | | | ERN TXS/FEES | 0.00 |
| | [CX:0]   [PR] A/F [15,927.50] | | | FIN TXS/FEES | 0.00 |
| 72XAS004751 | C00252-NATIONAL FIRE & MARINE INS CO | CAX | 12 | 09/01/2018 | 7,356.00 |
| | G00911-PACIFIC GATEWAY INSURANCE AGENCY | | | ERN TXS/FEES | 235.39 |
| | [CX:0]   [PR] A/F [5,887.87] | | | FIN TXS/FEES | 0.00 |
| | | | | TOTAL | 27,490.39 |

Q# 15193139, PRN: 091918, CFG: 25/9-15/10-10-15D, RT: A05731-15D, DD: 15, BM: Invoice, Qtd For: A05731 Original, Memo 0
INSURED'S AGREEMENT:
1. In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies, their representative or the Agent or Broker listed above, Insured promises to pay, to the order of LENDER, the Total of Payments subject to all of the provisions of this Agreement.
2. POWER OF ATTORNEY. INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (i) cancel the financed policies in accordance with the provisions contained herein, (ii) receive all sums assigned to LENDER, and (iii) execute and deliver on behalf of Insured all documents relating to the insurance policies listed on the Schedule of Policies ("Financed Policies") in furtherance of this Agreement (clauses (ii) and (iii) are not applicable in Florida). This right to cancel will terminate only after Insured's indebtedness under this Agreement is paid in full.
3. SIGNATURE & ACKNOWLEDGEMENT. Insured has signed and received a copy of this Agreement. If Insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of Insured. All named Insured(s), jointly and severally if more than one, agree to all provisions set forth in this Agreement. Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.
NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to receive a partial refund of the finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.
4. EFFECTIVE DATE. This Agreement will not become effective until it is accepted in writing by LENDER.

| | | | |
|---|---|---|---|
| Signature of Insured or Authorized Agent | Date | Signature of Agent | Date |

FEIN or SSN    XX-XXX6273

The undersigned hereby warrants and agrees to the Agent or Broker Representations and Warranties set forth herein.

FIF0617P
EXHIBIT "A"
Page 16

Insured: Crystal Cove Transportation
Quote #: 15193139

### ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

5. DEFAULT/CANCELLATION. Insured is in default under this Agreement if (a) a payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement; provided, however, when required by law, Insured may be deemed in default only under clause (a) above.  Clauses (b) and (c) are not applicable in FL, MD, NV, NC or VA.  At any time after default, LENDER can demand and has the right to receive immediate payment of the total unpaid amount due under this Agreement even if LENDER has not received any refund of unearned premium.  If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law.  If a default by Insured results in cancellation of the Financed Policies, Insured agrees to pay a cancellation charge where allowed by law (not permitted in AK, FL, KS, KY, NV, NY, NC, PA, SC, TX or VA).  If cancellation or default occurs, Insured agrees to pay LENDER interest on the balance due at the contract rate or at the maximum lawful rate, whichever is less, until the balance is paid in full or until such other date as provided by law.

6. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER, except in KY.

7. RETURNED CHECK CHARGE.  If Insured's check is dishonored for any reason and if permitted by law, Insured will pay LENDER a returned check charge equal to the maximum fee permitted by law ($0 in KY; $15 in FL & NV; $20 in VA; maximum of $25 in MD).

8. REINSTATEMENT.  Once a Notice of Cancellation has been sent to any insurance company, LENDER has no duty to ask that the Financed Policy be reinstated, even if LENDER later receives a payment from Insured.  If LENDER requests reinstatement, such request does not guarantee coverage will be reinstated by the insurance company. Payments that LENDER receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of LENDER's rights under this Agreement.

9. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.  After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER (in VA, only to this Agreement). Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part.  Any amounts received by LENDER after cancellation will be credited to the balance due with any excess paid to Insured; the minimum refund is the greater of $1.00 or the minimum amount allowed by law (no minimum in VA).  Any deficiency shall be immediately paid by Insured to LENDER.  Insured agrees that insurance companies may rely exclusively on LENDER's representations about the financed policies.

10. ASSIGNMENT.  Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent.  LENDER may transfer its rights under this Agreement without the consent of Insured.

11. AGENT OR BROKER.  Insured agrees that the Agent or Broker issuing the policies or through whom the policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. The Agent or Broker may receive from LENDER $55.78 for aiding in the administration of this Agreement relating to the Financed Policies , and in NY the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

12. COLLECTION COSTS.  Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

13. GOVERNING LAW.  This Agreement is governed by and interpreted under the laws of the state where Insured resides, except for conflict of laws principles thereof.  If any court finds any part of this Agreement to be invalid, such finding shall not affect the remaining provisions of this Agreement.

14. WARRANTY OF ACCURACY.  Insured represents and warrants that to the best of its knowledge (i) the Financed Policies are in full force and effect and that Insured has not and will not assign any interest in the policies except for the interest of mortgagees and loss payees, (ii) that none of the Financed Policies are for personal, family or household purposes, (iii) the Cash Down Payment and any past due payments have been paid in full to the Agent or Broker in cash or other immediately available funds, (iv) all information provided herein or in connection with this Agreement is true, correct, complete and not misleading, (v) Insured is not insolvent nor presently involved in any insolvency proceeding, (vi) Insured has no indebtedness to the insurers issuing the Financed Policies, and (vii) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of such policies.

15. ADDITIONAL PREMIUMS.  Insured agrees to fully and timely comply with all audits and pay to the insurance company any additional amount due in connection with the Financed Policies.  The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. Insured, or Agent/Broker, may request that LENDER finance additional policies and/or additional premium during the term of this Agreement, and if LENDER agrees, this Agreement shall be deemed amended accordingly.  Should LENDER assign an account number to further extensions of credit, then a) this Agreement and loan documents identified by the assigned account number(s) shall be deemed to comprise a single and indivisible loan transaction, b) Insured shall irrevocably appoint LENDER as its attorney in fact in connection with additional amount financed, c) default under any component of the transaction shall constitute a default under the entire transaction, and d) unearned premium relating to any component of the transaction may be collected and applied to the entire loan transaction balance.

16. CORRECTIONS.  LENDER may insert the names of the insurance companies and policy numbers, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement (not applicable in KY or VA).

17. NON-WAIVER.  Not Applicable.

18. THIRD PARTY FEE.  Not Applicable.

---

Federal law requires all financial institutions to obtain, verify and record information that identifies each person or entity that is granted a loan. LENDER will require such information as LENDER deems reasonably necessary for proper identification, such as your name, street address, FEIN, SSN or date of birth. LENDER will use this information only to process this Agreement and will not share this information with outside parties except to the extent necessary to complete this transaction.

### AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1)  Insured has received a copy of this Agreement and has authorized this transaction, Insured's signature is genuine, and the cash down payment has been received from Insured, (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the policies listed in the Schedule of Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's  knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will  hold harmless and indemnify LENDER and its successors and assigns  against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

California Borrowers:  FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA

**LENDER:**

450 Skokie Blvd, Ste 1000

# COMMERCIAL
# PREMIUM FINANCE AGREEMENT

Northbrook, IL 60062-7917
P:(800) 837-2511 F:(800) 837-3709
www.firstinsurancefunding.com

**FIRST INSURANCE**
FUNDING
A WINTRUST COMPANY

Quote #: 15100464

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy) | | (Name and Business Address) |
| Ruby's Diner, Inc. etal | | Robert E. Harris Insurance Agency, Inc. |
| 4100 MacArthur Blvd/ Ste 310 | | 3150 Bristol Street |
| Newport Beach, CA 92660 | | Suite 200 |
| | | Costa Mesa, CA 92626 |

## LOAN DISCLOSURE

| Total Premiums, Taxes and Fees | Cash Down Payment | Unpaid Premium Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 389,759.16 | 111,771.29 | 277,987.87 | 0.00 | 277,987.87 | 8,089.93 | 286,077.80 | 6.30 % |

### *YOUR PAYMENT SCHEDULE WILL BE:*

*Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000*

| Number of Payments | Amount of Each Payment | First Installment Due | 10/01/2018 |
|---|---|---|---|
| 10 | 28,607.78 | Installment Due Dates | 1st (Monthly) |

**SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a security interest in the financed policies and any additional premiums required under the financed policies, including (but only to the extent permitted by applicable law) all return premiums, dividend payments, and loss payments which reduce unearned premium, subject to any mortgagee or loss payee interest. If any circumstances exist in which premiums related to any financed policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the policies listed in the Schedule of Policies. The finance charge may include a nonrefundable service charge equal to the maximum amount permitted by law. The finance charge is computed using a 365-day calendar year.

**LATE PAYMENT.** A late charge will be assessed on any installment at least 5 days in default (7 days in VA; 10 days in MA & TX; or later date as required by law.). This late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less (greater of $10 or 5% in FL; greater of $25 or 1.5% in NJ; $5 maximum in DE, MT and ND; $100 maximum in MD; 5% in VA).

**PREPAYMENT.** Insured is entitled to a refund of the unearned finance charge if the loan is prepaid in full. The refund shall be computed according to applicable law.

## SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TB6Z91467842028 | C00317-LIBERTY MUTUAL FIRE INS CO [ME:25.000 %, CX:0] [PRJ A/F [73,180.68] | GL | 12 | 09/01/2018 ERN TXS/FEES FIN TXS/FEES | 98,182.00 0.00 0.00 |
| TCZ91467842038 | C00317-LIBERTY MUTUAL FIRE INS CO [ME:25.000 %, CX:0] [PRJ A/F [665.60] | CGLIQ | 12 | 09/01/2018 ERN TXS/FEES FIN TXS/FEES | 893.00 0.00 0.00 |
| **(Policies continued on next page.)** | | | | **TOTAL** | **389,759.16** |

Q# 15100464, PRN: 090718, CFG: 2S/9-15/10-10-15D, RT: A05731-15D, DD: 15, BM: Invoice, Qtd For: A05731 Original, Memo 2

**INSURED'S AGREEMENT:**

1. In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies, their representative or the Agent or Broker listed above, Insured promises to pay, to the order of LENDER, the Total of Payments subject to all of the provisions of this Agreement.

2. **POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (i) cancel the financed policies in accordance with the provisions contained herein, (ii) receive all sums assigned to LENDER, and (iii) execute and deliver on behalf of Insured all documents relating to the insurance policies listed on the Schedule of Policies ("Financed Policies") in furtherance of this Agreement (clauses (ii) and (iii) are not applicable in Florida). This right to cancel will terminate only after Insured's indebtedness under this Agreement is paid in full.

3. **SIGNATURE & ACKNOWLEDGEMENT.** Insured has signed and received a copy of this Agreement. If Insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of Insured. All named Insured(s), jointly and severally if more than one, agree to all provisions set forth in this Agreement. Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.

**NOTICE TO INSURED:** (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to receive a partial refund of the finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.

4. **EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER.

_____ 9-10-18 _____ 9/10/18
Signature of Insured or Authorized Agent    Date    Signature of Agent    Date

FEIN or SSN    XX-XXX6273

The undersigned hereby warrants and agrees to the Agent or Broker Representations and Warranties set forth herein.

F1F0617P

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured:  Ruby's Diner, Inc. etal
Quote #: J5100464

**5. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) a payment is not received by LENDER when it's due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement; provided, however, when required by law, Insured may be deemed in default only under clause (a) above.  Clauses (b) and (c) are not applicable in FL, MD, NV, NC or VA.  At any time after default, LENDER can demand and has the right to receive immediate payment of the total unpaid amount due under this Agreement even if LENDER has not received any refund of unearned premium.  If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law.  If a default by Insured results in cancellation of the Financed Policies, Insured agrees to pay a cancellation charge where allowed by law (not permitted in AK, FL, KS, KY, NV, NY, NC, PA, SC, TX or VA).  If cancellation or default occurs, Insured agrees to pay LENDER interest on the balance due at the contract rate or at the maximum lawful rate, whichever is less, until the balance is paid in full or until such other date as provided by law.

**6. LIMITATION OF LIABILITY.** Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER, except in KY.

**7. RETURNED CHECK CHARGE.** If Insured's check is dishonored for any reason and if permitted by law, Insured will pay LENDER a returned check charge equal to the maximum fee permitted by law ($30 in KY; $15 in FL & NV; $20 in VA; maximum of $25 in MD).

**8. REINSTATEMENT.** Once a Notice of Cancellation has been sent to any insurance company, LENDER has no duty to ask that the Financed Policy be reinstated, even if LENDER later receives a payment from Insured.  If LENDER requests reinstatement, such request does not guarantee coverage will be reinstated by the insurance company.  Payments that LENDER receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of LENDER's rights under this Agreement.

**9. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER (in VA, only to this Agreement).  Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part.  Any amounts received by LENDER after cancellation will be credited to the balance due with any excess paid to Insured; the minimum refund is the greater of $1.00 or the minimum amount allowed by law (no minimum in VA).  Any deficiency shall be immediately paid by Insured to LENDER.  Insured agrees that insurance companies may rely exclusively on LENDER's representations about the financed policies.

**10. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent.  LENDER may transfer its rights under this Agreement without the consent of Insured.

**11. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the policies or through whom the policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. The Agent or Broker may receive from LENDER $3,096.71 for aiding in the administration of this Agreement relating to the Financed Policies , and in NY the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119.  Any questions regarding this payment should be directed to the Agent or Broker.

**12. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**13. GOVERNING LAW.** This Agreement is governed by and interpreted under the laws of the state where Insured resides, except for conflict of laws principles thereof.  If any court finds any part of this Agreement to be invalid, such finding shall not affect the remaining provisions of this Agreement.

**14. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge (i) the Financed Policies are in full force and effect and that Insured has not and will not assign any interest in the policies except for the interest of mortgagees and loss payees, (ii) that none of the Financed Policies are for personal, family or household purposes, (iii) the Cash Down Payment and any past due payments have been paid in full to the Agent or Broker in cash or other immediately available funds, (iv) all information provided herein or in connection with this Agreement is true, correct, complete and not misleading, (v) Insured is not insolvent nor presently involved in any insolvency proceeding, (vi) Insured has no indebtedness to the insurers issuing the Financed Policies, and (vii) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of such policies.

**15. ADDITIONAL PREMIUMS.** Insured agrees to fully and timely comply with all audits and pay to the insurance company any additional amount due in connection with the Financed Policies.  The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. Insured, or Agent/Broker, may request that LENDER finance additional policies and/or additional premium during the term of this Agreement, and if LENDER agrees, this Agreement shall be deemed amended accordingly.  Should LENDER assign an account number to further extensions of credit, then a) this Agreement and loan documents identified by the assigned account number(s) shall be deemed to comprise a single and indivisible loan transaction, b) Insured shall irrevocably appoint LENDER as its attorney in fact in connection with additional amount financed, c) default under any component of the transaction shall constitute a default under the entire transaction, and d) unearned premium relating to any component of the transaction may be collected and applied to the entire loan transaction balance.

**16. CORRECTIONS.** LENDER may insert the names of the insurance companies and policy numbers, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement (not applicable in KY or VA).

**17. NON-WAIVER.** Not Applicable.

**18. THIRD PARTY FEE.** Not Applicable.

**19. ELECTRONIC STATEMENT AND NOTICE DELIVERY.** By executing this Agreement, Insured agrees to receive all billing statements, notices, and other communications via electronic delivery in PDF format as permitted by applicable law.  It is Insured's responsibility to provide LENDER with true, accurate, and complete e-mail and contact information related to this Agreement and to maintain and update promptly any changes to this information.  If Insured wishes to (i) opt out of electronic statement and notice delivery, or (ii) update contact information, Insured can log into Insured's account on www.firstinsurancefunding.com or call (800) 837-2511.

---

Federal law requires all financial institutions to obtain, verify and record information that identifies each person or entity that is granted a loan. LENDER will require such information as LENDER deems reasonably necessary for proper identification, such as your name, street address, FEIN, SSN or date of birth. LENDER will use this information only to process this Agreement and will not share this information with outside parties except to the extent necessary to complete this transaction.

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1)  Insured has received a copy of this Agreement and has authorized this transaction, Insured's signature is genuine, and the cash down payment has been received from Insured, (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the policies listed in the Schedule of Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (in its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4)  the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's  knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will  hold harmless and indemnify LENDER and its successors and assigns  against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

California Borrowers: **FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

**FIF0617P**

**SCHEDULE OF POLICIES**

Insured: Ruby's Diner, Inc. etal
Quote #: 15100464

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| AS6Z91467842018 | C00317-LIBERTY MUTUAL FIRE INS CO<br>[ME:25.000 %, CX:0]        [PR] A/F [1,440.78] | AUTO BCAU | 12 | 09/01/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 1,933.00<br>0.00<br>0.00 |
| ESP730402900 | C00169-ARCH SPECIALTY INSURANCE CO<br>G00231-SWETT & CRAWFORD<br>[ME:25.000 %, CX:0]        [PR] A/F [62,967.44] | PROP | 12 | 09/01/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 81,860.00<br>6,500.00<br>2,619.52 |
| AUGA00797B | C00005-LLOYDS OF LONDON<br>G00231-SWETT & CRAWFORD<br>[ME:25.000 %, CX:0]        [PR] A/F [79,228.51] | EPLI | 12 | 09/01/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 103,000.00<br>5,350.00<br>3,296.00 |
| AUGBC001861 | C00005-LLOYDS OF LONDON<br>G00231-SWETT & CRAWFORD<br>[ME:25.000 %, CX:0]        [PR] A/F [16,264.92] | D&O | 12 | 09/01/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 21,145.00<br>1,000.00<br>676.64 |
| UC2233987418 | C00232-HISCOX INSURANCE COMPANY<br>G00231-SWETT & CRAWFORD<br>[ME:25.000 %, CX:0]        [PR] A/F [5,118.37] | CRME | 12 | 09/01/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 6,867.00<br>450.00<br>0.00 |
| UKA3014218.18 | C00232-HISCOX INSURANCE COMPANY<br>G00214-SWETT & CRAWFORD<br>[ME:25.000 %, CX:0]        [PR] A/F [735.67] | K&R | 12 | 09/01/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 987.00<br>0.00<br>0.00 |
| 1000006161910 | C00872-LIBERTY INTERNATIONAL INS COMPANY<br>[CX:0]   [PR] A/F [38,385.90] | EXLB | 12 | 09/01/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 51,500.00<br>3,500.00<br>0.00 |

**F1F0214P-SCH**

EXHIBIT "B"

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 09/19/2018 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Pam Linares | | |
|---|---|---|---|
| Robert Harris Insurance Agency, Inc. | PHONE (A/C, No, Ext): (714) 619-4480 | | FAX (A/C, No): (714) 619-4481 |
| Lic. #0216736 | E-MAIL ADDRESS: pam@reharris.com | | |
| 3150 Bristol St., Suite 200 | | | |
| Costa Mesa                                     CA  92626 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Liberty Mutual Fire Ins. Co. | | |
| INSURED | INSURER B : Liberty Mutual Insurance Company | | 23043 |
| Beachcomber Management Crystal Cove, LLC | INSURER C : Liberty International Underwriters | | |
| 4100 MacArthur Blvd., Ste. #310 | INSURER D : | | |
| | INSURER E : | | |
| Newport Beach                              CA  92660 | INSURER F : | | |

**COVERAGES**          CERTIFICATE NUMBER:  CL189714344          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ☒ COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS-MADE ☒ OCCUR<br>☒ Deductible: $25,000<br>Per Occurrence<br>GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PRO-JECT ☐ LOC<br>OTHER: | | | TB2Z91467841028 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ Excluded |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | Employee Benefits | $ 1,000,000 |
| A | AUTOMOBILE LIABILITY<br>☐ ANY AUTO<br>☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS<br>☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | | | AS6Z91467841018 | 09/01/2018 | 09/01/2019 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | ☒ UMBRELLA LIAB ☒ OCCUR<br>☐ EXCESS LIAB ☐ CLAIMS-MADE<br>☐ DED ☒ RETENTION $ 10,000 | | | 10000616190910 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | | AGGREGATE | $ 25,000,000 |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| B | LIQUOR LIABILITY | | | TOCZ91467841038 | 09/01/2018 | 09/01/2019 | Each Occurrence | $1,000,000 |
| | | | | | | | Aggregate | $2,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

EMPLOYMENT PRACTICES LIABILITY:
INSURANCE CARRIER: Lloyds of London
POLICY #AUGA00834A
EFFECTIVE DATE: 9/1/18 - 9/1/19
LIMITS OF LIABILITY: $2,000,000 Each Claim / $2,000,000 Aggregate
RETENTION: $50,000 Each Claim

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

ACORD®                    **CERTIFICATE OF PROPERTY INSURANCE**

| | DATE (MM/DD/YYYY) |
|---|---|
| | 09/07/2018 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER | | | CONTACT NAME: | Pam Linares | | |
|---|---|---|---|---|---|---|
| Robert Harris Insurance Agency, Inc. | | | PHONE (A/C, No, Ext): (714) 619-4480 | | FAX (A/C, No): | (714) 619-4481 |
| Lic. #0216736 | | | E-MAIL ADDRESS: pam@reharris.com | | | |
| 3150 Bristol St., Suite 200 | | | PRODUCER CUSTOMER ID: 00005676 | | | |
| Costa Mesa | CA | 92626 | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| INSURED | | | INSURER A : Arch Specialty Ins. Co. | | | 21199 |
| Beachcomber Management Crystal Cove, LLC | | | INSURER B : | | | |
| | | | INSURER C : | | | |
| 4100 MacArthur Blvd., Ste. 310 | | | INSURER D : | | | |
| Newport Beach | CA | 92660 | INSURER E : | | | |
| | | | INSURER F : | | | |

**COVERAGES**          **CERTIFICATE NUMBER:** 18-19 Master Property          **REVISION NUMBER:**

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | | COVERED PROPERTY | | LIMITS |
|---|---|---|---|---|---|---|---|---|---|
| | ☒ PROPERTY | | | | | ☒ | BUILDING | $ | 5,307,000 |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | ☒ | PERSONAL PROPERTY | $ | Included |
| | BASIC | BUILDING | | | | ☒ | BUSINESS INCOME | $ | Included |
| | BROAD | | | | | ☒ | EXTRA EXPENSE | $ | Included |
| | ☒ SPECIAL | CONTENTS | | | | ☒ | RENTAL VALUE | $ | Included |
| A | ☒ EARTHQUAKE | | ESP730403301 | 09/01/2018 | 09/01/2019 | | BLANKET BUILDING | $ | |
| | WIND | | | | | | BLANKET PERS PROP | $ | |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ | |
| | | | | | | ☒ | Demolition | $ | 1,000,000 |
| | | | | | | ☒ | Utility Service | $ | 500,000 |
| | INLAND MARINE | | TYPE OF POLICY | | | | | $ | |
| | CAUSES OF LOSS | | | | | | | $ | |
| | NAMED PERILS | | POLICY NUMBER | | | | | $ | |
| | CRIME | | | | | | | $ | |
| | TYPE OF POLICY | | | | | | | $ | |
| | | | | | | | | $ | |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | $ | |
| | | | | | | | | $ | |
| | | | | | | | | $ | |
| | | | | | | | | $ | |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Deductibles: $10,000 Per Occurrence except: 5% Earthquake (incl. EQ Sprinkler Leakage) - Minimum $100,000

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |
| | *Nina Armstrong* |

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)          The ACORD name and logo are registered marks of ACORD

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 09/04/2018 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Pacific Gateway Insurance Agency | | |
|---|---|---|---|---|
| ROBERT E. HARRIS INSURANCE AGENCY, INC. 3150 BRISTOL ST STE 200 COSTA MESA, CA 92626 | PHONE (A/C, No. Ext): 6612575977 | | FAX (A/C, No): | |
| | E-MAIL ADDRESS: | | | |
| | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| INSURED | INSURER A: NATIONAL LIABILITY & FIRE INSURANCE | | | 20052 |
| CRYSTAL COVE TRANSPORTATION, INC. DBA: BEACHCOMBER AT CRYSTAL COVE, LLC 4100 MACARTHUR BLVD STE 310 NEWPORT BEACH, CA 92660 | INSURER B: COMPANY | | | |
| | INSURER C: NATIONAL FIRE & MARINE INSURANCE COMPANY | | | 20079 |
| | INSURER D: | | | |
| | INSURER E: | | | |
| | INSURER F: | | | |

| COVERAGES | CERTIFICATE NUMBER: 323,686 | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS – COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per Person) | $ N/A |
| A | ☐ ALL OWNED AUTOS  ☒ SCHEDULED AUTOS | | | 73APS082158 | 09/01/2018 | 09/01/2019 | BODILY INJURY (Per accident) | $ N/A |
| | ☐ HIRED AUTOS  ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ N/A |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y/N | N/A | | | | | ☐ WC STATU- TORY LIMITS ☐ OTH- ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  Y/N (Mandatory in NH) | | | | | | E. L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E. L. DISEASE – EA EMPLOYEE | $ |
| | | | | | | | E. L. DISEASE – POLICY LIMIT | $ |
| C | EXCESS AUTO LIABILITY | | | 72XAS004751 | 09/01/2018 12:01AM | 09/01/2019 12:01AM | LIMIT OF LIABILITY | $ 4,000,000 |
| | | | | | | | | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

| Year, Make, Model, VIN | | Collision | Comp or Spec. Caus. | Stated Amount | Phys. Dam. Deductible | In-Tow Limit | Cargo Limit |
|---|---|---|---|---|---|---|---|
| 2016 FORD STARCRAFT 1FDGF5GY3GEA75144 | | Covered | C | 99,925 | 1000/1000 | N/A | N/A |
| 2017 FORD TRANSIT CONNECT 1FBVU4XG3HKA23314 | | Covered | Sp | 60,321 | 1000/1000 | N/A | N/A |

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE  *Tom Y* |

ACORD 25 (2010/05)

The ACORD name and logo are registered marks of ACORD

© 1988-2010 ACORD CORPORATION. All rights reserved.

M-5652 (11/2011)

09/04/2018 17:34 ED251F9B-AAF8-4328-A4AA-E47EBA3E91C8

# ACORD®

## CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 09/04/2018 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | Pam Linares | | |
|---|---|---|---|---|---|
| Robert Harris Insurance Agency, Inc. | | PHONE (A/C, No. Ext): | (714) 619-4480 | FAX (A/C, No): | (714) 619-4481 |
| Lic. #0216736 | | E-MAIL ADDRESS: | pam@reharris.com | | |
| 3150 Bristol St., Suite 200 | | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| Costa Mesa | CA  92626 | INSURER A : | Liberty Mutual Fire Ins. Co. | | |
| INSURED | | INSURER B : | Liberty Insurance Underwriters | | 19917 |
| Ruby's Diner, Inc. etal | | INSURER C : | Allegiance Underwriting Group | | |
| Ruby's Palm Springs, Ltd. | | INSURER D : | | | |
| 4100 MacArthur Blvd., Ste. 300 | | INSURER E : | | | |
| Newport Beach | CA  92660 | INSURER F : | | | |

| COVERAGES | CERTIFICATE NUMBER: | CL189414268 | REVISION NUMBER: |
|---|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ☒ COMMERCIAL GENERAL LIABILITY | | | TB2Z91467842028 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE ☒ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | ☒ Deductible $25,000 | | | | | | MED EXP (Any one person) | $ |
| | Per Occurrence | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | OTHER: | | | | | | Employee Benefits | |
| A | AUTOMOBILE LIABILITY | | | AS6Z91467842018 | 09/01/2018 | 09/01/2019 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | ☒ UMBRELLA LIAB ☒ OCCUR | | | 1000061619-10 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 25,000,000 |
| | ☒ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ 25,000,000 |
| | ☐ DED ☒ RETENTION $ 10,000 | | | | | | | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | | | | ☐ PER STATUTE ☐ OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | DIRECTORS & OFFICERS LIABILITY | | | AUGBC001861 | 09/01/2018 | 09/01/2019 | $15,000 Retention | $2,000,000 Per Claim |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

PLEASE REFER TO PAGE 2 FOR THE FOLLOWING COVERAGES:
Liquor Liability / Employment Practices Liability / Commercial Property Program /
Crime / Kidnap & Ransom

LOCATION ADDRESS: 155 S. Palm Canyon Dr., A6, Palm Springs, CA 92262.

CERTIFICATE HOLDER IS INCLUDED AS ADDITIONAL INTEREST

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Office of The United States Trustee<br>411 West Fourth Street,<br>Suite 7160<br>Santa Ana          CA  92701 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>Dave Armstrong |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

# COMMENTS/REMARKS

LIQUOR LIABILITY:
Insurance Carrier: Liberty Mutual Ins. Co.
POLICY #TOCZ91467842038
Effective Date:  9/1/18 - 9/1/19
Limit of Liability: $1,000,000 Each Common Cause / $1,000,000 Policy Aggregate
Deductible:  $25,000 Per Occurrence

EMPLOYMENT PRACTICES LIABILITY:
Insurance Carrier:  Beazley Syndicate 2623/623 at Lloyds
Policy #AUGA00797B
Effective Date:  9/1/18 - 9/1/19
Limit of Liability:
$2,000,000 Maximum Limit of Liab for each Claim
$2,000,000 Third-Party Discrimination Limit of Liability
$2,000,000 Punitive, exemplary, and multiple damages Limit of Liability
$1,000,000 Maximum Aggregate Limit of Liability for all Claims of Wrongful Employment
Practices and Third-Party Discrimination
$150,000 Defense Cost only Wage & Hour Claims Coverage
$250,000 Defense Cost only Immigration Practices Enhancement
$10,000 Employment Event Endorsement
SELF-INSURED RETENTION:
$50,000 Each & Every Claim for Wrongful Employment Practices or Third Party Discrimination
$50,000 Each & Every Wage & Hour Claim

COMMERCIAL PROPERTY PROGRAM:
Insurance Carrier:  ARCH Specialty Insurance Company
Policy #ESP7304682-00
Effective Date:  9/1/18 - 9/1/19
Policy Limit of Liability:  $5,000,000 Per Occurrence Including:
Buildings, Business Personal Property, Newly Acquired Property, Fine Arts, EDP Equipment &
Media, Business Income, Extra Expense incl. Loss of Rents, 180 Days Extended Period of
Indemnity, Contingent Business Income, Ordinance or Law, Increased Period of Restoration,
Utility Services - Direct Damage & Time Element, Ingress & Egress - 30 days, Accounts
Receivables, Valuable Papers and Equipment Breakdown.

DEDUCTIBLES:  $10,000 Per Occurrence Except: 5% Earthquake - min. $100,000 (Incl. EQ
sprinkler leakage; Flood - 5% per Unit of Insurance subject to $250,000 min. per
occurrence as respects Covered Property situated in Special Hazard Flood Zones designated
by prefixes beginning with the letters A or V as determined by FEMA.
$25,000 Per Occurrence as respects All Other Flood.
24 Hour Waiting Period for Utility Services - Time Element
Equipment Breakdown:  $25,000 Direct Damage (Incl. Business Income & Extra Expense,
Perishable Goods)

VALUATION: Replacement Cost as respects Real & Personal Property / Actual Loss Sustained
as respects Business Income (Including Extra Expense)

CRIME / KIDNAP & RANSOM COVERAGE:
Insurance Carrier:  Hiscox Ins. Co.
Policy #UC22339874
Effective Dates:  9/1/18 - 9/1/19
Coverage / Limit of Insurance / Deductible:
Fidelity /Employee Theft:  $1,000,000 Limit / $25,000 Ded.
Forgery or Alteration: $1,000,000 / $25,000 Ded.
Inside & Outside the Premises:  $50,000 / $25,000 Ded.
Computer Funds & Transfer Fraud: $1,000,000 / $25,000 Ded.
Money Orders & Counterfeit Money: $1,000,000 / $25,000 Ded.
Identity Fraud Expense:  $25,000 / $1,0000 Ded
KIDNAP & RANSOM:
Insured Persons:  All Directors, Officers and Employees
Coverage Extensions: Threat Response, Disappearance Investigation and Expense, Express
Kidnap, Alternate Loss of Earnings, TRIA Risk
Ransom - $1,000,000 Per Insured Event
Transit - $1,000,000 Per Insured Event

# ACORD®

## CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
09/04/2018

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Pam Linares | | |
|---|---|---|---|
| Robert Harris Insurance Agency, Inc. | PHONE (A/C, No, Ext): (714) 619-4480 | | FAX (A/C, No): (714) 619-4481 |
| Lic. #0216736 | E-MAIL ADDRESS: pam@reharris.com | | |
| 3150 Bristol St., Suite 200 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Costa Mesa                       CA  92626 | INSURER A : Liberty Mutual Fire Ins. Co. | | |
| INSURED | INSURER B : Liberty Insurance Underwriters | | 19917 |
| Ruby's Diner, Inc. etal | INSURER C : Allegiance Underwriting Group | | |
| Ruby's Oceanside, Ltd. | INSURER D : | | |
| 4100 MacArthur Blvd., Ste. 300 | INSURER E : | | |
| Newport Beach                    CA  92660 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: CL189414268 | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** [X] | | | TB2Z91467842028 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE [ ]   OCCUR [X] | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | Deductible $25,000 [X] | | | | | | MED EXP (Any one person) | $ |
| | Per Occurrence | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY [ ]  PRO-JECT [ ]  LOC [ ] | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | OTHER: | | | | | | Employee Benefits | |
| A | **AUTOMOBILE LIABILITY** | | | AS6Z91467842018 | 09/01/2018 | 09/01/2019 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ANY AUTO [ ] | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY [ ]   SCHEDULED AUTOS [ ] | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY [X]   NON-OWNED AUTOS ONLY [X] | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | **UMBRELLA LIAB** [X]  OCCUR [X] | | | 1000061619-10 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 25,000,000 |
| | **EXCESS LIAB** [X]  CLAIMS-MADE [ ] | | | | | | AGGREGATE | $ 25,000,000 |
| | DED [ ]  RETENTION $ 10,000 [X] | | | | | | | |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**     Y / N | | | | | | PER STATUTE [ ]   OTHER [ ] | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | DIRECTORS & OFFICERS LIABILITY | | | AUGBC001861 | 09/01/2018 | 09/01/2019 | $15,000 Retention | $2,000,000 Per Claim |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**
PLEASE REFER TO PAGE 2 FOR THE FOLLOWING COVERAGES:
Liquor Liability / Employment Practices Liability / Commercial Property Program /
Crime / Kidnap & Ransom

LOCATION ADDRESS: 1 Oceanside Pier, Oceanside, CA 92054.

CERTIFICATE HOLDER IS INCLUDED AS ADDITIONAL INTEREST

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Office of The United States Trustee | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| 411 West Fourth Street, | |
| Suite 7160 | AUTHORIZED REPRESENTATIVE |
| Santa Ana                     CA  92701 | *Dave Armstrong* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

## COMMENTS/REMARKS

LIQUOR LIABILITY:
Insurance Carrier: Liberty Mutual Ins. Co.
POLICY #TOCZ91467842038
Effective Date:  9/1/18 - 9/1/19
Limit of Liability: $1,000,000 Each Common Cause / $1,000,000 Policy Aggregate
Deductible:  $25,000 Per Occurrence

EMPLOYMENT PRACTICES LIABILITY:
Insurance Carrier:  Beazley Syndicate 2623/623 at Lloyds
Policy #AUGA00797B
Effective Date:  9/1/18 - 9/1/19
Limit of Liability:
$2,000,000 Maximum Limit of Liab for each Claim
$2,000,000 Third-Party Discrimination Limit of Liability
$2,000,000 Punitive, exemplary, and multiple damages Limit of Liability
$1,000,000 Maximum Aggregate Limit of Liability for all Claims of Wrongful Employment
Practices and Third-Party Discrimination
$150,000 Defense Cost only Wage & Hour Claims Coverage
$250,000 Defense Cost only Immigration Practices Enhancement
$10,000 Employment Event Endorsement
SELF-INSURED RETENTION:
$50,000 Each & Every Claim for Wrongful Employment Practices or Third Party Discrimination
$50,000 Each & Every Wage & Hour Claim

COMMERCIAL PROPERTY PROGRAM:
Insurance Carrier:  ARCH Specialty Insurance Company
Policy #ESP7304682-00
Effective Date:  9/1/18 - 9/1/19
Policy Limit of Liability:  $5,000,000 Per Occurrence Including:
Buildings, Business Personal Property, Newly Acquired Property, Fine Arts, EDP Equipment &
Media, Business Income, Extra Expense incl. Loss of Rents, 180 Days Extended Period of
Indemnity, Contingent Business Income, Ordinance or Law, Increased Period of Restoration,
Utility Services - Direct Damage & Time Element, Ingress & Egress - 30 days, Accounts
Receivables, Valuable Papers and Equipment Breakdown.

DEDUCTIBLES:  $10,000 Per Occurrence Except: 5% Earthquake - min. $100,000 (Incl. EQ
sprinkler leakage; Flood - 5% per Unit of Insurance subject to $250,000 min. per
occurrence as respects Covered Property situated in Special Hazard Flood Zones designated
by prefixes beginning with the letters A or V as determined by FEMA.
$25,000 Per Occurrence as respects All Other Flood.
24 Hour Waiting Period for Utility Services - Time Element
Equipment Breakdown:  $25,000 Direct Damage (Incl. Business Income & Extra Expense,
Perishable Goods)

VALUATION: Replacement Cost as respects Real & Personal Property / Actual Loss Sustained
as respects Business Income (Including Extra Expense)

CRIME / KIDNAP & RANSOM COVERAGE:
Insurance Carrier:  Hiscox Ins. Co.
Policy #UC22339874
Effective Dates:  9/1/18 - 9/1/19
Coverage / Limit of Insurance / Deductible:
Fidelity /Employee Theft:  $1,000,000 Limit / $25,000 Ded.
Forgery or Alteration: $1,000,000 / $25,000 Ded.
Inside & Outside the Premises:  $50,000 / $25,000 Ded.
Computer Funds & Transfer Fraud: $1,000,000 / $25,000 Ded.
Money Orders & Counterfeit Money: $1,000,000 / $25,000 Ded.
Identity Fraud Expense:  $25,000 / $1,0000 Ded
KIDNAP & RANSOM:
Insured Persons:  All Directors, Officers and Employees
Coverage Extensions: Threat Response, Disappearance Investigation and Expense, Express
Kidnap, Alternate Loss of Earnings, TRIA Risk
Ransom - $1,000,000 Per Insured Event
Transit - $1,000,000 Per Insured Event

COPYRIGHT 2000, AMS SERVICES INC.

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
09/04/2018

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | Pam Linares | | |
|---|---|---|---|---|---|
| Robert Harris Insurance Agency, Inc. | | PHONE (A/C, No. Ext): | (714) 619-4480 | FAX (A/C, No): | (714) 619-4481 |
| Lic. #0216736 | | E-MAIL ADDRESS: | pam@reharris.com | | |
| 3150 Bristol St., Suite 200 | | **INSURER(S) AFFORDING COVERAGE** | | | **NAIC #** |
| Costa Mesa | CA  92626 | INSURER A : | Liberty Mutual Fire Ins. Co. | | |
| INSURED | | INSURER B : | Liberty Insurance Underwriters | | 19917 |
| Ruby's Diner, Inc. etal | | INSURER C : | Allegiance Underwriting Group | | |
| Ruby's Laguna Hills, Ltd. | | INSURER D : | | | |
| 4100 MacArthur Blvd., Ste. 300 | | INSURER E : | | | |
| Newport Beach | CA  92660 | INSURER F : | | | |

| COVERAGES | **CERTIFICATE NUMBER:** CL189414268 | **REVISION NUMBER:** |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ☒ COMMERCIAL GENERAL LIABILITY | | | TB2Z91467842028 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE ☒ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | ☒ Deductible $25,000 | | | | | | MED EXP (Any one person) | $ |
| | Per Occurrence | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | OTHER: | | | | | | Employee Benefits | |
| A | AUTOMOBILE LIABILITY | | | AS6Z91467842018 | 09/01/2018 | 09/01/2019 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | UMBRELLA LIAB ☒ OCCUR | | | 1000061619-10 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 25,000,000 |
| | ☒ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ 25,000,000 |
| | ☐ DED ☒ RETENTION $ 10,000 | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | Y / N N / A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | DIRECTORS & OFFICERS LIABILITY | | | AUGBC001861 | 09/01/2018 | 09/01/2019 | $15,000 Retention | $2,000,000 Per Claim |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
PLEASE REFER TO PAGE 2 FOR THE FOLLOWING COVERAGES:
Liquor Liability / Employment Practices Liability / Commercial Property Program /
Crime / Kidnap & Ransom

LOCATION ADDRESS: 24155 Laguna Hills Mall, #1840-A, Laguna Hills, CA 92653.

CERTIFICATE HOLDER IS INCLUDED AS ADDITIONAL INTEREST

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Office of The United States Trustee<br>411 West Fourth Street,<br>Suite 7160<br>Santa Ana          CA  92701 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>_Dave Armstrong_ |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

# COMMENTS/REMARKS

LIQUOR LIABILITY:
Insurance Carrier: Liberty Mutual Ins. Co.
POLICY #TOCZ91467842038
Effective Date:  9/1/18 - 9/1/19
Limit of Liability: $1,000,000 Each Common Cause / $1,000,000 Policy Aggregate
Deductible:  $25,000 Per Occurrence

EMPLOYMENT PRACTICES LIABILITY:
Insurance Carrier:  Beazley Syndicate 2623/623 at Lloyds
Policy #AUGA00797B
Effective Date:  9/1/18 - 9/1/19
Limit of Liability:
$2,000,000 Maximum Limit of Liab for each Claim
$2,000,000 Third-Party Discrimination Limit of Liability
$2,000,000 Punitive, exemplary, and multiple damages Limit of Liability
$1,000,000 Maximum Aggregate Limit of Liability for all Claims of Wrongful Employment
Practices and Third-Party Discrimination
$150,000 Defense Cost only Wage & Hour Claims Coverage
$250,000 Defense Cost only Immigration Practices Enhancement
$10,000 Employment Event Endorsement
SELF-INSURED RETENTION:
$50,000 Each & Every Claim for Wrongful Employment Practices or Third Party Discrimination
$50,000 Each & Every Wage & Hour Claim

COMMERCIAL PROPERTY PROGRAM:
Insurance Carrier:  ARCH Specialty Insurance Company
Policy #ESP7304682-00
Effective Date:  9/1/18 - 9/1/19
Policy Limit of Liability:  $5,000,000 Per Occurrence Including:
Buildings, Business Personal Property, Newly Acquired Property, Fine Arts, EDP Equipment &
Media, Business Income, Extra Expense incl. Loss of Rents, 180 Days Extended Period of
Indemnity, Contingent Business Income, Ordinance or Law, Increased Period of Restoration,
Utility Services - Direct Damage & Time Element, Ingress & Egress - 30 days, Accounts
Receivables, Valuable Papers and Equipment Breakdown.

DEDUCTIBLES:  $10,000 Per Occurrence Except: 5% Earthquake - min. $100,000 (Incl. EQ
sprinkler leakage; Flood - 5% per Unit of Insurance subject to $250,000 min. per
occurrence as respects Covered Property situated in Special Hazard Flood Zones designated
by prefixes beginning with the letters A or V as determined by FEMA.
$25,000 Per Occurrence as respects All Other Flood.
24 Hour Waiting Period for Utility Services - Time Element
Equipment Breakdown:  $25,000 Direct Damage (Incl. Business Income & Extra Expense,
Perishable Goods)

VALUATION: Replacement Cost as respects Real & Personal Property / Actual Loss Sustained
as respects Business Income (Including Extra Expense)

CRIME / KIDNAP & RANSOM COVERAGE:
Insurance Carrier:  Hiscox Ins. Co.
Policy #UC22339874
Effective Dates:  9/1/18 - 9/1/19
Coverage / Limit of Insurance / Deductible:
Fidelity /Employee Theft:  $1,000,000 Limit / $25,000 Ded.
Forgery or Alteration: $1,000,000 / $25,000 Ded.
Inside & Outside the Premises:  $50,000 / $25,000 Ded.
Computer Funds & Transfer Fraud: $1,000,000 / $25,000 Ded.
Money Orders & Counterfeit Money: $1,000,000 / $25,000 Ded.
Identity Fraud Expense:  $25,000 / $1,0000 Ded
KIDNAP & RANSOM:
Insured Persons:  All Directors, Officers and Employees
Coverage Extensions: Threat Response, Disappearance Investigation and Expense, Express
Kidnap, Alternate Loss of Earnings, TRIA Risk
Ransom - $1,000,000 Per Insured Event
Transit - $1,000,000 Per Insured Event

# ACORD®

## CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
09/04/2018

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Pam Linares | | |
|---|---|---|---|---|
| Robert Harris Insurance Agency, Inc. | PHONE (A/C, No. Ext): (714) 619-4480 | | FAX (A/C, No): (714) 619-4481 | |
| Lic. #0216736 | E-MAIL ADDRESS: pam@reharris.com | | | |
| 3150 Bristol St., Suite 200 | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Costa Mesa                          CA  92626 | INSURER A : | Liberty Mutual Fire Ins. Co. | | |
| INSURED | INSURER B : | Liberty Insurance Underwriters | | 19917 |
| Ruby's Diner, Inc. etal | INSURER C : | Allegiance Underwriting Group | | |
| Ruby's Huntington Beach, Ltd. | INSURER D : | | | |
| 4100 MacArthur Blvd., Ste. 300 | INSURER E : | | | |
| Newport Beach                       CA  92660 | INSURER F : | | | |

| COVERAGES | CERTIFICATE NUMBER: CL189414268 | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS-MADE [X] OCCUR [X] Deductible $25,000 [X] Per Occurrence GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [ ] PRO-JECT [ ] LOC [ ] OTHER: | | | TB2Z91467842028 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | | | | | | | Employee Benefits | |
| A | AUTOMOBILE LIABILITY [ ] ANY AUTO [ ] OWNED AUTOS ONLY [ ] SCHEDULED AUTOS [X] HIRED AUTOS ONLY [X] NON-OWNED AUTOS ONLY | | | AS6Z91467842018 | 09/01/2018 | 09/01/2019 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | [X] UMBRELLA LIAB [X] OCCUR [X] EXCESS LIAB [ ] CLAIMS-MADE [ ] DED [X] RETENTION $ 10,000 | | | 1000061619-10 | 09/01/2018 | 09/01/2019 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY                    Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | | | | [ ] PER STATUTE  [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | DIRECTORS & OFFICERS LIABILITY | | | AUGBC001861 | 09/01/2018 | 09/01/2019 | $15,000 Retention | $2,000,000 Per Claim |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

PLEASE REFER TO PAGE 2 FOR THE FOLLOWING COVERAGES:
Liquor Liability / Employment Practices Liability / Commercial Property Program / Crime / Kidnap & Ransom

LOCATION ADDRESS: 1 MAIN STREET, HUNTINGTON BEACH, CA 92648

CERTIFICATE HOLDER IS INCLUDED AS ADDITIONAL INTEREST

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Office of The United States Trustee 411 West Fourth Street, Suite 7160 Santa Ana                          CA  92701 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Dave Armstrong* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

EXHIBIT "B"
Page 30

## COMMENTS/REMARKS

LIQUOR LIABILITY:
Insurance Carrier: Liberty Mutual Ins. Co.
POLICY #TOCZ91467842038
Effective Date:  9/1/18 - 9/1/19
Limit of Liability: $1,000,000 Each Common Cause / $1,000,000 Policy Aggregate
Deductible:  $25,000 Per Occurrence

EMPLOYMENT PRACTICES LIABILITY:
Insurance Carrier:  Beazley Syndicate 2623/623 at Lloyds
Policy #AUGA00797B
Effective Date:  9/1/18 - 9/1/19
Limit of Liability:
$2,000,000 Maximum Limit of Liab for each Claim
$2,000,000 Third-Party Discrimination Limit of Liability
$2,000,000 Punitive, exemplary, and multiple damages Limit of Liability
$1,000,000 Maximum Aggregate Limit of Liability for all Claims of Wrongful Employment
Practices and Third-Party Discrimination
$150,000 Defense Cost only Wage & Hour Claims Coverage
$250,000 Defense Cost only Immigration Practices Enhancement
$10,000 Employment Event Endorsement
SELF-INSURED RETENTION:
$50,000 Each & Every Claim for Wrongful Employment Practices or Third Party Discrimination
$50,000 Each & Every Wage & Hour Claim

COMMERCIAL PROPERTY PROGRAM:
Insurance Carrier:  ARCH Specialty Insurance Company
Policy #ESP7304682-00
Effective Date:  9/1/18 - 9/1/19
Policy Limit of Liability:  $5,000,000 Per Occurrence Including:
Buildings, Business Personal Property, Newly Acquired Property, Fine Arts, EDP Equipment &
Media, Business Income, Extra Expense incl. Loss of Rents, 180 Days Extended Period of
Indemnity, Contingent Business Income, Ordinance or Law, Increased Period of Restoration,
Utility Services - Direct Damage & Time Element, Ingress & Egress - 30 days, Accounts
Receivables, Valuable Papers and Equipment Breakdown.

DEDUCTIBLES:  $10,000 Per Occurrence Except: 5% Earthquake - min. $100,000 (Incl. EQ
sprinkler leakage; Flood - 5% per Unit of Insurance subject to $250,000 min. per
occurrence as respects Covered Property situated in Special Hazard Flood Zones designated
by prefixes beginning with the letters A or V as determined by FEMA.
$25,000 Per Occurrence as respects All Other Flood.
24 Hour Waiting Period for Utility Services - Time Element
Equipment Breakdown:  $25,000 Direct Damage (Incl. Business Income & Extra Expense,
Perishable Goods)

VALUATION: Replacement Cost as respects Real & Personal Property / Actual Loss Sustained
as respects Business Income (Including Extra Expense)

CRIME / KIDNAP & RANSOM COVERAGE:
Insurance Carrier:  Hiscox Ins. Co.
Policy #UC22339874
Effective Dates:  9/1/18 - 9/1/19
Coverage / Limit of Insurance / Deductible:
Fidelity /Employee Theft:  $1,000,000 Limit / $25,000 Ded.
Forgery or Alteration: $1,000,000 / $25,000 Ded.
Inside & Outside the Premises:  $50,000 / $25,000 Ded.
Computer Funds & Transfer Fraud: $1,000,000 / $25,000 Ded.
Money Orders & Counterfeit Money: $1,000,000 / $25,000 Ded.
Identity Fraud Expense:  $25,000 / $1,0000 Ded
KIDNAP & RANSOM:
Insured Persons:  All Directors, Officers and Employees
Coverage Extensions: Threat Response, Disappearance Investigation and Expense, Express
Kidnap, Alternate Loss of Earnings, TRIA Risk
Ransom - $1,000,000 Per Insured Event
Transit - $1,000,000 Per Insured Event

OFREMARK                                              **COPYRIGHT 2000, AMS SERVICES INC.**

EXHIBIT "C"

1
2
3
4

William N. Lobel, SBN 93202
PACHULSKI STANG ZIEHL & JONES LLP
650 Town Center Drive, Suite 1500
Costa Mesa, CA  92626
Tel:  714-384-4740
Fax:  714-384-4741
E-mail: wlobel@pszjlaw.com

5
6

[Proposed] Attorneys for Ruby's Diners, Inc., *et al.*
Debtors and Debtors-in-Possession

7

**UNITED STATES BANKRUPTCY COURT**

8

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

9
10
11
12
13

In re:

RUBY'S DINERS, INC., a California
corporation, *et al.,*[1]

      Debtors and Debtors-in-Possession,

Affects:

14

☒  All Debtors

15

☐  RUBY'S DINERS, INC., ONLY

16

☐  RUBY'S SOCAL DINERS, LLC, ONLY

17
18

☐  RUBY'S QUALITY DINERS, LLC,
ONLY

19
20

☐  RUBY'S HUNTINGTON BEACH, LTD.,
ONLY

21

☐  RUBY'S LAGUNA HILLS, LTD. ONLY

22

☐  RUBY'S OCEANSIDE, LTD., ONLY

23

☐  RUBY'S PALM SPRINGS, LTD., ONLY

24
25
26

Case No. 8:18-bk-13311-CB
Chapter 11

(Jointly Administered With Case Nos.
8:18-bk-13197-CB; 8:18-bk-13198-CB; 8:18-bk-
13199-CB; 8:18-bk-13200-CB; 8:18-bk-13201-CB;
8:18-bk-13202-CB)

**ORDER AUTHORIZING DEBTORS TO
ENTER INTO INSURANCE PREMIUM
FINANCE AGREEMENT AND TO PROVIDE
ADEQUATE PROTECTION**

Date:       [TBD]
Time:      [TBD]
Courtroom:  5A
Address:    411 West Fourth Street
                Santa Ana, CA  92701

27
28

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Ruby's Diners, Inc. (8143);
Ruby's SoCal Diners, LLC (9782); Ruby's Quality Diners, LLC (1539); Ruby's Huntington Beach, Ltd. (1331); Ruby's
Laguna Hills, Ltd. (6603); Ruby's Oceanside, Ltd. (9104); and Ruby Palm Springs, Ltd. (9627).

1

1    A hearing was held on September __, 2018, at _____ p.m., before the Honorable Erithe A.

2    Smith, United States Bankruptcy Judge for the Central District of California, in Courtroom 5A

3    located at 411 West Fourth St., Santa Ana, CA, on the *Motion for Order Authority to Enter Into*

4    *Insurance Premium Finance Agreement and to Provide Adequate Protection* (the "Motion") filed by

5    Ruby's Diner, Inc., a California corporation, the above-captioned (lead) debtor and debtor-in

6    possession ("RDI"); Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal

7    Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's

8    Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's

9    Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside,

10   Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a

11   California limited partnership ("Ruby's Palm Springs") (collectively, SoCal Diners, Quality, Ruby's

12   Huntington Beach, Ruby's Laguna Hills, Ruby's Oceanside and Ruby's Palm Springs are referred to

13   herein as the "SoCal Debtors" and, together with RDI, the "Debtors"), pursuant to which the Debtors

14   seek the Court's approval of the agreement and to provide adequate protection of the interests of

15   FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("FIRST") in

16   the bankruptcy cases and, it appearing to the Court that the operative facts as stipulated by the

17   parties, are those appearing in the Motion, it is hereby ORDERED THAT:

18       1.    The Motion is granted.

19       2.    RDI, on behalf of the Covered Entities (as defined in the Motion), is authorized to:

20           a) enter into the premium finance agreements attached to the Motion as Exhibit "A" (the

21              "Premium Finance Agreements");

22           b) grant FIRST or its successor or assigns a first priority lien on and security interest in

23              unearned premiums as described in the Premium Finance Agreements; and

24           c) timely make all payments due under the Premium Finance Agreements.  FIRST is

25              authorized to receive and apply such payments to the Indebtedness (as defined in the

26              Motion) owed to FIRST as provided in the Premium Finance Agreements.

27

28

2

3.      Without limitation, the liens, security interests and rights in unearned premiums granted under the Premium Finance Agreements are senior to the lien of any DIP Lender in these Cases and are senior to any claims under 11 U.S.C. §§ 503, 506(c) or 507(b).

4.      If additional premiums become due to insurance companies under the Policies financed under the Premium Finance Agreements, RDI and FIRST or its successor or assigns are authorized to modify the Premium Finance Agreements as necessary to pay the additional premiums without the necessity of further hearing or order of this Court.

5.      The Covered Entities will continue to provide the funding of their respective premium amounts so that RDI can make the requisite payments to FIRST called for under the Premium Finance Agreements.

6.      In the event any of the Covered Entities does not make any of the payments under this Order or any of the Premium Finance Agreements as they become due, the automatic stay shall automatically lift to enable FIRST and or/third parties, including insurance companies providing the protection under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the collateral and apply such collateral to the Indebtedness owed to FIRST under the Premium Finance Agreements.

7.      FIRST, or any third party, including insurance companies providing the coverage under the Policies, exercising such rights shall comply with the notice provisions and other provisions of the Premium Finance Agreement.

8.      The Premium Finance Agreements and the liens and security interests in the unearned premiums granted pursuant hereto shall continue in full force and effect and Indebtedness due under the Premium Finance Agreements shall remain due and owing notwithstanding: (i) the dismissal or closure of these Cases, (ii) the discharge of Debtors, or (iii) the confirmation of a plan of reorganization.

###

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 1500, Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled **NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTORS FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT AND TO PROVIDE ADEQUATE PROTECTION; DECLARATION OF DOUGLAS S. CAVANAUGH IN SUPPORT THEREOF** will be served or was served (a) on the judge in chamber in the form and manner required by LBR 5005-2(d); and the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **9/19/2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____ I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **9/19/2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/19/2018 | Nancy Lockwood | /s/ Nancy Lockwood |
|-----------|----------------|--------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:316841.1 76135/001

**F 9013-3.1.PROOF.SERVICE**

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- **George B Blackmar**    gblackmar@bpslaw.net
- **Meghan Canty**    mcanty@tocounsel.com, lkwon@tocounsel.com;sschuster@tocounsel.com
- **Aaron Davis**    aaron.davis@bryancave.com, kat.flaherty@bryancave.com
- **Alan J Friedman**    afriedman@shbllp.com, lgauthier@shbllp.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **David S Kupetz**    dkupetz@sulmeyerlaw.com,
  dperez@sulmeyerlaw.com;dperez@ecf.inforuptcy.com;dkupetz@ecf.inforuptcy.com
- **William N Lobel**    wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com,
  csheets@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Jessica G McKinlay**    mckinlay.jessica@dorsey.com
- **Malcolm D Minnick**    dminnick@pillsburylaw.com, m.minnick@comcast.net
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Matthew S Walker**    matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

2. <u>**SERVED BY OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**</u>:

<u>Via Overnight Mail</u>:
The Honorable Erithe A. Smith, United States Bankruptcy Court,
Central District of California, Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 (courtesy bin)
Santa Ana, CA 92701-4593

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:316841.1 76135/001

**F 9013-3.1.PROOF.SERVICE**