William N. Lobel, SBN 93202
PACHULSKI STANG ZIEHL & JONES LLP
650 Town Center Drive, Suite 1500
Costa Mesa, CA  92626
Tel:  714-384-4740
Fax:  714-384-4741
E-mail: wlobel@pszjlaw.com

[Proposed] Attorneys for Ruby's Diners, Inc., *et al.*
Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No. 8:18-bk-13311-CB |
| RUBY'S DINER, INC., a California corporation, *et al.*,[1] | Chapter 11 |
| Debtors and Debtors-in-Possession, | (Jointly Administered With Case Nos. 8:18-bk-13197-CB; 8:18-bk-13198-CB; 8:18-bk-13199-CB; 8:18-bk-13200-CB; 8:18-bk-13201-CB; 8:18-bk-13202-CB) |
| Affects: | |
| ☒ All Debtors | |
| ☐ RUBY'S DINER, INC., ONLY | **APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY DONLIN, RECANO & COMPANY, INC. AS CLAIMS, NOTICING AND BALLOTING AGENT TO DEBTORS,  EFFECTIVE AS OF THE PETITION DATES; DECLARATION OF NELLWYN VOORHIES ATTACHED HERETO** |
| ☐ RUBY'S SOCAL DINERS, LLC, ONLY | |
| ☐ RUBY'S QUALITY DINERS, LLC, ONLY | |
| ☐ RUBY'S HUNTINGTON BEACH, LTD., ONLY | [NO HEARING REQUIRED UNLESS REQUESTED PER L.B.R. 2014-1(b)] |
| ☐ RUBY'S LAGUNA HILLS, LTD. ONLY | |
| ☐ RUBY'S OCEANSIDE, LTD., ONLY | |
| ☐ RUBY'S PALM SPRINGS, LTD., ONLY | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Ruby's Diners, Inc. (8143); Ruby's SoCal Diners, LLC (9782); Ruby's Quality Diners, LLC (1539); Ruby's Huntington Beach, Ltd. (1331); Ruby's Laguna Hills, Ltd. (6603); Ruby's Oceanside, Ltd. (9104); and Ruby Palm Springs, Ltd. (9627).

APPLICATION TO EMPLOY DONLIN RECANO

Ruby's Diner, Inc., a California corporation ("RDI"); Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside, Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a California limited partnership ("Ruby's Palm Springs") (collectively, SoCal Diners, Quality, Ruby's Huntington Beach, Ruby's Laguna Hills, Ruby's Oceanside and Ruby's Palm Springs are referred to herein as the "SoCal Debtors" and, together with RDI, the "Debtors"), hereby file this application (the "Application") for an order authorizing the employment of Donlin, Recano & Company, Inc. ("DRC" or the "Claims, Noticing and Balloting Agent") pursuant to section 156(c) of title 28 of the United States Code (the "Judicial Code"), effective as of the Petition Dates (defined below).

In support of this Application, the Debtors rely on the following Memorandum of Points and Authorities, the attached Declaration of Nellwyn Voorhies (the "Voorhies Declaration") in compliance with 5075-1 of the Local Bankruptcy Rules for the Central District of California (Local Rules"), and the Declaration of Douglas S. Cavanaugh in Support of Emergency First Day Motions filed on September 5, 2018 (the "First Day Declaration") [Docket No. 12], which is incorporated by reference herein. The Debtors have also concurrently filed a *Statement of Disinterestedness for Employment of Professional Person Under FRBP 2014*.

The Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties-in-interest and therefore should be granted. Accordingly, the Debtors request the Court enter an order (the "Retention Order") (a) authorizing the Debtors to employ and retain DRC to act as claims, noticing and balloting agent effective as of the SoCal Debtors' Petition Date (defined below); (b) approving the Engagement Agreement (defined

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

APPLICATION TO EMPLOY DONLIN RECANO

1  below); and (c) granting such other and further relief as is appropriate.  In support of the

2  Application, the Debtors respectfully represent as follows.

**I.**

**STATEMENT OF FACTS**

**A.    Jurisdiction and Venue**

This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.
This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C.
§§ 1408 and 1409.

**B.    Background**

On August 29, 2018, the SoCal Debtors filed voluntary petitions for relief under chapter 11
of the Bankruptcy Code (the "SoCal Debtors' Petition Date").  On September 5, 2018, RDI filed its
voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "RDI Petition Date").
Collectively, the SoCal Debtors' Petition Date and the RDI Petition Date are referred to herein as the
"Petition Dates."

On September 5, 2018, the Court entered an order jointly administering the Debtors' cases
(these "Cases"), with RDI designated as the "Lead Case."  [Docket No. 6].

The Debtors continue to operate their businesses and manage their affairs as debtors-in-
possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 19, 2018,
the Office of the United States Trustee appointed the Committee of Creditors Holding Unsecured
Claims in the case of RDI (the "Committee").  No party has requested the appointment of a trustee
or examiner in the Cases.

The Debtors and their affiliates (the "Company") own, operate and manage restaurants under
the trade names "Ruby's®," "Ruby's® Diner," "The Ruby Restaurant Group," "Ruby's® Dinette" and
"Ruby's® Shake Shop."  The Company has operated Ruby's® Diner restaurants since its
incorporation in 1985 and is known as a purveyor of very popular burgers, fries and shakes.

Additional information regarding the Debtors' businesses, capital structures, and the
circumstances leading to the Cases is set forth in the First Day Declaration.

**II.**

**RELIEF REQUESTED**

By this Application, the Debtors seek entry of an order, pursuant to section 156(c) of the Judicial Code authorizing and approving the retention and appointment of DRC as claims, noticing and balloting agent in connection with these Cases, effective as of the SoCal Debtors' Petition Date, pursuant to the terms of that certain Standard Claims Administration and Noticing Agreement entered into between the Debtors and DRC (the "Engagement Agreement") to assume responsibility for, among other things: (i) serving as the Debtors' notice agent to mail certain notices to the estates' creditors and parties-in-interest; (ii) providing computerized claims, claims objections and balloting database services; and (iii) providing expertise, consultation and assistance with claim and ballot processing and with other administration information related to these Cases.  As discussed herein, DRC is well-qualified and experienced in rendering the services described in this Application and in the Engagement Agreement.  A true and correct copy of the Engagement Agreement is attached to the Voorhies Declaration as Exhibit "1."

A.    **The Qualifications of DRC**

DRC specializes in providing comprehensive chapter 11 administrative services, including noticing, claims processing and balloting, and other related services critical to the effective administration of chapter 11 cases.  Indeed, DRC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holder and all other parties in interest.  Further, DRC has experience working with, and will continue to work with, the Clerk to ensure that the services provided conform to all of the court's procedures, any local rules, and the provisions of any orders entered by the court.  Accordingly, the Debtors' estates and its creditors will benefit from DRC's retention because DRC has developed efficient and cost-effective methods in this area of expertise.

DRC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation and balloting, and facilitating other administrative aspects of chapter 11 cases.  DRC has provided identical or substantially similar services in other chapter 11

APPLICATION TO EMPLOY DONLIN RECANO

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1    cases, including, among others: *In re: B&B Liquidating, LLC*, Case No. 2:18-bk-11744-NB (Bankr.

2    C.D. Cal. 2018); *In re: Gump's Holdings, LLC, et al.*, Case No. BK-S-18-14683-leb (Bankr. D. Nev.

3    2018); In *re: Bostwick Laboratories, Inc., et al.,* Case No. 17-10570 (BLS) (Bankr. D. Del 2017); *In*

4    *re: Emerald Oil, Inc., et al,* Case No. 16-10704 (KG) (Bankr. D. Del. 2016); *In re: Roadhouse*

5    *Holding, Inc., et al.,* Case No. 16-11819 (BLS) (Bankr. D. Del. 2016); *In re: Peek, Aren't You*

6    *Curious, Inc.,* Case No. 16-30146 (Bankr. N.D. Cal. 2016); *In re: Freedom Communications, Inc., et*

7    *al,* Case No. 8:15-bk-15311-MW (Bankr. C.D. Cal. 2015); *In re: Sullivan International Group, Inc.,*

8    Case No. 15-02281-11 (Bankr. S.D. Cal. 2015).

9    **B.**    **Services to be Provided**

10        This Application pertains to the work to be performed by DRC under the Clerk's delegation

11    of duties permitted by section 156(c) of the Judicial Code.  Specifically DRC will provide consulting

12    services regarding communications, noticing and claims management and reconciliation, and

13    voting/balloting, and any other services agreed upon by the parties or otherwise required by

14    applicable law, government regulations, or court rules or orders.  A more detailed description of the

15    type of services offered by DRC, as well as the fees charged for such services is attached as

16    Schedule "A" to the Engagement Agreement (the "Engagement Agreement") attached as Exhibit "1"

17    to the Voorhies Declaration.

18        In addition, as DRC is going to serve as the official record for filed proofs of claim, all

19    original claims shall be sent to DRC at 6201 15th Avenue, Brooklyn, NY 11219, with a copy to the

20    Clerk's Office.  DRC shall keep its own official claims registry and will electronically docket all

21    claims onto the Court's claim register for the Cases.  If there is a discrepancy between the official

22    claims registry maintained by DRC and the Court's claims register, then the claims registry

23    maintained by the Court will be deemed the accurate record.  The Clerk's Office shall have

24    unlimited free access to DRC's claims registry.

25        DRC will not be responsible for recording the transfers of claims and providing notices of

26    such transfers as required by Bankruptcy Rule 3001(e).  The Clerk's Office shall be responsible for

27    collecting the fee, processing and recording all transfer of claims.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

APPLICATION TO EMPLOY DONLIN RECANO

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**C.    Compensation**

DRC will be compensated based on the services it provides at the rates set forth in the Engagement Agreement.  The Debtors request that such fees and expenses incurred by DRC in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code as ordinary course expenses and be paid in the ordinary course of business without further application to or order of the Court.  DRC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel to the Committee, and any party in interest who specifically requests service of the monthly invoices.

Prior to the SoCal Debtors' Petition Date, the Debtors provided DRC: (i) a retainer of $10,000.00; and (ii) $18,102.36 in connection with pre-petition fees and expenses.  DRC may hold such retainer under the Engagement Agreement during these Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

**D.    No Adverse Interests/Disinterestedness**

As of the date of this Application, to the best of Debtors' knowledge and after consideration of the disclosures made below and in the attached Voorhies Declaration, DRC and all if its principals and employees are disinterested persons as that term is defined in 11 U.S.C. § 101(14).  In connection with its retention as the Claims, Noticing and Balloting Agent, DRC represents in the Voorhies Declaration, among other things, that:

a.  DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims, Noticing and Balloting Agent in these Cases;

b.  By accepting employment in these Cases, DRC waives any rights to receive compensation from the United States government in connection with the Debtors' Cases;

c.  In its capacity as the Claims, Noticing and Balloting Agent in these Cases, DRC will not be an agent of the United States and will not act on behalf of the United States; and

d.  DRC will not employ any past or present employees of the Debtors in connection with its

APPLICATION TO EMPLOY DONLIN RECANO

1    work as the Claims, Noticing & Balloting Agent in these Cases.

2    Further, DRC represents in the Voorhies Declaration that neither DRC nor any of its

3    principals or employees are connected with the Debtors, their creditors, any other party in interest,

4    their respective attorneys and accountants, or to the bankruptcy estates except as follows:

5    a.    DRC has from time-to-time worked with the Debtors' counsel as a claims, noticing

6    and balloting agent in certain chapter 11 cases, including *In re Freedom Communications, Inc., et al,*

7    Case No. 15-15311 (MW) (Bankr. C.D. Cal 2015), William N. Lobel was partner at Lobel Weiland

8    Golden Friedman LLP (now known as Weiland Golden Goodrich LLP).

9    b.    DRC had identified numerous vendors appearing on the Debtors' matrix that are also

10    vendors of DRC, but DRC has not represented in the past, and is not currently representing, any of

11    those vendors.

12    c.    Certain of DRC's professionals were formerly employed by firms that may be

13    creditors or may provide professional services to parties in interest in these Cases.  Such firms

14    include Paul Hastings LLP, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Skadden, Arps, Slate,

15    Meagher & Flom LLP, Sheppard, Mullin, Richter & Hampton LLP, Baker & McKenzie LLP,

16    Clifford Chance, Hughes Hubbard & Reed LLP, Davis Polk & Wardwell LLP, Levene Neale,

17

18    Bender, Yoo & Brill LLP, Law Offices of David Carlebach, Blank Rome LLP, Anderson Kill,

19    Willkie Farr & Gallagher LLP, Dechert LLP, Pryor Cashman LLP, Schulte Roth & Zabel LLP,

20    Kurtzman Carson Consultants LLC, Epiq Bankruptcy Solutions, LLC, Rust Omni and Wells Fargo

21    Bank.  Except as disclosed herein, these professionals did not work on any matters involving the

22    Debtors while employed by their previous firms.  Moreover, these professionals were not employed

23    by their previous firms when these Cases were filed.

24

25    DRC is an affiliate of American Stock Transfer & Trust Company, LLC ("AST").  AST is a

26    global financial communications and stakeholder management company.  Within the AST corporate

27    structure, DRC operates as a separate and independent legal entity.  Given the legal and operational

28    separateness of DRC from AST, DRC does not believe that any relationships that AST and its

affiliates maintain would create an interest of DRC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

**E.**  **Basis for Relief**

This Application is made pursuant to section 156(c) of the Judicial Code so that DRC may assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claims filed in these Cases.  Section 156 of the Judicial Code, provides, in pertinent part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

The Debtors anticipate that there will be more than 1500 entities to be noticed in these Cases. In view of the number of anticipated claimants and complexity of the Debtors' business, the Debtors submit that the appointment of DRC as the Claims, Noticing and Balloting Agent is both necessary and in the best interests of the Debtors' estates and its creditors because the Debtors will be relieved of the burdens associated with the claims, noticing and balloting services.  Accordingly, the Debtors will be able to devote their full attention and resources to their reorganization efforts.

**F.**  **Approving Employment of DRC as of the Petitions Dates is Appropriate**

Pursuant to the Debtors' request, DRC has acted as the Claims, Noticing and Balloting Agent since the Petitions Dates with assurances that the Debtors would seek approval of its employment and retention, effective as of the SoCal Debtors' Petition Date, so that DRC may be compensated for its pre-Application services.  Such services included the extensive service of the Debtors "first-day" motions and related pleadings.

The Debtors believe that no party in interest will be prejudiced by the granting of the employment of DRC as of the SoCal Debtors' Petition Date, as DRC has provided and continues to provide valuable services to the Debtors in the interim period.

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Costa Mesa, California

8

APPLICATION TO EMPLOY DONLIN RECANO

1    Courts in the Central District of California routinely retroactively approve employment

2  similar to that request herein in matters comparable to this matter.  See, e.g. *In re Cornerstone*

3  *Apparel, Inc.,* Case No. 2:17-bk-17292 -VX (Bankr. C.D. Cal. Sept. 5, 2017) (approving *nunc pro*

4  *tunc* employment of claims and noticing agent to perform claims and noticing services); *In re*

5  *Channel Technologies Group, LLC*, Case No. 9-16-bk-11912-PC (Bankr. C.D. Cal. Nov 1, 2016)

6  (same); *In re Freedom Communications, Inc., et al.,* Case No. 8:15-bk-15311-MW (Bankr. C.D. Cal.

7  Jan. 19, 2016).

8                                                    **I.**

9                                          **CONCLUSION**

10    Based on the foregoing, the Debtors respectfully request entry of an order, pursuant to 28 U.S.C.

11  section 156(c) of the Judicial Code: (1) authorizing and approving the retention and appointment of

12  DRC as the Claims, Noticing and Balloting Agent in these Cases pursuant to the terms of the

13  Engagement Agreement, retroactive to the SoCal Debtors' Petition Date; (2) approving the

14  Engagement Agreement; and (3) granting such other and further relief as the Court deems just and

15  proper.

16  Dated:     September  28, 2018              Ruby's Diner, Inc., a California corporation, *et al.*

17

18

19                                      By _____
                                              Douglas S. Cavanaugh
20                                            Chief Executive Officer on behalf of Ruby's
                                              Diner, Inc., and Authorized Signatory for
21                                            Ruby's SoCal Diners, LLC, *et al.*, Debtors and
                                              Debtors-in-Possession
22

23  Submitted by:

24  PACHULSKI STANG ZIEHL & JONES LLP

25

26  By _____
        William N. Lobel
27      [Proposed] Attorneys for the Debtors and
        Debtors-in-Possession, Ruby's Diner, Inc., a
28      California corporation, *et al.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

DOCS_LA-#316016.4 76135/001

9

APPLICATION TO EMPLOY DONLIN RECANO

## DECLARATION OF NELLWYN VOORHIES

I, Nellwyn Voorhies, declare and state as follows:

1.       I am the Executive Director of Donlin, Recano & Company, Inc. ("DRC"), a chapter 11 administrative services firm, whose offices are located at 6201 15th Avenue, Brooklyn, New York 11219.  Except as otherwise noted, I have personal knowledge of the facts contained in this Declaration.

2.       I make this Declaration in support of the application (the "Application")[1] filed by Ruby's Diner, Inc., a California corporation ("RDI" ); Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside, Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a California limited partnership ("Ruby's Palm Springs") (collectively, SoCal Diners, Quality, Ruby's Huntington Beach, Ruby's Laguna Hills, Ruby's Oceanside and Ruby's Palm Springs are referred to herein as the  "SoCal Debtors" and, together with RDI, the "Debtors"), to employ DRC as claims, noticing and balloting agent to the Debtors effective as of the SoCal Debtors' Petition Date, as defined in the Application.[2]

3.       Pursuant to the terms of the Standard Claims Administration and Noticing Agreement (the "Engagement Agreement"), DRC will provide consulting services regarding communications, noticing and claims management and reconciliation, and balloting, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders.  A more detailed description of the type of services offered by DRC, as well as the fees charged for such services is attached as Schedule "A" to the Engagement Agreement attached hereto as Exhibit "1" and incorporated herein by reference.

4.       DRC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation and balloting, and facilitating other administrative

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Application.

[2] The SoCal Debtors filed for relief on August 29, 2018.

APPLICATION TO EMPLOY DONLIN RECANO

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1  aspects of chapter 11 cases. DRC has provided identical or substantially similar services in other

2  chapter 11 cases, including, among others: *In re: B&B Liquidating, LLC*, Case No. 2:18-bk-11744-

3  NB (Bankr. C.D. Cal. 2018); *In re: Gump's Holdings, LLC, et al.*, Case No. BK-S-18-14683-leb

4  (Bankr. D. Nev. 2018); In *re: Bostwick Laboratories, Inc., et al.*, Case No. 17-10570 (BLS) (Bankr.

5  D. Del 2017); *In re: Emerald Oil, Inc., et al*, Case No. 16-10704 (KG) (Bankr. D. Del. 2016); *In re:*

6  *Roadhouse Holding, Inc., et al.*, Case No. 16-11819 (BLS) (Bankr. D. Del. 2016); *In re: Peek,*

7  *Aren't You Curious, Inc.,* Case No. 16-30146 (Bankr. N.D. Cal. 2016); *In re: Freedom*

8  *Communications, Inc., et al,* Case No. 8:15-bk-15311-MW (Bankr. C.D. Cal. 2015); *In re: Sullivan*

9  *International Group, Inc.*, Case No. 15-02281-11 (Bankr. S.D. Cal. 2015).

10      5.      DRC represents that:

11              a.      it will not consider itself employed by the United States government and shall

12  not seek any compensation from the United States government in its capacity as the Claims,

13  Noticing and Balloting Agent in these Cases;

14              b.      by accepting employment in these Cases, DRC waives any rights to receive

15  compensation from the United States government in connection with these Cases;

16              c.      in its capacity as the Claims, Noticing and Balloting Agent in these Cases,

17  DRC will not be an agent of the United States and will not act on behalf of the United States;

18  and

19              d.      it will not employ any past or present employees of the Debtors in connection

20  with its work as the Claims, Noticing & Balloting Agent in these Cases.

21      6.      As DRC is going to serve as the official record for filed proofs of claim, all original

22  claims shall be sent to DRC at 6201 15th Avenue, Brooklyn, NY 11219, with a copy to the Clerk's

23  Office.

24      7.      DRC shall keep its own official claims registry and will electronically docket all

25  claims onto the Court's claim register for the Cases. If there is a discrepancy between the official

26  claims registry maintained by DRC and the Court's claims register, then the claims registry

27  maintained by the Court will be deemed the accurate record. The Clerk's Office shall have

28  unlimited free access to DRC's claims registry.

APPLICATION TO EMPLOY DONLIN RECANO

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1

2    8. DRC will not be responsible for recording the transfers of claims and providing notices of

3    such transfers as required by Bankruptcy Rule 3001(e). The Clerk's Office shall be responsible for

4    collecting the fee, processing and recording all transfer of claims.

5    9.    In addition, DRC has performed a thorough relationship check based upon the

6    information provided to me by the Debtors and represents that neither DRC nor any of its principals

7    or employees are connected with the Debtors, their creditors, any other party in interest, its

8    respective attorneys and accountants, or to the bankruptcy estates except as follows:

9    a.    DRC has from time-to-time worked with the Debtors' counsel as a claims, noticing

10    and balloting agent in certain chapter 11 cases, including *In re Freedom Communications,*

11    *Inc., et al,* Case No. 15-15311 (MW) (Bankr. C.D. Cal 2015), William N. Lobel was partner

12    at Lobel Weiland Golden Friedman LLP (now known as Weiland Golden Goodrich LLP);

13    b.    DRC had identified numerous vendors appearing on the Debtors' matrix that are also

14    vendors of DRC, but DRC has not represented in the past, and is not currently representing

15    any of those vendors;

16    c.    Certain of DRC's professionals were formerly employed by firms that may be

17    creditors or may provide professional services to parties in interest in these Cases. Such

18    firms include Paul Hastings LLP, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Skadden,

19    Arps, Slate, Meagher & Flom LLP, Sheppard, Mullin, Richter & Hampton LLP, Baker &

20    McKenzie LLP, Clifford Chance, Hughes Hubbard & Reed LLP, Davis Polk & Wardwell

21    LLP, Levene Neale, Bender, Yoo & Brill LLP, Law Offices of David Carlebach, Blank

22    Rome LLP, Anderson Kill, Willkie Farr & Gallagher LLP, Dechert LLP, Pryor Cashman

23    LLP, Schulte Roth & Zabel LLP, Kurtzman Carson Consultants LLC, Epiq Bankruptcy

24    Solutions, LLC, Rust Omni and Wells Fargo Bank. Except as disclosed herein, these

25    professionals did not work on any matters involving the Debtors while employed by their

26    previous firms. Moreover, these professionals were not employed by their previous firms

27    when these Cases were filed;

28    10.    DRC is an affiliate of American Stock Transfer & Trust Company, LLC ("AST").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

APPLICATION TO EMPLOY DONLIN RECANO

AST is a global financial communications and stakeholder management company. Within the AST corporate structure, DRC operates as a separate and independent legal entity. Given the legal and operational separateness of DRC from AST, DRC does not believe that any relationships that AST and its affiliates maintain would create an interest of DRC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

11.    There may be other creditors of the Debtors that DRC may have or may be presently representing, but in no event is DRC representing any other creditors with respect to the Debtors' bankruptcy proceedings. To the extent I become aware of DRC having represented any other creditors of the Debtors, I will file a supplemental declaration advising the Court of same. To the extent that DRC discovers any facts bearing on matters described herein, DRC will supplement the information contained herein.

12.    Notwithstanding anything contained herein, as part of its diverse business, DRC is the noticing, claims, and balloting agent for debtors in numerous cases involving many different creditors (including taxing authorities), professionals, including attorneys, accountants, investment bankers, and financial consultants, some of which may be creditors or represent creditors; and parties-in-interest in these Cases. In addition, DRC has in the past and will likely in the future continue working with or against other professional involved in these Cases unrelated to these Cases. Based upon my current knowledge of the parties involved, and to the best of my knowledge, none of these business relations constitute interests adverse to that of the creditors, or the Debtors' estates, with respect to the matter upon which DRC is to be engaged. Additionally, DRC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to these Cases.

13.    Based upon the information available to me, I believe that DRC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that DRC and its personnel:  (a) are not creditors, equity security holders, or insiders of the Debtors; (b) are not and were not, within two years before the date of the filing of these Cases, a director, officer, or employee of the Debtors; and (c) do not have an interest materially adverse to the interests of these Debtors' estates or any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

APPLICATION TO EMPLOY DONLIN RECANO

1  class of creditors or equity security holders, by reason of any direct or indirect relationship to,

2  connection with, or interest in these Debtors.  Prior to the filing of these Cases, the Debtors paid

3  DRC: (a) a retainer of $10,000.00; and (b) $18,102.36 in connection with pre-petition fees and

4  expenses.  DRC may hold such retainer under the Engagement Agreement during these Cases as

5  security for the payment of fees and expenses incurred under the Engagement Agreement.

6      14.    In performing the services identified above, DRC will charge the rates set forth in

7  Schedule A to the Engagement Agreement.  The rates set forth therein are as favorable and

8  reasonable as the prices DRC charges in cases in which it has been retained to perform similar

9  bankruptcy related services.

10     15.    DRC will comply with all requests of the Clerk's Office and the guidelines

11 promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. §

12 156(c).

13     I declare under penalty of perjury under the laws of the United States of America, that the

14 foregoing is true and correct.

15     Executed this 28 day of September, 2018 at New York, NY.

16

17     _____

18     Nellwyn Voorhies

19

20

21

22

23

24

25

26

27

28

APPLICATION TO EMPLOY DONLIN RECANO

DOCS_LA-#316016.4 76135/001

14

# **EXHIBIT 1**

## **DRC ENGAGEMENT AGREEMENT**

## Donlin, Recano & Company, Inc.

### STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

### <u>TERMS AND CONDITIONS</u>

**Donlin, Recano & Company, Inc.** (hereinafter called "DRC") agrees to provide Ruby's Holdings, including but not limited to any and all bankruptcy cases filed by any affiliate of Ruby's Holdings (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. <u>SERVICES:</u>** DRC agrees to provide the Client with consulting services regarding communications, noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. <u>CHARGES:</u>** All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. <u>TRANSPORTATION OF DATA:</u>** Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**Donlin, Recano & Company, Inc.**

**4. EVERGREEN RETAINER & INVOICES**:   At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $10,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement. DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer. Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client.  DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer.  Client shall pay the charges set forth in Schedule A, attached hereto.  DRC shall invoice the Client monthly for all services rendered during the preceding month.  Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing.  Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay").  Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC.  Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full.  DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client.  The undisputed portion of the invoice will remain due and payable.  Late charges shall not accrue on any amounts in dispute.  Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses.  The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach").  Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

**5. STORAGE**:  Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility.  Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**6. E-MAIL COMMUNICATIONS**:  DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address.  However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free.  It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. SUPPLIES**:  All supplies shall be furnished at Client's expense.

**8. WARRANTY AND RELIANCE**:  Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect

**Donlin, Recano & Company, Inc.**

to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

9. **TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

10. **TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

11. **INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

12. **CONFIDENTIALITY**: Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is

## Donlin, Recano & Company, Inc.

required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

13. **OWNERSHIP OF PROGRAMS:** Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

14. **SYSTEMS IMPROVEMENTS:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

15. **UNUSUAL MEASURES:** Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

16. **JURISDICTION.** In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

17. **FORCE MAJEURE.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

18. **NOTICE.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows:  if to DRC, to Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, New York, New York 11219, Attention: Nellwyn Voorhies, Esq.; if to the Client, to Pachulski Stang Ziehl & Jones LLP, 650 Town Center Drive, Suite 1500, Costa Mesa, CA 92626, Attention: William N. Lobel, Esq

19. **GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

20. **SEVERABILITY.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

21. **ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

### Donlin, Recano & Company, Inc.

**22. GENERAL:** The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By: _____

Signature: _____

Title: _____

Date: _____


Accepted and Approved:

Ruby's Holdings

By: *TAD BELSHE*

Signature: *[signature]*

Title: *BVP*

Date: *6-19-18*

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

## Donlin, Recano & Company, Inc.

### SCHEDULE A
### Ruby's Holdings
### Fee Schedule

| Professional Service | Hourly Rates |
|---|---|
| Senior Bankruptcy Consultant | $175 |
| Case Manager | $140 |
| Technology/Programming Consultant | $110 |
| Consultant/Analyst | $90 |
| Clerical | $45 |

| Noticing Service | |
|---|---|
| Laser Printing/ Photocopies | $.09 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |

| Solicitation, Balloting, Schedule/SOFA | |
|---|---|
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $90 - $175 as needed |
| Public Securities Solicitation | N/A |
| Schedule/SOFA preparation | $90 - $195 per Hour |

| Claims Docketing and Management | |
|---|---|
| Website Development | $90 per Hour |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.05 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |

| Data Room Services | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $90 per Hour |

| Miscellaneous | |
|---|---|
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $65 per hour |
| Strategic Communications | $395 per hour |

 Donlin Recano

www.donlinrecano.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 1500, Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled **APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY DONLIN RECANO & COMPANY, INC. S CLAIMS NOTICING AND BALLOTING AGENT TO DEBTORS, EFFECTIVE AS OF THE PETITIONS DATES; DECLARATION OF NELLWYN VOORHIES ATTACHED HERETO.** will be served or was served (a) on the judge in chamber in the form and manner required by LBR 5005-2(d); and the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **9/28/2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____  I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/28/2018 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:316841.1 76135/001

**F 9013-3.1.PROOF.SERVICE**

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- **George B Blackmar**    gblackmar@bpslaw.net
- **Meghan Canty**    mcanty@tocounsel.com, lkwon@tocounsel.com;sschuster@tocounsel.com
- **Aaron Davis**    aaron.davis@bryancave.com, kat.flaherty@bryancave.com
- **Alan J Friedman**    afriedman@shbllp.com, lgauthier@shbllp.com
- **Richard H Golubow**    rgolubow@wcghlaw.com,
  pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **David S Kupetz**    dkupetz@sulmeyerlaw.com,
  dperez@sulmeyerlaw.com;dperez@ecf.inforuptcy.com;dkupetz@ecf.inforuptcy.com
- **William N Lobel**    wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com,
  csheets@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Jessica G McKinlay**    mckinlay.jessica@dorsey.com
- **Malcolm D Minnick**    dminnick@pillsburylaw.com, m.minnick@comcast.net
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Matthew S Walker**    matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:316841.1 76135/001

**F 9013-3.1.PROOF.SERVICE**