Annette W. Jarvis (UT Bar No. 1649)
DORSEY & WHITNEY LLP
111 South Main Street, 21st Floor
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: jarvis.annette@dorsey.com

Jessica G. McKinlay (CA Bar No. 282743)
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone: (714) 800-1400
Facsimile: (714) 800-1499
Email: mckinlay.jessica@dorsey.com

Attorneys for Opus Bank, Secured Creditor

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>RUBY'S DINER, INC., a California corporation, *et al.*,<br><br>    Debtors and Debtors-in-Possession,<br><br>Affects:<br>☐ All Debtors<br>☐ RUBY'S DINER, INC., ONLY<br>☒ RUBY'S SOCAL DINERS, LLC, ONLY<br>☒ RUBY'S QUALITY DINERS, LLC, ONLY<br>☒ RUBY'S HUNTINGTON BEACH, LTD., ONLY<br>☒ RUBY'S LAGUNA HILLS, LTD. ONLY<br>☒ RUBY'S OCEANSIDE, LTD., ONLY<br>☒ RUBY'S PALM SPRINGS, LTD., ONLY<br><br>Debtors and Debtors-in-Possession | Case No. 8:18-bk-13311<br><br>Jointly Administered with Case Nos. 8:18-bk-131977-CB; 8:18-bk-131978-CB; 8:18-bk-13199-CB; 8:18-bk-13200-CB; 8:18-bk-13201-CB; 8:18-bk-13202-CB<br><br>Chapter 11<br><br>**SECOND STIPULATION FOR ORDER (A) AUTHORIZING FINAL USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION FOR USE OF PREPETITION COLLATERAL, AND (C) GRANTING RELATED RELIEF[1]**<br><br>**Hearing Scheduled**<br>Date:  November 28, 2018<br>Time:  10:00 am<br>Place:  Courtroom 5D<br>        411 West Fourth Street<br>        Santa Ana, CA 92701 |

---

[1] This Second Stipulation was amended to more adequately address the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) claim of Family Tree Produce, Inc.

1

The Debtors, by and through counsel, and secured Creditor Opus Bank ("Opus"), by and through counsel, hereby file this *Second Stipulation for Final Order (A) Authorizing Use of Cash Collateral, (b) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief* (the "Second Stipulation").

## RECITALS

A. The Debtors brought their "Emergency Motion For Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" (the "Motion") on August 30, 2018 (Dkt No. 13), and Opus filed its objection (the "Objection") later that same day (Dkt. No. 22). The Debtors, Opus, and Pillsbury Winthrop Shaw Pittman LLP, filed a "Stipulation for Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief on August 31, 2018" (Dkt. No. 33). On August 31, 2018, the Court entered an Order approving the Stipulation (Dkt. No. 34) (the "First Order").

B. The Debtors have authorization to use cash currently on hand in the Debtors' estates and funds generated from the operation of the Debtors' businesses (the "Cash Collateral") pursuant to the Budgets which are attached hereto as **Exhibit A**.

C. Opus has asserted an interest in the Cash Collateral and is the senior secured creditor of the Debtors with respect to its collateral pursuant to two Promissory Notes dated July 26, 2013, one Promissory Note dated April 8, 2014, and one Promissory Note dated November 6, 2014, by and among various of the Debtors and Opus, and all other agreements and documents entered into in connection therewith, in each case, as amended, modified, or supplemented (collectively, the "Prepetition Notes"), in the approximate amount of no less than $2,098,050.36 (the "Prepetition Obligations"). Copies of the Prepetition Notes are attached hereto as **Exhibit B**.

Opus and the Debtors now pray that the Court approve the Second Stipulation, as a supplement to the current First Order (which First Order and prior stipulation related thereto, to the extent not inconsistent herewith, are incorporated in this Second Stipulation and which First Order shall remain in full force and effect as to Pillsbury Winthrop Shaw Pittman, LLP, C&C Partnership,

2

and Plaza Bonita, LLC), to provide adequate protection.

## STIPULATION

### Budget

1. Attached to this Stipulation as Exhibit A, the Debtors have provided "Budgets" through January 20, 2019. Upon entry of an order approving this Stipulation (the "Second Order"), the Debtors are authorized to use the Cash Collateral to pay post-petition expenses as they become due in the ordinary course of business in compliance with, and for the purposes of funding those expenses set forth in the Budgets (as may be modified or supplemented from time to time without further order of the Court, in form and substance acceptable to Opus, as may be agreed to in writing by Opus). The Debtors may not exceed these Budgets except as provided for in paragraphs 4 through 6, below.

2. The entry of the Second Order approving the use of Opus's Cash Collateral in line with the Budgets, including any supplements or modifications of the Budgets as may be approved by Opus in writing at a later date, is limited to the approval of the use of cash collateral as would otherwise be prohibited by 11 U.S.C. § 363(c)(2), and shall not be construed as authorizing the use of any property of the estate other than in the ordinary course of business as statutorily authorized by 11 U.S.C. § 363.

3. Without Opus's prior written consent, the Debtors are not authorized to make any expenditure or incur any postpetition liabilities to pay except (i) as set forth in the Budgets and the Second Order and for (ii) fees of professionals retained by the Debtors as included in the Budgets or as may be ordered by the Court after notice and a hearing. Debtors' compliance with the Budgets constitutes an important part of the adequate protection of Opus's interest in the Cash Collateral.

4. With prior notice to the United States Trustee and Opus, and the written approval of Opus, Debtors may reallocate payments from Cash Collateral among Budget line items (other than adequate protection payments to Opus). The Budgets may be amended from time to time with the written consent of Opus and Debtors and on notice to the United States Trustee and any Creditors' Committee (if and when formed), provided that such amended Budgets (i) shall not provide for the

use of Cash Collateral in excess of the amount consented to in writing by Opus unless ordered by the Court, after notice and a hearing, (ii) shall be in a form and substance acceptable to Opus, in its reasonable discretion, (iii) shall remain consistent with the terms of the Second Order and Debtors' obligations thereunder, and (iv) is filed by Debtors with the Court promptly. Such amended Budgets shall remain in effect unless a party in interest files and serves an objection on counsel for Debtors, Opus, the United States Trustee, and the Creditors' Committee (if and when formed), and requests a hearing with respect thereto, but no later order of the Court shall impair any payment previously made in accordance with such amended Budgets.

5. Without prior written approval of Opus, any Debtor's payment of the total amount of Cash Collateral used to pay all expenses in that Debtor's individual Budget shall not exceed the total amount set forth in that Debtor's individual Budget for all expenses by more than fifteen percent (15%), except if any of the Debtors are operating below budget such that there are no revenues to cover expenses in the calendar month of such expenditure, that individual Debtor must give Opus one (1) business day prior written notice, and Opus may have the opportunity to object to any expenditures that would exceed that individual Debtor's Budget by any amounts.

6. Debtors shall give Opus one (1) business day prior written notice of any funds that and Debtor intends to pay to Ruby's Diners Inc. (Case No. 8:18-bk-13311) ("RDI") or any other affiliate of the Debtors or RDI, including the RDI founders or Steve Craig, to cover management expenses, including employees' payroll or any other payments, or any other costs or expenses. The notice will provide detailed accounting of the specific purposes of the funds, including management fees, invoices, payroll information, or otherwise identify the purpose of the funds, such that Opus can readily identify the reason for the payment and object if Opus reasonably believes such reason does not relate to the Debtors' business purposes.

7. In order to continue use of the Cash Collateral beyond the term of the Budgets, each of the Debtors shall provide an individual updated 12 week budget to Opus for approval on January 7, 2019 (which, if approved, shall become the Budgets). In the event that any of the Debtors and Opus are unable to agree upon the Budgets, the parties shall seek resolution with the Court.

8. All Budgets shall be done on an individual Debtor by Debtor basis as well as an overall aggregate basis.

### Adequate Protection

9. As adequate protection of Opus's lien and security interest, the Debtors shall make payments to Opus in the amount of $8,557.70 per month, which are interest-only payments, on the 5th day of each month.

10. As adequate protection for the diminution of any interest that Opus is determined to hold in the Cash Collateral as a result of Debtors' use of Cash Collateral, Opus is granted a postpetition replacement lien ("Postpetition Lien") to the full value of its existing collateral and the proceeds thereof with the same extent, validity and priority as existed prepetition. Without limiting the provisions of the Second Order and this Stipulation, Opus's Postpetition Lien shall encumber all assets acquired by the Debtors postpetition which would have been encumbered by Opus's liens and security interests if the Debtors had not filed bankruptcy.

11. The Postpetition Lien shall be in addition to all security interests, liens, and rights of set off existing in favor of Opus.

12. The Postpetition Lien shall be in the same priority, validity, and enforceability as any prepetition lien securing the claim of Opus in the same type of assets and, under 11 U.S.C. § 510, subject to the terms of any and all intercreditor subordination agreements executed by and among Opus and any other person claiming a lien in the Collateral. To the extent of any diminution in value ultimately due to Cash Collateral use not otherwise protected by the Postpetition Lien granted herein, Opus is granted a superpriority claim under Section 507(b) of the Bankruptcy Code.

13. The replacement lien and retention of rights under 11 U.S.C. § 507 constitute adequate protection of Opus's interest in its collateral during the term of the Second Order, but shall not prejudice the rights of Opus to request additional adequate protection at any time.

14. The Second Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Postpetition Lien granted to Opus without any further action by Debtors or Opus and without the execution, delivery, filing, or recordation of any promissory notes,

financing statements, mortgages, security agreements, or other documents. Without limiting the foregoing, Opus is authorized to file such mortgages, financing statements, and other documents as it may reasonably deem necessary to give notice of the Postpetition Lien and the automatic stay under 11 U.S.C. § 362 is modified to permit such filings.

15. Debtors shall also provide additional adequate protection to Opus as follows:

   a. During the term of the Second Order, Debtors shall provide Opus with reasonable access to their books, records, and account statements during regular business hours.

   b. In addition, beginning on November 5, 2018, Debtors shall report to Opus and the United States Trustee for the "Reporting Period" (which is each of the four week periods as set forth in the Budgets), with each Debtor individually providing: (i) projected revenues and cash flows for the following Reporting Period, as well as the actual revenues and cash flows from the prior Reporting Period and (ii) a balance sheet and statement of cash flow, income, and expense for the preceding month in the format required by the United States Trustee, and bank statements from all Debtor-in-Possession bank accounts, along with supporting documentation showing the use and allocation of the money being withdrawn from such accounts. The Debtors shall make themselves available to confer with Opus to discuss these projections and documents.

   c. Except for the sale or use of inventory or other amounts expended in the ordinary course of business, Debtors shall not dispose of any of their property without further order of this Court entered after notice to Opus.

   d. To the extent not otherwise inconsistent with the Second Order or the Bankruptcy Code, during the term of the Second Order, Debtors shall keep and timely perform all of the obligations under the Loan Documents, which are incorporated herein by this reference; provided, however, that Debtors by reason of the Second Order need not comply with those provisions establishing an Event of Default by

virtue of the commencement of this Chapter 11 case or requiring payment of the Prepetition Claim (except for the Adequate Protection Payments provided for in the Second Order or by further order of the Court).

　　e. The restaurant that comprises Laguna Hills, Ltd., is considering closure. If the Laguna Hills restaurant, or any of the other Debtors, shuts down its operations or closes, the cash assets of such restaurant and any net proceeds of the sale of the assets of such restaurant shall be turned over to Opus, except if the claims of Family Tree Produce, Inc. made pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c), have not been paid in full (the "Family Tree PACA Claims"), the cash assets of such restaurant and any net proceeds shall first be used to pay Family Tree Produce, Inc. before paying Opus.

16.　In the event of any breach or default by the Debtors under the terms of the Second Order, Opus shall be entitled to a hearing on shortened notice, subject to the Court's calendar, regarding whether the automatic stay should be modified as a result of the failure of the Debtors to provide the adequate protection required by the Second Order.

### DIP Accounts

17.　Debtors may open one or more separate Debtors-in-Possession bank account(s) and transfer the existing Cash Collateral in accounts at Opus into such Debtors-in-Possession accounts. The Debtor-in-Possession accounts may be held at East West Bank or another bank of Debtors's choosing and which is an authorized depository. However, the transfer of such funds shall be conditioned on and made subject to the continuation of Opus's existing security interest, which security interest shall remain perfected and attached to such Cash Collateral after transfer by means of the order approving this Stipulation without further action required by Opus and such transfer shall further be made subject to and will not alter, amend, or modify Opus's statutory rights of offset against such Cash Collateral as it currently exists.

18.　Debtors may bring a separate motion for approval of DIP loan financing and Opus reserves its rights to object to such Motion. Any DIP loan financing shall be subordinated to Opus's

security interests in the Cash Collateral and in all other collateral in which Opus has an interest.

## General Provisions

19. The Debtors hereby release and waive any and all claims, causes of action, counterclaims, defenses, charges, suits, liabilities, damages, contracts, agreements, and promises, of any kind or nature whatsoever, known or unknown, foreseen or unforeseen, suspected or unsuspected, latent or patent, fixed or contingent, existing or hereafter arising, in law, equity, or otherwise, against Opus, and each of the existing and former general partners, shareholders, directors, officers, fiduciaries, principals, managers, investment managers, members, employees, investors, representatives, agents, subsidiaries, predecessors, successors, assigns, affiliates, affiliated funds and managed accounts, portfolio companies, and related entities of the foregoing (collectively, the "Prepetition Lender Party Releasees"), relating to the existence, perfection, or validity of Opus's prepetition lien, that any such party would have been legally entitled to assert in its own right or on behalf of any other entity against any of the Prepetition Lender Party Releasees, whether or not any of the facts or legal bases therefor were known or existed on or before the date of the Second Order, based upon or related to, in whole or in part, the Prepetition Obligations, the Prepetition Notes, or any transaction contemplated thereby, between any of the Prepetition Lender Party Releasees and the Debtors and their affiliates.

20. Except as expressly set forth in the Second Order: (a) the Replacement Lien shall not be subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; and (b) the Replacement Lien shall not be subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code.

21. The Cash Collateral shall not be used to pay expenses of the Debtors or otherwise disbursed except for: (a) those expenses, payments, and/or disbursements that are expressly set forth in the Budgets or otherwise permitted under the Second Order; and (b) amounts due to Opus; provided that nothing in the Second Order is intended or shall be construed to waive any of Opus's rights to object to or otherwise contest the reasonableness of the fees and expenses of the Professionals.

8

22. The provisions of this Stipulation and the Second Order and any actions taken pursuant thereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in the Bankruptcy Cases and (b) approving any sale under section 363 of the Bankruptcy Code, and, notwithstanding the entry of any such order, the terms and provisions of the Second Order shall continue in full force and effect, including, without limitation, the Replacement Lien granted pursuant to the Second Order, and shall maintain their priority as provided by the Second Order to the maximum extent permitted by law.

23. If the Bankruptcy Case is dismissed, converted, otherwise superseded, or substantively consolidated with another debtor's case, the rights of Opus under the Second Order shall be and remain in full force and effect as if the Bankruptcy Case had not been dismissed, converted, superseded, or substantively consolidated, and, notwithstanding any such dismissal, conversion, supersession, or substantive consolidation, the terms and provisions of the Second Order shall continue in full force and effect, including, without limitation, the Replacement Lien granted pursuant to the Second Order and shall maintain its priority as provided by the Second Order to the maximum extent permitted by law.

24. Except as otherwise set forth herein, the provisions of the Stipulation shall be binding upon and inure to the benefit of Opus and the Debtors, the Committee following their opportunity to object within the Challenge Period (as defined herein), if a Committee is appointed, and each of their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors, whether in the Bankruptcy Case or any successor case, including, without limitation, the conversion of any of the Bankruptcy Cases to a case under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Stipulation and Second Order. Any creditor or other party in interest (other than the Debtors), including any Official Committee of Unsecured Creditors (if and when formed) shall, on or before January 30, 2019 (the "Challenge Period Deadline" or "Challenge Period"), raise any objection, claim, offset, counterclaim, or challenge (collectively, a "Challenge") to the prepetition claim or prepetition liens asserted by Opus,

9

or any Chapter 5 actions that may exist against Opus, in an adversary proceeding filed prior to the Challenge Period Deadline, or any such Challenge shall be deemed to be forever waived and released; provided that, the Challenge Period Deadline applicable to any Official Unsecured Creditors' Committee (if formed) shall be extended to the 90th day after the formation of that committee, if any.

25. Based on the findings set forth in the Second Order, in the event any or all of the provisions of the Second Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, no such modification, amendment, or vacation shall affect the validity and enforceability of any lien, security interest, or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim granted hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of the Second Order, Opus, as the case may be, shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted in the Second Order, with respect to any such claim.

26. Opus has requested that each of the Debtors retain 4% of the 8% management fees owed by the Debtors to RDI. The Debtors and Opus do not resolve this issue in this Stipulation, but the issue will be resolved amicably between the Debtors and Opus or brought before the Court.

27. Opus does not object to payment of the Family Tree PACA Claims. Notwithstanding anything to the contrary contained anywhere herein, entry of the Second Stipulation shall not be construed to prime, diminish, or impair the rights, if any, of Family Tree Produce, Inc. to the extent validly preserved under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA") and nothing contained in the Second Stipulation shall be construed to require that Family Tree Produce, Inc., must bring a Challenge by the Challenge Period Deadline in order to preserve such rights.

28. Notwithstanding anything to the contrary contained herein, the entry of the Second Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of the Opus under the Bankruptcy Code or under non-

bankruptcy law, including, without limitation, the right to (i) adequate protection of its interests in the Collateral or relief from or modification of the automatic stay under section 362 of the Bankruptcy Code, (ii) request conversion of the Bankruptcy Case to chapter 7, or (iii) any other rights, claims or privileges (whether legal, equitable, or otherwise).

29. Any time period referenced herein shall be calculated in accordance with Bankruptcy Rule 9006.

Accordingly, the Debtors and Opus now pray that the Court approve the Second Stipulation, as a supplement to the current First Order (which First Order and prior stipulation related thereto, to the extent not inconsistent herewith, are incorporated in this Second Stipulation, and which First Order shall remain in full force and effect as to Pillsbury Winthrop Shaw Pittman, LLP, C&C Partnership, and Plaza Bonita, LLC), to provide adequate protection.

Dated: November 20, 2018

PACHULSKI STANG ZIEHL & JONES LLP

/s/ William N. Lobel

William N. Lobel
Attorneys for Ruby's SoCal Diners, LLC, Ruby's Quality Diners, LLC, Ruby's Huntington Beach, Ltd., Ruby's Laguna Hills, Ltd., Ruby's Oceanside, Ltd., and Ruby's Palm Springs, Ltd., Debtors and Debtors-in-Possession

Dated: November 20, 2018

DORSEY & WHITNEY LLP

/s/ Jessica McKinlay

Jessica McKinlay
Attorneys for Opus Bank

11