William N. Lobel, State Bar No. 93202
PACHULSKI STANG ZIEHL & JONES LLP
650 Town Center Drive, Suite 1500
Costa Mesa, California  92626
Telephone:  (714) 384-4740
Facsimile:  (714) 384-4741
E-mail:  wlobel@pszjlaw.com

Attorneys for Ruby's Diner, Inc., a California corporation,
*et al.,* Debtors and Debtors-in-Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA

In re:

RUBY'S DINER, INC., a California
corporation, *et al.,*[1]

      Debtors and Debtors-in-Possession.

Affects:

☐ All Debtors

☒ RUBY'S DINER, INC., ONLY

☐ RUBY'S SOCAL DINERS, LLC, ONLY

☐ RUBY'S QUALITY DINERS, LLC, ONLY

☐ RUBY'S HUNTINGTON BEACH, LTD., ONLY

☐ RUBY'S LAGUNA HILLS, LTD. ONLY

☐ RUBY'S OCEANSIDE, LTD., ONLY

☐ RUBY'S PALM SPRINGS, LTD., ONLY

Case No. 8:18-bk-13311-CB

Chapter 11

(Jointly Administered With Case Nos.
8:18-bk-13197-CB; 8:18-bk-13198-CB;
8:18-bk-13199-CB; 8:18-bk-13200-CB;
8:18-bk-13201-CB; 8:18-bk-13202-CB)

**NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER APPROVING RDI'S NETDOWN OF CERTAIN POST-PETITION OBLIGATIONS BETWEEN AND AMONG RDI, RFS AND THE FRANCHISEES; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF DOUGLAS S. CAVANAUGH AND J. MICHAEL ISSA IN SUPPORT THEREOF**

Date:        February 27, 2019
Time:       10:00 a.m.
Courtroom:  5D
Address:   411 West Fourth Street
           Santa Ana, CA  92701

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Ruby's Diner, Inc. (8143); Ruby's SoCal Diners, LLC (9782); Ruby's Quality Diners, LLC (1539); Ruby's Huntington Beach, Ltd. (1331); Ruby's Laguna Hills, Ltd. (6603); Ruby's Oceanside, Ltd. (9104); and Ruby Palm Springs, Ltd. (9627).

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE RDI CASE, THE 20 LARGEST UNSECURED CREDITORS IN THE SOCAL DEBTORS' CASES, SECURED CREDITORS, AND OTHER PARTIES IN INTEREST:**

  **PLEASE TAKE NOTICE** that Ruby's Diner, Inc., a California corporation ("RDI" or the "Debtor"), hereby moves this Court (the "Motion"),[2] for entry of an order authorizing the Debtor, at its discretion, to honor post-petition obligations between and among RDI, RFS and the Ruby's® franchisees/licensees (defined herein as the "Franchisees"), in accordance with the "Post-Petition Netdown" process described herein, on account of: (i) RDI's post-petition reimbursement obligations to the Franchisees in connection with RDI's gift card programs (defined herein as the "Gift Card Reimbursement Obligations"), (ii) the Franchisees' obligations under the franchise agreements between the Franchisees and RFS, specifically with respect to the payment of the franchise royalties and advertising fund obligations due thereunder (defined herein as the "Franchise Royalties" and "Ad Fund Obligations," respectively), and (iii) the license fee payable to RDI by RFS pursuant to the license agreement between them (which amounts to 25% of the Franchise Royalties paid to RFS) (defined herein as the "RDI License Fee"). The "netdown" or "true-up" of such post-petition amounts (though a combination of journal entries and payment of cash by the Franchisees as described herein) is reflected in the Netdown Schedule attached to the Motion as Exhibit "1" and is referred to herein as the "Post-Petition Netdown."

---

[2] On January 8, 2019, RDI (together with the SoCal Debtors (as defined herein)), filed an *Amended Notice of Motion and Motion (I) for Entry of Interim Order: (A) Authorizing Debtors to (1) Obtain Post-Petition Financing and Granting Liens and Superpriority Administrative Expense Claims Pursuant to 11 U.S.C. Section 364, (2) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (3) Granting Related Relief, Including Granting the Scenario One Break-Up Fee; and (B) Setting Final Hearing; and Pursuant to Final Hearing, (II) For Entry of Final Order: (A) Approving Post-Petition Financing and Use of Cash Collateral on a Final Basis, (B) Approving RDI Assumption of and Entry into the Plan Support Agreement; (C) Approving Scenario Two Break-Up Fee; and (D) Approving RDI's Netdown of Certain Post-Petition Obligations Between and Among RDI, RFS and the Franchisees* [Docket No. 185] (the "Initial DIP Motion"). The relief requested by this Motion was contained in the Initial DIP Motion. However, because RDI and the SoCal Debtors are requesting, by way the debtor-in-possession financing request filed concurrently herewith, more limited relief than that contained in the Initial DIP Motion, RDI brings this instant Motion seeking approval of the Post-Petition Netdown as a "stand-alone" motion. While the Debtor believes that the Post-Petition Netdown is arguably in the ordinary course of business, because the amounts owed between the parties are not all being paid in cash, the Debtor brings this Motion in an abundance of caution.

A motion requesting similar relief as it relates to Ruby's Franchise Systems, Inc., a California corporation ("RFS"), an entity affiliated with the Debtors through common ownership and control which is a debtor in a separate chapter 11 proceeding pending in front of this Court, is being filed by RFS in RFS' chapter 11 case (Case No. 18-bk-13324-CB).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1  **PLEASE TAKE FURTHER NOTICE** that the relief sought by way of this Motion with

2  respect to approval of the Post-Petition Netdown has the support of the Committee.

3  **PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached

4  Memorandum of Points and Authorities, the attached Declarations of Douglas S. Cavanaugh (the

5  "Cavanaugh Declaration") and J. Michael Issa (the "Issa Declaration"), as well as the previously

6  filed Declaration of Douglas S. Cavanaugh in Support of First Day Motions, the arguments of

7  counsel, and other admissible evidence properly brought before the Court at or before the hearing on

8  this Motion.  In addition, the Debtor requests that the Court take judicial notice of all documents

9  filed with the Court in its chapter 11 case.

10  **PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and Motion,

11  the attached Memorandum of Points and Authorities, Cavanaugh Declaration and Issa Declaration,

12  on:  (1) the Office of the United States Trustee, (2) counsel to the Committee, (3) parties that have

13  filed with the Court and served upon the Debtor a request for notice of all matters in accordance with

14  Bankruptcy Rule 2002(i), (4) the United States of America, (5) the State of California, (6) Credit

15  Managers Association on behalf of the Debtor's secured noteholders, (7) counsel to Pillsbury

16  Winthrop Shaw Pittman LLP, (8) counsel to Family Tree Produce, Inc., (9) counsel to the post-

17  petition lender; and (10) the Franchisees.

18  **PLEASE TAKE FURTHER NOTICE** that, pursuant to local Bankruptcy Rule 9013-1(f), if

19  you wish to oppose the Motion, you must file a written response with the Court and serve a copy of

20  it upon the undersigned counsel no later than fourteen (14) days prior to the hearing on the Motion.

21  The failure to properly file and serve an opposition may be deemed consent to the relief requested in

22  the Motion or a waiver of any right to oppose the Motion.

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that the Court enter an order approving RDI's implementation of the Post-Petition Netdown as requested by this Motion.

Dated: February 6, 2019                                PACHULSKI STANG ZIEHL & JONES LLP


By      /s/ William N. Lobel
        William N. Lobel
        Attorneys for Ruby's Diner, Inc., *et al.,*
        Debtors and Debtors-in-Possession

# I.    FACTUAL BACKGROUND

## A.    Jurisdiction and Venue

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## B.    Chapter 11 Case Background

On August 29, 2018, certain of the Debtor's affiliates – Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside, Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a California limited partnership ("Ruby's Palm Springs") (collectively, the "SoCal Debtors") – filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On September 5, 2018, RDI filed a related chapter 11 case. On September 5, 2018, the Court entered an order jointly administering the RDI chapter 11 case with the SoCal Debtors' cases, with RDI designated as the lead debtor.

No party has requested the appointment of a trustee or examiner in the chapter 11 cases. On September 19, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors in the RDI case (the "Committee").

On September 6, 2018, Ruby's Franchise Systems, Inc., a California corporation ("RFS"), an entity affiliated with RDI and the SoCal Debtors through common ownership and control, commenced a separate chapter 11 proceeding.

## C.    Description of the Debtor's and its Affiliates' Business

RDI was incorporated on February 13, 1985. Its principal business address is 4100 MacArthur Blvd., Suite 310, Newport Beach, California 92660. RDI owns varying percentages of and operates diners in Southern California through its subsidiaries, including through its wholly-owned subsidiary, SoCal Diners. RDI and its affiliates own, operate and manage restaurants under

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

the trade names such as "Ruby's®," "Ruby's® Diner," and "The Ruby Restaurant Group."  RDI and its affiliates have operated Ruby's® Diner restaurants since prior to 1985 and are known as purveyors of very popular burgers, fries and shakes.  RDI is owned 60% by Douglas Cavanaugh and 40% by Ralph Kosmides, and they are the founders of Ruby's (the "Founders").  RDI is the owner of the Ruby's® trademarks, system and intellectual property (the "Marks and Intellectual Property") and is the employer of the more than 800 employees of RDI and its affiliates.

RDI is the 100% owner and sole and managing member of SoCal Diners.  SoCal Diners is the 100% owner and sole and managing member of Quality.  SoCal Diners is the general partner and 50% owner, and Quality is the limited partner and 50% owner, of the following California limited partnerships: (1) Ruby's Huntington Beach, which owns and operates a Ruby's® restaurant on the pier in Huntington Beach, California and is one of the SoCal Debtors; (2) Ruby's Oceanside, which owns and operates a Ruby's® restaurant in Oceanside, California and is one of the SoCal Debtors; (3) Ruby's Palm Springs, which owns and operates a Ruby's® restaurant in Palm Springs, California and is one of the SoCal Debtors; (4) Ruby's Laguna Hills, which owns and operates a Ruby's® restaurant in the Laguna Hill Mall in Laguna Hills, California and is one of the SoCal Debtors; and (5) Ruby's Mission Valley, Ltd., which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant in the Westfield Mission Valley Mall in San Diego, California[1] (collectively, the "SoCal Entities" and the restaurants owned by the SoCal Entities, the "SoCal Restaurants").

In addition, RDI holds ownership interests in, and management roles in connection with, the following joint venture entities:  (1) RDI is the managing member and 70% owner of Ruby's Beach Ventures LLC, which owns and operates a Ruby's® restaurant in Long Beach, California;[2] (2) RDI is the general partner and 50% owner of Ruby's Diner South Coast Plaza LP, which owns and operates

---

[1] The Mission Valley restaurant was closed prior to the Petition Date, in April 2018.  Ruby's Mission Valley, Ltd., while owned by SoCal Diners and Quality, is not operating and is thus not a debtor entity.

[2] The other 30% of Ruby's Beach Ventures LLC is held by various third-party investors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

a Ruby's® restaurant at South Coast Plaza Mall in Costa Mesa, California;[3] (3) RDI is the managing member and sole owner of Ruby's Woodbridge LLC, which owns and operates a Ruby's® restaurant in Woodbridge in Irvine, California; and (4) RDI is the managing member and 50% owner of Ruby's Spectrum LLC, which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant at the Irvine Spectrum in Irvine, California[4] (collectively, the "RDI Entities" and the restaurants owned by the RDI Entities, the "RDI Restaurants").  The RDI Entities have not filed chapter 11 cases.  The RDI Restaurants, together with the SoCal Restaurants, are referred to as the "Company Restaurants").

As of the Petition Date, there also were twenty-four (24) Ruby's® Diner franchises (or licensed units) located in Southern California, Arizona, Pennsylvania, New Jersey, Nevada and Texas that are owned and, with certain limited exceptions, operated by independent third parties (the "Franchised Restaurants" and, together with the Company Restaurants, the "Restaurants").[5]

RFS currently serves as the franchisor to the Ruby's® franchisees/licensees (the "Franchisees") and licenses the Marks and Intellectual Property from RDI as licensor pursuant to the RFS/RDI License Agreement (as defined hereinbelow).  Under RFS' agreements with the Franchisees (the "Franchise Agreements"), RFS (as franchisor) is entitled to franchise royalty fees from the Franchisees (the "Franchise Royalties"), which are generally the greater of a set dollar amount or four percent (4%) of "Gross Sales" as such term is defined in the Franchise Agreements).[6] The Franchise Royalties historically accrued at an average of approximately Two Million Four Hundred Thousand Dollars ($2,400,000) per annum (assuming payment of Franchise Royalties by

---

[3] The other 50% of Ruby's Diner South Coast Plaza LP is owned by South Coast Plaza Expansion, a California general partnership, as the limited partner.

[4] The other 50% of Ruby's Spectrum LLC is held by William C. Taormina, Trustee of the Taormina Revocable Inter Vivos Trust u/d/t dated July 26, 1983.  The Irvine Spectrum restaurant was closed prior to the Petition Date, in April 2018.

[5] RDI provides operational support and related services to the franchise located in Yorba Linda, California (Ruby's Yorba Linda, Ltd.).  Ruby's Management, LLC ("RMLLC") (an entity owned by Mr. Cavanaugh, Mr. Kosmides and Douglas Salisbury), provides operational support and related services for a Ruby's® restaurant located in Morongo, California (Ruby's Morongo) and has sub-contracted with RDI for those services for an administrative fee.

[6] Two locations, Ruby's Anaheim and Ruby's Morongo, utilize the Marks and Intellectual Property, but do not pay royalties to RFS, nor does Ruby's Anaheim contribute to the Ad Fund (as defined herein).

the Franchisees).  In addition, the majority of the Franchisees[7] are obligated under the Franchise

Agreements to make payments to an advertising fund (the "Ad Fund") in connection with the

marketing and advertising of the Ruby's® brand on a regional and a system/national level, each in

the amount of one percent (1%) of Gross Sales (*i.e.,* a total marketing contribution of two percent

(2%) of Gross Sales) (the "Ad Fund Obligations").

As licensor of the Marks and Intellectual Property to RFS, pursuant to an Amended and

Restated Trademark and Intellectual Property License Agreement, dated June 1, 1990 (the

"RDI/RFS License Agreement"), RDI is entitled to one percent (1%) of the Gross Sales generated by

the Franchisees as a license fee (*i.e.,* 25% of the Franchise Royalties paid to RFS) which historically

averaged approximately Six Hundred Thousand Dollars ($600,000) per annum (assuming payment

of Franchise Royalties by the Franchisees) (the "RDI License Fee").

Historically, RDI engaged in gift card sales, most significantly, through Gift Cards sold at a

discount at Costco Wholesale Company ("Costco"), as a means by which to increase customer

visitation to the Ruby's® Restaurants (the "Gift Card Programs").[8]  With respect to the Costco Gift

Card Program, however, RDI was unable to continue to reimburse the Franchisees accepting the

Costco Gift Cards (which reimbursement was typically at a rate of 85%, but in two instances at the

rate of 90%).  Ultimately, prior to the Petition Date, RDI terminated the Costco Gift Card Program

on a go-forward basis.

In order to maintain the Company's loyal customer base, RDI obtained Court authority

allowing it to continue to honor its outstanding gift card obligations to customers under the Costco

---

[7] Certain Franchisees in specialty locations do not have Ad Fund Obligations as they serve a "captive" customer base, such as the Restaurants located at casinos and airports.  As noted above, Ruby's Anaheim does not have Ad Fund Obligations.

[8] Gift cards are also sold to customers at the Restaurants, or on the internet, primarily for the full face value the goods to be purchased (the "Company Gift Cards" and the program related thereto, the "Company Gift Card Program").  The Company Gift Card Program is being honored and is ongoing.  In many instances , the Company Gift Cards are utilized by the customer at the Restaurant at which they are purchased.  In such event, there is no inter-Restaurant obligation incurred.  Often, the Company Gift Cards will be purchased at one Restaurant and utilized at another Restaurant.  In such circumstance, there is an inter-company obligation created.  On a monthly basis, RDI is provided with a monthly report reconciling these amounts with RDI acting as a "clearinghouse."  Based thereon, RDI estimates that there are *de minimis* amounts owing between the Restaurants related to the Company Gift Cards.  However, to the extent that such post-petition reimbursement obligations exist, RDI requests authority to reconcile and reimburse such amounts to the Restaurants as requested herein by way of the Post-Petition Netdown.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

Gift Card Program (as well as under the Company Gift Card Program) [Docket No. 32].  As customers utilize the Gift Cards at the Restaurants, RDI is obligated to reimburse the Franchisees for such redemption amounts (the "Gift Card Reimbursement Obligations").

The post-petition Gift Card Reimbursement Obligations, the post-petition amounts to be paid to RFS pursuant to the Franchise Agreements (the Franchise Royalties and the Ad Fund Obligations), and the post-petition payments to RDI on account of the RDI License Fee are accounted for in the Netdown Schedule (attached hereto as Exhibit "1").  As set forth in the Netdown Schedule, it is estimated that, for the period from the Petition Date through January 27, 2018, the RFS estate will receive approximately $555,573 and the RDI estate will receive approximately $113,346.  It is also projected that RFS will receive approximately $256,858 and RDI will receive approximately $61,325 from January 27, 2019 to April 21, 2019 as a result of the implementation of the Post-Petition Netdown. This would mean that the total amount that RFS estate will receive from the Petition Date to April 21, 2019 will be estimated at $812,431 and RDI estate will receive an estimated $174,671.[9]

### D.    Approval of the Post-Petition Netdown Process

As discussed above, RDI has significant obligations to reimburse the Franchisees in connection with the redemption of the Gift Cards by customers at the Ruby's® Restaurants (primarily in connection with the Costco Gift Cards), both on a pre- and post-petition basis.  Prior to its chapter 11 filing, RDI lacked the funding to make such payments on account of its Gift Card Reimbursement Obligations.  The Franchisees, in turn, ceased making payments to RFS under the Franchise Agreements (*i.e.,* the Franchisees were not paying their franchise-related obligations – the Franchise Royalties and Ad Fund Obligations – because RDI was not paying the Gift Card Reimbursement Obligations to the Franchisees).  Without the payment of the Franchise Royalties by the Franchisees, RFS was no longer in a position to pay 25% of the royalties to RDI as the RDI

---

[9] These amounts are based on the netdown calculations as to each of the Franchisees and assume the collectibility from each Franchisee as noted in the Netdown Schedule, and further assume that a Franchisee will not assert a right of offset against such amounts.  To the extent that a Franchisee is entitled to, and does, assert a valid offset right against such amounts, the amounts set forth here would be materially reduced.

License Fee.  In other words, the cycle of payments between and among RDI, RFS and the Restaurants significantly diminished.

Accordingly, by this Motion, RDI seeks authority from the Court to "restart" this cycle, in its discretion, as of the Petition Date, by way of the proposed Post-Petition Netdown process.[10] Specifically, the Post-Petition Netdown will work as follows:

Any amounts that RDI owes a particular Franchisee in connection with post-petition Gift Card Reimbursement Obligations will first be reduced (as a non-cash journal entry) by any amounts that that Franchisee owes to RDI for any miscellaneous charges (the "Net Amount RDI Owes to the Franchisee").  The Net Amount RDI Owes to the Franchisee will be applied (as a non-cash journal entry) to the amount of post-petition Franchise Royalties that the Franchisee owes to RFS, leaving a remaining balance (the "Remaining Balance Owed by the Franchisee").  The Franchisee will pay to RFS (in cash) the Remaining Balance Owed by the Franchisee, as well as any post-petition Ad Funds Obligations it owes.  From the Remaining Balance Owed by the Franchisee paid to RFS by the Franchisee, RFS will pay to RDI  (in cash) the RDI License Fee (calculated on the total Franchise Royalties owed by Franchisee).  The above-described "credit" that RFS has extended to RDI by way of applying the Net Amount RDI Owes to the Franchisee against the Franchise Royalties owed by the Franchisee resulting in the Remaining Balance Owed by the Franchisee, will be booked (as a non-cash journal entry) as an intercompany receivable owed to RFS from RDI (which intercompany receivable would be "zeroed out" pursuant to the contemplated merger of these entities under a plan).

By way of example (and solely for illustration purposes), suppose RDI owes a Franchisee $15,500 on account of Gift Card Reimbursement Obligations; the Franchisee owes RDI $500 in miscellaneous charges, the Franchisee owes RFS Franchisee Royalties in the amount of $20,000 and the Franchisee owes the Ad Fund the amount of $5,000.  To "netdown" these amounts, the $15,500

[10] RDI intends to address the repayment of the pre-petition Gift Card Reimbursement Obligations, and RDI and RFS intend to address the collection of pre-petition amounts due from the Franchisees and the payment of pre-petition license fees to RDI, in connection with the plan process.  The instant Motion covers only post-petition amounts outstanding between and among RDI, RFS and the Franchisees.  Had the payments between RDI, RFS and the Franchisees been made in cash, these transactions would have been in the ordinary course of business.  Because the Post-Petition Netdown process involves a series of cash and non-cash components, however, the Debtor brings this Motion in an abundance of caution.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

in Gift Card Reimbursement Obligations would first be reduced by the $500 in miscellaneous charges the Franchisee owes to RDI, leaving a balance of $15,000 (the Net Amount RDI Owes the Franchisee). The $15,000 would be applied (as a credit from RFS) to reduce the $20,000 in Franchise Royalties owed by the Franchisee, leaving a balance of $5,000 the Franchisee pays to RFS (the Remaining Balance Owed by the Franchisee). The Franchisee would pay to RFS $5,000 as the Remaining Balance Owed by the Franchisee, plus the $5,000 owed to the Ad Fund, for a total payment to RFS and the Ad Fund of $10,000. From this amount, RDI would be paid the RDI License Fee (25% of the $20,000 in Franchise Royalties, or $5,000). The $15,000 "credit" from RFS to RDI in this transaction would be booked as an intercompany receivable in favor of RFS.

RDI believes that the foregoing system will allow the flow of funds to recommence and will help provide for the satisfaction of post-petition obligations in the ordinary course and, as set forth in Exhibit "1," will provide a necessary additional source of funding for the chapter 11 cases, for the benefit of all creditors.

## II.    MEMORANDUM OF POINTS AND AUTHORITIES

### A.    Approval of the Post-Petition Netdown is in the Best Interests of the Debtor's Estate and Supported by Sound Business Judgment.

Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Approval of a debtor's actions under section 363(b)(1) of the Bankruptcy Code requires the debtor to show that its decision was based on its business judgment. *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "good business reason"). To determine whether the business judgment test is met, "the court 'is required to examine whether a reasonable business person would make a similar decision under similar circumstances.'" *In re Dura Auto. Sys. Inc.*, No. 06-11202, 2007 Bankr. LEXIS 2764, at *272 (Bankr. D. Del. Aug. 15,

2007) (*quoting In re Exide Techs., Inc.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006)).

Once the debtor articulates a valid business justification, the business judgment rule creates "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted). The debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" *In re Aerovox, Inc.*, 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting *In re Interco, Inc.*, 128 B.R. 229, 234) (Bankr. E.D. Mo. 1991). "Courts are loathe to interfere with corporate decisions absent a showing of bad faith, self interest or gross negligence." *Integrated Res.*, 147 B.R. at 656.

In this case, approval of the Post-Petition Netdown (and the procedures with respect thereto detailed above), is supported by RDI's business judgment. As set forth herein, RDI has demonstrated that there are good and sound business reasons to allow it to implement the system described in this Motion to provide for the satisfaction of the Gift Card Reimbursement Obligations, the Franchise Royalties, the Ad Fund Obligations and the RDI License Fee without having to borrow funds from a post-petition lender in order to pay the Gift Card Reimbursement Obligations. This system will provide for the "truing up" of the post-petition obligations between and among RDI, RFS and the Franchisees, and will allow funds to flow to the estates as contemplated by the franchise system by way of the Franchise Royalties, Ad Fund Obligations and the RDI License Fee, and will provide a mechanism for RDI to meet its Gift Card Reimbursement Obligations without using funds from a financing source (*See* Exhibit "1"). Such process is contemplated by the RDI's cash flow budget, and should be approved as RDI has an immediate need to facilitate the flow of funds in connection with its business operations.

## III.    **CONCLUSION**

Based on the foregoing, the Debtor seeks approval of its implementation of the Post-Petition Netdown process as set forth herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

Dated:    February 6, 2019          PACHULSKI STANG ZIEHL & JONES LLP

By    */s/ William N. Lobel*
William N. Lobel
Attorneys for Ruby's Diner, Inc., *et al.*,
Debtors and Debtors-in-Possession

## DECLARATION OF DOUGLAS S. CAVANAUGH

I, Douglas S. Cavanaugh, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.     I am a founder and the Chief Executive Officer ("CEO") of Ruby's Diners, Inc., a California corporation ("RDI" or the "Debtor").  I have served in the capacity of CEO of RDI since its incorporation in 1985.  I am also a 60% shareholder of RDI.  Ralph Kosmides owns the other 40% of RDI.   Mr. Kosmides and I also own, in the same percentages, Ruby's Franchise Systems, Inc., a California corporation ("RFS"), an entity affiliated with the Debtors through common ownership and control which is a debtor in a separate chapter 11 proceeding pending in front of this Court.

2.     I make this Declaration in support of the *Motion for Entry of Order Approving RDI's Netdown of Certain Post-Petition Obligations Between and Among RDI, RFS and the Franchisees* (the "Motion").[1]  By the Motion, the Debtor requests entry of an order authorizing the Debtor, at its discretion, to honor post-petition obligations between and among RDI, RFS and the Ruby's® franchisees/licensees (defined herein as the "Franchisees"), in accordance with the "Post-Petition Netdown" process described in the Motion and this Declaration, on account of: (i)  RDI's post-petition reimbursement obligations to the Franchisees in connection with RDI's gift card programs (defined herein as the "Gift Card Reimbursement Obligations"), (ii) the Franchisees' obligations under the franchise agreements between the Franchisees and RFS, specifically with respect to the payment of the franchise royalties and advertising fund obligations due thereunder (defined herein as the "Franchise Royalties" and "Ad Fund Obligations," respectively), and (iii) the license fee payable to RDI by RFS pursuant to the license agreement between them (which amounts to 25% of the Franchise Royalties paid to RFS) (defined herein as the "RDI License Fee").  The "netdown" or "true-up" of such post-petition amounts (though a combination of journal entries and payment of cash by the Franchisees as described herein) is reflected in the Netdown Schedule attached hereto as Exhibit "1" and is referred to herein as the "Post-Petition Netdown."

---

[1] Capitalized terms utilized in this Declaration that are not otherwise defined shall have the meanings ascribed to such terms in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

3.    Except as otherwise indicated, all statements in this Declaration are based upon my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees, or my opinion based on my experience with the Debtor's operations and financial condition.  In making my statements based on my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees, I have relied upon these employees accurately recording, preparing or collecting any such documentation and other information.  If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my review of documents, information provided to me by the Debtor's employees or my opinion.  I am authorized to submit this Declaration on behalf of the Debtor.

4.    On August 29, 2018, certain of the Debtor's affiliates – Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside, Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a California limited partnership ("Ruby's Palm Springs") (collectively, the "SoCal Debtors") – filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On September 5, 2018, RDI filed a related chapter 11 case.  On September 5, 2018, the Court entered an order jointly administering the RDI chapter 11 case with the SoCal Debtors' cases, with RDI designated as the lead debtor.

5.    No party has requested the appointment of a trustee or examiner in the chapter 11 cases.  On September 19, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors in the RDI case (the "Committee").

6.    On September 6, 2018, RFS, an entity affiliated with RDI and the SoCal Debtors through common ownership and control, commenced a separate chapter 11 proceeding.

7.    RDI was incorporated on February 13, 1985.  Its principal business address is 4100 MacArthur Blvd., Suite 310, Newport Beach, California 92660.  RDI owns varying percentages of and operates diners in Southern California through its subsidiaries, including through its wholly-

DOCS_LA:318820.9 76135/003

owned subsidiary, SoCal Diners.  RDI and its affiliates own, operate and manage restaurants under the trade names such as "Ruby's®," "Ruby's® Diner," and "The Ruby Restaurant Group."  RDI and its affiliates have operated Ruby's® Diner restaurants since prior to 1985 and are known as purveyors of very popular burgers, fries and shakes.  RDI is the owner of the Ruby's® trademarks, system and intellectual property (the "Marks and Intellectual Property") and is the employer of the more than 800 employees of RDI and its affiliates.

8.    RDI is the 100% owner and sole and managing member of SoCal Diners.  SoCal Diners is the 100% owner and sole and managing member of Quality.  SoCal Diners is the general partner and 50% owner, and Quality is the limited partner and 50% owner, of the following California limited partnerships: (1) Ruby's Huntington Beach, which owns and operates a Ruby's® restaurant on the pier in Huntington Beach, California and is one of the SoCal Debtors; (2) Ruby's Oceanside, which owns and operates a Ruby's® restaurant in Oceanside, California and is one of the SoCal Debtors; (3) Ruby's Palm Springs, which owns and operates a Ruby's® restaurant in Palm Springs, California and is one of the SoCal Debtors; (4) Ruby's Laguna Hills, which owns and operates a Ruby's® restaurant in the Laguna Hill Mall in Laguna Hills, California and is one of the SoCal Debtors; and (5) Ruby's Mission Valley, Ltd., which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant in the Westfield Mission Valley Mall in San Diego, California[2] (collectively, the "SoCal Entities" and the restaurants owned by the SoCal Entities, the "SoCal Restaurants").

9.    In addition, RDI holds ownership interests in, and management roles in connection with, the following joint venture entities:  (1) RDI is the managing member and 70% owner of Ruby's Beach Ventures LLC, which owns and operates a Ruby's® restaurant in Long Beach, California;[3] (2) RDI is the general partner and 50% owner of Ruby's Diner South Coast Plaza LP,

---

[2] The Mission Valley restaurant was closed prior to the Petition Date, in April 2018.  Ruby's Mission Valley, Ltd., while owned by SoCal Diners and Quality, is not operating and is thus not a debtor entity.

[3] The other 30% of Ruby's Beach Ventures LLC is held by various third-party investors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

DOCS_LA:318820.9 76135/003

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

which owns and operates a Ruby's® restaurant at South Coast Plaza Mall in Costa Mesa, California;[4] (3) RDI is the managing member and sole owner of Ruby's Woodbridge LLC, which owns and operates a Ruby's® restaurant in Woodbridge in Irvine, California; and (4) RDI is the managing member and 50% owner of Ruby's Spectrum LLC, which until a few months prior to the Petition Date, owned and operated a Ruby's® restaurant at the Irvine Spectrum in Irvine, California[5] (collectively, the "RDI Entities" and the restaurants owned by the RDI Entities, the "RDI Restaurants").  The RDI Entities have not filed chapter 11 cases.  The RDI Restaurants, together with the SoCal Restaurants, are referred to as the "Company Restaurants").

10.    As of the Petition Date, there also were twenty-four (24) Ruby's® Diner franchises (or licensed units) located in Southern California, Arizona, Pennsylvania, New Jersey, Nevada and Texas that are owned and, with certain limited exceptions, operated by independent third parties (the "Franchised Restaurants" and, together with the Company Restaurants, the "Restaurants").[6]

11.    RFS currently serves as the franchisor to the Ruby's® franchisees/licensees (the "Franchisees") and licenses the Marks and Intellectual Property from RDI as licensor pursuant to the RFS/RDI License Agreement (as defined hereinbelow).  Under RFS' agreements with the Franchisees (the "Franchise Agreements"), RFS (as franchisor) is entitled to franchise royalty fees from the Franchisees (the "Franchise Royalties"), which are generally the greater of a set dollar amount or four percent (4%) of "Gross Sales" as such term is defined in the Franchise Agreements).[7] The Franchise Royalties historically accrued at an average of approximately Two Million Four Hundred Thousand Dollars ($2,400,000) per annum (assuming payment of Franchise Royalties by

---

[4] The other 50% of Ruby's Diner South Coast Plaza LP is owned by South Coast Plaza Expansion, a California general partnership, as the limited partner.

[5] The other 50% of Ruby's Spectrum LLC is held by William C. Taormina, Trustee of the Taormina Revocable Inter Vivos Trust u/d/t dated July 26, 1983.  The Irvine Spectrum restaurant was closed prior to the Petition Date, in April 2018.

[6] RDI provides operational support and related services to the franchise located in Yorba Linda, California (Ruby's Yorba Linda, Ltd.).  Ruby's Management, LLC ("RMLLC") (an entity owned by me, Ralph Kosmides and Douglas Salisbury), provides operational support and related services for a Ruby's® restaurant located in Morongo, California (Ruby's Morongo) and has sub-contracted with RDI for those services for an administrative fee.

[7] Two locations, Ruby's Anaheim and Ruby's Morongo, utilize the Marks and Intellectual Property, but do not pay royalties to RFS, nor does Ruby's Anaheim contribute to the Ad Fund (as defined herein).

17

the Franchisees).  In addition, the majority of the Franchisees[8] are obligated under the Franchise

Agreements to make payments to an advertising fund (the "Ad Fund") in connection with the

marketing and advertising of the Ruby's® brand on a regional and a system/national level, each in

the amount of one percent (1%) of Gross Sales (*i.e.,* a total marketing contribution of two percent

(2%) of Gross Sales) (the "Ad Fund Obligations").

12.    As licensor of the Marks and Intellectual Property to RFS, pursuant to an Amended

and Restated Trademark and Intellectual Property License Agreement, dated June 1, 1990 (the

"RDI/RFS License Agreement"), RDI is entitled to one percent (1%) of the Gross Sales generated by

the Franchisees as a license fee (*i.e.,* 25% of the Franchise Royalties paid to RFS) which historically

averaged approximately Six Hundred Thousand Dollars ($600,000) per annum (assuming payment

of Franchise Royalties by the Franchisees) (the "RDI License Fee").

13.    Historically, RDI engaged in gift card sales, most significantly, through Gift Cards

sold at a discount at Costco Wholesale Company ("Costco"), as a means by which to increase

customer visitation to the Ruby's® Restaurants (the "Gift Card Programs").[9]  With respect to the

Costco Gift Card Program, however, RDI was unable to continue to reimburse the Franchisees

accepting the Costco Gift Cards (which reimbursement was typically at a rate of 85%, but in two

instances at the rate of 90%).  Ultimately, prior to the Petition Date, RDI terminated the Costco Gift

Card Program on a go-forward basis.

14.    In order to maintain the Company's loyal customer base, RDI obtained Court

authority allowing it to continue to honor its outstanding gift card obligations to customers under the

---

[8] Certain Franchisees in specialty locations do not have Ad Fund Obligations as they serve a "captive" customer base, such as the Restaurants located at casinos and airports.  As noted above, Ruby's Anaheim does not have Ad Fund Obligations.

[9] Gift cards are also sold to customers at the Restaurants, or on the internet, primarily for the full face value the goods to be purchased (the "Company Gift Cards" and the program related thereto, the "Company Gift Card Program").  The Company Gift Card Program is being honored and is ongoing.  In many instances , the Company Gift Cards are utilized by the customer at the Restaurant at which they are purchased.  In such event, there is no inter-Restaurant obligation incurred.  Often, the Company Gift Cards will be purchased at one Restaurant and utilized at another Restaurant.  In such circumstance, there is an inter-company obligation created.  On a monthly basis, RDI is provided with a monthly report reconciling these amounts with RDI acting as a "clearinghouse."  Based thereon, RDI estimates that there are *de minimis* amounts owing between the Restaurants related to the Company Gift Cards.  However, to the extent that such post-petition reimbursement obligations exist, RDI requests authority to reconcile and reimburse such amounts to the Restaurants as requested in the Motion by way of the Post-Petition Netdown.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

Costco Gift Card Program (as well as under the Company Gift Card Program) [Docket No. 32]. As customers utilize the Gift Cards at the Restaurants, RDI is obligated to reimburse the Franchisees for such redemption amounts (the "Gift Card Reimbursement Obligations").

15.    The post-petition Gift Card Reimbursement Obligations, the post-petition amounts to be paid to RFS pursuant to the Franchise Agreements (the Franchise Royalties and the Ad Fund Obligations), and the post-petition payments to RDI on account of the RDI License Fee are accounted for in the Netdown Schedule (attached hereto as Exhibit "1"). As set forth in the Netdown Schedule, it is estimated that, for the period from the Petition Date through January 27, 2018, the RFS estate will receive approximately $555,573 and the RDI estate will receive approximately $113,346. It is also projected that RFS will receive approximately $256,858 and RDI will receive approximately $61,325 from January 27, 2019 to April 21, 2019 as a result of the implementation of the Post-Petition Netdown. This would mean that the total amount that RFS estate will receive from the Petition Date to April 21, 2019 will be estimated at $812,431 and RDI estate will receive an estimated $174,671.[10]

16.    As discussed above, RDI has significant obligations to reimburse the Franchisees in connection with the redemption of the Gift Cards by customers at the Ruby's® Restaurants (primarily in connection with the Costco Gift Cards), both on a pre- and a post-petition basis. Prior to its chapter 11 filing, RDI lacked the funding to make such payments on account of its Gift Card Reimbursement Obligations. The Franchisees, in turn, ceased making payments to RFS under the Franchise Agreements (*i.e.,* the Franchisees were not paying their franchise-related obligations – the Franchise Royalties and Ad Fund Obligations – because RDI was not paying the Gift Card Reimbursement Obligations to the Franchisees). Without the payment of the Franchise Royalties by the Franchisees, RFS was no longer in a position to pay 25% of the royalties to RDI as the RDI License Fee. In other words, the cycle of payments between and among RDI, RFS and the Restaurants significantly diminished.

---

[10] These amounts are based on the netdown calculations as to each of the Franchisees and assume the collectibility from each Franchisee as noted in the Netdown Schedule, and further assume that a Franchisee will not assert a right of offset against such amounts. To the extent that a Franchisee is entitled to, and does, assert a valid offset right against such amounts, the amounts set forth here would be materially reduced.

DOCS_LA:318820.9 76135/003

17.    By the Motion, RDI seeks authority from the Court to "restart" this cycle, in its discretion, as of the Petition Date, by way of the proposed Post-Petition Netdown process.[11] Specifically, the Post-Petition Netdown will work as follows:

18.    Any amounts that RDI owes a particular Franchisee in connection with post-petition Gift Card Reimbursement Obligations will first be reduced (as a non-cash journal entry) by any amounts that that Franchisee owes to RDI for any miscellaneous charges (the "Net Amount RDI Owes to the Franchisee").  The Net Amount RDI Owes to the Franchisee will be applied (as a non-cash journal entry) to the amount of post-petition Franchise Royalties that the Franchisee owes to RFS, leaving a remaining balance (the "Remaining Balance Owed by the Franchisee").  The Franchisee will pay to RFS (in cash) the Remaining Balance Owed by the Franchisee, as well as any post-petition Ad Funds Obligations it owes.  From the Remaining Balance Owed by the Franchisee paid to RFS by the Franchisee, RFS will pay to RDI (in cash) the RDI License Fee (calculated on the total Franchise Royalties owed by Franchisee).  The above-described "credit" that RFS has extended to RDI by way of applying the Net Amount RDI Owes to the Franchisee against the Franchise Royalties owed by the Franchisee resulting in the Remaining Balance Owed by the Franchisee, will be booked (as a non-cash journal entry) as an intercompany receivable owed to RFS from RDI (which intercompany receivable would be "zeroed out" pursuant to the contemplated merger of these entities under a plan).

19.    By way of example (and solely for illustration purposes), suppose RDI owes a Franchisee $15,500 on account of Gift Card Reimbursement Obligations; the Franchisee owes RDI $500 in miscellaneous charges, the Franchisee owes RFS Franchisee Royalties in the amount of $20,000 and the Franchisee owes the Ad Fund the amount of $5,000.  To "netdown" these amounts, the $15,500 in Gift Card Reimbursement Obligations would first be reduced by the $500 in miscellaneous charges the Franchisee owes to RDI, leaving a balance of $15,000 (the Net Amount RDI Owes the Franchisee).  The $15,000 would be applied (as a credit from RFS) to reduce the

---

[11] RDI intends to address the repayment of the pre-petition Gift Card Reimbursement Obligations, and RDI and RFS intend to address the collection of pre-petition amounts due from the Franchisees and the payment of pre-petition license fees to RDI, in connection with the plan process.  The instant Motion covers only post-petition amounts outstanding between and among RDI, RFS and the Franchisees.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

$20,000 in Franchise Royalties owed by the Franchisee, leaving a balance of $5,000 the Franchisee pays to RFS (the Remaining Balance Owed by the Franchisee). The Franchisee would pay to RFS $5,000 as the Remaining Balance Owed by the Franchisee, plus the $5,000 owed to the Ad Fund, for a total payment to RFS and the Ad Fund of $10,000. From this amount, RDI would be paid the RDI License Fee (25% of the $20,000 in Franchise Royalties, or $5,000). The $15,000 "credit" from RFS to RDI in this transaction would be booked as an intercompany receivable in favor of RFS.

20.    RDI believes that the foregoing system will allow the flow of funds to recommence and will help provide for the satisfaction of post-petition obligations in the ordinary course and, as set forth in Exhibit "1," will provide a necessary additional source of funding for the chapter 11 cases, for the benefit of all creditors.

21.    In sum, I believe that approval of the Post-Petition Netdown (and the procedures with respect thereto detailed in the Motion and above), is supported by RDI's business judgment and there are good and sound business reasons to allow RDI to implement the system described in the Motion to provide for the satisfaction of the Gift Card Reimbursement Obligations, the Franchise Royalties, the Ad Fund Obligations and the RDI License Fee without having to borrow funds from a post-petition lender in order to pay the Gift Card Reimbursement Obligations. This system will provide for the "truing up" of the post-petition obligations between and among RDI, RFS and the Franchisees, and will allow funds to flow to the estates as contemplated by the franchise system by way of the Franchise Royalties, Ad Fund Obligations and the RDI License Fee, and will provide a mechanism for RDI to meet its Gift Card Reimbursement Obligations without using funds from a financing source. Such process is contemplated by the RDI's cash flow budget, and I believe it should be approved as RDI has an immediate need to facilitate the flow of funds in connection with its business operations.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6th day of February 2019, at Costa Mesa, California.

_____
Douglas S. Cavanaugh

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

### DECLARATION OF J. MICHAEL ISSA

I, J. Michael Issa, declare and state as follows:

1.      I am a Principal of GlassRatner Advisory & Capital Group LLC ("GlassRatner"), proposed financial advisor to Ruby's Diner, Inc., a California corporation ("RDI" or the "Debtor").

2.      I make this Declaration in support of the *Motion for Entry of Order Approving RDI's Netdown of Certain Post-Petition Obligations Between and Among RDI, RFS and the Franchisees* (the "Motion").[12]  By the Motion, the Debtor requests entry of an order authorizing the Debtor, at its discretion, to honor post-petition obligations between and among RDI, RFS and the Ruby's® franchisees/licensees (defined herein as the "Franchisees"), in accordance with the "Post-Petition Netdown" process described in the Motion and this Declaration, on account of: (i)  RDI's post-petition reimbursement obligations to the Franchisees in connection with RDI's gift card programs (defined herein as the "Gift Card Reimbursement Obligations"), (ii) the Franchisees' obligations under the franchise agreements between the Franchisees and RFS, specifically with respect to the payment of the franchise royalties and advertising fund obligations due thereunder (defined herein as the "Franchise Royalties" and "Ad Fund Obligations," respectively), and (iii) the license fee payable to RDI by RFS pursuant to the license agreement between them (which amounts to 25% of the Franchise Royalties paid to RFS) (defined herein as the "RDI License Fee").  The "netdown" or "true-up" of such post-petition amounts (though a combination of journal entries and payment of cash by the Franchisees as described herein) is reflected in the Netdown Schedule attached hereto as Exhibit "1" and is referred to herein as the "Post-Petition Netdown."  I am familiar with the proposed Post-Petition Netdown process and was involved in the preparation of the Netdown Schedule attached as Exhibit "1."

3.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the business, operations, and finances of the Debtor and its affiliates, the conduct of GlassRatner in rendering services to RDI, and information learned from my review of relevant documents and information supplied to me by or on behalf of the Debtor and its

---

[12] Capitalized terms utilized in this Declaration that are not otherwise defined shall have the meanings ascribed to such terms in the Motion

DOCS_LA:318820.9 76135/003

affiliates, their advisors, and other GlassRatner employees working directly with me or under my supervision, direction, or control.  If called upon to testify, I would testify competently to the facts set forth herein.  I am authorized to submit this Declaration on behalf of GlassRatner.

4.    GlassRatner is a financial advisory services firm which maintains offices at 19800 MacArthur Blvd., Suite 820, Irvine, California 92612, and other locations throughout the United States.  GlassRatner is a national specialty financial advisory services firm providing solutions to complex business problems and board level agenda items.  The firm applies a unique mix of skill sets and experience to address matters of the utmost importance to an enterprise such as managing through a business crisis or bankruptcy, planning & executing a major acquisition or divestiture, pursuing a fraud investigation or corporate litigation**,** and other top level non-typical business challenges. Additionally, GlassRatner's professionals have extensive familiarity with the accounting practices in insolvency matters in the bankruptcy courts in the Central District of California and in other states.

5.    GlassRatner and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. A comprehensive listing of GlassRatner's representative engagements can be found on the firm's website, www.glassratner.com.

6.    I hold a Beta Gamma Sigma Master of Business Administration (MBA) degree from the University of Texas.   I am a Certified Public Accountant.  I also am a FINRA licensee and hold Series 79, 63 and 65 licenses.  I have over 30 years of professional experience as a turnaround expert, professional fiduciary, and management consultant.

7.    During my career, I have personally led consulting and professional teams involved in over 100 corporate rehabilitations.  I have consulted extensively in the area of corporate turnarounds, workouts and bankruptcies.  These engagements have included significant roles in various interim management capacities for clients including acting at various times as Chief Executive Officer, Chief Restructuring Officer, Chief Operating Officer, or Chief Financial Officer. Some of my most significant representations include, without limitation, acting as Chief Restructuring Officer and Liquidating Trustee in the American Spectrum Realty, Inc. chapter 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

24

case (2015-2016), Chief Restructuring Officer and Liquidating Trustee in in the Mega RV case (the largest RV dealer in the West) (2014-2016), Investment Banker in the Townsend Jaguar Rover Dealership chapter 11 case (for which I won an Atlas Category Award for Middle Market Deal of the Year (2012)), Financial Advisor to Turner's Outdoors Acquisition Group (for which I won an M&A Advisers Category Award for Middle Market Deal of the Year (2005)), and Financial Advisor to the buyer, Spectrum Wine Auctions, of the largest bankruptcy wine sale (approximately 78,000 bottles) in U.S. history in the bankruptcy case of Premier Cru.

8. I have personally supervised the acquisition and/or "disposition" of over 50 businesses during my career. As Chief Restructuring Officer, I have personally managed several billion dollars of debt restructuring and financing on behalf of my corporate and real estate clients. In addition, I frequently serve as an expert witness in a variety of bankruptcy and non-bankruptcy litigation matters. During my service as principal and vice chairman at my previous firm (BCI), the firm was named one of the "12 Outstanding Turnaround Firms" by a national industry publication. I have been listed in the Nationwide Register's Who's Who in Executives and Businesses. In 2018, I was listed as a Top Three Individual Expert Witness-Economic in the Daily Report.

9. I have taught at the business schools of three universities. I speak and publish frequently on a variety of topics related to real estate, retail, bankruptcy, restructuring, economics, and oil and gas. I have most recently been published in the Oil & Gas Financial Journal for my articles on "Brexit's Impact on Oil and Gas" and "Recent Events Help Shape Oil Prices," as well as the ABI Journal for my article on the state of brick-and-mortar retail.

10. RDI has retained GlassRatner, subject to Court approval, to act as its financial advisor to assist it in connection with a restructuring of its and its affiliates financial affairs. My colleagues and I have worked closely with the RDI and its affiliates' management and other professionals, and have become acquainted with the Debtors' capital structure, financial condition, and business operations.

11. RDI has significant obligations to reimburse the Franchisees in connection with the redemption of the Gift Cards by customers at the Ruby's® Restaurants (primarily in connection with the Costco Gift Cards), both on a pre- and a post-petition basis. Prior to its chapter 11 filing, RDI

DOCS_LA:318820.9 76135/003

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1  lacked the funding to make such payments on account of its Gift Card Reimbursement Obligations.

2  The Franchisees, in turn, ceased making payments to RFS under the Franchise Agreements (*i.e.,* the

3  Franchisees were not paying their franchise-related obligations – the Franchise Royalties and Ad

4  Fund Obligations – because RDI was not paying the Gift Card Reimbursement Obligations to the

5  Franchisees).  Without the payment of the Franchise Royalties by the Franchisees, RFS was no

6  longer in a position to pay 25% of the royalties to RDI as the RDI License Fee.  In other words, the

7  cycle of payments between and among RDI, RFS and the Restaurants significantly diminished.

8      12.    By the Motion, RDI seeks authority from the Court to "restart" this cycle, in its

9  discretion, as of the Petition Date, by way of the proposed Post-Petition Netdown process.[13]

10 Specifically, the Post-Petition Netdown will work as follows:

11     13.    Any amounts that RDI owes a particular Franchisee in connection with post-petition

12 Gift Card Reimbursement Obligations will first be reduced (as a non-cash journal entry) by any

13 amounts that that Franchisee owes to RDI for any miscellaneous charges (the "<u>Net Amount RDI</u>

14 <u>Owes to the Franchisee</u>").  The Net Amount RDI Owes to the Franchisee will be applied (as a non-

15 cash journal entry) to the amount of post-petition Franchise Royalties that the Franchisee owes to

16 RFS, leaving a remaining balance (the "<u>Remaining Balance Owed by the Franchisee</u>").  The

17 Franchisee will pay to RFS (in cash) the Remaining Balance Owed by the Franchisee, as well as any

18 post-petition Ad Funds Obligations it owes.  From the Remaining Balance Owed by the Franchisee

19 paid to RFS by the Franchisee, RFS will pay to RDI  (in cash) the RDI License Fee (calculated on

20 the total Franchise Royalties owed by Franchisee).  The above-described "credit" that RFS has

21 extended to RDI by way of applying the Net Amount RDI Owes to the Franchisee against the

22 Franchise Royalties owed by the Franchisee resulting in the Remaining Balance Owed by the

23 Franchisee, will be booked (as a non-cash journal entry) as an intercompany receivable owed to RFS

24 from RDI (which intercompany receivable would be "zeroed out" pursuant to the contemplated

25 merger of these entities under a plan).

26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

27 [13] It is my understanding that RDI intends to address the repayment of the pre-petition Gift Card Reimbursement
Obligations, and RDI and RFS intend to address the collection of pre-petition amounts due from the Franchisees and the
28 payment of pre-petition license fees to RDI, in connection with the plan process.  The instant Motion covers only post-
petition amounts outstanding between and among RDI, RFS and the Franchisees.

26

14.    By way of example (and solely for illustration purposes), suppose RDI owes a Franchisee $15,500 on account of Gift Card Reimbursement Obligations; the Franchisee owes RDI $500 in miscellaneous charges, the Franchisee owes RFS Franchisee Royalties in the amount of $20,000 and the Franchisee owes the Ad Fund the amount of $5,000.  To "netdown" these amounts, the $15,500 in Gift Card Reimbursement Obligations would first be reduced by the $500 in miscellaneous charges the Franchisee owes to RDI, leaving a balance of $15,000 (the Net Amount RDI Owes the Franchisee).  The $15,000 would be applied (as a credit from RFS) to reduce the $20,000 in Franchise Royalties owed by the Franchisee, leaving a balance of $5,000 the Franchisee pays to RFS (the Remaining Balance Owed by the Franchisee).  The Franchisee would pay to RFS $5,000 as the Remaining Balance Owed by the Franchisee, plus the $5,000 owed to the Ad Fund, for a total payment to RFS and the Ad Fund of $10,000.  From this amount, RDI would be paid the RDI License Fee (25% of the $20,000 in Franchise Royalties, or $5,000).  The $15,000 "credit" from RFS to RDI in this transaction would be booked as an intercompany receivable in favor of RFS.

15.    As set forth in the Netdown Schedule, it is estimated that, for the period from the Petition Date through January 27, 2018, the RFS estate will receive approximately $555,573 and the RDI estate will receive approximately $113,346.  It is also projected that RFS will receive approximately $256,858 and RDI will receive approximately $61,325 from January 27, 2019 to April 21, 2019 as a result of the implementation of the Post-Petition Netdown. This would mean that the total amount that RFS estate will receive from the Petition Date to April 21, 2019 will be estimated at $812,431 and RDI estate will receive an estimated $174,671.[14]

16.    I believe that approval of the Post-Petition Netdown (and the procedures with respect thereto detailed in the Motion and above), is supported by RDI's business judgment and there are good and sound business reasons to allow RDI to implement the system described in the Motion to provide for the satisfaction of the Gift Card Reimbursement Obligations, the Franchise Royalties, the Ad Fund Obligations and the RDI License Fee without having to borrow funds from a post-petition

---

[14] These amounts are based on the netdown calculations as to each of the Franchisees and assume the collectibility from each Franchisee as noted in the Netdown Schedule, and further assume that a Franchisee will not assert a right of offset against such amounts.  To the extent that a Franchisee is entitled to, and does, assert a valid offset right against such amounts, the amounts set forth here would be materially reduced.

DOCS_LA:318820.9 76135/003

1    lender in order to pay the Gift Card Reimbursement Obligations.  This system will provide for the

2    "truing up" of the post-petition obligations between and among RDI, RFS and the Franchisees, and

3    will allow funds to flow to the estates as contemplated by the franchise system by way of the

4    Franchise Royalties, Ad Fund Obligations and the RDI License Fee, and will provide a mechanism

5    for RDI to meet its Gift Card Reimbursement Obligations without using funds from a financing

6    source.  Such process is contemplated by the RDI's cash flow budget, and I believe it should be

7    approved as RDI has an immediate need to facilitate the flow of funds in connection with its

8    business operations.

9           I declare under penalty of perjury under the laws of the United States of America that the

10    foregoing is true and correct.

11           Executed on this 6th day of February, 2019 at Irvine, California.

12

13

14    J. Michael Issa

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

DOCS_LA:318820.9 76135/003

EXHIBIT "1"

| Netdown Schedule [5] | | | | |
|---|---|---|---|---|
| | 9/5/2018 - 1/27/2019 Actual | | 1/27/2019 - 4/21/2019 Projection | |
| **RDI Owe to Franchisee** | | | | |
| Costco Reimbursement | $ | (117,617) | $ | (108,515) |
| **Total Costco Reimbursement** | $ | (117,617) | $ | (108,515) |
| | | | | |
| **Franchisee Owe to RDI** | | | | |
| Misc. A/R Due to RDI | $ | 9,677 | $ | - |
| **Total Franchisee Due to RDI** | $ | 9,677 | $ | - |
| | | | | |
| **Net RDI Owe to Franchisee** | $ | (107,939) | $ | (108,515) |
| | | | | |
| **Franchisee Owe to RFS** | | | | |
| Franchise Royalty Due | $ | 453,384 | $ | 245,300 |
| Regional Ad Fees Due | $ | 96,331 | $ | 55,046 |
| System Ad Fees Due | $ | 113,797 | $ | 65,027 |
| **Total Franchisee Due to RFS** | $ | 663,512 | $ | 365,373 |
| | | | | |
| Net Royalty Due | $ | 345,445 | $ | 136,785 |
| Regional & System Ad Fees | $ | 210,128 | $ | 120,073 |
| **Total Cash Due to RFS & Ad Fund** | $ | 555,573 | $ | 256,858 |
| | | | | |
| **Total License Fee Pay to RDI** | $ | 113,346 | $ | 61,325 |
| | | | | |
| **Receivable From RFS to RDI** | $ | (107,939) | $ | (108,515) |

[1] Franchise Royalty Due projections are calculated to be 50% of total Franchise Royalty due to non-collection.

[2] Regional and System Ad Fees are projected based on actuals.

[3] License fee payment to RDI is 25% of Franchise Royalty Due.

[4] Receivable From RFS to RDI is a non-cash transaction that will be booked as an intercompany receivable in favor of RFS.

[5] These amounts are based on the netdown calculations as to each of the Franchisees and assume the collectibility from each Franchisee as noted in the Netdown Schedule, and further assume that a Franchisee will not assert a right of offset against such amounts. To the extent that a Franchisee is entiled to, and does, assert a valid offset right against such amounts, the amounts set forth here would be materially reduced.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 1500, Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled:  **NOTICE OF MOTION AND MOTION OR ENTRY OF ORDER APPROVING RDI'S NETDOWN OF CERTAIN POST-PETITION OBLIGATIONS BETWEEN AND AMONG RDI, RFS AND THE FRANCHISEES; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF DOUGLAS S. CAVANAUGH AND J. MICHAEL ISSA IN SUPPORT THEREOF** thereof will be served or was served (a) on the judge in chamber in the form and manner required by LBR 5005-2(d); and the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **2/6/2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **2/6/2019** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **2/6/2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/6/2019 | Nancy Lockwood | /s/ Nancy Lockwood |
|----------|----------------|--------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:316841.1 76135/001

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **George B Blackmar**    gblackmar@bpslaw.net
- **Dustin P Branch**    branchd@ballardspahr.com,
  carolod@ballardspahr.com;hubenb@ballardspahr.com;Pollack@ballardspahr.com
- **Meghan Canty**    mcanty@tocounsel.com, lhyska@tocounsel.com
- **Aaron Davis**    aaron.davis@bryancave.com, kat.flaherty@bryancave.com
- **Alan J Friedman**    afriedman@shbllp.com, lgauthier@shbllp.com
- **Eric J Fromme**    efromme@tocounsel.com, lchapman@tocounsel.com;sschuster@tocounsel.com
- **Richard H Golubow**    rgolubow@wcghlaw.com,
  pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Garrick A Hollander**    ghollander@wcghlaw.com,
  pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com
- **Lillian Jordan**    ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM
- **David S Kupetz**    dkupetz@sulmeyerlaw.com,
  dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com
- **William N Lobel**    wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com,
  csheets@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Jessica G McKinlay**    mckinlay.jessica@dorsey.com
- **Malcolm D Minnick**    dminnick@pillsburylaw.com, m.minnick@comcast.net
- **Ernie Zachary Park**    ernie.park@bewleylaw.com
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Matthew S Walker**    matthew.walker@pillsburylaw.com, candy.kleiner@pillsburylaw.com
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com

2. **SERVED BY UNITED STATES MAIL**:

SEE SERVICE LIST ATTACHED.

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**

Via Overnight Mail
The Honorable Catherine E. Bauer
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5165 / Courtesy Bin
Santa Ana, CA 92701-4593

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:316841.1 76135/001

**F 9013-3.1.PROOF.SERVICE**

EUREKA FOOD ENTERPRISES, LLC
STEVEN L. CRAIG
4100 MACARTHUR BLVD, SUITE 200
NEWPORT BEACH, CA 92660

RUBY'S MV INC
GEORGE ALEXANDER, J. BRADY GRECO
19312 SAINT JUDE DRIVE
SANTA ANA, CA 92705

EAT AT JOES RESTAURANT INC
JOE CAMPBELL
18 BLUE JAY
ALISO VIEJO, CA 92656

~~HERITAGE RESTAURANT MANAGEMENT~~
~~JOHN FISHER, JOE CAMPBELL~~
~~1640 ORD WAY~~
~~OCEANSIDE, CA 92056~~
**MAIL RETURNED 2/1/19**

T. RANDOLPH HOWATT
27 INDIAN ROCK ROAD
SAN ANSELMO, CA 94960

BENCHMARK HOSPITALITY INC.
JOHN FISHER
31781 CAMINO CAPISTRANO
SAN JUAN CAPISTRANO, CA 92675

MARVI LAND INC
MICHEAL YOUSSEF
141 EAST WILLOW STREET
LONG BEACH, CA 90806

PV HOSPITALITY INC
SUHAIL HASHIM
20516 PESARO WAY
PORTER RANCH, CA 91326

F & M FOODSERVICE INC
JOHN FISHER
85101 STAZZONA PLACE
INDIO, CA 92203

RUBY'S YORBA LINDA LTD
RUBY'S MANAGEMENT LLC
DOUGLAS S. CAVANAUGH
4100 MACARTHUR BLVD, SUITE 310
NEWPORT BEACH CA 92660

~~RUBY'S DINER ORANGE DEPOT LLC~~
~~JOHN FISHER, RABIO RUSSO, JOE~~
~~CAMPBELL~~
~~1640 ORD WAY~~
~~OCEANSIDE, CA 92056~~
**MAIL RETURNED 2/1/19**

COFFIX LLC
ABRAHAM KOBI
5070 LANDERSHIP BLVD
NORTH HOLLYWOOD, CA 91601

HOST INTERNATIONAL INC
SENIOR COUNSEL/BRANDS
SEVENTH FLOOR, MALL STOP 7-1
6905 ROCKLEDGE DR.
BETHESDA, MD 20817

NATIONAL PIZZA RESTAURANTS INC
CHRISTOPHER J. PAPPAS, HARRIS
PAPPAS
13939 NORTHWEST FRWY.
HOUSTON, TX 77040

~~NATIONAL PIZZA RESTAURANTS INC~~
~~CHRISTOPHER J. PAPPAS, HARRIS~~
~~PAPPAS~~
~~645 HEIGHTS~~
~~HOUSTON, TX 77007~~
**FedEx Returning/wrong address 1.11.19**

JAMUL INDIAN VILLAGE OF CALIFORNIA
ATTN CHAIRPERSON
14191 HIGHWAY 94
JAMUL, CA 91935

JAMUL INDIAN VILLAGE OF CALIFORNIA
C/O SAN DIEGO GAMING VENTURES LLC
ATTN GENERAL COUNSEL
825 BERKSHIRE BLVD
WYOMISSING, PA 19610

AC FOOD HALL PARTNERS LLC
C/O MOMENTUM HOSPITALITY
RESORTS AC LLC
WILLIAM S WHITE, MANAGING MEMBER
15A MELANIE LANE, BUILDING #6
EAST HANOVER, NH 07936

LEVY PREMIUM FOODSERVICE LTD
MICHAEL T PERLBERG
980 NORTH MICHIGAN AVE, SUITE 400
CHICAGO, IL 60611

LEVY PREMIUM FOODSERVICE LTD
C/O VALLEY VIEW CASINO CENTER
ATTN DIRECTOR OF OPERATIONS
3550 SPORTS ARENA BLVD
SAN DIEGO, CA 92110

TAORMINA FAMILY VENTURE FUND LLC
WILLIAM C TAORMINA
128 W SYCAMORE
ANAHEIM, CA 92805

TAORMINA FAMILY VENTURE FUND LLC
C/O THOMAS BORCHARD
BORCHARD & CALLAHAN AC
25909 PALA, SUITE 300
MISSION VIEJO, CA 92691

ROUGH DRAFT RESTAURANT GROUP
PA LLC
OFFICER DIRECTOR MANAGER AGENT
919 BALTIMORE PIKE
GLEN MILLS, PA 19342-1016

~~DJR VENTURES INC~~
~~OFFICER DIRECTOR MANAGER AGENT~~
~~234 MALL BOULEVARD~~
~~KING OF PRUSSIA, PA 19406~~
**Incorrect Per FedEx being returned**
**MAIL RETURNED 2/1/19**

KRG INVESTMENTS LLC
OFFICER DIRECTOR MANAGER AGENT
4414 PARK MALLORC
CALABASAS, CA 91302

HERITAGE RESTAURANT
MANAGEMENT, INC.
JOHN FISHER, CEO AND AGENT OF
SERVICE
OF PROCESS
85101 STAZZONA PLACE

RUBY'S DINER ORANGE DEPOT, LLC
JOHN FISHER AS AGENT OF SERVICE
85101 STAZZONA PLACE
INDIO, CA 92203

RUBY'S DINER ORANGE DEPOT, LLC
OFFICER, DIRECTOR, MANAGER, AGENT
19602 COUNTY LAKE DR.
MAGNOLIA, TX 77355

INTERNAL REVENUE SVC
GJ CARTER LOUIS OR OTHER AGENT
PO BOX 145595
STOP 8420G
CINCINNATI OH 45250-5585

INTERNAL REVENUE SVC
CENTRALIZED INSOVENCY OPERATION
PO BOX 7346
PHILADELPHIA, PA 19101-7346

INTERNAL REVENUE SVC
INSOLVENCY STOP 5022
300 N LOS ANGELES ST
RM 406
LOS ANGELES CA 90012

INTERNAL REVENUE SVC
OFFICE OF CHIEF COUNSEL
10TH ST AND PENNSYLVANIA AVE NW
WASHINGTON DC 20530

INTERNAL REVENUE SVC
AGENT
2970 MARKET ST
MAIL STOP 5-Q30133
PHILADELPHIA PA 19104-50156

FRANCHISE TAX BOARD CHIEF
COUNSEL
C/O GENERAL COUNSEL SECTION
PO BOX 1720, MS: A-260
RANCHO CORDOVA, CA 95741-1720

FRANCHISE TAX BOARD BANKRUPTCY
SECTION MS: A-340
PO BOX 2952
SACRAMENTO, CA 95812-2952

EMPLOYMENT DEVELOPMENT DEPT.
BANKRUPTCY GROUP MIC 92 E
PO BOX 826880
SACRAMENTO, CA 94280-0001

CREDIT MANAGERS ASSOC.
ATTN: ADJUSTMENTS
303 NORTH GLEN OAK BLVD., SUITE 200
BURBANK CA 91502

CREDIT MANGEMENT ASSOCIATIONS
KIMBERLY A. LAMBERTY, PRESIDENT
3110 W. CHEYENNE AVENUE
STE 100
NORTH LAS VEGAS, CA 89032

CREDIT MANANGMENT ASSOCIATIONS
MIKE JONICH
40 EAST VERDUGO AVENUE
BURBANK CA 91502

KATE NAPOLI
19512 POMPANO LANE # 108
HUNTINGTON BEACH CA 92648

DAN MCALLISTER
TREASURER-TAX COLLECTOR
ATTENTION: BANKRUPTCY DESK
1600 PACIFIC HIGHWAY, ROOM 162
SAN DIEGO, CA 92101

OFFICE OF THE US TRUSTEE
MICHAEL HAUSER
411 WEST FOURTH STREET, SUITE 7160
SANTA ANA CA 92701