1   William N. Lobel – State Bar No. 93202
    PACHULSKI STANG ZIEHL & JONES LLP
2   650 Town Center Drive, Suite 1500
    Costa Mesa, CA  92626
3   Telephone: (714) 384-4740
    Facsimile:  (714) 384-4741
4   E-mail:  wlobel@pszjlaw.com

5   Attorneys for Ruby's Diners, Inc., *et al.,*
    Debtors and Debtors-in-Possession

6

7                    **UNITED STATES BANKRUPTCY COURT**

8        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

9   In re:                                    Case No. 8:18-bk-13311-CB
                                              Chapter 11
10  RUBY'S DINER, INC., a California          (Jointly Administered With Case Nos.
    corporation, *et al.,*[1]                 8:18-bk-13197-CB; 8:18-bk-13198-CB;
11                                            8:18-bk-13199-CB; 8:18-bk-13200-CB;
               Debtors and Debtors-in-Possession.   8:18-bk-13201-CB; 8:18-bk-13202-CB)
12  Affects:
                                              **MOTION FOR AN ORDER**
13  ☐ All Debtors                             **AUTHORIZING THE DEBTORS TO:**
                                              **(1) ASSUME AND ASSIGN NON-**
14  ☒ RUBY'S DINER, INC., ONLY               **RESIDENTIAL REAL PROPERTY LEASE**
                                              **AND RESOLVE CLAIMS BY THE**
15  ☒ RUBY'S SOCAL DINERS, LLC, ONLY         **LANDLORD AGAINST THE DEBTORS IN**
                                              **CONNECTION THEREWITH; AND**
16  ☐ RUBY'S QUALITY DINERS, LLC, ONLY       **(2) ENTER INTO ASSET PURCHASE**
                                              **AGREEMENT WITH ASSIGNEE FOR**
17  ☐ RUBY'S HUNTINGTON BEACH, LTD., ONLY    **THE SALE OF FF&E; MEMORANDUM**
                                              **OF POINTS AND AUTHORITIES; AND**
18  ☒ RUBY'S LAGUNA HILLS, LTD., ONLY        **DECLARATION OF DOUGLAS S.**
                                              **CAVANAUGH IN SUPPORT THEREOF**
19
    ☐ RUBY'S OCEANSIDE, LTD., ONLY           **[Application For Order Shortening Time**
20                                            **Filed Concurrently Herewith]**
    ☐ RUBY'S PALM SPRINGS, LTD., ONLY
21                                            <u>**Requested Hearing Date and Time:**</u>

22                                            Date      March 21, 2019
                                              Time:     10:00 a.m.
23                                            Place:    Courtroom 5D
                                                        411 West Fourth Street
24                                                      Santa Ana, CA  92701-4593

25

26

27  ───────────────
    [1] The last four digits of the Debtors' federal tax identification numbers are as follows: Ruby's Diner, Inc. (8143); Ruby's
28  SoCal Diners, LLC (9782); Ruby's Quality Diners, LLC (1539); Ruby's Huntington Beach, Ltd. (1331); Ruby's Laguna
    Hills, Ltd. (6603); Ruby's Oceanside, Ltd. (9104); and Ruby Palm Springs, Ltd. (9627).

DOCS_LA:320037.4 76135/003

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1

# TABLE OF CONTENTS

2

**Page**

3    **I. STATEMENT OF FACTS** ................................................................................................ 4
    A.   Jurisdiction and Venue.................................................................................................. 4
4        B.   Background ................................................................................................................... 4
    C.   The Laguna Hills Lease ............................................................................................... 4
5        D.   Agreement Regarding Assumption and Assignment of the Laguna Hills Lease and
Resolution of the Landlord's Claim in Connection Therewith........................................... 5
6        E.   The Sale of the FF&E at the Laguna Hills Restaurant to the Assignee...................... 7
   **II. ARGUMENT**................................................................................................................... 7
7        A.   Assumption and Assignment of the Laguna Hills Lease is Beneficial to the Estates.............. 7
    B.   The Requirements for Assumption and Assignment Have Been Met ...................... 9
8        C.   The Sale of the FF&E to the Assignee is Beneficial to the Estates ........................ 11
    D.   Waiver of Stay of Order............................................................................................ 13
9        E.   Notice ......................................................................................................................... 13
   **III.  CONCLUSION** ............................................................................................................ 13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

i

Cases

*Agarwal v. Pomona Valley Med. Group (In re Pomona Valley Medical Group)*,
    476 F.3d 665 (9th Cir. 2006) ............................................................................................ 10
*Comm. of Equity Sec. Holders v. Lionel Corp.*,
    722 F.2d 1063 (2d Cir. 1983)............................................................................................ 13
*Group of Institutional Investors v. Chicago, M., S. P. & P. R. Co.*
    318 U.S. 523 (1943)............................................................................................................ 8
*In re Abbott's Dairies of Pa., Inc.*,
    788 F.2d 143 (3d Cir. 1986)....................................................................................... 12, 14
*In re America Suzuki Motor Corp.*,
    494 B.R. 466, (Bankr. C.D. Cal. 2013) ............................................................................. 8
*In re Baldwin United Corp.*,
    43 B.R. 888  (Bankr. S.D. Ohio 1984)............................................................................. 13
*In re Chateaugay Corp.*,
    973 F.2d 141 (2d Cir. 1992)............................................................................................. 14
*In re Cook*,
    2015 Bankr. LEXIS 1900, at *1-2 (Bankr. C.D. Cal. June 8, 2015) ............................... 8
*In re Del. & Hudson Ry. Co.*,
    124 B.R. 169 (Bankr. D. Del. 1991) ......................................................................... 12, 13
*In re Gardiner, Inc.*,
    831 F.2d 974 (11th Cir. 1987) ........................................................................................... 8
*In re Lubrizol*,
    756 F.2d (4th Cir. 1985)) ................................................................................................. 10
*In re Mark Bell Furniture Warehouse, Inc.*,
    992 F.2d 7, 8 (1st Cir. 1993)............................................................................................ 14
*In re Martin (Myers v. Martin)*,
    91 F.3d 389 (3d Cir. 1996)............................................................................................... 12
*In re Phoenix Steel Corp.*,
    82 B.R. 334 (Bankr. D. Del. 1987) .................................................................................. 13
*In re Vanguard Oil & Serv. Co.*,
    88 B.R. 576 (E.D.N.Y. 1988) .......................................................................................... 14
*In re Waldron*,
    36 B.R. 633, 640 (Bankr. S.D. Fla. 1984)......................................................................... 9
*In re Willemain v. Kivitz*,
    764 F.2d 1019 (4th Cir. 1985) ......................................................................................... 14
In *Summit Land Co. v. Allen (In re Summit Land Co.)*,
    13 B.R. 310 (Bankr. D. Utah 1981) .................................................................................. 9
*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp).*,
    4 F.3d 1095 (2d Cir. 1993)................................................................................................. 8

Statutes
11 U.S.C. § 105(a) .................................................................................................................. 11
11 U.S.C. § 363(b) .................................................................................................................. 13
11 U.S.C. § 363(b)(1) ....................................................................................................... 10, 11
11 U.S.C. § 363(f)................................................................................................................... 12
11 U.S.C. § 365 ........................................................................................................................ 8
11 U.S.C. § 365(a) ............................................................................................................... 7, 8
11 U.S.C. § 365(b)(1) ......................................................................................................... 9, 10
11 U.S.C. § 365(f) ............................................................................................................. 10, 13
11 U.S.C. § 365(f)(2) ............................................................................................................... 9
28 U.S.C. § 157(b)(2) .............................................................................................................. 4
28 U.S.C. §§ 1334 ................................................................................................................... 4
28 U.S.C. §§ 1408 ................................................................................................................... 4
28 U.S.C. §§ 1409 ................................................................................................................... 4
28 U.S.C. §§ 157 ..................................................................................................................... 4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

i

Other Authorities

E. Norman Veasey, *The Defining Tension in Corporate Governance in America*,
   52 Bus Law 393, 394 (Feb. 1997) ..................................................................................... 8

Rules

Fed. R. Bankr. P. 2002 ..................................................................................................... 13
Fed. R. Bankr. P. 6004(h) ......................................................................................... 13, 14
Fed. R. Bankr. P. 6006(d) .......................................................................................... 13, 14
Fed. R. Bankr. P. 6006(vi) ................................................................................................ 14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

ii

**PLEASE TAKE NOTICE** that Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"), Ruby's Diner, Inc., a California corporation ("RDI") and Ruby's SoCal Diners, LLC ("SoCal Diners") (collectively, the "Debtors"), hereby move the Court for an order authorizing the Debtors (1) to assume and assign the nonresidential real property lease (the "Laguna Hills Lease") for the Ruby's restaurant located in Laguna Hills, California (the "Laguna Hills Restaurant") to Maria Land, Inc., an entity owned by existing franchisees, Michael Youssef and Rania Youssef (the "Assignee") and resolve all claims against the Debtors by the landlord, MGP Fund X Laguna Hills, LLC ("MGP"), in connection with the Laguna Hills Lease, in accordance with an Assignment and Assumption of and Second Amendment to Shopping Center Lease by and between Ruby's Laguna Hills, the Assignee and MGP (the "Assignment Agreement"), a true and correct copy of which is attached as Exhibit "1" to the Declaration of Douglas S. Cavanaugh attached hereto (the "Cavanaugh Declaration"), pursuant 11 U.S.C. §§ 365(a), (b)(1) and (f) and Rule 6006 of the Federal Rules of Bankruptcy Procedure; and (2) to enter into an asset purchase agreement (the "APA"), a true and correct copy of which is attached as Exhibit "2" to the Cavanaugh Declaration, with the Assignee for the purchase of a limited amount of furniture, fixtures and equipment owned by the Debtors located at the Laguna Hills Restaurant (the "FF&E") (which FF&E (consisting of a limited amount of "small goods") will be of no further use to the Debtors following the assignment) for a purchase price of Fourteen Thousand Dollars ($14,000) pursuant to 11 U.S.C. § 11 U.S.C. §§ 363(b), (f), and (m), Rule 6004 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 6004-1(c), free and clear of any liens, claims, interests and encumbrances, with any liens, claims, interests and encumbrances on the FF&E to attach to the proceeds of the sale (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, for the reasons set forth in the Motion, the Debtors have determined in their sound business judgment that it is in the best interest of their estates and their creditors to assume and assign the Laguna Hills Lease to the Assignee, resolve all claims by MGP against the Debtors with respect to the Laguna Hills Lease and enter into the APA, on the terms and conditions set forth in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the statutory deadline for an entry of an order

DOCS_LA:320037.4 76135/003

1   approving the assumption and assignment of the Laguna Hills Lease is **_March 27, 2019_** and,

2   therefore, it is imperative that Court approval of this Motion by obtained in advance of such deadline

3   to provide the Court with ample opportunity to enter an order approving this Motion.  Based thereon,

4   the Debtors have requested that the Court schedule a hearing on approval of the Motion on shortened

5   time.

6       **PLEASE TAKE FURTHER NOTICE** that the Debtors seek a waiver of the 14-day stay on

7   the effectiveness of the order approving the Motion imposed by Federal Rules of Bankruptcy

8   Procedure 6004(h) and 6006(d), so that the transactions contemplated hereby may occur

9   immediately following approval of the Motion.

10      **PLEASE TAKE FURTHER NOTICE** that the Motion is based on the accompanying

11  Memorandum of Points and Authorities, the Cavanaugh Declaration in support of the Motion, and

12  any other admissible evidence properly brought before the Court.  In addition, the Debtors request

13  that the Court take judicial notice of all documents filed with the Court in these chapter 11 cases.

14      **WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) approving

15  the Motion; (ii) authorizing the assumption and assignment of the Laguna Hills Lease to the

16  Assignee in accordance with the Assignment Agreement; (iii) resolving all claims by MGP against

17  the Debtors in connection with the Laguna Hills Lease in accordance with the Assignment

18  Agreement; (iv) authorizing the Debtors to enter into the APA with the Assignee; and (v) granting

19  such other and further relief as the Court deems just and proper.

20
21  Dated:    March 15, 2019                    PACHULSKI STANG ZIEHL & JONES LLP

22                                              By:    */s/ William N. Lobel*
23                                                     _____
                                                       William N. Lobel
24                                                     Attorneys for Ruby's Diner, Inc., *et al.,*
                                                       Debtors and Debtors-in-Possession

25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.    Jurisdiction and Venue

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.    Background

On August 29, 2018, Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills") and Ruby's SoCal Diners, LLC ("SoCal Diners"), along with certain affiliates, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On September 5, 2018, Ruby's Diner, Inc., a California corporation ("RDI" and, together with Ruby's Laguna Hills and SoCal Diners, the "Debtors") filed a related chapter 11 case.  On September 5, 2018, the Court entered an order jointly administering the Debtors' chapter 11 cases (and those of certain affiliates) with RDI designated as the lead debtor.

No party has requested the appointment of a trustee or examiner in the Debtors' cases.  On September 19, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors in the RDI case (the "Committee").

The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### C.    The Laguna Hills Lease

On or about September 16, 1994, RDI entered into a lease agreement (the "Laguna Hills Initial Lease") with Shopping Centers Associates, a New York general partnership, for the Ruby's Diner located within the Laguna Hills Mall, located at 24155 Laguna Hills Mall, Suite 184A, Laguna Hills, California 92653 (the "Laguna Hills Restaurant").  MGP Fund X Laguna Hills, LLC ("MGP") currently owns the Laguna Hills Mall and is the landlord in connection with the Laguna Hills Restaurant.

On or about January 18, 2016, MGP and Ruby's Laguna Hills, as successor to RDI, entered

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

into a first amendment to the Laguna Hills Initial Lease (the "Laguna Hills First Amendment").

On or about May 8, 2018, following litigation against the Debtors commenced by MGP, the Debtors and MGP entered into a Stipulation to Stay Lockout resolving certain issues between them and amending the terms of the Laguna Hills Initial Lease and the Laguna Hills First Amendment in connection therewith (the "Stipulated Judgment").

Collectively, along with any related agreements or documents, the Laguna Hills Initial Lease, the Laguna Hills First Amendment and the Stipulated Judgment are referred to herein as the "Laguna Hills Lease."

The rent under the Laguna Hills Lease is in the amount of $12,000 per month and the Debtors owe a reimbursement payment to MGP in connection with the Laguna Hills Lease in the amount of $83,143.01. The Debtors have made no payments in connection with the Laguna Hills Lease since approximately August 2018. The term of the Laguna Hills Lease expires January 31, 2025.

**D.**     **Agreement Regarding Assumption and Assignment of the Laguna Hills Lease and Resolution of the Landlord's Claim in Connection Therewith**

The Debtors, the Assignee and MGP have agreed that the Laguna Hills Lease will be assumed by the Debtors and assigned to the Assignee pursuant to the terms of the Assignment Agreement. Operation of the Laguna Hills Restaurant, therefore, will be taken over by the Assignee – an existing Ruby's franchisee – who will continue to operate a Ruby's Diner at the Laguna Hills Mall.

In connection with such assumption and assignment, the Debtors and MGP have agreed that the Debtors will pay to MGP the total amount of Forty-Eight Thousand Dollars ($48,000), as follows: (a) the amount of Twelve Thousand Dollars ($12,000) to be paid to MGP upon entry of the Court's order approving this Motion; and (b) the amount of Thirty Six Thousand Dollars ($36,000) to be paid to MGP upon the "effective date" of a reorganization plan confirmed by the Court in the Debtors' bankruptcy case, in all events subject to Court approval. With the exception of the foregoing payments, MGP and the Debtors will fully and finally release each other from any and all

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1    further liability and claims under or in connection with the Laguna Hills Lease.[2]

2            The Debtors believe that the assumption and assignment, and the resolution of claims, is of

3    benefit to their estates and their creditors.  Due to continuing construction at the Laguna Hills Mall

4    over the past several years, the Laguna Hills Restaurant has suffered significant and continuing

5    losses of revenue, and no payments have been made by the Debtors in connection with the Laguna

6    Hills Lease since approximately August 2018.[3]  Absent approval of the relief sought by way of this

7    Motion, the Debtors would be forced to reject the Laguna Hills Lease, thereby subjecting the

8    Debtors' estates to potentially significant administrative and lease rejection damage claims by MGP

9    – which claims could be asserted in the amount of several hundreds of thousands of dollars.  While

10   the Debtors believe that they have valid defenses to some or all of any damage claims due to the

11   construction issues at the Laguna Hills Mall and/or based on mitigation related to such claims, the

12   Debtors have determined that the assumption and assignment of the Laguna Hills Lease to the

13   Assignee and resolution of MGP's claims against the Debtors in connection therewith provides

14   certainty and avoids the costs of resolving any disputes over MGP's claims against the Debtors'

15   estates.  In addition, the operation of a Ruby's franchise at the Laguna Hills Mall by the Assignee

16   will result in the payment of franchise fees to the Debtors' affiliate, Ruby's Franchise Systems, Inc.

17   and, in turn, a license fee to RDI.  The assumption and assignment of the Laguna Hills Lease to the

18   Assignee and resolution of MGP's claims, therefore, is in the best interests of the Debtors' estates

19   and reflects their reasoned business judgment.

20

21

22

23

24

25   [2] In furtherance of this, the Debtors have agreed to include the following provision in the reorganization plan to be
     confirmed by the Bankruptcy Court in the Bankruptcy Case:  "A condition to this plan going Effective is that the sum of
26   $36,000, which is owed by Ruby's Laguna Hills, Ltd. to MGP Fund X Laguna Hills, LLC in connection with the
     assumption and assignment of the lease for the Ruby's restaurant located in the Laguna Hills Mall, be paid in full."

27   [3] Such payments include the monthly lease payments in the amount of $12,000, and a reimbursement payment in the
28   amount of $83,143.01 due under the Stipulated Judgment.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Costa Mesa, California

DOCS_LA:320037.4 76135/003

**E.  The Sale of the FF&E at the Laguna Hills Restaurant to the Assignee**

In addition, by this Motion, the Debtors seek approval of the sale to the Assignee of the limited amount of furniture, fixtures and equipment owned by the Debtors located at the Laguna Hills Restaurant for a purchase price of Fourteen Thousand Dollars ($14,000), pursuant to the terms of the Asset Purchase Agreement (the "APA"), a true and correct copy of which is attached as Exhibit "2" to the Cavanaugh Declaration. Appendix A to the APA sets forth the furniture, fixtures and equipment to be sold to the Assignee (the "FF&E"). As set forth in Appendix A, the FF&E is limited to certain "small goods" located at the Laguna Hills Restaurant, as the majority of the furniture, fixtures and equipment located at the Laguna Hills Restaurant are owned by the landlord, MGP, not the Debtors. The APA further provides for usual and customary provisions for the satisfaction by the Debtors of any pre-closing obligations of the Debtors related to the Laguna Hills Restaurant (*e.g.,* taxes, utilities, payroll, and other operational costs owed to third parties for the pre-closing period).

The Debtors believe that the sale of the FF&E at the Laguna Hills Restaurant is in the best interests of their estates as it will provide for a monetization of these limited assets for which the Debtors will have no further use following the assignment, and will be utilized by the Assignee in connection with its future operations of the Laguna Hills Restaurant. In the Debtors' business judgment, the purchase price represents a fair and reasonable sales price for the FF&E, which would have little to no use by any party other than the Assignee. Additionally, the benefit of receiving an immediate payment for the FF&E is of benefit to the estates. Accordingly, the Debtors request that the Court approve the APA and approve the sale of the FF&E as provided therein, with the proceeds of the sale remaining subject to any valid lien, claim, interest or encumbrance thereon.

**II.**

**ARGUMENT**

**A.  Assumption and Assignment of the Laguna Hills Lease is Beneficial to the Estates**

Section 365(a) of the Bankruptcy Code provides that, "subject to the court's approval [a debtor in possession] may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A debtor's decision to assume an executory contract or unexpired lease is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

subject to review under the "business judgment standard."  _Group of Institutional Investors v. Chicago, M., S. P. & P. R. Co_., 318 U.S. 523, 550 (1943) ("[T]he question whether a lease should be rejected and, if not, on what terms it should be assumed is one of business judgment."); _see Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp)._, 4 F.3d 1095, 1099 (2d Cir. 1993); _In re Gardiner, Inc._, 831 F.2d 974, 975 n.2 (11th Cir. 1987); _In re America Suzuki Motor Corp_., 494 B.R. 466, 475 n.4 (Bankr. C.D. Cal. 2013) ("Whether to assume or reject an executory contract is generally left to the business judgment of the trustee or debtor in possession.") (citing _In re G.I. Indus_., 204 F. 3d 1276, 282 (9th Cir. 2000)); _In re Cook_, 2015 Bankr. LEXIS 1900, at *1-2 (Bankr. C.D. Cal. June 8, 2015) ("motions to assume or reject executory contracts under 11 U.S.C. § 365 should be summary proceedings focusing on whether the decision of the trustee, or debtor-in-possession, to assume or reject an executory contract is a good business decision or bad one.").

Bankruptcy courts must approve a debtor's decision to assume or reject an executory contract "unless there is bad faith or a gross abuse of discretion."  In other words, the court must decide "whether the decision of the debtor is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim, or caprice."  _In re Health Science Products,_ 191 B.R. 895, 909 n.15 (Bankr. N.D. Ala. 1995).  The business judgment rule can be simply stated: in making a business decision, the directors are presumed to have acted independently, on an informed basis, in good faith, and in the honest belief that the decision is in the best interests of the corporation.

Thus, a business decision will normally be sustained unless the presumption is rebutted in either of two ways: (i) the process, independence, or good faith of the directors is compromised; or (ii) the decision cannot be attributed to a rational business purpose.  E. Norman Veasey, _The Defining Tension in Corporate Governance in America_, 52 Bus Law 393, 394 (Feb. 1997). In _Summit Land Co. v. Allen (In re Summit Land Co.)_, 13 B.R. 310 (Bankr. D. Utah 1981), the court concluded that a debtor's decision regarding the assumption or rejection of a lease should be granted as a matter of course:

> [C]ourt approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course.  To begin, this rule places responsibility for administering the estate with the trustee, not the court, and

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1

2

3

therefore furthers the policy of judicial independence considered vital by the authors of the Code.  Second, this rule expedites the administration of estates, another goal of the Bankruptcy Reform Act.  Third, the rule encourages rehabilitation by permitting the replacement of marginal with profitable business arrangements.

4

*Summit Land Co.*, 13 B.R. at 315; *see also* <u>In re Waldron</u>, 36 B.R. 633, 640 (Bankr. S.D. Fla. 1984).

5

6

7

8

9

10

11

12

13

Under the business judgment test, if assumption or rejection would benefit the debtor's estate, the court should approve the debtor's proposed assumption or rejection.  <u>*Agarwal v. Pomona Valley Med. Group (In re Pomona Valley Medical Group)*</u>, 476 F.3d 665, 670-71 (9th Cir. 2006) ("[The court] should approve the rejection of an executory contract under § 365(a) unless it finds that the debtor-in-possession's conclusion that rejection would be 'advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice.'" (quoting <u>In re Lubrizol</u>, 756 F.2d 1043, 1047 (4th Cir. 1985)); *see also In re FCX, Inc.,* 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986) ("the debtor must have a good business judgment reason for asking the Bankruptcy Court to permit it to assume the executory contract").

14

15

16

17

18

19

20

21

In this case, and as discussed hereinabove, the Debtors have determined in their sound business judgment that it is in the best interest of their estates and their creditors to assume and assign the Laguna Hills Lease to the Assignee pursuant to the terms of the Assignment Agreement.  The Debtors' assumption and assignment of the Laguna Hills Lease to the Assignee has the approval and consent of the landlord MGP, and MGP and the Debtors will resolve any claims between them as a consequence of such assumption and assignment.  The Debtors, therefore, request that the Court enter an order authorizing the assumption and assignment of the Laguna Hills Lease, and the resolution of MGP's claims against the Debtors in connection therewith.

22

**B.**    **The Requirements for Assumption and Assignment Have Been Met**

23

24

25

26

Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign its executory contracts and unexpired leases, provided the debtor first assumes such executory contracts and unexpired leases in accordance with section 365(b)(1), and provides adequate assurance of future performance by the assignee.  11 U.S.C. § 365(f)(2).

27

Section 365(b)(1) provides as follows:

28

9

1

2

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

3

4

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .;

5

6

> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

7

> (C) provides adequate assurance of future performance under such contract or lease.

8

11 U.S.C. § 365(b)(1).

9

10

In this case, the Debtors and MGP have reached an agreement that all amounts due in

11

connection with the assumption and assignment of the Laguna Hills Lease will be satisfied by the

12

payment of the total amount of Forty-Eight Thousand Dollars ($48,000), to be paid as follows:

13

(a) the amount of Twelve Thousand Dollars ($12,000) to be paid to MGP upon entry of an order of

14

the Court approving this Motion; and (b) the amount of Thirty Six Thousand Dollars ($36,000) to be

15

paid to MGP on the effective date of a chapter 11 plan confirmed by the Court in the Debtors' cases.

16

With the exception of the foregoing payments, MGP and the Debtors will fully and finally release

17

the each other from any and all further liability and claims under or in connection with the Laguna

18

Hills Lease.  The payment of these amounts satisfies the requirements of section 365(b)(1) of the

19

Bankruptcy Code.  Moreover, MGP has agreed to the assignment of the Laguna Hills Lease to the

20

Assignee, thus demonstrating its belief that the Assignee has the financial wherewithal to honor its

21

obligations under the Laguna Hills Lease on an ongoing basis, thereby satisfying the assignment

requirements of section 365(f)(2) of the Bankruptcy Code.

22

23

The Debtors submit that sound business justifications exist to allow the Debtors to assume

24

and assign, and resolve the landlord's claims with respect to, the Laguna Hills Lease.  The

25

agreements between the parties with respect thereto demonstrate that the requirements of the

26

Bankruptcy Code necessary to assume and assign the Laguna Hills Lease have been met.  The Court,

27

therefore, should approve the assumption and assignment of the Laguna Hills Lease, and the

resolution of MGP's claims thereunder, as requested.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**C.      The Sale of the FF&E to the Assignee is Beneficial to the Estates**

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  To approve the use, sale or lease, other than in the ordinary course of business, the Court must find "some articulated business justification."  *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) and *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) (requiring good faith purchasing).  Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

Courts have held that transactions should be approved under section 363(b) of the Bankruptcy Code when they are supported by the sound business judgment of debtors or trustee, as the case may be.  *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtors' management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

In this case, the Debtors submit that the purchase price for the FF&E is reasonable, for fair value, and was negotiated at arm's length and in good faith.  Moreover, a private sale is appropriate because of the limited amount of FF&E owned by the Debtors, and the fact that the Assignee, as the new operator of the Laguna Hills Restaurant, is most likely the only entity with any use for the FF&E.

Courts have held that approval of a proposed sale of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor.  *See Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *In re*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1  *Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82

2  B.R. 334, 335 (Bankr. D. Del. 1987); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D.

3  Del. 1991).  A trustee's showing of sound business justification need not be unduly exhaustive;

4  instead the trustee is "simply required to justify the proposed disposition with sound business

5  reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

6         Whether or not there are sufficient business reasons to justify a sale depends upon the facts

7  and circumstances of each case.  *See Lionel*, 722 F.2d at 1071.  Bankruptcy courts are given

8  substantial discretion in deciding whether to authorize a sale of a debtors' assets outside of the

9  ordinary course of business.  *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).  In this

10  case, the Debtors believe that the APA represents a prudent and proper exercise of their business

11  judgment and is in the best interests of the creditors of the Debtors' estates.

12         Although the Bankruptcy Code does not define "good faith purchaser," courts construing

13  section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for

14  'value'." *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986); *see also In re Mark*

15  *Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d

16  1019, 1023 (4th Cir. 1985); *In re Vanguard Oil & Serv. Co.*, 88 B.R. 576, 580 (E.D.N.Y. 1988).  The

17  Debtors submit that the Assignee is entitled to a finding that it is a good faith purchaser pursuant to

18  section 363(m).

19         Section 363(f) of the Bankruptcy Code permits a trustee to sell assets free and clear of all any

20  liens, claims, interests or encumbrances which may be asserted against such assets, with any such

21  any liens, claims, interests or encumbrances attaching to the net proceeds of the sale, subject to the

22  rights and defenses of a debtor with respect thereto.  In this case, any liens, claims, interests or

23  encumbrances against the FF&E will attach to the proceeds of the sale, and the Debtors believe that

24  there will be no objection to the proposed sale of the FF&E, thus satisfying the conditions of Section

25  363(f).

26         The Debtors submit that the sale of the FF&E is a prudent exercise of their business

27  judgment under the circumstances and is in the best interests of the Debtors' estates and creditors.

28  Moreover, the purchase price for the sale is reasonable and has been negotiated at arm's length with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1  the Assignee.  Accordingly, the Debtors respectfully request that the Court approve the APA and the

2  sale of the FF&E as provided by the APA.

3  **D.**    **Waiver of Stay of Order**

4          Pursuant to Bankruptcy Rule 6004(h) and 6006(d), orders authorizing the sale of property

5  under section 363(b) and assignment of a lease under section 365(f), respectively, are stayed for

6  fourteen (14) days after the entry of the order unless the Court orders otherwise.  The Debtors

7  request that the Court order that such stay not apply with respect to sale of the FF&E pursuant to the

8  APA and the assignment of the Laguna Hills Lease to the Assignee (and concurrent resolution of

9  MGP's claims in connection therewith) contemplated hereby.

10  **E.**    **Notice**

11          Notice of this Motion has been given to the Office of the United States Trustee, the

12  Committee, MGP, the Assignee, the Debtors' secured creditors, and all parties requesting notice

13  pursuant to Bankruptcy Rule 2002.  The Debtors submit, and request that this Court determine, that

14  such notice is proper and adequate; no further notice is required; and that other and further notice be

15  waived.

16                                                    **III.**

17                                            **CONCLUSION**

18          Based on the foregoing, the Debtors respectfully request that the Court (i) enter an order

19  approving the Motion; (ii) authorize the assumption and assignment of the Laguna Hills Lease to the

20  Assignee; (iii) approve the resolution of any and all claims by MGP against the Debtors in

21  connection with the Laguna Hills Lease by payment of the total amount of Forty-Eight Thousand

22  Dollars ($48,000), as follows: (a) the amount of Twelve Thousand Dollars ($12,000) to be paid to

23  MGP upon Court approval of this Motion; and (b) the amount of Thirty Six Thousand Dollars

24  ($36,000) to be paid to MGP on the effective date of a chapter 11 reorganization plan confirmed by

25  the Court in the Debtors' cases; and further providing that, with the exception of the foregoing

26  payments, MGP and the Debtors fully and finally releases each other from any and all further

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

DOCS_LA:320037.4 76135/003

liability and claims under or in connection with the Laguna Hills Lease;[4] (iv) authorize the Debtors

to enter into the APA (attached to the Motion as Exhibit "2") with the Assignee, for the sale of the

FF&E for a purchase price of Fourteen Thousand Dollars ($14,000), with any liens, claims, interests

or encumbrances against the FF&E attaching to the proceeds of the sale; (v) waiving the fourteen-

day stay under Bankruptcy Rules 6004(h) and 6006(d); and (vi) granting such other and further relief

as the Court deems just and proper.


Dated:    March 15, 2019                    PACHULSKI STANG ZIEHL & JONES LLP


                                            By:    /s/ William N. Lobel
                                                   _____
                                                   William N. Lobel
                                                   Attorneys for Ruby's Diner, Inc., *et al.,*
                                                   Debtors and Debtors-in-Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

---

[4] In furtherance of this, the Debtors have agreed to include the following provision in the reorganization plan to be confirmed by the Bankruptcy Court in the Bankruptcy Case:  "A condition to this plan going Effective is that the sum of $36,000, which is owed by Ruby's Laguna Hills, Ltd. to MGP Fund X Laguna Hills, LLC in connection with the assumption and assignment of the lease for the Ruby's restaurant located in the Laguna Hills Mall, be paid in full."

## DECLARATION OF DOUGLAS S. CAVANAUGH

I, Douglas S. Cavanaugh, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.      I am a founder and the Chief Executive Officer ("CEO") of Ruby's Diner, Inc., a California corporation ("RDI"), one of the debtors and debtors-in-possession in the above-captioned bankruptcy cases.  I have served in the capacity of CEO since RDI's incorporation in 1985.  I am also a 60% shareholder of RDI.  Further, I am the authorized signatory for Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills") and Ruby's SoCal Diners, LLC ("SoCal Diners") (collectively, the "Debtors").

2.      I make this Declaration in support of the Debtors' *Motion For An Order Authorizing The Debtors To: (1) Assume And Assign Non-Residential Real Property Lease And Resolve Claims By The Landlord Against The Debtors In Connection Therewith; And (2) Enter Into Asset Purchase Agreement With Assignee For The Sale Of FF&E* (the "Motion").  Capitalized terms not otherwise defined herein have the same meaning ascribed to them in the Motion.

3.      By the Motion, the Debtors request that the Court enter an order authorizing the Debtors (1) to assume and assign the nonresidential real property lease (defined herein as the "Laguna Hills Lease") for the Ruby's restaurant located in Laguna Hills, California (defined herein as the "Laguna Hills Restaurant") to Maria Land, Inc., an entity owned by existing franchisees, Michael Youssef and Rania Youssef (defined herein as the "Assignee") and resolve all claims against the Debtors by the landlord, MGP Fund X Laguna Hills, LLC (defined herein as "MGP"), in connection with the Laguna Hills Lease, in accordance with an Assignment and Assumption of and Second Amendment to Shopping Center Lease by and between Ruby's Laguna Hills, the Assignee and MGP (defined herein as the "Assignment Agreement"), a true and correct copy of which is attached hereto as Exhibit "1;" and (2) to enter into an asset purchase agreement (defined herein as the "APA"), a true and correct copy of which is attached hereto as Exhibit "2," with the Assignee for the purchase of a limited amount of furniture, fixtures and equipment owned by the Debtors located at the Laguna Hills Restaurant (defined herein as the "FF&E") (which FF&E (consisting of a limited

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15

amount of "small goods") will be of no further use to the Debtors following the assignment) for a purchase price of Fourteen Thousand Dollars ($14,000), free and clear of any liens, claims, interests and encumbrances, with any liens, claims, interests and encumbrances on the FF&E to attach to the proceeds of the sale.

4.      On August 29, 2018, Ruby's Laguna Hills and SoCal Diners, along with certain affiliates, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On September 5, 2018, RDI filed a related chapter 11 case.  On September 5, 2018, the Court entered an order jointly administering the Debtors' chapter 11 cases (and those of certain affiliates) with RDI designated as the lead debtor.

5.      No party has requested the appointment of a trustee or examiner in the Debtors' cases.  On September 19, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors in the RDI case (the "Committee").

6.      The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      On or about September 16, 1994, RDI entered into a lease agreement (the "Laguna Hills Initial Lease") with Shopping Centers Associates, a New York general partnership, for the Ruby's Diner located within the Laguna Hills Mall, located at 24155 Laguna Hills Mall, Suite 184A, Laguna Hills, California 92653 (the "Laguna Hills Restaurant").  MGP Fund X Laguna Hills, LLC ("MGP") currently owns the Laguna Hills Mall and is the landlord in connection with Laguna Hills Restaurant.

8.      On or about January 18, 2016, MGP and Ruby's Laguna Hills, as successor to RDI, entered into a first amendment to the Laguna Hills Initial Lease (the "Laguna Hills First Amendment").

9.      On or about May 8, 2018, following litigation against the Debtors commenced by MGP, the Debtors and MGP entered into a Stipulation to Stay Lockout resolving certain issues between them and amending the terms of the Laguna Hills Initial Lease and the Laguna Hills First Amendment in connection therewith (the "Stipulated Judgment").

16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

10.    Collectively, along with any related agreements or documents, the Laguna Hills Initial Lease, the Laguna Hills First Amendment and the Stipulated Judgment are referred to herein as the "Laguna Hills Lease."

11.    The rent under the Laguna Hills Lease is in the amount of $12,000 per month and the Debtors owe a reimbursement payment to MGP in connection with the Laguna Hills Lease in the amount of $83,143.01.  The Debtors have made no payments in connection with the Laguna Hills Lease since approximately August 2018.  The term of the Laguna Hills Lease expires January 31, 2025.

12.    The Debtors, the Assignee and MGP have agreed that the Laguna Hills Lease will be assumed by the Debtors and assigned to the Assignee pursuant to the terms of the Assignment Agreement, a true and correct copy of which is attached hereto as Exhibit "1."  Operation of the Laguna Hills Restaurant, therefore, will be taken over by the Assignee – an existing Ruby's franchisee – who will continue to operate a Ruby's Diner at the Laguna Hills Mall.

13.    In connection with such assumption and assignment, the Debtors and MGP have agreed that the Debtors will pay to MGP the total amount of Forty-Eight Thousand Dollars ($48,000), as follows:  (a) the amount of Twelve Thousand Dollars ($12,000) to be paid to MGP upon entry of the Court's order approving this Motion; and (b) the amount of Thirty Six Thousand Dollars ($36,000) to be paid to MGP upon the "effective date" of a reorganization plan confirmed by the Court in the Debtor's bankruptcy case, in all events subject to Court approval.  With the exception of the foregoing payments, MGP and the Debtors will fully and finally release each other from any and all further liability and claims under or in connection with the Laguna Hills Lease.

14.    In furtherance of this, the Debtors have agreed to include the following provision in the reorganization plan to be confirmed by the Bankruptcy Court in the Bankruptcy Case:  "A condition to this plan going Effective is that the sum of $36,000, which is owed by Ruby's Laguna Hills, Ltd. to MGP Fund X Laguna Hills, LLC in connection with the assumption and assignment of the lease for the Ruby's restaurant located in the Laguna Hills Mall, be paid in full."

15.    The Debtors believe that the assumption and assignment, and the resolution of claims, is of benefit to their estates and their creditors.  Due to continuing construction at the Laguna Hills

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

17

Mall over the past several years, the Laguna Hills Restaurant has suffered significant and continuing losses of revenue, and no payments have been made by the Debtors in connection with the Laguna Hills Lease since approximately August 2018.[5]  Absent approval of the relief sought by way of this Motion, the Debtors would be forced to reject the Laguna Hills Lease, thereby subjecting the Debtors' estates to potentially significant administrative and lease rejection damage claims by MGP – which claims could be asserted in the amount of several hundreds of thousands of dollars.  While the Debtors believe that they have valid defenses to some or all of any damage claims due to the construction issues at the Laguna Hills Mall and/or based on mitigation related to such claims, the Debtors have determined that the assumption and assignment of the Laguna Hills Lease to the Assignee and resolution of MGP's claims against the Debtors in connection therewith provides certainty and avoids the costs of resolving any disputes over MGP's claims against the Debtors' estates.  In addition, the operation of a Ruby's franchise at the Laguna Hills Mall by the Assignee will result in the payment of franchise fees to the Debtors' affiliate, Ruby's Franchise Systems, Inc. and, in turn, a license fee to RDI.  The assumption and assignment of the Laguna Hills Lease to the Assignee and resolution of MGP's claims, therefore, is in the best interests of the Debtors' estates and reflects their reasoned business judgment.

16.    In addition, by the Motion, the Debtors seek approval of the sale to the Assignee of the limited amount of furniture, fixtures and equipment owned by the Debtors located at the Laguna Hills Restaurant for a purchase price of Fourteen Thousand Dollars ($14,000), pursuant to the terms of the Asset Purchase Agreement (the "APA"), a true and correct copy of which is attached hereto as Exhibit "2."  Appendix A to the APA sets forth the furniture, fixtures and equipment to be sold to the Assignee (the "FF&E").  As set forth in Appendix A, the FF&E is limited to certain "small goods" located at the Laguna Hills Restaurant, as the majority of the furniture, fixtures and equipment located at the Laguna Hills Restaurant are owned by the landlord, MGP, not the Debtors. The APA further provides for usual and customary provisions for the satisfaction by the Debtors of

---

[5] Such payments include the monthly lease payments in the amount of $12,000, and a reimbursement payment in the amount of $83,143.01 due under the Stipulated Judgment.

DOCS_LA:320037.4 76135/003

1  utilities, payroll, and other operational costs owed to third parties for the pre-closing period).  The

2  Debtors believe that the purchase price for the sale is reasonable and has been negotiated at arm's

3  length with the Assignee.

4         17.    The Debtors believe that the sale of the FF&E at the Laguna Hills Restaurant is in the

5  best interests of their estates as it will provide for a monetization of these limited assets for which the

6  Debtors will have no further use following the assignment, and will be utilized by the Assignee in

7  connection with its future operations of the Laguna Hills Restaurant.  In the Debtors' business

8  judgment, the purchase price represents a fair and reasonable sales price for the FF&E, which would

9  have little to no use by any party other than the Assignee.  Additionally, the benefit of receiving an

10  immediate payment for the FF&E is of benefit to the estates.  Accordingly, the Debtors request that

11  the Court approve the APA and approve the sale of the FF&E as provided therein, with the proceeds

12  of the sale remaining subject to any valid lien, claim, interest or encumbrance thereon.

13         18.    For the reasons stated herein and in the Motion, I, on behalf of the Debtors, submit

14  that the relief sought in the Motion is in the best interest of the Debtors' estates and should be

15  approved.

16         I declare under penalty of perjury under the laws of the United States of America that the

17  foregoing is true and correct.

18         Executed this 14th day of March, 2019, at Newport Beach, California.

19

20  _____
    Douglas S. Cavanaugh

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

19

EXHIBIT "1"

DocuSign Envelope ID: 8188E0DE-26E3-43BA-A979-68EC76EE6B8D

## ASSIGNMENT AND ASSUMPTION OF AND SECOND AMENDMENT TO SHOPPING CENTER LEASE, AND LANDLORD CONSENT

This **ASSIGNMENT AND ASSUMPTION OF AND SECOND AMENDMENT TO SHOPPING CENTER LEASE, AND LANDLORD CONSENT** (this "**Assignment and Amendment**") is made as of the "Effective Date" (as herein defined), by and among RUBY'S LAGUNA HILLS, LTD., a California limited partnership ("**Assignor**"), MARIA LAND INC., a California corporation ("**Assignee**"), and MGP FUND X LAGUNA HILLS, LLC, a Delaware limited liability company ("**Landlord**"), with reference to the facts set forth in the Recitals below.

## RECITALS:

A.      Landlord's predecessor-in-interest, Shopping Center Associates, a New York general partnership ("**Original Landlord**"), and Assignor's predecessor-in-interest, Ruby's Diner, Inc., a California corporation ("**Original Tenant**"), entered into that certain Agreement of Lease dated September 16, 1994 (the "**Original Lease**"), as amended by that certain First Amendment to Shopping Center Lease dated January 18, 2016 (the "**First Amendment**"), and as further amended by that certain Stipulated Judgment (as defined below), with respect to certain premises consisting of approximately 3,000 square feet of Floor Space, and patio area comprising approximately 542 square feet and commonly known as 24155 Laguna Hills Mall, Suite 1840A (MGP Unit #635-74) (collectively, the "**Premises**") in the shopping center commonly known as Laguna Hills Mall (the "**Shopping Center**") located in Laguna Hills, California. The Original Lease, the First Amendment and the Stipulated Judgment are hereinafter sometimes collectively referred to as the "**Existing Lease**". Landlord is the successor-in-interest to Original Landlord under the Existing Lease and Assignor is the successor-in-interest to Original Tenant. The Existing Lease and this Assignment and Amendment are hereinafter sometimes collectively referred to as the "**Lease**".

B.      On or about May 8, 2018, Landlord and Assignor entered into that certain Stipulation to Stay Lockout ("**Stipulated Judgment**") with respect to the Premises, and filed in the Orange County Superior Court in an action titled *MGP Fund X Laguna Hills, LLC v. Ruby's Laguna Hills, Ltd., et al.*; Case No. 30-2018-00982994.

C.      On August 29, 2018, Assignor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Court ("**Bankruptcy Case**") in the United States Bankruptcy Court, Central District of California ("**Bankruptcy Court**"). Notwithstanding anything to the contrary in this Assignment and Amendment, the parties hereto recognize that Assignor's ability to act hereunder is conditioned upon approval of this Assignment and Amendment by the Bankruptcy Court in the Bankruptcy Case.

D.      All initially capitalized defined terms used in this Assignment and Amendment but not defined herein shall have the meanings set forth in the Existing Lease.

E.      Assignor desires to assign, and Assignee desires to assume, all of Assignor's right, title and interest as "Tenant" under the Lease, and Assignor and Assignee have requested

068093\10410909v12

Assignment & Amendment                    Page 1                    Laguna Hills Mall
Ruby's Diner                                                        Unit #635-74

MGP

EXHIBIT "1"
Page 20

DocuSign Envelope ID: 8188E0DE-26E3-43BA-A979-68EC76EE6B8D

Landlord's consent to such assignment and assumption and Landlord has agreed to give such consent upon the terms and conditions contained in this Assignment and Amendment.

F.     The current Lease Term of the Existing Lease is scheduled to expire by its terms on January 31, 2025.

G.     The parties desire to amend the Existing Lease, subject to the terms and conditions set forth herein, and make certain other modifications to the Existing Lease, all as more particularly set forth below.

## <u>AGREEMENT</u>:

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby covenant and agree as follows:

1.     <u>Effective Date</u>. The effective date of this Assignment and Amendment shall be the date the Bankruptcy Court enters an order approving this Assignment and Amendment ("**Effective Date**").

2.     <u>Assignment</u>.  As of the Effective Date, Assignor shall assume the Lease sooner in accordance with Section 365 of the Bankruptcy Code and hereby assigns, conveys, and transfers to Assignee (the "**Assignment**") all of Assignor's right, title and interest as "Tenant" in and to the Lease.

3.     <u>Assumption</u>.  Assignee, for itself and its successor and assigns, hereby accepts the Assignment and assumes and agrees to assume, perform, and be bound by all of the terms, covenants, conditions, duties and obligations of Assignor under the Lease which accrue or become performable to the same extent as if Assignee had originally been named as "Tenant" under the Lease. Assignee acknowledges and agrees they have been provided with true and correct copies of the copies of the Original Lease, First Amendment and Stipulated Judgment, and fully understands its obligations as Tenant under the Lease. As of the Effective Date, all references herein as "Tenant" under the Lease shall mean and refer to the Assignee.

4.     <u>Fixed Rent</u>.   The monthly Fixed Rent is hereby amended to be $11,000.00 (inclusive of Common Area Rent and trash charges), commencing on the Effective Date of this Assignment and Amendment, and continuing through the end of the Lease Term of January 31, 2025.

5.     <u>No Percentage Rent</u>.  Assignee acknowledges and agrees that no percentage rent is payable by Tenant pursuant to Paragraph 6c of the Stipulated Judgment.

6.     <u>Additional Payments</u>.  On the Effective Date of this Assignment and Amendment, Assignor shall to pay to Landlord the sum of $12,000.00.  In addition, Assignor agrees to pay to Landlord an additional payment of $36,000.00 upon the "effective date" of a reorganization plan confirmed by the Bankruptcy Court in the Bankruptcy Case.  Assignor agrees to include payment of the $36,000 in the reorganization plan to be confirmed by the Bankruptcy Court in the

068093\10410909v12

Assignment & Amendment                    Page 2                    Laguna Hills Mall
Ruby's Diner                                                         Unit #635-74

MGP

EXHIBIT "1"
Page 21

DocuSign Envelope ID: 8188E0DE-26E3-43BA-A979-68FC76EF6B8D

Bankruptcy Case. In further of the foregoing, Assignor agrees to include the following provision in the reorganization plan to be confirmed by the Bankruptcy Court in the Bankruptcy Case: "A condition to this plan going Effective is that the sum of $36,000, which is owed by Ruby's Laguna Hills, Ltd. to MGP Fund X Laguna Hills, LLC in connection with the assumption and assignment of the lease for the Ruby's restaurant located in the Laguna Hills Mall, be paid in full." Upon Landlord's receipt of the foregoing payments of $12,000 and $36,000, Landlord agrees to waive all remaining payments to be made by Assignor towards the reimbursement of $83,143.01 as set forth in Paragraph 3 of the Stipulated Judgment and any other claims against Assignor.

7.    <u>Utility Charges</u>. Assignee shall continue to pay for gas, electricity and all other utility charges (including Electricity Charge) for the Premises in accordance with the terms of Paragraph 6(e) of the First Amendment. Assignee agrees that if Landlord discontinues trash service, Assignee shall contract with a trash pick-up company, and directly pay for its trash service costs.

8.    <u>No Co-Tenancy</u>. Assignee acknowledges and agrees that pursuant to Paragraph 6e of the Stipulated Judgment, the Co-Tenancy provision in the Existing Lease was deleted in its entirety and is of no further force and effect.

9.    <u>Permitted Use</u>. Assignee acknowledges and agrees that there shall be no change in the definition of Permitted Use as set forth in the Original Lease and as further amended by the First Amendment.

10.    <u>Improvements</u>. Assignor and Assignee each acknowledge and agree that all existing improvements within the Premises shall remain the property of Landlord, except for fixtures, equipment and personal property paid for by Assignor (the "**FF&E**"). Assignee shall become the owner of the FF&E, in accordance with the purchase and sale agreement between Assignor and Assignee approved by the Bankruptcy Court in the Bankruptcy Case concurrently with the approval of this Assignment and Amendment upon the Effective Date of this Assignment and Amendment.

11.    <u>Landlord's Termination Right</u>. Paragraph 6f of the Stipulated Judgment is hereby deleted in its entirety. Commencing on the first day of the 19th full calendar month following the Effective Date of this Assignment and Amendment and throughout the balance of the Lease Term, Landlord shall have the right to terminate the Lease at any time by providing Assignee with 180 days' prior written notice ("**Termination Notice**"). Assignee agrees to vacate and surrender the Premises on or before the termination date stated on the Termination Notice in accordance with the terms of the Existing Lease.

12.    <u>Assignee's Termination Right</u>. Landlord and Assignee agree that if Landlord commences redevelopment work within the Enclosed Mall, the former Macy's building, the Nordstrom Rack building or the Designated Common Area, as shown on the Site Plan attached hereto as <u>Exhibit A</u> (collectively, the "**Critical Area**"), and as a direct result of such redevelopment work in the Critical Area, Assignee's Gross Sales (as defined in Section 3.3 of the Original Lease) at the Premises decrease by ten percent (10%) or more in any ninety (90)

068093\10410909v12

Assignment & Amendment                Page 3                Laguna Hills Mall
Ruby's Diner                                                Unit #635-74

MGP

EXHIBIT "1"
Page 22

consecutive day period ("**Sales Measurement Period**") following commencement of such redevelopment work in the Critical Area and prior to completion of such redevelopment in the Critical Area, as compared to Assignee's Gross Sales for the same ninety (90) day period in the prior calendar year, then Assignee's Fixed Rent shall be reduced by the same percentage as Assignee's reduction in Gross Sales until completion of the redevelopment work in the Critical Area.  The reduction of Assignee's Fixed Rent shall be retroactive to the commencement of the Sales Measurement Period and shall terminate upon completion of such redevelopment in the Critical Area.  In no event shall Assignee's Fixed Rent be reduced by more than eighteen percent (18%) pursuant to this Paragraph 12; however, if Assignee's Gross Sales decrease by more than eighteen percent (18%) during the Sales Measurement Period, then Assignee shall have the right to terminate this Lease upon written notice to Landlord within sixty (60) days following the expiration of the Sales Measurement Period.  Landlord's redevelopment work, as described herein, shall not include any demolition of the Just Tires building.  If the Lease is terminated pursuant to this Paragraph 12, then the parties shall have no further obligations to each other following termination of the Lease, except for Assignee's indemnity, surrender and obligations that survive the expiration or earlier termination of the Lease.  This Paragraph 12 shall be null and void if Assignee fails to continuously operate its business in the Premises.

13.    <u>Release of Assignor</u>.  Assignor shall be released from all liability under the Existing Lease, except for Assignor's obligations under this Assignment and Amendment.  Assignor acknowledges that it shall have no reversionary interest or rights whatsoever in the Lease or to possession of the Premises after the Effective Date.

14.    <u>Notices</u>.

Assignee's Notice Address shall be:
Micheal Youssef and Rania Youssef
1230 Hickory Avenue
Torrance, CA 90503
Telephone: (424) 757-3060

Assignor's Notice Address shall be:
Ruby's Laguna Hills, Ltd.
4100 Macarthur Blvd, Suite 310
Newport Beach, CA 92660
Attn: Douglas Cavanaugh, President

Landlord's Notice Address shall be:
MGP FUND X LAGUNA HILLS, LLC
Re:  Laguna Hills Mall, Unit #635-74
425 California Street, 10th Floor
San Francisco, CA  94104-2113
Telephone:     (415) 693-9000

068093\10410909v12

Assignment & Amendment
Ruby's Diner

Page 4

Laguna Hills Mall
Unit #635-74

MGP

EXHIBIT "1"
Page 23

15.    <u>Landlord's Consent</u>.   Landlord hereby consents to the Assignment on the following terms and conditions (which terms and conditions are hereby approved by Assignor and Assignee by virtue of their execution of this Assignment and Amendment):

(a)    Except with respect to this Assignment and Amendment, Landlord does not consent to any transfer or assignment of the Lease.  Landlord has not made any express, implied, oral or written representations or promises that any future assignment or subleases will be approved;

(b)    The Assignment shall not result in any change to the permitted use of the Premises under the Lease; and

(c)    Assignor and Assignee expressly acknowledge that the forwarding of this Assignment and Amendment to either of them by Landlord is not an express or implied consent to any such Assignment of the Lease from Assignor to Assignee contained herein.  Landlord, in its sole discretion, retains the right to disapprove of such Assignment until such time as this Assignment and Amendment has been signed by all of the parties hereto.

16.    <u>Guaranty of Lease</u>.   This Assignment and Amendment shall be subject to and conditioned upon Micheal Youssef and Rania Youssef, husband and wife, on behalf of each of their marital, community and sole and separate estates, jointly and severally (collectively, "**Guarantor**"), executing and delivering to Landlord the Guaranty of Lease attached hereto as <u>Exhibit B</u> ("**Guaranty**"), pursuant to which Guarantor shall personally guaranty the Lease for the remainder of the Lease Term.

17.    <u>Representations and Warranties</u>.

(a)    Assignor hereby makes the following representations and warranties to Landlord and Assignee as of the Effective Date, each of which is material and being relied upon by Landlord and Assignee:

(i)    Assignor has not assigned, sublet or otherwise conveyed its interest in the Lease or Premises to anyone.

(ii)    Assignor has the legal right, power and authority to enter into this Assignment and Amendment and to consummate the transactions contemplated hereby, and the execution, delivery and performance of this Assignment and Amendment have been duly authorized and no other action by Assignor (corporate, partnership, trust or otherwise) is requisite to the valid and binding execution, delivery and performance of this Assignment and Amendment by Assignor, except as otherwise expressly set forth herein.  No additional consent of any individual, member, manager, trustee, trustor, beneficiary, creditor, investor, judicial or administrative body, governmental authority or other party is requisite to the valid and binding execution, delivery and performance of this Assignment and Amendment by Assignor, except as otherwise expressly set forth in this Assignment and Amendment. The individuals executing this Assignment and Amendment and the instruments referenced herein on behalf of Assignor have the legal power, right and actual authority to bind Assignor to the terms and conditions hereof and thereof.  The execution and delivery of this Assignment and Amendment and performance

068093\10410909v12

Assignment & Amendment
Ruby's Diner

Page 5

Laguna Hills Mall
Unit #635-74

MGP

EXHIBIT "1"
Page 24

by Assignor will not conflict with or result in a violation of, or breach of, or constitute a default under, any law or administrative regulation or any of the terms, conditions or provisions of any judgment, decree, loan agreement, bond, note, resolution, indenture, mortgage, deed of trust or other agreement or instrument to which it is a party and which affects the Premises. Notwithstanding the language of this sub-paragraph, the parties acknowledge that this Assignment and Amendment is subject to the approval of the Bankruptcy Court in the Bankruptcy Case and shall not be binding on any party until such approval is obtained.

(b)    Assignee hereby makes the following representations and warranties to Landlord and Assignor as of the Effective Date, each of which is material and being relied upon by Landlord and Assignor:

(i)    Assignee represents and warrants that the financial statements of Assignee delivered to Assignor and Landlord are true and correct in all material respects.

18.    <u>Premises</u>.    Assignee acknowledges that Landlord shall not be obligated to improve the Premises in any manner whatsoever or to otherwise provide funds for the improvement or alteration of the Premises or common areas in conjunction with this Assignment and Amendment.    Assignee agrees that it has inspected the Premises and agrees to take the Premises in their "AS-IS" condition existing upon Lease execution.

19.    <u>Certified Access Specialist</u>. Pursuant to Section 1938 of the California Civil Code, Landlord hereby advises Assignee, as Tenant, that as of the Effective Date of this Assignment and Amendment, the Premises has not undergone inspection by a Certified Access Specialist (a "CASp") during Landlord's ownership of the Shopping Center, nor, to Landlord's actual knowledge (without any duty of inquiry, as of the Effective Date, prior to Landlord's ownership of the Shopping Center. Further, pursuant to Section 1938 of the California Civil Code, Landlord notifies Tenant of the following: "A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or lessor may not prohibit the lessee or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the lessee or tenant, if requested by the lessee or tenant. The parties shall mutually agree on the arrangements for the time and manner of any such CASp inspection, the payment of the fee for the CASp inspection and the cost of making any repairs necessary to correct violations of construction-related accessibility standards within the premises." Nothing contained in this Paragraph 19 shall modify or alter any of the terms and conditions of this Lease and the parties' rights and obligations thereunder.

20.    <u>Utilities</u>. Assignee agrees to reasonably cooperate with Landlord to the extent required by Landlord to comply with California Public Resources Code Section 25402.10 including, without limitation, providing or consenting to any utility company providing Tenant's energy consumption information for the Premises to Landlord.

21.    <u>Confidentiality</u>. The provisions of this Assignment and Amendment are confidential and shall remain confidential unless disclosed by Landlord, in its discretion. Assignor

068093\10410909v12

Assignment & Amendment
Ruby's Diner

Page 6

Laguna Hills Mall
Unit #635-74

MGP

EXHIBIT "1"
Page 25

DocuSign Envelope ID: 8188E0DE-26E3-43BA-A979-68EC76EE6B8D

and Assignee represent, warrant and covenant that Assignor and Assignee, together with their agents, employees, and contractors (collectively, "**Agents**"), have not published or disclosed and shall not publish or disclose to any third party any of the provisions of this Assignment and Amendment. Assignor and Assignee acknowledge that any disclosure to a third party made by Assignor, Assignee or their Agents may substantially harm Landlord's marketing efforts in the Shopping Center in that as a result of such disclosure, Landlord may have to provide potential tenants and/or any tenant occupying space in the Shopping Center with lease concessions which would not have been provided by Landlord but for such disclosure by Assignor, Assignee or their Agents.  Notwithstanding the provisions of this sub-paragraph, Landlord acknowledges that this Assignment and Amendment will be filed as an exhibit to the motion to approve this Assignment and Amendment and will become a part of the public court records.

22.    <u>Release of Landlord and Assignor</u>.  Except for the obligations created hereunder, Assignor and Landlord hereby generally release and discharge each other, and all of their respective partners, agents, representatives and employees, both present and past, of and from any and all claims, debts, liabilities, obligations and causes of action, of any kind or nature, known or unknown, based on, arising out of, or connected with, either directly or indirectly, any term, provision, matter, fact, event or occurrence related to, or contained in the Lease arising prior to the Effective Date.  This general release shall be governed by the laws of the State of California, and Assignor hereby waives any and all rights which it may have under the provisions of Section 1542 of the Civil Code of the State of California, as now worded and as hereafter amended, which section presently reads as follows:

> "**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**."

23.    <u>Broker</u>.  Assignor and Assignee each represents and warrants to Landlord that Assignor and Assignee are each not aware of any brokers, agents, consultants, advisors or finders who may claim a fee or commission in connection with the consummation of the transactions contemplated by this Assignment and Amendment.  If any claims for brokers' or finders' fees in connection with the transactions contemplated by this Assignment and Amendment arise and such claims are attributable to any statement, representation or agreement made by Assignor, then Assignor agrees to indemnify, protect, hold harmless and defend Landlord (with counsel reasonably satisfactory to Landlord) from and against any such claims.  If any claims for brokers' or finders' fees in connection with the transactions contemplated by this Assignment and Amendment arise and such claims are attributable to any statement, representation or agreement made by Assignee, then Assignee agrees to indemnify, protect, hold harmless and defend Landlord (with counsel reasonably satisfactory to Landlord) from and against any such claims.

24.    <u>Counterparts</u>.  Separate copies of this Assignment and Amendment may be signed by the parties hereto, with the same effect as though all of the parties had signed one copy of this Assignment and Amendment.  Signatures received by pdf, facsimile or via other electronic transmission system shall be accepted as original signatures.

068093\10410909v12

Assignment & Amendment                              Page 7                              Laguna Hills Mall
Ruby's Diner                                                                                  Unit #635-74

MGP

EXHIBIT "1"
Page 26

25. <u>Electronic Signature</u>. Landlord, Assignor, Assignee and Guarantor agree that electronic signatures, including those delivered by PDF or signed through the electronic signature system known as "DocuSign", shall have the same effect as originals. All parties to this Assignment and Amendment waive any and all rights to object to the enforceability of this Assignment and Amendment based on the form or delivery of signature.

26. <u>Authority</u>. Each party executing this Assignment and Amendment on behalf of such party hereby represents and warrants that such party is a duly formed and existing entity qualified to do business in the State of California and that such party has full right and authority to execute and deliver this Assignment and Amendment and that each person signing on behalf of such party is authorized to do so, in the case of the Assignor, subject to Bankruptcy Court approval.

27. <u>Rules of Construction</u>. The provisions of this Assignment and Amendment shall be construed and enforced in accordance with the laws of the State of California. Each party hereto acknowledges that (a) each party hereto is of equal bargaining strength; (b) each such party has actively participated in the drafting, preparation and negotiation of this Assignment and Amendment and the transactions contemplated herein; and (c) any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Assignment and Amendment or any portion hereof.

28. <u>Binding Effect</u>. This Assignment and Amendment shall not be effective and shall not be valid or binding on Landlord unless and until a fully executed original counterpart of this Assignment and Amendment is delivered to Landlord by each of Assignor and Assignee, and Bankruptcy Court approval is obtained.

29. <u>No Other Modification</u>. Landlord, Assignor and Assignee agree that except as otherwise specifically modified in this Assignment and Amendment, the Lease has not been modified, supplemented, amended, or otherwise changed in any way and the Lease remains in full force and effect between the parties hereto as modified by this Assignment and Amendment. To the extent of any inconsistency between the terms and conditions of the Lease and the terms and conditions of this Assignment and Amendment, the terms and conditions of this Assignment and Amendment shall apply and govern the parties. This Assignment and Amendment may not be changed, modified, discharged or terminated orally or in any other manner other than by an agreement in writing signed by the parties hereto or their respective successors and assigns

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

068093\10410909v12

Assignment & Amendment                    Page 8                    Laguna Hills Mall
Ruby's Diner                                                         Unit #635-74

MGP

EXHBITI "1"
Page 27

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Amendment to be executed on the respective dates set below their signatures, but the Effective Date shall be as set forth in Paragraph 1 of this Assignment and Amendment.

**ASSIGNOR:**

RUBY'S LAGUNA HILLS, LTD.,
a California limited partnership

By:    Ruby's SoCal Diners, LLC,
       a Delaware limited liability company
       Its: General Partner

       By: _____
       Name: Douglas Cavanaugh
       Its: CEO
       Date: 3/14/2019

**ASSIGNEE:**

MARIA LAND INC.,
a California corporation

By: _____
Name: Micheal Youssef
Its: CEO
Date: 3/14/2019

[SIGNATURES CONTINUED ON NEXT PAGE]

068093\10410909v12

Assignment & Amendment                    Page 9                    Laguna Hills Mall
Ruby's Diner                                                        Unit #635-74

                                                                   MGP

                                                                   EXHIBIT "1"
                                                                   Page 28

**LANDLORD:**

MGP FUND X LAGUNA HILLS, LLC,
a Delaware limited liability company

By:    Merlone Geier X, LLC,
      a California limited liability company,
      its Manager

By: _____
       *Gabriela Parcella*

Name: _____
       Gabriela Parcella

Title: _____
      Executive Managing Director

Date: 3/15/2019
_____

By: _____
       *Susan Overton*

Name: Susan Overton
_____

Title: Managing Director
_____

Date: 3/15/2019
_____

MGP Lease Approval

068093\10410909v12

Assignment & Amendment                     Page 10                     Laguna Hills Mall
Ruby's Diner                                                           Unit #635-74

MGP

EXHIBIT "1"
Page 29



Exhibit A - Site Plan

This exhibit is for reference only and is not a representation as to size, dimension, or location of any tenant in the shopping center. All building, improvements, their occupants, and their uses as shown on this plan are subject to modification at the landlord's discretion.

Exhibit A- Site Plan
Laguna Hills Mall
Laguna Hills, CA
Property #635
October 2013

068093\10410909v12

Assignment & Amendment
Ruby's Diner

Exhibit A – Site Plan

MGP

Laguna Hills Mall
Unit #635-74

EXHIBIT "1"
Page 30

EXHIBIT "B"
GUARANTY OF LEASE

**THIS GUARANTY OF LEASE** ("**Guaranty**") is made as of _____ (the "**Effective Date**") by MICHEAL YOUSSEF AND RANIA YOUSSEF, husband and wife, on behalf of each of their marital, community and sole and separate estates, jointly and severally (collectively, "**Guarantor**"), whose addresses are set forth below opposite their signatures, in favor of MGP FUND X LAGUNA HILLS, LLC, a Delaware limited liability company ("**Landlord**"), with reference to the following facts:

A.    Landlord and RUBY'S LAGUNA HILLS, LTD., a California limited partnership ("**Assignor**"), are parties to that into a lease dated September 16, 1994 (as amended, the "**Existing Lease**"), concerning the premises located in the Laguna Hills Mall and commonly known as commonly known as 24155 Laguna Hills Mall, Suite 1840A (MGP Unit #635-74) Laguna Hills, California (the "**Premises**");

B.    Assignor desires to assign, and MARIA LAND INC., a California corporation ("**Assignee**" or "**Tenant**"), desires to assume, all of Assignor's right, title and interest as tenant under the Lease, and Assignor and Assignee have requested Landlord's consent to such assignment and assumption.  Assignor and Assignee desire to enter into that certain Assignment and Assumption of and Second Amendment to Shopping Center Lease, and Landlord Consent (the "**Agreement**").  The Existing Lease, as modified by the Agreement, is referred to herein as the "**Lease**;"

C.    Assignor and Assignee have requested Landlord's consent to such assignment and assumption and the Agreement, and Landlord has agreed to give such consent upon the terms and conditions contained in Agreement which include, among other things, Landlord would not consent to the assignment and execute the Agreement if each Guarantor did not execute and deliver to Landlord this Guaranty; and

D.    Each Guarantor has a financial interest in Tenant.

**NOW, THEREFORE**, in consideration of the execution of the foregoing Lease by Landlord and as a material inducement to Landlord to execute the Lease, each Guarantor hereby jointly, severally, unconditionally and irrevocably guaranties the prompt payment by Tenant of all rents and all other sums payable by Tenant under the Lease and the faithful and prompt performance by Tenant of each and every one of the terms, conditions and covenants of the Lease to be kept and performed by Tenant, and further agree as follows:

1.    It is specifically agreed that the terms of the Lease may be modified by agreement between Landlord and Tenant, or by a course of conduct, and the Lease may be assigned by Landlord or any assignee of Landlord without consent or notice to any Guarantor and that this Guaranty shall guarantee the performance of the Lease as so modified.

2.    This Guaranty and each Guarantor's obligations hereunder shall not be released, modified or affected by the failure or delay on the part of Landlord to enforce any of the rights or remedies of Landlord under the Lease, whether pursuant to the terms thereof or at law or in

068093\10410909v12

Assignment & Amendment
Ruby's Diner

Exhibit B - Guaranty
Page 1

Laguna Hills Mall
Unit #635-74

MGP

EXHIBIT "1"
Page 31

equity or by any release of any person liable under the terms of the Lease (including, without limitation, Tenant), whether contemplated by the terms of the Lease or otherwise, or by any release of any other guarantor from any liability with respect to Guarantor's obligations hereunder.

3.    No notice of default need be given to any Guarantor, it being specifically agreed that this Guaranty is a continuing guarantee under which Landlord may proceed immediately against Tenant and/or against any Guarantor following any breach or default by Tenant or for the enforcement of any rights which Landlord may have as against Tenant under the terms of the Lease or at law or in equity.  This Guaranty is a guaranty of payment and performance and not of collection, and is not conditioned or contingent upon the genuineness, validity, regularity or enforceability of the Lease or the pursuit by Landlord of any remedies which it now has or may hereafter have with respect thereto, at law, in equity or otherwise.  Each Guarantor recognizes that there are some obligations and liabilities of Tenant under the Lease that survive the termination of the Lease and that this Guaranty shall survive any termination under the Lease.

4.    Landlord shall have the right to proceed against each Guarantor hereunder following any breach or default by Tenant without first proceeding against Tenant and without previous notice to or demand upon either Tenant or any Guarantor.

5.    Each Guarantor hereby waives and agrees not to assert any defense, to the extent permitted by law, with respect to: (a) all notices to Guarantor, to Tenant, or to any other person, including, but not limited to, notices of the acceptance of this Guaranty or the creation, renewal, extension, assignment, modification or accrual of any of the obligations owed to Landlord under the Lease and enforcement of any right or remedy with respect thereto, and notice of any other matters relating thereto, (b) notice of acceptance of this Guaranty, (c) demand of payment, presentation or protest, (d) all right to assert or plead any statute of limitations relating to this Guaranty or the Lease, (e) any right to require Landlord to proceed against Tenant or any other guarantor or any other person or entity liable to Landlord, (f) any right to require Landlord to apply to any default, any security deposit or other security it may hold under the Lease, (g) any right to require Landlord to proceed under any other remedy Landlord may have before proceeding against Guarantor, (h) any right of subrogation, (i) any right or defense that may arise by reason of the incapability, lack of authority, death or disability of Tenant or any other person, and (j)  all principles or provisions of law which conflict with the terms of this Guaranty.  Each Guarantor further agrees that Landlord may enforce this Guaranty upon the occurrence of an event of default under the Lease, notwithstanding any dispute between Landlord and Tenant with respect to the existence of said default or performance of the obligations under the Lease or any counterclaim, set-off or other claim which Tenant may allege against Landlord with respect thereto.  Moreover, each Guarantor agrees that such Guarantor's obligations shall not be affected by any circumstances which constitute a legal or equitable discharge of a guarantor or surety.

6.    Each Guarantor does hereby subrogate all existing or future indebtedness of Tenant to such Guarantor to the obligations owed to Landlord under the Lease and this Guaranty.

7.    Each Guarantor agrees that nothing contained herein shall prevent Landlord from suing on the Lease or from exercising any rights available to it under the Lease and that the

068093\10410909v12

Assignment & Amendment
Ruby's Diner

Exhibit B - Guaranty
Page 2

Laguna Hills Mall
Unit #635-74

MGP

EXHIBIT "1"
Page 32

DocuSign Envelope ID: 818B50DE-26E3-43BA-A979-68EC76EE6B8D

exercise of any of the aforesaid rights shall not constitute a legal or equitable discharge of such Guarantor.  Each Guarantor hereby waives all of its rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to such Guarantor by reason of California Civil Code §§ 2787 to 2855, inclusive. Without limiting the generality of the foregoing, Guarantor hereby expressly waives any and all benefits under California Civil Code §§ 2809, 2810, 2819, 2845, 2847, 2848, 2849 and 2850, and the second sentence of California Civil Code § 2822(a).  In addition, each Guarantor hereby waives any rights or defenses such Guarantor may have because Tenant's obligations are or may be secured by real property or an estate for years, including, without limitation, any rights or defenses that are based upon, directly or indirectly, the application of §§ 580a, 580b, 580d or 726 of the California Code of Civil Procedure to Tenant's obligations.  Each Guarantor further agrees that Landlord (not Tenant) shall have the right to designate the portion of Tenant's obligations under the Lease that is satisfied by a partial payment by Tenant.  Each Guarantor agrees that such Guarantor shall have no right of subrogation against Tenant or any right of contribution against any other guarantor (including any other Guarantor under this Guaranty) unless and until all amounts due under the Lease have been paid in full and all other obligations under the Lease have been satisfied.  Each Guarantor further agrees that to the extent the waiver of such Guarantor's rights of subrogation and contribution as set forth herein is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of subrogation Guarantor may have against Tenant shall be junior and subordinate to any rights Landlord may have against Tenant, and any rights of contribution Guarantor may have against any other guarantor shall be junior and subordinate to any rights Landlord may have against such other guarantor (including any other Guarantor under this Guaranty).  To the extent any dispute exists at any time between or among Guarantor and any other guarantor (including any other Guarantor under this Guaranty) as to any guarantor's (including Guarantor's) right to contribution or otherwise, Guarantor agrees to indemnify, defend and hold Landlord harmless from and against any loss, damage, claim, demand, cost or any other liability (including without limitation, reasonable attorneys' fees and costs) Landlord may suffer as a result of such dispute.

8.      The obligations of each Guarantor hereunder shall not be altered, limited or affected by any case, voluntary or involuntary, involving the bankruptcy or insolvency of Tenant or any defense which Tenant may have by reason of an order, decree or decision of any court or administrative body resulting from any such case.  Landlord shall have the sole right to accept or reject any plan on behalf of each Guarantor proposed in any case, voluntary or involuntary, involving the bankruptcy, insolvency, receivership, reorganization, liquidation or arrangement of Tenant and to take any other action which such Guarantor would be entitled to take in such case, including, without limitation, the decision to file or not file a claim, provided that such rights of Landlord shall only persist until such time as the obligations to Landlord under the Lease and this Guaranty are fully satisfied.  Each Guarantor acknowledges and agrees that any payment which accrues with respect to Tenant's obligations under the Lease after the commencement of any such proceeding (or, if any such payment ceases to accrue by operation of law by reason of the commencement of such proceeding, such payment as would have accrued if said proceedings had not been commenced) shall be included in each Guarantor's obligations hereunder because it is the intention of the parties that said obligations should be determined without regard to any rule or law or order which may relieve Tenant of any of its obligations under the Lease.  Each Guarantor hereby permits any trustee in bankruptcy, receiver, debtor-in-possession, assignee for

Assignment & Amendment
Ruby's Diner

Exhibit B - Guaranty
Page 3

Laguna Hills Mall
Unit #635-74

EXHIBIT "1"
Page 33

MGP

the benefit of creditors or similar person to pay Landlord, or allow the claim of Landlord in respect of, any such payment accruing after the date on which such proceeding is commenced. Each Guarantor hereby assigns to Landlord such Guarantor's right to receive any payments from any trustee in bankruptcy, receiver, debtor-in-possession, assignee for the benefit of creditors or similar person by way of dividend, adequate protection payment or otherwise.

9.    If Tenant shall become insolvent or be adjudicated bankrupt, whether by voluntary or involuntary petition, if any bankruptcy action involving Tenant shall be commenced or filed, if a petition for reorganization, arrangement or similar relief shall be filed against Tenant, or if a receiver of any part of Tenant's property or assets shall be appointed by any court, Guarantor shall pay to Landlord the amount of all accrued, unpaid and accruing Minimum Rent and other charges due under the Lease to the date when the debtor-in-possession, the trustee or administrator accepts the Lease and commences paying same.  At such time as the debtor-in-possession, the trustee or administrator rejects the Lease, however, Guarantor shall pay to Landlord all accrued, unpaid and accruing Minimum Rent and other charges under the Lease for the remainder of the Lease Term.  At the option of Landlord, Guarantor shall either:  (a) pay Landlord an amount equal to the Minimum Rent and other charges which would have been payable for the unexpired portion of the Lease Term reduced to present-day value; or (b) execute and deliver to Landlord a new lease for the balance of the Lease Term with the same terms and conditions as the Lease, but with Guarantor as tenant thereunder.  Any operation of any present or future debtor's relief act or similar act, or law or decision of any court, shall in no way affect the obligations of Guarantor or Tenant to perform any of the terms, covenants or conditions of the Lease or of this Guaranty.

10.    Each Guarantor's liability under this Guaranty shall continue until all rents due under the Lease have been paid in full in cash and until all other obligations to Landlord have been satisfied, and shall not be reduced by virtue of any payment by Tenant of any amount due under the Lease.  If all or any portion of Tenant's obligations under the Lease is paid or performed by Tenant, the obligations of each Guarantor hereunder shall continue and remain in full force and effect in the event that all or any part of such payment(s) or performance(s) is avoided or recovered directly or indirectly from Landlord as a preference, fraudulent transfer or otherwise.

11.    Each Guarantor warrants and represents to Landlord that such Guarantor now has and will continue to have full and complete access to any and all information concerning the Lease, the value of the assets owned or to be acquired by Tenant, Tenant's financial status and its ability to pay and perform the obligations owed to Landlord under the Lease.  Each Guarantor further warrants and represents that such Guarantor has reviewed and approved a copy of the Lease and is fully informed of the remedies Landlord may pursue, with or without notice to Tenant, in the event of default under the Lease.  So long as any of Guarantor's obligations hereunder remain unsatisfied or owing to Landlord, each Guarantor shall keep fully informed as to all aspects of Tenant's financial condition and the performance of said obligations.

12.    Each Guarantor hereby covenants and agrees with Landlord that if an event of default shall at any time occur in the payment of any sums due under the Lease by Tenant or in the performance of any other obligation of Tenant under the Lease, each Guarantor shall upon

068093\10410909v12

Assignment & Amendment          Exhibit B - Guaranty          Laguna Hills Mall
Ruby's Diner                              Page 4                    Unit #635-74

MGP

EXHIBIT "1"
Page 34

demand pay such sums and any arrears thereof to Landlord in legal currency of the United States of America for payment of public and private debts, and take all other actions necessary to cure such default and perform such obligations of Tenant.

13.    Any notice, statement, demand, consent, approval or other communication required or permitted to be given, rendered or made by either party to the other either pursuant to this Guaranty or pursuant to any applicable law or requirement of public authority shall be in writing (whether or not so stated elsewhere in this Guaranty) and shall be deemed to have been properly given, rendered or made only if hand-delivered (by overnight courier or otherwise) or sent by United States mail, registered or certified mail, postage pre-paid, return receipt requested, addressed to the other party at its address set forth below, and shall be deemed to have been given, rendered or made upon delivery or refusal to accept delivery as indicated on the return receipt. By giving notice as provided above, either party may designate a different address for notices, statements, demands, consents, approvals or other communications intended for it.

14.    Each Guarantor represents and warrants to Landlord as follows: (i) no consent of any other person, including, without limitation, any creditors of Guarantor, and no license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required by Guarantor in connection with this Guaranty or the execution, delivery, performance, validity or enforceability of this Guaranty and all obligations required hereunder; (ii) this Guaranty has been duly executed and delivered by Guarantor, and constitutes the legally valid and binding obligation of Guarantor enforceable against Guarantor in accordance with its terms; and (iii) the execution, delivery and performance of this Guaranty will not violate any provision of any existing law or regulation binding on Guarantor, or any order, judgment, award or decree of any court, arbitrator or governmental authority binding on Guarantor, or of any mortgage, indenture, lease, contract or other agreement, instrument or undertaking to which Guarantor is a party or by which Guarantor or any of Guarantor's assets may be bound, and will not result in, or require, the creation or imposition of any lien on any of Guarantor's property, assets or revenues pursuant to the provisions of any such mortgage, indenture, lease, contract, or other agreement, instrument or undertaking.

15.    This Guaranty shall be binding upon Guarantor, and Guarantor's heirs, representatives, administrators, executors, successors and assigns and shall inure to the benefit of and shall be enforceable by Landlord, its successors, endorsees and assigns. If a Guarantor is married, such Guarantor expressly agrees that recourse may be had against his or her separate property, as well as any community property, for all of the obligations hereunder.

16.    The obligations of Tenant under the Lease to execute and deliver estoppel statements and financial statements as provided therein shall be deemed to also require each Guarantor hereunder to do and provide the same with respect to such Guarantor; provided, however, if any Guarantor is a corporation that is required to make periodic public filings with the Securities and Exchange Commission and such filings are available to the public, such Guarantor shall not be required to deliver financial statements to Landlord.

068093\10410909v12

Assignment & Amendment          Exhibit B - Guaranty          Laguna Hills Mall
Ruby's Diner                    Page 5                        Unit #635-74

MGP

EXHIBIT "1"
Page 35

DocuSign Envelope ID: 8188E0DE-26E3-43BA-A979-68FC76EF6B8D

17.     The term "Landlord" refers to and means Landlord named in the Lease and also Landlord's successors and assigns whether by outright assignment or by an assignment for security purposes.  The term "Tenant" refers to and means the Tenant named in the Lease and also any assignee of Tenant's interest in the Lease or sublessee of Tenant.

18.     If either party hereto brings an action at law or in equity to enforce, interpret or seek redress for the breach of this Guaranty, then the prevailing party in such action shall be entitled to recover all court costs, witness fees and reasonable attorneys' fees, at trial, arbitration or on appeal in addition to all other appropriate relief.

19.     This Guaranty shall be governed by and construed in accordance with the laws of the State of California, and in a case involving diversity of citizenship, shall be litigated in and subject to the jurisdiction of the courts of California.

20.     Every provision of this Guaranty is intended to be severable.  In the event any term or provision hereof is declared to be illegal or invalid for any reason whatsoever by a court of competent jurisdiction, such illegality or invalidity shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable.

21.     This Guaranty may be executed in any number of counterparts each of which shall be deemed an original and all of which shall constitute one and the same Guaranty with the same effect as if all parties had signed the same signature page.  Any signature page of this Guaranty may be detached from any counterpart of this Guaranty and re-attached to any other counterpart of this Guaranty identical in form hereto but having attached to it one or more additional signature pages.

22.     No failure or delay on the part of Landlord to exercise any power, right or privilege under this Guaranty shall impair any such power, right or privilege, or be construed to be a waiver of any default or any acquiescence therein, nor shall any single or partial exercise of such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege.

23.     This Guaranty constitutes the entire agreement between Guarantor and Landlord with respect to the subject matter hereof.  No provision of this Guaranty or right of Landlord hereunder may be waived nor may Guarantor be released from any obligation hereunder except by a writing duly executed by an authorized officer, member or partner of Landlord.

24.     The liability of Guarantor and all rights, powers and remedies of Landlord hereunder and under any other agreement now or at any time hereafter in force between Landlord and Guarantor relating to the Lease shall be cumulative and not alternative and such rights, powers and remedies shall be in addition to an rights, powers and remedies given to Landlord by law.

25.     If there is more than one undersigned Guarantor, (a) the term "Guarantor", as used herein, shall include all of the undersigned; (b) each provision of this Guaranty shall be binding on each one of the undersigned, who shall be jointly and severally liable hereunder; and

068093\10410909v12

Assignment & Amendment
Ruby's Diner

Exhibit B - Guaranty
Page 6

Laguna Hills Mall
Unit #635-74

MGP

EXHIBIT "1"
Page 36

(c) Landlord shall have the right to join one or all of them in any proceeding or to proceed against them in any order.

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the date written below:

**"GUARANTOR"**

MICHEAL YOUSSEF and RANIA YOUSSEF, husband and wife, on behalf of each of their marital, community and sole and separate estates, jointly and severally

Date:_____    _____

MICHEAL YOUSSEF

Date:_____    _____

RANIA YOUSSEF

**Guarantor's Address for Notices:**

Micheal Youssef and Rania Youssef
1230 Hickory Avenue
Torrance, CA 90503
Telephone: (424) 757-3060

**Landlord's Address for Notices:**

MGP FUND X LAGUNA HILLS, LLC
Re:  Laguna Hills Mall, Unit #635-74
425 California Street, 10th Floor
San Francisco, CA  94104-2113
Telephone:     (415) 693-9000

068093\10410909v12

Assignment & Amendment          Exhibit B - Guaranty          Laguna Hills Mall
Ruby's Diner                              Page 7                          Unit #635-74

MGP

EXHIBIT "1"
Page 37

EXHIBIT "2"

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT ("Agreement") is made and entered into on this 6th day of February, 2019 by and between Maria Land Inc. a California Corporation (the "Buyer") and Ruby's Laguna Hills Ltd. (the "Seller").

The Seller is the current owner of Ruby's Laguna Hills Ltd. ("Business") located at 24155 Laguna Hills Mall, Suite 1840 Laguna Hills California 92633

NOW THEREFORE, based on the foregoing and in consideration of the mutual obligations and covenants hereinafter set forth, the Buyer and Seller agree as follows:

1) The undersigned Buyer hereby agrees to purchase, as stated, the assets of the above Business, including but not limited to the furniture, fixtures & equipment of the Business ("Business Assets"), and as more fully listed in Appendix A, for the sum of $14,000 (the "Purchase Price") plus food inventory.  Final value of inventory shall be mutually agreed upon by the Buyer and Seller and determined using the actual on-hand and usable inventory at the point of Closing (as defined below) of the transaction.

   For the avoidance of doubt, the transaction is as an ASSET PURCHASE and the Buyer in no way assumes responsibilities or liabilities of the Seller prior to the date of Closing, unless agreed to in writing, for any of the Seller or the Seller's respective affiliates, affiliated companies, parents, subsidiaries, officers, directors, trustees, members, agents, representatives, owners, managers, employees, independent contractors, attorneys, insurers, predecessors, successors, assigns, family members, and any other associated or affiliated person or entity.  The Seller shall terminate all employees prior to the closing. The Buyer assumes no employee-related liabilities prior to the Closing. The Seller is responsible for any prior Seller related liability before the date of Closing including but not limited to: Payroll taxes, EDD liability, Franchise Tax Board Liability, Sales Tax Liability, IRS liability, any unpaid taxes, fees, or charges owed to any governmental, city, state, federal or local authority. The sale, subject to approval of the Bankruptcy Court, is to be free and clear of liens, claims and encumbrances.

   The Purchase Price is to be paid as followed:

   a. Deposit ("Deposit") of $14,000.00 to be delivered to escrow upon execution of Escrow Instructions.

EXHIBIT "2"
Page 38

2) The Purchase Price, closing costs and closing adjustments shall be paid through an escrow to be established with Central Escrow, Inc. ("Escrow"). Buyer and Seller agree to immediately enter Escrow after entering this agreement and sign separate escrow instructions that define the duties of the parties and the Escrow. All parties shall cooperate with Escrow in completing any documents and performing any acts necessary to complete the transfer of the Business Assets, including compliance with the Bulk Sale law as applicable. Buyer shall pay 100% of all escrow costs.

3) Buyer is to take possession at the time that ownership is transferred from Seller to Buyer ("Closing"). Personal property taxes, utilities, POS Contracts are to be prorated to the point of Closing. Seller shall support Buyer and Buyer shall use best efforts to transfer items as listed on Appendix B into the Buyer's name and responsibility at the time of closing. Seller shall pay all wages, salaries and benefits, including without limitation sick leave, vacation and other paid time off to its employees at Closing. Buyer agrees to pay sales tax on fixtures & equipment in the legal amount required. Buyer agrees to pay 100% of the escrow and/or title charges. Buyer and Seller are each responsible for their own legal, tax and other professional expenses.

4) Buyer and Seller will negotiate in good faith and use all reasonable efforts to close the transaction on or before 5-1-19 ("Projected Closing Date"), or as the parties otherwise mutually agree to extend. In all cases, this Agreement terminates on 7-1-19 at 4:00 pm PST ("Termination") unless mutually amended by the undersigned parties prior to this deadline. Upon Termination, the Agreement is withdrawn and the accompanying Deposit shall be returned to Buyer, net of any escrow fees (if any).

5) This Agreement is made subject to the following conditions and in the event the Seller does not complete the following conditions or Buyer is unable to satisfy conditions or timely disapproves of any of the following conditions for which Buyer is granted approval rights, this Agreement is rescinded and the above Deposit shall be returned to Buyer, net of escrow fees (if any).

   a. Buyer to get acceptable lease terms from Landlord and have agreed to the following terms as attached in Appendix C.

   b. Seller shall enter into a Lease Termination agreement acceptable to Seller prior to Closing.

   c. The Agreement is subject Execution of a Franchise Agreement with Ruby's Franchise Systems, Inc., an affiliate of the Seller.

d. A list of equipment and fixtures in Appendix E is approved by Buyer and Seller, and Seller agrees to deliver all equipment free of liens and encumbrances at Closing.

e. Seller has no economic interest in the Leasehold Improvement, Equipment and other items which are the property of the Landlord.

f. Seller will provide the contracts Buyer will assume listed in Appendix E. Seller will work with Buyer to provide any transfers contracts listed in Appendix E.

g. Seller will continue to operate the Business in the same manner as currently operated until Closing to the extent allowed by applicable governmental agencies and requirements.

h. Entry of an order approving the sale and the terms of this Asset Purchase Agreement, by the United States Bankruptcy Court, Central District of California, Santa Ana Division, the jointly administered case, In re Ruby's Diner, Inc., Case No. 8:18-bk-133311-CB. Seller shall obtain at its own expense U.S. Bankruptcy Court approval of this Agreement prior to date of Closing.

6) The Seller represents and warrants:

a. All inventory of the Business is marketable and is, or will be, in good condition and with no liens.

b. All Assets currently listed in Appendix A owned by Seller with no liens.

c. Seller does not guarantee that any current employees will want to be employed by Buyer after terminated by Seller. The future Employment Relationship between Buyer and all Employees, applicants, interviewees and similar parties ("Parties") shall be only between the Buyer and those Parties after the Closing.

d. There are no liabilities of the Business for which Buyer will be liable, except as stated herein or in a further written agreement of the parties. Seller will honor and discharge when due, all excluded liabilities.

1156895.1/81621.08002
Page **3** of **10**

EXHIBIT "2"
Page 40

e. Exceptions:

_____

_____

_____

_____

Seller warrants that these representations are true, shall be true as of Closing.

7) Buyer and Seller each agree to protect, defend, hold harmless & indemnify each other from and against any and all losses, costs, expenses, suits, actions, damage, injury or legal proceedings, of any kind. Seller will do so for Buyer during Seller's ownership of Business prior to Closing. Buyer will do so for the Seller during Buyer's term of the Franchise Agreement and an additional 10 years. In any action or proceeding arising out of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs. Seller has the right but not the responsibility to use Mediation to resolve any disputes with Buyer in lieu of litigation of this transaction.

8) Except as reasonably necessary for a party to seek equitable relief from a Court, such as an injunction or other expedited relief (writ of attachment, specific performance, appointment of a receiver or similar remedies), as a condition precedent to initiation of any legal action or arbitration proceeding by either party, Buyer and Seller shall mediate any dispute or claim between them arising out of this Agreement or any resulting relationship or transaction between such parties. Either party may demand mediation by notice to the other party, which notice shall state the nature of the dispute to be resolved. From the date such notice is given, the parties shall agree upon a mediator not later than the tenth business day thereafter. If the parties cannot agree upon a mediator, the matter shall be submitted to the American Arbitration Association ("AAA") for appointment of a mediator and to conduct the mediation. The parties shall have 45 days from the selection of the mediator to commence the first mediation session. The parties shall share all mediation costs equally. The parties agree that any mediated settlement agreement may be converted to an arbitration award or judgment (or both) and enforced according to the governing rules of civil procedure. Should either party fail to participate timely and in good faith in the selection process for the mediator, or in the mediation process, such party will be deemed to have refused mediation, and that party shall not be entitled to attorney fees that might be otherwise available to it in any subsequent court action or arbitration.

EXHIBIT "2"
Page 41

9) The Buyer and Seller warrant that they have full authorization to bind each respective party to the Agreement. This Agreement contains the entire agreement between the Buyer and the Seller herein and there are no oral agreements or understanding not herein contained. Any modification hereof must be in writing and signed by both Buyer and Seller.

Agreement effective on this _22ND_ day of _FEBRUARY_, 2019 at
_____, _____.

_Maria Land Inc._  ("Buyer")

By: _Micheal Youssef_
Print: _Micheal Youssef_
Its: _CEO_

Ruby's Laguna Hills Ltd.

RUBY'S LAGUNA HILLS, LTD. a California limited partnership ("Seller")

By:    Ruby's SoCal Diners, LLC, a Delaware limited liability company
       Its: General Partner

       By: _____
       Name: Doug Cavanaugh
       Its: CEO
       Date: _02-22-19_

## Appendix A – Asset Listing

**Various Smallwares**

**Ice Cream Machine**

**POS System** (End of life in April)

**Patio Furniture**

EXHIBIT "2"
PAGE 43

## Appendix B – Transferred Items

**Telephone**

**Natural Gas**

EXHIBIT "2"
Page 44

**Appendix C – Lease Terms Agreeable**

EXHIBIT "2"
Page 45

**Appendix D – List of Equipment and Fixtures**

**Various Smallwares**

**Ice Cream Machine**

**POS System** (End of life in April)

**Patio Furniture**

EXHIBIT "2"
Page 46

**Appendix E – Contracts to be Assumed by Buyer**

**None?**

EXHIBIT "2"
Page 47