William N. Lobel, State Bar No. 93202
PACHULSKI STANG ZIEHL & JONES LLP
650 Town Center Drive, Suite 1500
Costa Mesa, California 92626
Telephone:  (714) 384-4740 / Facsimile: (714) 384-4741
E-mail:  wlobel@pszjlaw.com

Attorneys for Ruby's Diner, Inc., a California corporation,
*et al.,* Debtors and Debtors in Possession

Eric J. Fromme, State Bar No. 193517
THEODORA ORINGHER PC
535 Anton Boulevard, 9th Floor
Costa Mesa, California 92626
Telephone:  (714) 549-6200 / Facsimile: (714) 549-6201
E-mail:  efromme@tocounsel.com

Attorneys for Ruby's Franchise Systems, Inc., a California
corporation, Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA**

| | |
|---|---|
| RUBY'S DINER, INC., a California corporation, *et al.,*<br><br>    Debtors and Debtors in Possession.<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br>RUBY'S FRANCHISE SYSTEMS, INC., a California corporation,<br><br>    Debtor and Debtor in Possession. | Chapter 11<br>Case No. 8:18-bk-13311-CB (RDI)<br>Jointly Administered<br><br>Case No. 8:18-bk-13324-CB (RFS)<br><br>**DEBTORS' MOTION FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT; (II) SCHEDULING CONFIRMATION HEARING; (III) APPROVING FORM AND MANNER OF NOTICE OF CONFIRMATION HEARING; (IV) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN; AND (V) ESTABLISHING THE DEADLINE AND PROCEDURES FOR FILING OBJECTON TO CONFIRMATION OF THE PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DOUGLAS S. CAVANAUGH IN SUPPORT THEREOF**<br><br>Date:        June 5, 2019<br>Time:       10:00 a.m.<br>Courtroom:  5D<br>Address:    411 West Fourth Street<br>               Santa Ana, CA  92701 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ..................................................................................................... 2

    A.  Jurisdiction and Venue............................................................................... 3

    B.  Background ................................................................................................. 3

II.  SUMMARY OF THE PLAN.................................................................................... 4

    A.  Plan Terms ................................................................................................. 4

    B.  Summary of Classifications of Claims and Interests Treated in the Plan .............. 5

III.  RELIEF REQUESTED............................................................................................ 6

IV.  BASIS FOR RELIEF .............................................................................................. 7

    A.  Approval of the Disclosure Statement ....................................................... 7

    B.  Approval of Form and Manner of Transmittal of Notice and of Solicitation Package ........................................................................ 8

    C.  Transmittal of Solicitation Package - Generally...................................... 10

    D.  Approval of Method of Tabulation of Votes and Form of Ballots ......... 11

    E.  Scheduling a Confirmation Hearing ....................................................... 13

        1.  Summary of Proposed Dates and Deadlines................................ 13

        2.  Service of the Solicitation Packages ........................................... 13

        3.  Last Day to Vote ......................................................................... 14

        4.  Objections to Confirmation......................................................... 14

        5.  The Confirmation Brief............................................................... 16

        6.  The Confirmation Hearing .......................................................... 16

    F.  Evidence of Funds Available for Plan Payments..................................... 16

    G.  Filing of Disclosure Statement and Plan Prior to Bar Date ................... 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY
JUDGE, AND OTHER PARTIES IN INTEREST:**

**I.**

**<u>INTRODUCTION</u>**

Ruby's Diner, Inc., a California corporation ("<u>RDI</u>"), Ruby's SoCal Diners, LLC, a Delaware limited liability company ("<u>SoCal Diners</u>"), Ruby's Quality Diners, LLC, a Delaware limited liability company ("<u>Quality</u>"), Ruby's Huntington Beach, Ltd., a California limited partnership ("<u>Ruby's Huntington Beach</u>"), Ruby's Laguna Hills, Ltd., a California limited partnership ("<u>Ruby's Laguna Hills</u>"), Ruby's Oceanside, Ltd., a California limited partnership ("<u>Ruby's Oceanside</u>"), and Ruby's Palm Springs, Ltd., a California limited partnership ("<u>Ruby's Palm Springs</u>") (collectively, without RDI, the "<u>SoCal Debtors</u>" and, with RDI , the "<u>RDI Debtors</u>"), and Ruby's Franchise Systems, Inc., a California corporation ("<u>RFS</u>"), an entity affiliated with the RDI Debtors through common ownership and control, are debtors and debtors in possession in chapter 11 proceedings pending in this Court (collectively, the RDI Debtors and RFS are referred to as the "<u>Debtors</u>" or the "<u>Plan Proponents</u>").

The Debtors have filed their *Joint Chapter 11 Plan of Reorganization*, dated April 24, 2019 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>").[1]  Concurrently therewith, the Debtors filed their related *Disclosure Statement Describing Joint Chapter 11 Plan* (the "<u>Disclosure Statement</u>").

The Debtors, pursuant to sections 1125 and 1126 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "<u>Bankruptcy Code</u>"), Rules 2002, 3016, 3017, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 3017-1(a) and 3017-1(b) of the Local Rules for the United States Bankruptcy Court for the Central District of California (the "<u>Local Rules</u>"), hereby move for the entry of an order:  (a) approving the Disclosure Statement; (b) scheduling the hearing regarding Confirmation of the Plan (the "<u>Confirmation Hearing</u>"); (c) approving the form and manner of notice of the Confirmation Hearing; (d) establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan, including (i)

---

[1] Capitalized terms utilized in this Motion that are not otherwise defined shall have the meanings ascribed to such terms in the Plan.

setting the last day to mail Solicitation Packages and Notices; (ii) approving the form and content of the Debtors' proposed solicitation package, including ballots; (iii) establishing a voting deadline for receipt of ballots; and (iv) approving procedures for tabulating acceptances and rejections of the Plan; and (e) establishing the deadline and procedures for filing objections to Confirmation of the Plan.

In support of this Motion, the Debtors respectfully state as follows:

**A.**     **Jurisdiction and Venue**

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3020 and 9006 and Local Rules 3017-1(a) and 3017-1(b).

**B.**     **Background**

On August 29, 2018, the SoCal Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On September 5, 2018, RDI filed a related Chapter 11 Case and, on September 6, 2018, RFS commenced a separate proceeding under chapter 11 of the Bankruptcy Code (respectively, the "Petition Date(s)").  Following the Petition Dates, the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") entered an order jointly administering the RDI Debtors' Chapter 11 Cases for procedural purposes.  The RFS Chapter 11 Case is not jointly administered with the RDI Debtors' Chapter 11 Cases.

No party has requested the appointment of a trustee or examiner in the Debtors' Chapter 11 Cases.  On September 19, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors in the RDI Chapter 11 Case (the "Committee").  No committee of unsecured creditors has been appointed in the other Debtors' Chapter 11 Cases.

The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

## II.

## SUMMARY OF THE PLAN

**A.    Plan Terms**

The Plan provides for a restructuring of the Debtors' secured, priority and unsecured debt, infusion of new funding, the continuation of the Ruby's® brand as a going concern under a new equity structure, and a transfer of the ownership of RFS to RDI, with the license agreement between them remaining in effect.  The Plan will be funded through a combination of Cash from operations, as well as the conversion of debt and the provision of Plan Funding by Steven L. Craig (the "Plan Sponsor") totaling Four Million Six Hundred Thousand Dollars ($4,600,000).  In addition, Douglas Cavanaugh and Ralph Kosmides, the founders of Ruby's (the "Founders") will make a "new value" contribution on the Effective Date of the Plan in the form of the value of their 100% ownership Interests in RFS, which will be contributed to RDI as part of a reconciliation of amounts due to and from the Founders and the Debtors as provided by the Plan.  The net New Value Contribution by the Founders has been valued by RDI's financial advisor at approximately $7.5 million.  As a result of the proposed implementation of the terms of the Plan, following the Effective Date, RFS will be solely owned by RDI, and RDI will be owned 69% by the Plan Sponsor, 18.6% by Cavanaugh and 12.4% by Kosmides.  Under the Plan, for a period of two (2) years following the Effective Date, the Founders will be entitled to a Heritage Fee (equal to 25% of the Franchise Royalties paid by Franchisees to RFS), which amounts will serve as the source of, and security for, the post-Effective Date payments to the Unsecured Noteholders of RDI as provided by the Plan.

Pursuant to the Plan, the Plan Proponents seek to restructure their secured and unsecured debt and continue operating their businesses as going concerns.  The Plan provides for the payment in full, over time, of all secured Creditors, and payment in full of all administrative and priority Creditors; provided, however, that the administrative claims of certain of the Professionals will be subject to up to a ten percent (10%) voluntary reduction if necessary to make the Effective Date payments under the Plan.  The Plan further provides for payment in full, over time, of the unsecured Creditors' claims of Ruby's Huntington Beach, Ruby's Oceanside and Ruby's Palm Springs,[2] and

---

[2] Ruby's Laguna Hills has ceased operations and its creditors will be paid, from available funds, in accordance with their legal priorities.  There are insufficient funds to make a distribution to the unsecured Creditors of Ruby's Laguna Hills.

the unsecured Creditors' claims of RFS.  The unsecured Creditors' claims of SoCal Diners and Quality will be paid five percent (5%) of their allowed claims.  The unsecured Creditors' claims of RDI will be paid a total of twenty-two and one-half percent (22.5%) of their allowed claims, as follows: a twelve and one-half percent (12.5%) Distribution on the Effective Date of the Plan, and two (2) five percent (5%) payments over a two-year period following the Effective Date.  As discussed in detail below, the Plan Proponents believe that a reorganization – as opposed to a liquidation – will maximize value for all Creditor and equity constituencies.

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right to priority.  The Plan states whether each Class of Claims or Interests is Impaired or Unimpaired.  The Plan provides the treatment each Class will receive.  The Plan classifies Claims and Interests in various Classes, by Debtor, according to their right to priority.  The Plan states whether each Class of Claims or Interests is Impaired or Unimpaired.  The Plan provides the treatment each Class will receive.

**B.**    **Summary of Classifications of Claims and Interests Treated in the Plan**

In the Plan, the Plan Proponents have classified Claims and Interests as follows:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims of the Secured Noteholders – RDI | Impaired | Entitled to Vote |
| 2 | Secured Claim of Opus Bank – SoCal Debtors | Impaired | Entitled to Vote |
| 3 | Secured Claim of C&C Partnership – SoCal Debtors | Impaired | Entitled to Vote |
| 4 | Secured Claim of Pillsbury Winthrop Shaw Pittman LLP – RDI and SoCal Debtors | Impaired | Entitled to Vote |
| 5 | Secured Claim of Plaza Bonita, LLC – SoCal Debtors | Impaired | Entitled to Vote |
| 6 | Secured Claim of Opus Bank – RFS | Impaired | Entitled to Vote |
| 7 | Secured Claim of the Plan Sponsor – RFS | Impaired | Entitled to Vote |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

| 8(a) | Secured Tax Claims – RDI | Impaired | Entitled to Vote |
|------|--------------------------|----------|------------------|
| 8(b) | Secured Tax Claims – SoCal | Impaired | Entitled to Vote |
| 8(c) | Secured Tax Claims – RFS | Impaired | Entitled to Vote |
| 9 | PACA Claims – RDI and SoCal Debtors | Unimpaired | Not Entitled to Vote |
| 10(a) | Priority Non-Tax Claims – RDI | Unimpaired | Not Entitled to Vote |
| 10(b) | Priority Non-Tax Claims – SoCal | Unimpaired | Not Entitled to Vote |
| 10(c) | Priority Non-Tax Claims – RFS | Unimpaired | Not Entitled to Vote |
| 11(a) | Unsecured Noteholder Claims – RDI | Impaired | Entitled to Vote |
| 11(b) | General Unsecured Claims – RDI | Impaired | Entitled to Vote |
| 11(c) | Unsecured Claims – SoCal Debtors | Impaired | Entitled to Vote |
| 11(d) | Unsecured Claims – RFS | Impaired | Entitled to Vote |
| 12(a) | Interests – Founders' Interests in RDI | Impaired | Entitled to Vote |
| 12(b) | Interests – Founders' Interests in RFS | Impaired | Entitled to Vote |
| 12(c) | Interests – RDI's Interests in Other Entities | Unimpaired | Not Entitled to Vote |

## III.

## **RELIEF REQUESTED**

By this Motion, the Debtors request entry of an order: (a) approving the Disclosure Statement; (b) scheduling the Confirmation Hearing; (c) approving the form and manner of notice of the Confirmation Hearing; (d) establishing procedures for solicitation and tabulation of votes to accept or reject the Plan, including (i) setting the last day to mail Solicitation Packages and Notices; (ii) approving the form and content of the Debtors' proposed solicitation package, including ballots; (iii) establishing a voting deadline for receipt of ballots; and (iv) approving procedures for tabulating acceptances and rejections of the Plan; and (e) establishing the deadline and procedures for filing objections to Confirmation of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**IV.**

**BASIS FOR RELIEF**

A.    **Approval of the Disclosure Statement**

Section 1125 of the Bankruptcy Code requires a bankruptcy court to approve a written disclosure statement prior to allowing a party to solicit acceptances for a chapter 11 plan.  *See* 11 U.S.C. § 1125(b).  To approve a disclosure statement, a court must find that the disclosure statement contains "adequate information," which is defined as "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

The primary purpose of a disclosure statement is to provide creditors and interest holders affected by a proposed plan with all material information needed to make an informed decision whether to vote for the plan.  *See, e.g., Century Glove, Inc. v. First Amer. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) (stating that section 1125 "seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *Prudential Ins. Co. of Amer. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1342 (8th Cir. 1985); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001).  Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization.  *Century Glove*, 860 F.2d at 100.

In evaluating whether a disclosure statement provides "adequate information," the bankruptcy court is given wide discretion to make a determination based upon the facts of the particular case.  *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

Determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the sound discretion of the court.  *See, e.g., Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court."); *Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008)

("The standard for disclosure is, thus, flexible and what constitutes 'adequate information' in any particular situation is determined on a case-by-case basis, with the determination being largely in the discretion of the bankruptcy court." (citation omitted)); *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) (same); *Phoenix Petroleum*, 278 B.R. at 393 (same).

In the instant case, the Disclosure Statement contains, among other things, information concerning (i) the business and background of the Debtors; (ii) significant events that have occurred in these Chapter 11 Cases; (iii) treatment of Creditors and Interest Holders under the Plan; (iv) which parties in interest are entitled to vote; (v) selected historical information; (vi) means for implementation of the Plan; (vii) how Distributions under the Plan will be made; (viii) certain factors Creditors should consider before voting; (ix) procedures for confirming the Plan; (x) liquidation analyses; and (xi) certain tax consequences. The Debtors will continue to review the Disclosure Statement filed, and based upon their ongoing review and further material developments in these Chapter 11 Cases, may make additional changes and disclosures prior to the hearing regarding the Disclosure Statement. Any such additional disclosures would increase the amount of information being provided to parties in interest, and consequently, would further substantiate why the Disclosure Statement contains adequate information.

Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" as that phrase is defined in section 1125(a)(1) of the Bankruptcy Code. The Debtors believe that the Disclosure Statement should be approved.

**B.**    **Approval of Form and Manner of Transmittal of Notice and of Solicitation Package**

Pursuant to Bankruptcy Rule 3017(d), upon approval of a disclosure statement, a plan proponent must mail to the United States Trustee, all creditors and all equity security holders the plan, the disclosure statement, notice of the time within which to file acceptances or rejections, notice of the date of the confirmation hearing, and such other information as the court may require.

The Debtors propose to transmit or cause to be transmitted to Holders of Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8(a), 8(b), 8(c), 11(a), 11(b), 11(c) and 11(d), which are the only Classes entitled to vote on the Plan (the "Voting Classes"), by mail or CD-ROM, a solicitation package containing the following:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1.	A notice in substantially the form attached hereto as **Exhibit A** (the "Confirmation Hearing Notice") of: (i) the order approving the Disclosure Statement, (ii) the commencement date of the Confirmation Hearing, (iii) the deadline and procedures for filing objections to Confirmation of the Plan, (iv) the deadline for receipt of ballots to accept or reject the Plan, and (v) voting procedures;

2.	The Disclosure Statement (together with the exhibits thereto, including the Plan, that have been filed with the Court before the date of the mailing);

3.	A ballot (the "Ballot"), proposed forms of which are annexed hereto as **Exhibit B**, and a Ballot return envelope; and

4.	Such other materials as the Court may direct (collectively, the "Solicitation Package").

To avoid duplication and reduce expenses, the Debtors propose that Creditors who have more than one Claim shall receive only one Solicitation Package and one Ballot for each Class of Claim. The Debtors submit that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

The Debtors will mail a copy of the Confirmation Hearing Notice to (i) the Securities and Exchange Commission; (ii) the Internal Revenue Service; (iii) the Office of the United States Trustee; and (iv) those parties that have requested service under Bankruptcy Rule 2002.

Pursuant to section 1126(f) of the Bankruptcy Code, Creditors holding Claims in Classes 9 (PACA Claims – RDI and SoCal), 10(a), (10(b), 10(c) (Priority Tax Claims) and 12(c) (RDI's Interests in Other Entities) under the Plan, which are Unimpaired, are deemed to have accepted the Plan, and are not entitled to vote.  Accordingly, the Debtors propose that they should not be required to transmit a Solicitation Package to Holders of Claims in the aforementioned classes (the "Non-Voting Classes").  Therefore, the Debtors propose to mail or cause to be mailed to each such Holder of Claims in the Non-Voting Classes, a notice substantially in the form attached hereto as **Exhibit C** (the "Non-Voting Class Notice"), which sets forth: (i) the Non-Voting Class; (ii) a summary of the Plan; (iii) the date and time of the Confirmation Hearing; and (iv) the deadline and procedures for filing objections to the Plan.  The Non-Voting Class Notice will indicate that the Non-Voting

Classes are entitled to receive a copy of the Plan and Disclosure Statement, in electronic format unless specifically requested otherwise, at the expense of the Debtors, upon making a written request to counsel for the Debtors.

**C.      Transmittal of Solicitation Package - Generally**

Bankruptcy Rule 3017(d) requires that the Disclosure Statement be mailed to the United States Trustee, all Creditors and all equity security Holders. The Debtors propose to transmit the Solicitation Package at the expense of the Debtors' Estates, to:

1.      All known Creditors (a) that have timely filed a Proof of Claim in the Chapter 11 Cases or (b) that are listed by the Debtors in their Schedules as holding a Claim in the Chapter 11 Cases that are not listed as contingent, unliquidated or disputed;

2.      All parties who have requested special notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002;

3.      Parties to contracts or leases that have been rejected by the Debtors but whose deadline for filing Claims on the basis of those rejections has not yet expired;

4.       Parties to any executory contracts and unexpired leases with the Debtors that have not yet been rejected; and

5.      Any other parties in interest as may be required by Bankruptcy Rules 2002(b), (i), (j) and (k).

The Debtors request that the Court permit them to exclude all other parties (not identified above) from service of the Solicitation Package, including, without limitation, parties identified on the Debtors' master mailing lists but who are not listed in the Schedules and have not filed a Proof of Claim against the Debtor's Estates.  *See* Fed. R. Bank. P. 3003(c)(2) ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent or unliquidated shall file a proof of claim within the time proscribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for purposes of voting and distribution.").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

**D.    Approval of Method of Tabulation of Votes and Form of Ballots**

To accurately calculate votes cast for or against the Plan, the Debtors propose a method for tabulating votes in accordance with the Bankruptcy Code and Bankruptcy Rules.  Generally, only a holder of an allowed claim or interest is entitled to vote to accept or reject a plan.  *See* 11 U.S.C. § 1126(a).  An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with Federal Rule of Bankruptcy Procedure 3002 for such claim or interest to be allowed, with certain exceptions.  *See* 11 U.S.C. §§ 501 and 502; Fed. R. Bankr. P. 1019(3), 3003, 3004 and 3005.  One noted exception to this general rule covers claims listed on a debtor's schedule of liabilities but not listed as contingent, unliquidated or disputed.  *See* 11 U.S.C. § 1111(a); Fed. R. Bankr. P. 3003(b).

In accordance with these considerations and for the purpose of tabulating votes, the Debtors propose that the amount of a Claim should be either (1) the Claim amount as listed in the Schedules (so long as such Claim is not listed as contingent, unliquidated or disputed) if no Proof of Claim has been timely filed and no objection to the Claim as scheduled has been filed no later than one day prior to the Balloting Deadline (as defined below) (*see* Fed. R. Bankr. P. 3003(b)(1)); (2) the liquidated amount specified in a Proof of Claim timely filed and received to the extent the Claim as filed is not the subject of an objection to Claim filed no later than the Balloting Deadline (as defined below) (*see* 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3002), provided that if the Claim amount asserted is unascertainable from the face of such Proof of Claim, then the Holder of such Claim shall be deemed to have a Claim of One Dollar ($1.00) for voting amount purposes only; or (3) the amount temporarily allowed by the Court for voting purposes after notice and a hearing in accordance with Bankruptcy Rule 3018(a).

If a Creditor submits a Ballot, and (1) such Creditor has not timely filed a Proof of Claim and is not listed on the Schedules as specified above, or (2) the entirety of such Creditor's Claim is the subject of an objection to Claim, the Creditor's Ballot should not be counted in accordance with Bankruptcy Rule 3018, unless otherwise temporarily Allowed by the Court in accordance with such Rule.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

In addition to the foregoing, the Debtors request that the Court authorize the following additional procedures for voting on the Plan:

1.      If a Creditor submits more than one Ballot voting the same Claim(s) before the last day for submitting Ballots to be established pursuant hereto, the last Ballot received prior to the last day for submitting Ballots shall supersede any prior Ballot(s).

2.      A Ballot that partially rejects and partially accepts the Plan or that indicates both a vote for and against the same Plan, shall not be counted.

3.       Votes cast by a Holder of a Claim pursuant to a Ballot that is not signed or is not timely received shall not be counted.

4.      Votes cast by a Holder of a Claim pursuant to a Ballot that is e-mailed or faxed to the Debtors' balloting agent shall not be counted.

5.      Ballots that are signed and returned but that do not provide a vote either for acceptance or rejection of the Plan shall be counted as an acceptance.

6.      The authority of the signatory of each Ballot to complete and execute the Ballot shall be presumed.

7.      A Ballot that is furnished to the Debtors' balloting agent after the established voting deadline shall not be counted.

9.      All questions raised by a party in interest as to the validity, form, eligibility (including time of receipt), acceptance, and revocation of withdrawal of Ballots will be determined by the Court after notice and a hearing, in the Court's discretion.

10.      Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to the deliveries of Ballots, nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously cast (and as to which any irregularities have not theretofore been cured or waived) will be invalid.

11.      A Ballot may be withdrawn by delivering a written notice of withdrawal to the Debtors' balloting agent at any time prior to the voting deadline.  To be valid, a notice of withdrawal

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

must (a) contain the description of the Claim to which it relates; (b) be signed by the Holder of the Claim in the same manner as the Ballot that it supersedes; and (c) be received by the Debtors' balloting agent in a timely manner at the address set forth on the Ballot.  Any party in interest will have the right to contest the validity of any such withdrawal of Ballots.

**E.    Scheduling a Confirmation Hearing**

The Debtors request that the Confirmation Hearing be on or about July 24, 2019, subject to the Court's availability.  The Debtors also request that the Confirmation Hearing may be adjourned from time to time by announcing such continuance in open court or otherwise, without further notice to parties in interest.

**1.    Summary of Proposed Dates and Deadlines**

The Debtors propose the following dates for certain events in connection with Plan Confirmation:

| Event | Date |
|---|---|
| Last Day to Mail Solicitation Packages and Notices | Five (5) business days after the order approving the Disclosure Statement is entered |
| Last Day for Creditors to Deliver Ballots to Balloting Agent | Twenty-five (25) calendar days after the Solicitation Packages are mailed |
| Last Day to Submit Objections to Plan Confirmation | Twenty-five (25) calendar days after the Solicitation Packages are mailed |
| Last Day to Submit Confirmation Brief | Five (5) calendar days after the Plan objection deadline |
| Last Day to Submit Ballot Summary Report | Five (5) calendar days after the deadline for submitting Ballots |
| Confirmation Hearing | Six (6) calendar days after the confirmation brief is filed |

**2.    Service of the Solicitation Packages**

The Debtors request that the Court set five (5) business days after the order approving the Disclosure Statement is entered on the docket, as the last date by which the Solicitation Packages and notices must be mailed to parties entitled to receive them.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

### 3.    Last Day to Vote

Pursuant to Bankruptcy Rule 3017(c), "[o]n or before the approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan. . . ."  The Debtors request that the Court establish twenty-five (25) calendar days after the Solicitation Packages have been mailed as the last date on which all Ballots must be received by counsel for the RDI Debtors in order to be valid (the "Balloting Deadline").  The Debtors submit that this Balloting Deadline will afford Creditors ample time to vote and will still allow enough time to permit the Debtors to prepare and file their Confirmation Brief (defined below) and to prepare the vote tabulation and the report thereon for filing with the Court.  The Debtors further request that the date for filing the Ballot summary report be established as five (5) calendar days after the Balloting Deadline.

### 4.    Objections to Confirmation

Bankruptcy Rule 3020(b)(1) provides that "objections to the confirmation of the plan shall be filed and served . . . within a time fixed by the court."  The Debtors submit that the Court should fix a date that is twenty-five (25) calendar days after the Solicitation Packages are mailed as the last day to file and serve objections to the Plan ("Confirmation Objection Deadline").  This time frame complies with Bankruptcy Rule 2002(b).  Further, the Debtors request that the Court order:  (a) that Plan objections must be set forth in a written statement and be accompanied by a memorandum of points and authorities and any supporting evidence, and (b) that any objections not timely filed and served are deemed waived.  Also, in accordance with Bankruptcy Rule 3020(b)(1), the Debtors propose that the Court designate the entities set forth below as those entities upon which any objections to Confirmation of the Plan must be served:

o    The Office of the United States Trustee, at the following address:

Office of The United States Trustee
411 West Fourth Street, Suite 7160
Santa Ana, California 92701
Telephone: (714) 338-3400
Facsimile: (714) 338-3421

o  The Debtors and counsel for the Debtors, at the following addresses:

**Plan Proponents**
Douglas Cavanaugh, Ralph Kosmides and Tad Belshe
Ruby's Diner, Inc., *et al.* and Ruby's Franchising Systems, Inc.
4100 MacArthur Blvd., Suite 310
Newport Beach, California 92660
Telephone: (949) 644-7829
Facsimile: (949) 644-4265


**Counsel for the RDI Debtors**
William N. Lobel, Esq.
Pachulski Stang Ziehl & Jones LLP
650 Town Center Drive, 15th Floor
Costa Mesa, California 92626
Telephone:  (714) 384-4740
Facsimile:  (714) 384-4741
E-mail:  wlobel@pszjlaw.com


**Counsel for RFS**
Eric J. Fromme, Esq.
Theodora Oringher PC
535 Anton Blvd., 9th Floor
Costa Mesa, California 92626
Telephone:  (714) 549-6200
Facsimile:  (714) 549-6201
E-mail:  efromme@tocounsel.com

o  The Plan Sponsor and counsel for the Plan Sponsor, at the following addresses:

**Plan Sponsor**
Steven L. Craig
c/o Craig Realty Group
4100 MacArthur Blvd, Suite 200
Newport Beach, California 92660


**Counsel for the Plan Sponsor**
Alan J. Friedman, Esq.
Shulman Hodges & Bastian LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:  (949) 340-3400
Facsimile:  (949) 340-3000
Email:  afriedman@shbllp.com

o  Counsel to the Committee, at the following address:

Garrick Hollander, Esq.
Winthrop Couchot Golubow Hollander, LLP
1301 Dove Street, Suite 500
Newport Beach, California 92660
Telephone:  (949) 720-4100

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

Facsimile:  (949) 720-4111
Email:  ghollander@wcghlaw.com

## 5.    The Confirmation Brief

The Debtors request that the Court set a deadline of five (5) calendar days after the Confirmation Objection Deadline as the deadline for filing and serving any briefs in support of Confirmation (the "Confirmation Brief").  The Debtors request that the Court order that the only entities on whom the Debtors must serve the Confirmation Brief are the U.S. Trustee, counsel to the Committee, the Plan Proponents, the Plan Sponsor, counsel to the Plan Sponsor, any party that filed an objection to the Plan and on all parties who requested special notice pursuant to Bankruptcy Rule 2002.

## 6.    The Confirmation Hearing

The Debtors respectfully request a hearing on Confirmation of the Plan be set six (6) calendar days after the Confirmation Brief is filed, or as soon thereafter as may be convenient to the Court.  The Debtors desire to have the Plan confirmed as expeditiously as reasonably possible because of the substantial benefits which will be attained by the prompt resolution of the Chapter 11 Cases.

## F.    Evidence of Funds Available for Plan Payments

As set forth in the Cavanaugh Declaration, the Debtors anticipate having sufficient funds to make the required payments pursuant to the Plan on the Effective Date of the Plan in the amount of approximately $4 million.

## G.    Filing of Disclosure Statement and Plan Prior to Bar Date

The Court has entered an order setting the general bar date for prepetition claims in the RFS chapter 11 of May 15, 2019 (the "RFS Bar Date"), and of June 3, 2019 in the RDI Debtors Chapter 11 Case (the "RDI Bar Date" and, together with the RFS Bar Date, the "Bar Dates").  The Debtors filed their Disclosure Statement and Plan prior to the Bar Dates because it is vital to the Debtors that they be free of the added expenses and the delays associated with conducting business while in Chapter 11 Cases.  Further, the Debtors have requested that the Court set five (5) business days after the order approving the Disclosure Statement is entered on the docket (or soon thereafter), as the last

1    date by which the Solicitation Packages and notices must be mailed to parties entitled to receive

2    them.  By that date, the Bar Dates will have passed and the Debtors will be able to ascertain the

3    universe of their Creditors.

4         **WHEREFORE**, the Debtors respectfully request that the Court enter its order (i) approving

5    the Disclosure Statement; (ii) scheduling the hearing regarding Confirmation of the Plan;

6    (iii) approving the form and manner of notice of the Confirmation Hearing; (iv) establishing

7    procedures for solicitation and tabulation of votes to accept or reject the Plan, including (A) setting

8    the last day to mail Solicitation Packages and Notices; (B) approving the form and content of the

9    Debtors' proposed solicitation package, including Ballots; (C) establishing a voting deadline for

10   receipt of Ballots; and (D) approving procedures for tabulating acceptances and rejections of the

11   Plan; and (v) establishing the deadline and procedures for filing objections to Confirmation of the

12   Plan.

13

14   Dated: April 24, 2019                    PACHULSKI STANG ZIEHL & JONES LLP

15

16   By: _____
            William N. Lobel

17            Attorneys for Ruby's Diner, Inc., *et al.,* Debtors
            and Debtors in Possession

18   Dated: April 24, 2019                    THEODORA ORINGHER PC

19

20   By: _____
            Eric J. Fromme

21            Attorneys for Ruby's Franchising Systems,
            Inc., Debtor and Debtor in Possession

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

## DECLARATION OF DOUGLAS S. CAVANAUGH

I, Douglas S. Cavanaugh, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.      I am a founder and the Chief Executive Officer ("CEO") of Ruby's Diners, Inc., a California corporation ("RDI"), the lead debtor in jointly administered Chapter 11 Cases of debtors and debtors in possession, Ruby's SoCal Diners, LLC, a Delaware limited liability company ("SoCal Diners"); Ruby's Quality Diners, LLC, a Delaware limited liability company ("Quality"); Ruby's Huntington Beach, Ltd., a California limited partnership ("Ruby's Huntington Beach"); Ruby's Laguna Hills, Ltd., a California limited partnership ("Ruby's Laguna Hills"); Ruby's Oceanside, Ltd., a California limited partnership ("Ruby's Oceanside"); and Ruby's Palm Springs, Ltd., a California limited partnership ("Ruby's Palm Springs") (collectively, without RDI, the "SoCal Debtors" and, with RDI, the "Debtors").  I have served in the capacity of CEO of RDI since its incorporation in 1985.  I am also a 60% shareholder of RDI.  Ralph Kosmides owns the other 40% of RDI.   Mr. Kosmides and I also own, in the same percentages, Ruby's Franchise Systems, Inc., a California corporation ("RFS"), an entity affiliated with the Debtors through common ownership and control which is a debtor in a separate chapter 11 proceeding pending in front of this Court. Together, Mr. Kosmides and I are referred to herein as the "Founders."

2.      I make this Declaration in support of the concurrently filed *Debtors' Motion for an Order (I) Approving Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan; and (V) Establishing the Deadline and Procedures for Filing Objections to Confirmation of the Plan* (the "Motion").[3]

3.      Except as otherwise indicated, all statements in this Declaration are based upon my review of the Debtors' books and records, relevant documents and other information prepared or collected by the Debtors' employees, or my opinion based on my experience with the Debtors' operations and financial condition.  In making my statements based on my review of the Debtors'

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

---

[3] Capitalized terms utilized in this Declaration that are not otherwise defined shall have the meanings ascribed to such terms in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

1  books and records, relevant documents and other information prepared or collected by the Debtors'

2  employees, I have relied upon these employees accurately recording, preparing or collecting any

3  such documentation and other information.  If I were called to testify as a witness in this matter, I

4  could and would competently testify to each of the facts set forth herein based upon my review of

5  documents, information provided to me by the Debtors' employees or my opinion.  I am authorized

6  to submit this Declaration on behalf of the Debtors.

7       4.     I participated in the preparation of the Disclosure Statement and Plan, and reviewed

8  them prior to their filings.

9       5.     The Plan provides for a restructuring of the Debtors' secured, priority and unsecured

10  debt, infusion of new funding, the continuation of the Ruby's® brand as a going concern under a new

11  equity structure, and a transfer of the ownership of RFS to RDI, with the license agreement between

12  them remaining in effect.  The Plan will be funded through a combination of Cash from operations,

13  as well as the conversion of debt and the provision of Plan Funding by Steven L. Craig (the "Plan

14  Sponsor") totaling Four Million Six Hundred Thousand Dollars ($4,600,000).  In addition, Ralph

15  Kosmides and I, the founders of Ruby's (the "Founders") will make a "new value" contribution on

16  the Effective Date of the Plan in the form of the value of our 100% ownership Interests in RFS,

17  which will be contributed to RDI as part of a reconciliation of amounts due to and from us and the

18  Debtors as provided by the Plan.  The net New Value Contribution by us has been valued by RDI's

19  financial advisor at approximately $7.5 million.  *See* **Exhibit A** to the Disclosure Statement.  As a

20  result of the proposed implementation of the terms of the Plan, following the Effective Date, RFS

21  will be solely owned by RDI, and RDI will be owned 69% by the Plan Sponsor, 18.6% by me and

22  12.4% by Kosmides.  Under the Plan, for a period of two (2) years following the Effective Date,

23  Kosmides and I will be entitled to a Heritage Fee (equal to 25% of the Franchise Royalties paid by

24  Franchisees to RFS), which amounts will serve as the source of, and security for, the post-Effective

25  Date payments to the Unsecured Noteholders of RDI as provided by the Plan.

26       6.     Pursuant to the Plan, the Plan Proponents seek to restructure their secured and

27  unsecured debt and continue operating their businesses as going concerns.  The Plan provides for

28  the payment in full, over time, of all secured Creditors, and payment in full of all administrative and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

priority Creditors; provided, however, that the Administrative Claims of certain of the Professionals will be subject to up to a ten percent (10%) voluntary reduction if necessary to make the Effective Date payments under the Plan.  The Plan further provides for payment in full, over time, of the unsecured Creditors' Claims against Ruby's Huntington Beach, Ruby's Oceanside and Ruby's Palm Springs,[4] and the unsecured Creditors' Claims against RFS.  The unsecured Creditors' Claims against SoCal Diners and Quality will be paid five percent (5%) of their Allowed Claims.  The unsecured Creditors' Claims against RDI will be paid a total of twenty-two and one-half percent (22.5%) of their Allowed Claims, as follows: a twelve and one-half percent (12.5%) Distribution on the Effective Date of the Plan, and two (2) five percent (5%) payments over a two-year period following the Effective Date.  *See* Cash Flow Projections attached as **Exhibit B** to the Disclosure Statement.  The Plan Proponents believe that a reorganization – as opposed to a liquidation – will maximize value for all Creditor and equity constituencies.

7.    As set forth in the following chart, the Debtors will need approximately $4 million to make all payments required on the Effective Date.  The Debtors anticipate that they will have the requisite amount of Cash on the Effective Date as set forth in the Debtors' Cash Flow Projections.

| Type of Payment | Amount |
| --- | --- |
| Administrative Claims (Non-Professionals) | $376,206 |
| Administrative Claims (Professionals) | $2,812,500 |
| Distribution on account of General Unsecured Claims Against RDI | $800,175 |
| **TOTAL** | $3,988,881 |

8.    The Court has entered an order setting the general bar date for prepetition claims in the RFS chapter 11 of May 15, 2019 (the "RFS Bar Date"), and of June 3, 2019 in the RDI Debtors chapter 11 case (the "RDI Bar Date" and, together with the RFS Bar Date, the "Bar Dates").  The Debtors filed their Disclosure Statement and Plan prior to the Bar Dates because it is vital to the

---

[4] Ruby's Laguna Hills has ceased operations and its Creditors will be paid, from available funds, in accordance with their legal priorities.  There are insufficient funds to make a Distribution to the unsecured Creditors of Ruby's Laguna Hills.

1  Debtors that they be free of the added expenses and the delays associated with conducting business

2  while in Chapter 11 Cases.  Further, the Debtors have requested that the Court set five (5) business

3  days after the order approving the Disclosure Statement is entered on the docket (or soon

4  thereafter), as the last date by which the Solicitation Packages and notices must be mailed to parties

5  entitled to receive them.  By that date, the Bar Dates will have passed and the Debtors will be able

6  to ascertain the universe of their Creditors.

1           I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3           Executed on this 24th day of April 2019, at _____, California.

                    Newport Beach

                   Douglas S. Cavanaugh

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA