William N. Lobel – State Bar No. 93202
PACHULSKI STANG ZIEHL & JONES LLP
650 Town Center Drive, Suite 1500
Costa Mesa, CA  92626
Telephone: (714) 384-4740
Facsimile:  (714) 384-4741
E-mail:    wlobel@pszjlaw.com

Attorneys for Ruby's Diner, Inc., *et al.*
Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.:  8:18-bk-13311 CB |
| RUBY'S DINER, INC., a California corporation, *et al.*, | Chapter 11 |
| Debtors and Debtors-in Possession. | (Jointly Administered With Case Nos. 8:18-bk-13197-CB; 8:18-bk-13198-CB; 8:18-bk-13199-CB; 8:18-bk-13200-CB; 8:18-bk-13201-CB; 8:18-bk-13202-CB) |
| Affects: | |
| ☒ All Debtors | **FIFTH STIPULATION FOR ORDER (A) AUTHORIZING INTERIM USE OF CASH COLLATERAL, AND (B) GRANTING ADEQUATE PROTECTION FOR USE OF PREPETITION COLLATERAL** |
| ☐ RUBY'S DINER, INC., ONLY | |
| ☐ RUBY'S SOCAL DINERS, LLC, ONLY | |
| ☐ RUBY'S QUALITY DINERS, LLC, ONLY | **[No Hearing Set]** |
| ☐ RUBY'S HUNTINGTON BEACH, LTD., ONLY | |
| ☐ RUBY'S LAGUNA HILLS, LTD. ONLY | |
| ☐ RUBY'S OCEANSIDE, LTD., ONLY | |
| ☐ RUBY'S PALM SPRINGS, LTD., ONLY | |

DOCS_LA:323569.3 76135/003        1

The Debtors, by and through counsel, secured creditor Opus Bank ("Opus Bank"), by and through counsel,[1] secured creditor Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), by and through counsel, beneficiary of the statutory trust created pursuant to PACA U.S. Foods, Inc. ("US Foods"), by and through counsel, file this *Fifth Stipulation for Order (A) Authorizing Interim Use of Cash Collateral, and (b) Granting Adequate Protection for Use of Prepetition Collateral* (the "Fifth Stipulation").[2]  Opus Bank, Pillsbury and US Foods are referred to herein as the "Secured Creditors."

## RECITALS

A.    The SoCal Debtors each brought an "Emergency Motion For Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" on August 30, 2018 (*See, e.g.*, Case No. 18-bk-13197 Dkt. No. 13), and Opus Bank filed its objection in each of the cases later that same day (*See, e.g.*, Case No. 18-bk-13197 Dkt. No. 22).  Thereafter, the SoCal Debtors, Opus Bank, and Pillsbury filed a "Stipulation for Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" (Case No. 18-bk-13197 Dkt. No. 33).  On August 31, 2018, the Court entered an Order approving the stipulation (Case No. 18-bk-13197 Dkt. No. 34) (the "First Order").

B.    On September 5, 2018, RDI brought its "Notice of Emergency Motion and Emergency Motion by Debtor for Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" (Dkt. No. 7).  Opus Bank filed an objection the next day (Dkt. No. 19).  The Court entered an order approving use of cash collateral on September 10, 2018 (Dkt. No. 30) (the "RDI Order").

---

[1] Opus Bank is a secured creditor of Ruby's SoCal Diners, LLC, Ruby's Quality Diners, LLC, Ruby's Huntington Beach, Ltd., Ruby's Laguna Hills, Ltd., Ruby's Oceanside, Ltd., and Ruby's Palm Springs, Ltd. (the "SoCal Debtors"). Opus Bank is not a secured creditor of Ruby's Diner, Inc. ("RDI").

[2] This Fifth Stipulation is essentially identical to the Fourth Stipulation which was approved by the Court on April 4, 2019 (see Dkt Nos. 323 and 328). The Fifth Stipulation is filed to extend the dates for the use of cash collateral from August 11, 2019 to November 3, 2019, and to eliminate Family Tree Produce, Inc. as a secured creditor as Family Tree has been paid.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
COSTA MESA, CALIFORNIA

C. On September 10, 2018, Family Tree Produce, Inc. ("Family Tree") filed an objection and declaration in support of the objection to the relief in both the First Order and the RDI Order because these orders did not protect Family Tree's interests as a beneficiary under a trust created by PACA (Dkt. Nos. 36–37).

D. On September 14, 2018, Pillsbury filed a Statement of Position concerning the First Order and the RDI Order, consenting to the interim orders and stating that Pillsbury would not object to final orders provided that they included post-petition replacement liens to the same extent, priority and validity as Pillsbury's pre-petition liens (Dkt. No. 62).

E. On October 12, 2018, Family Tree and RDI filed a "Stipulation Between the Debtors and Family Tree Produce, Inc. Resolving Omnibus Objection of Family Tree Produce, Inc. to Debtors' Emergency Motions for Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" (Dkt. No. 108), stating that Family Tree retains a PACA trust claim against RDI and each of the SoCal Debtors until the amounts claimed by Family Tree as the basis for the pre-petition and post-petition PACA trust claims are paid in full. The Family Tree trust claims were identified as $17,003 for Ruby's Huntington Beach, $15,750 for Ruby's Oceanside, $7,800 for Ruby's Palm Springs, and $7,113 for Ruby's Laguna Hills (Dkt. No. 108). The stipulation provided that Debtors will make the following payments every Thursday to be applied to payments of those amounts: Ruby's Huntington Beach to pay $680 per week, Ruby's Oceanside to pay $788 per week, Ruby's Palm Springs to pay $520 per week, and Ruby's Laguna Hills to pay $474 per week. On December 11, 2018, the Court entered an "Order Granting Stipulation Between the Debtors and Family Tree Produce, Inc. Resolving Omnibus Objection of Family Tree Produce, Inc. to Debtors' Emergency Motions for Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" (Dkt. No. 156).

F. On October 19, 2018, the RDI Creditors' Committee filed "Creditor Committee's Preliminary Comments to Status of Debtors' Cases and Proposed Use of Cash Collateral" (Dkt. No. 119), stating "The Committee unequivocally supports the Debtors' use of cash collateral."

G.    On November 8, 2018, Opus Bank and the SoCal Debtors filed a "Second Stipulation for Order (A) Authorizing Final Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" (Dkt. No. 136). On November 9, 2018, Opus Bank withdrew the stipulation because it did not address Family Tree's claims (Dkt. No. 137). On November 20, 2018, Opus Bank and the SoCal Debtors filed the "Second Stipulation for Order (A) Authorizing Final Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" (Dkt. No. 141) which included provisions for Family Tree (Dkt. No. 144).

H.    On December 17, 2018, Opus and the SoCal Debtors filed a "Third Stipulation for Order (A) Authorizing Interim Use of Cash Collateral, and (B) Granting Adequate Protection for Use of Prepetition Collateral" (Dkt. No. 163) which provided Opus Bank would receive payments of $8,557.70 per month as interest-only payments. In this Third Stipulation, all secured creditors were granted post-petition replacement liens, to the same extent, validity, and priority as their prepetition liens. The budgets were attached through April 21, 2019. The Third Stipulation also attached Opus Bank's loan documents to it as exhibits. An Order approving this Third Stipulation, except for paragraphs 13 and 15(e),[3] was entered on December 18, 2018 (Dkt. No. 165) (the "Order Granting Third Stipulation").

I.    An "Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief" was entered as to RDI only on December 20, 2018 (Dkt. No. 169).

J.    On January 8, 2019, Pillsbury filed its "Conditional Objection to Debtors' Motions for Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief; and Request for Adequate Protection" (Dkt.

---

[3] Paragraph 13 stated, "All other secured creditors of the Debtors are likewise granted replacement liens in the same priority, validity, and enforceability as any prepetition liens securing the secured creditors in the same type of assets. To the extent of any diminution in value ultimately due to Cash Collateral use not protected by the replacement liens, the secured creditors are granted superpriority claims under Section 507(b) of the Bankruptcy Code." (Dkt. 163). Paragraph 15(e) stated, "Debtors shall also provide additional adequate protection to Opus as follows: (e) The restaurant that comprises Laguna Hills, Ltd. is considering closure. If the Laguna Hills restaurant, or any of the other Debtors, shuts down its operations or closes, the cash assets of such restaurant and any net proceeds of the sale of the assets of such restaurant shall be turned over to Opus.

No. 180) (the "Pillsbury Objection"). The crux of Pillsbury's position was that the Order Granting Third Stipulation which struck language protecting Pillsbury and other secured creditors created a question whether the prior orders granting Pillsbury a replacement lien and superpriority claim had been modified, or if the previously granted protection remained in effect. Pillsbury also attached its lien documents to its Objection (Dkt. No. 180).

K. On January 8, 2019, the Debtors filed a Motion (I) For Entry of an Interim Order: (A) Authorizing Debtors and RFS to (1) Obtain Post-Petition Financing and Granting Liens and Superpriority Administrative Expense Claims Pursuant to 11 U.S.C. § 364, (2) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (3) Granting Related Relief, Including Granting the Scenario One Break-up Fee; and (B) Setting Final Hearing; and Pursuant to Final Hearing, (II) For Entry of Final Order: (A) Approving Post-Petition Financing and Use of Cash Collateral on a Final Basis, (B) Approving RDI's and RFS' Assumption of and Entry into the Plan Support Agreement; (C) Approving Scenario Two Break-Up Fee; and (D) Approving Netdown of Certain Post-Petition Obligations" (Dkt. No. 181) (the "1st DIP Motion"). The RDI Creditors' Committee joined in this motion (Dkt. No. 196), Pillsbury and Opus Bank opposed it (Dkt. Nos. 198 and 199). The hearing on this motion was set on shortened time for January 16, 2019.

L. A stipulation between the Debtors, DIP Lender Steven L. Craig, the Office of the United States Trustee, the RDI Creditor Committee, Opus Bank, and Pillsbury, was filed on January 16, 2019 to continue the hearings until January 30, 2019 (Dkt. No. 208). This stipulation addressed and resolved the Pillsbury Objection by confirming that the protections accorded the Secured Creditors in earlier orders had continued as follows: "Without limiting the foregoing, but subject to further order of the Court, the secured creditors shall be accorded the protections provided in the (i) Interim Order (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral and (C) Granting Related Relief [Case No. 18-13197, Dkt. No. 34], (ii) the Order Granting Debtor's Motion for Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting Related Relief [Case No. 18-13197, Dkt. No. 30], and (iii) Order Granting the Stipulation Between the Debtors and Family Tree Produce, Inc. Resolving Omnibus Objection, Etc. [Dkt. No. 156]." (Dkt. No. 208). This

stipulation was approved by an order entered on January 18, 2019 (Dkt. No. 214). Due to the government shutdown, the hearings scheduled for January 30, 2019 were continued by Order of the Court until February 27, 2019 (Dkt No. 219).

M. The Debtors withdrew the 1st DIP Motion and on February 6, 2019, RDI filed a "Motion for Entry of Order Authorizing RDI to: (1) Obtain Post-Petition Financing; (2) Grant Liens and Superpriority Administrative Expense Claims Pursuant to 11 U.S.C. § 364, (3) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (4) Grant Related Relief" (Dkt. No. 235) (the "2nd DIP Motion"). The 2nd DIP Motion eliminated the SoCal Debtors and Ruby's Franchise Services, Inc. ("RFS") as borrowers. The 2nd DIP Motion was set for hearing on February 27, 2019.

N. At the hearing on February 27, 2019, US Foods appeared by and through counsel, and expressed that it also had interests as a beneficiary under a trust created by PACA, and the Debtors and US Foods agreed to enter into a stipulation to be memorialized through the Fourth Stipulation, providing US Foods with protections for the Debtors' use of its cash collateral.

O. On March 29, 2019, Opus, Pillsbury, Family Tree,[4] US Foods and the SoCal Debtors filed a "Fourth Stipulation for Order (A) Authorizing Interim Use of Cash Collateral, and (B) Granting Adequate Protection for Use of Prepetition Collateral" (Dkt. No. 323). The purpose of the Fourth Stipulation was to consolidate all prior cash collateral stipulations into one document for ease of tracking. In the Fourth Stipulation, all secured creditors were granted post-petition replacement liens, to the same extent, validity, and priority as their prepetition liens, Opus Bank was ordered to continue to receive payments of $8,557.70 per month as interest only payments, and Family Tree was ordered to continue to receive weekly payments of approximately $2,462 for its pre-petition claims. The budgets were attached through August 11, 2019. An Order approving this Fourth Stipulation was entered on April 4, 2019 (Dkt. No. 328) (the "Order Granting Fourth Stipulation").

---

[4] Since the Fourth Stipulation, Family Tree has been paid in full and, therefore, is not a party to the Fifth Stipulation.

# STIPULATION

## Budget[5]

1. Attached to this Fifth Stipulation as Exhibit A, the Debtors have provided "Budgets" through November 3, 2019. Upon execution of this Fifth Stipulation and thereafter after entry of an order approving this Fifth Stipulation (the "Order"), the Debtors are authorized to use the cash collateral to pay post-petition expenses in compliance with, and for the purposes of funding those expenses set forth in the Budgets. The Debtors may not exceed these Budgets except as provided for in paragraphs 4 through 6, below.

2. The entry of the Order approving the use of cash collateral is limited to the approval of the use of cash collateral as would otherwise be prohibited by 11 U.S.C. § 363(c)(2), and shall not be construed as authorizing the use of any property of the estate other than in the ordinary course of business as statutorily authorized by 11 U.S.C. § 363.

3. Without the Secured Creditors' prior written consent, the Debtors are not authorized to make any expenditure or incur any postpetition liabilities to pay except (i) as set forth in the Budgets and the Fifth Stipulation and for (ii) fees of professionals retained by the Debtors as included in the Budgets or as may be ordered by the Court after notice and a hearing. Debtors' compliance with the Budgets constitutes an important part of the adequate protection of the Secured Creditors' interest in the cash collateral.

4. With prior notice to the United States Trustee and creditors, and upon written approval of the Secured Creditors, Debtors may reallocate payments from cash collateral among Budget line items (other than adequate protection payments). The Budgets may be amended from time to time with the written consent of the Secured Creditors and Debtors and on notice to the United States Trustee and the RDI Creditors' Committee, provided that such amended Budgets (i) shall not provide for the use of cash collateral in excess of the amount consented to in writing by the Secured Creditors unless ordered by the Court, after notice and a hearing, (ii) shall be in a form and substance acceptable to the Secured Creditors, in their reasonable discretion, (iii) shall remain

---

[5] The Budget section is the same as was ordered by the Court upon approving the Third Stipulation (Dkt. No. 163), and the Fourth Stipulation (Dkt No. 328).

consistent with the terms of this Fifth Stipulation and Debtors' obligations, and (iv) are filed by Debtors with the Court promptly. Such amended Budgets shall remain in effect unless a party in interest files and serves an objection on counsel for Debtors, the Secured Creditors, the United States Trustee, and the RDI Creditors' Committee, and requests a hearing.

5. Without prior written approval of the Secured Creditors, any Debtor's payment of the total amount of cash collateral used to pay all expenses in that Debtor's individual Budget shall not exceed the total amount set forth in that Debtor's individual Budget for all expenses by more than fifteen percent (15%).

6. The SoCal Debtors shall give Secured Creditors one (1) business day prior written notice of any funds that the SoCal Debtors intend to pay to RDI, RFS, or any other affiliate of the Debtors and RFS, including the RDI founders or Steve Craig, to cover management expenses, including employees' payroll or any other payments, or any other costs or expenses. The notice will provide detailed accounting of the specific purposes of the funds, including management fees, invoices, payroll information, or otherwise identify the purpose of the funds, such that the Secured Creditors can readily identify the reason for the payment and object if the Secured Creditors reasonably believe such reason does not relate to the Debtors' business purposes.

7. In order to continue use of the cash collateral beyond the term of the Budgets, each of the Debtors shall provide an individual updated 12 week budget to the Secured Creditors and the Court for their review on or before October 27, 2019.

8. All Budgets shall be done on an individual Debtor by Debtor basis as well as an overall aggregate basis.

## Adequate Protection for US Foods, Inc.[6]

9. US Foods supplies approximately 80% of all of the edible product sold by Ruby's Huntington Beach, Ruby's Laguna Hills, Ruby's Oceanside and Ruby's Palm Springs (the "PACA Debtors"). US Foods is a beneficiary of a PACA trust. US Foods has also supplied edible product to the PACA Debtors post-petition.

---

[6] This is the same adequate protection already granted by the Court pursuant to the Order Granting Fourth Stipulation (Dkt. No. 328).

10. US Foods retains a PACA trust claim against each of the Debtors until the amounts claimed by US Foods as the basis for the post-petition PACA trust claims are paid in full. The Debtors acknowledge that US Foods has a superpriority PACA trust claim, to the extent validly qualified and preserved, to the assets of the Debtors and will retain all rights afforded under PACA, notwithstanding anything to the contrary in any prior orders or stipulations, none of which shall be construed to prime, diminish or impair US Foods' PACA trust rights.

### Adequate Protection for Opus Bank[7]

11. As adequate protection of Opus Bank's lien and security interest, the SoCal Debtors shall make payments to Opus in the amount of $8,557.70 per month, which are interest-only payments, on the 5th day of each month.[8]

12. As adequate protection for the diminution of any interest that Opus Bank is determined to hold in the cash collateral as a result of SoCal Debtors' use of cash collateral, Opus Bank is granted a postpetition replacement lien ("Postpetition Lien") to the full value of its existing collateral and proceeds with the same extent, validity and priority as existed prepetition. Opus Bank's Postpetition Lien shall encumber all assets acquired by the SoCal Debtors postpetition which would have been encumbered by Opus Bank's liens and security interests if the SoCal Debtors had not filed bankruptcy.

13. The Postpetition Lien shall be in addition to all security interests and liens existing in favor of Opus Bank.

14. The Postpetition Lien shall be in the same priority, validity, and enforceability as any prepetition lien securing the claim of Opus Bank in the same type of assets. To the extent of any diminution in value ultimately due to Cash Collateral use not otherwise protected by the Postpetition Lien, Opus Bank is granted a superpriority claim under Section 507(b) of the Bankruptcy Code.

15. The Order shall be sufficient and conclusive evidence of the validity, perfection, and

---

[7] This is the same adequate protection already granted by the Court pursuant to the Order Granting Third Stipulation (Dkt. No. 165) and the Order Granting Fourth Stipulation (Dkt. No. 328).

[8] The SoCal Debtors acknowledge that they have failed to make the adequate protection payments to Opus Bank as ordered to date, but agree and acknowledge that these payments will be made on or before the effective date of any plan of reorganization.

priority of the Postpetition Lien granted to Opus Bank without any further action by SoCal Debtors or Opus Bank and without the execution, delivery, filing, or recordation of any promissory notes, financing statements, security agreements, or other documents.

16. The SoCal Debtors shall also provide additional adequate protection to Opus as follows:

    a. During the term of the Order, SoCal Debtors shall provide Opus Bank with reasonable access to their books, records, and account statements during regular business hours.

    b. In addition, SoCal Debtors shall continue to report to Opus Bank and the United States Trustee for the "Reporting Period" (which is each of the four week periods as set forth in the Budgets), with each SoCal Debtor individually providing: (i) projected revenues and cash flows for the following Reporting Period, as well as the actual revenues and cash flows from the prior Reporting Period and (ii) a balance sheet and statement of cash flow, income, and expense for the preceding month in the format required by the United States Trustee, and bank statements from all Debtor-in-Possession bank accounts, along with supporting documentation showing the use and allocation of the money being withdrawn from such accounts. The SoCal Debtors shall make themselves available to confer with Opus to discuss these projections and documents.

    c. Except for the sale or use of inventory or other amounts expended in the ordinary course of business, SoCal Debtors shall not dispose of any of their property without further order of this Court entered after notice to Opus Bank.

    d. To the extent not otherwise inconsistent with the Order or the Bankruptcy Code, during the term of the Order, SoCal Debtors shall keep and timely perform all of the obligations under the Loan Documents; <u>provided</u>, <u>however</u>, that SoCal Debtors by reason of the Order need not comply with those provisions establishing an Event of Default by virtue of the commencement of this Chapter 11 case or requiring payment of the Prepetition Claim (except for the Adequate Protection Payments provided for in the Order or by further order of the Court).

### DIP Accounts[9]

**17.** Debtors may open one or more separate Debtors-in-Possession bank account(s) and transfer the existing cash collateral in accounts at Opus Bank into such Debtors-in-Possession accounts. The Debtor-in-Possession accounts may be held at East West Bank or another bank of Debtors' choosing and which is an authorized depository. However, the transfer of such funds shall be conditioned on and made subject to Opus Bank's existing security interest, which security interest shall remain perfected and attached to such cash collateral after transfer by means of the order approving this Fifth Stipulation without further action required by Opus Bank and such transfer shall further be made subject to and will not alter, amend or modify Opus Bank's statutory rights of offset against such cash collateral as it currently exists.

### Adequate Protection for Pillsbury Winthrop Shaw Pittman LLP[10]

**18.** Pillsbury is granted a postpetition replacement lien to the full value of its existing collateral and the proceeds thereof with the same extent, validity and priority as existed prepetition. Without limiting the provisions of this Fifth Stipulation, Pillsbury's replacement lien shall encumber all assets acquired by the Debtors postpetition which would have been encumbered by Pillsbury's liens and security interests if the Debtors had not filed bankruptcy. Notwithstanding the foregoing, and for purposes of clarification, nothing herein shall be deemed an admission as to the nature, extent or priority of Pillsbury's claims against the Debtors.

**19.** Pillsbury is also granted a superpriority claim under Section 507(b) of the Bankruptcy Code in the event of any diminution of cash collateral.

### DIP Loan Financing[11]

**20.** Any DIP loan financing shall be subordinated to the Secured Creditors' security interests in the cash collateral and in all other collateral in which Secured Creditors have an interest,

---

[9] The DIP Accounts section is the same as was ordered by the Court upon approving the Fourth Stipulation (Dkt. No. 323).

[10] This is the same adequate protection already granted by the Court pursuant to the Order Granting Fourth Stipulation (Dkt. No. 328).

[11] The DIP Loan Financing section is the same as was ordered by the Court upon approving the Third Stipulation (Dkt. No. 165), and the Fourth Stipulation (Dkt No. 323).

including all secured creditors in each of the Debtors' cases.

**General Provisions**[12]

21. The cash collateral shall not be used to pay expenses of the Debtors or otherwise disbursed except for: (a) those expenses, payments, and/or disbursements that are expressly set forth in the Budgets or otherwise permitted under the Order; and (b) amounts due to Secured Creditors; provided that nothing in the Order is intended or shall be construed to waive any of Secured Creditors' rights to object to or otherwise contest the reasonableness of the fees and expenses of the professionals.

22. Opus Bank and Pillsbury do not object to payment of the US Foods PACA Claims. Notwithstanding anything to the contrary contained anywhere herein, entry of the Order shall not be construed to prime, diminish, or impair the rights, if any, of US Foods, to the extent validly preserved under PACA.

23. Any time period referenced shall be calculated in accordance with Bankruptcy Rule 9006.

24. The Secured Creditors do not have personal knowledge of the claims of each of the other Secured Creditors. This Fifth Stipulation should not be construed as an admission by any Secured Creditor as to the accuracy of the claims of any of the other Secured Creditors, or as a waiver of any of the Secured Creditors' rights. This Fifth Stipulation is provided in one document as a convenience to the Court and the parties and to help clarify and collate all previous stipulations and orders concerning cash collateral.

25. This Fifth Stipulation is provided as an interim stipulation up to and through the date of the Budgets, and the parties reserve their rights to amend the stipulation based on additional information that may come to their knowledge and based on any DIP financing order that is entered by the Court.

Accordingly, the Debtors, Opus Bank, Pillsbury and US Foods, now pray that the Court approve the Fifth Stipulation.

---

[12] The General Provision section is the same as was ordered by the Court upon approving in the Third Stipulation (Dkt. No. 165), and the Fourth Stipulation (Dkt No. 323).

| | |
|---|---|
| Dated: August _8_, 2019 | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | By: _/s/ William N. Lobel_ |
| | William N. Lobel |
| | Attorneys for Ruby's Diner, Inc., *et al.*, Debtors and Debtors-in-Possession |
| Dated: August __, 2019 | **DORSEY & WHITNEY LLP** |
| | By: _____ |
| | Jessica G. McKinlay |
| | Attorneys for Opus Bank |
| Dated: August 8, 2019 | **PILLSBURY WINTHROP SHAW PITTMAN LLP** |
| | By: _/s/ Matthew W. Walker_ *[Authorized Use of Electronic Signature]* |
| | Matthew S. Walker |
| | Attorneys for Creditor Pillsbury Winthrop Shaw Pittman LLP |
| Dated: August __, 2019 | **BRYAN CAVE LEIGHTON PAISNER LLP** |
| | By: _____ |
| | Aaron Davis |
| | Attorneys for US Foods, Inc. |

Dated: August __, 2019

**PACHULSKI STANG ZIEHL & JONES LLP**

By: _____
William N. Lobel
Attorneys for Ruby's Diner, Inc., *et al.*,
Debtors and Debtors-in-Possession

Dated: August 8, 2019

**DORSEY & WHITNEY LLP**

By: /s/ Jessica G. McKinlay
Jessica G. McKinlay
Attorneys for Opus Bank

Dated: August __, 2019

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: _____
Matthew S. Walker
Attorneys for Creditor Pillsbury Winthrop
Shaw Pittman LLP

Dated: August __, 2019

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: _____
Aaron Davis
Attorneys for US Foods, Inc.

Dated: August __, 2019    PACHULSKI STANG ZIEHL & JONES LLP

By: _____
William N. Lobel
Attorneys for Ruby's Diner, Inc., *et al.*,
Debtors and Debtors-in-Possession

Dated: August __, 2019    **DORSEY & WHITNEY LLP**

By: _____
Jessica G. McKinlay
Attorneys for Opus Bank

Dated: August __, 2019    **PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: _____
Matthew S. Walker
Attorneys for Creditor Pillsbury Winthrop
Shaw Pittman LLP

Dated: August 9, 2019    **BRYAN CAVE LEIGHTON PAISNER LLP**

By: _____
Aaron Davis
Attorneys for US Foods, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 1500, Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled:  **FIFTH STIPULATION FOR ORDER (A) AUTHORIZING INTERIM USE OF CASH COLLATERAL, AND (B) GRANTING ADEQUATE PROTECTION FOR USE OF PREPETITION COLLATERAL** will be served or was served (a) on the judge in chamber in the form and manner required by LBR 5005-2(d); and the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **8/8/2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On **8/8/2019** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **8/8/2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **8/8/2019** | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  
DOCS_LA:321156.1 76135/003

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **George B Blackmar**  gblackmar@bpslaw.net
- **Dustin P Branch**  branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com
- **Aaron Davis**  aaron.davis@bryancave.com, kat.flaherty@bryancave.com
- **Alan J Friedman**  afriedman@shbllp.com, lgauthier@shbllp.com
- **Eric J Fromme**  efromme@tocounsel.com, lchapman@tocounsel.com;sschuster@tocounsel.com
- **Alastair M Gesmundo**  agesmundo@wcghlaw.com, jmartinez@wcghlaw.com
- **Richard H Golubow**  rgolubow@wcghlaw.com, pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com
- **Steven T Gubner**  sgubner@bg.law, ecf@bg.law
- **Michael J Hauser**  michael.hauser@usdoj.gov
- **Garrick A Hollander**  ghollander@wcghlaw.com, pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com
- **Lillian Jordan**  ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM
- **David S Kupetz**  dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com
- **William N Lobel**  wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Robert S Marticello**  Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Jessica G McKinlay**  mckinlay.jessica@dorsey.com
- **Malcolm D Minnick**  dminnick@pillsburylaw.com, m.minnick@comcast.net
- **Ernie Zachary Park**  ernie.park@bewleylaw.com
- **Valerie Smith**  claims@recoverycorp.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov
- **Matthew S Walker**  matthew.walker@pillsburylaw.com, renee.evans@pillsburylaw.com,docket@pillsburylaw.com
- **Corey R Weber**  ecf@bg.law, cweber@bg.law
- **Sharon Z. Weiss**  sharon.weiss@bclplaw.com, raul.morales@bclplaw.com
- **Christopher K.S. Wong**  christopher.wong@arentfox.com, yvonne.li@arentfox.com

2. **SERVED BY U.S. MAIL**:

Croudace & Dietrich LLP
2151 Michelson Drive Suite 162
Irvine, CA 92612


3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:

Via Overnight Mail
The Honorable Catherine E. Bauer
United States Bankruptcy Court
Central District of California/Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5165 / Courtesy Bin
Santa Ana, CA 92701-4593

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:321156.1 76135/003